Robert V. Prongay (#270796)
Charles H. Linehan (#307439)
Pavithra Rajesh (#323055)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO FERREIRA, Individually and On Behalf of All Others Similarly Situated, <br><br>             Plaintiff, <br><br>     v. <br><br> FUNKO, INC., BRIAN MARIOTTI, RUSSELL NICKEL, and JENNIFER FALL JUNG, <br><br>             Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> <u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Gilberto Ferreira ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Funko, Inc. ("Funko" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Funko; and (c) review of other publicly available information concerning Funko.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a class action on behalf of persons and entities that purchased or otherwise acquired Funko securities between October 31, 2019 and March 5, 2020, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Funko is a pop culture consumer products company that creates figures, plush, accessories, apparel, and homewares regarding movies, TV shows, videogames, musicians, and sports teams.

3.     On February 5, 2020, after the market closed, Funko issued a press release announcing preliminary fourth quarter 2019 financial results. Therein, Funko stated that "[n]et sales are expected to be approximately $214 million, a decrease of 8% compared to $233 million in the fourth quarter of 2018." The Company also disclosed a $16.8 million writedown to "dispose of slower moving inventory to increase operational capacity."

4.     On this news, Funko's share price fell $6.20, or 40%, to close at $9.29 per share on February 6, 2020, on unusually heavy trading volume.

5.     On March 5, 2020, after the market closed, Funko issued a press release announcing its fourth quarter and full year 2019 financial results. Therein, Funko

CLASS ACTION COMPLAINT

affirmed that net sales for fourth quarter had decreased 4% year-over-year to $213.6 million due to, among other things, "softness at retail during the holiday season which led to a decrease in orders."

6.     On this news, Funko's share price fell $0.32, or over 4%, to close at $6.92 on March 6, 2020, thereby injuring investors further.

7.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Funko was experiencing lower than expected sales; (2) that, as a result, Funko was reasonably likely to incur a writedown for slower moving inventory; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of

CLASS ACTION COMPLAINT

materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company has offices in this District.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.     Plaintiff Gilberto Ferreira, as set forth in the accompanying certification, incorporated by reference herein, purchased Funko securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant Funko is incorporated under the laws of Delaware with its principal executive offices located in Everett, Washington. Funko's shares trade on the NASDAQ exchange under the symbol "FNKO."

15.     Defendant Brian Mariotti ("Mariotti") was the Chief Executive Officer ("CEO") of the Company at all relevant times.

16.     Defendant Russell Nickel ("Nickel") was the Chief Financial Officer ("CFO") of the Company from October 2013 until August 13, 2019.

17.     Defendant Jennifer Fall Jung ("Jung") has been the CFO since August 13, 2019.

18.     Defendants Mariotti, Nickel, and Jung (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and

CLASS ACTION COMPLAINT

opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19.   Funko is a pop culture consumer products company that creates figures, plush, accessories, apparel, and homewares regarding movies, TV shows, videogames, musicians, and sports teams.

### Materially False and Misleading
### Statements Issued During the Class Period

20.   The Class Period begins on October 31, 2019. On that day, Funko announced its third quarter 2019 financial results and reiterated its fiscal 2019 outlook. In a press release, the Company stated, in relevant part:

Third Quarter 2019 Highlights

- Net sales increased 26% to $223.3 million

- Gross profit[] increased 26% to $85.5 million

- Gross margin[] decreased 10 basis points to 38.3%

- Income from operations increased 36% to $22.6 million

- Net income increased to $15.5 million from $7.6 million

- Earnings per diluted share increased to $0.25

- Adjusted Net Income[] was $19.9 million compared to $13.6 million in the third quarter of 2018, and Adjusted Earnings per

CLASS ACTION COMPLAINT

Diluted Share[] was $0.38, compared to $0.27 in the third quarter of 2018

- Adjusted EBITDA[] increased 20% to $40.6 million

\* \* \*

**2019 Outlook**

The Company is reiterating its outlook for the full year 2019. The Company expects net sales to be in a range of $840 million to $850 million. Adjusted EBITDA[] is expected to be in a range of $140 million to $145 million. Adjusted Earnings per Diluted Share[] is expected to be in a range of $1.15 per share to $1.22 per share and is based on estimated adjusted average diluted shares outstanding of 53.5 million for the full year 2019.

21.     The same day, Funko filed its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2019, affirming the previously reported financial results. Regarding inventory levels, the report stated, in relevant part:

***Our success depends, in part, on our ability to successfully manage our inventories.***

We must maintain sufficient inventory levels to operate our business successfully, but we must also avoid accumulating excess inventory, which increases working capital needs and lowers gross margin. We obtain substantially all of our inventory from third-party manufacturers located outside the United States and must typically order products well in advance of the time these products will be offered for sale to our customers. As a result, it may be difficult to respond to changes in consumer preferences and market conditions, which, for pop culture products, can change rapidly. If we do not accurately anticipate the popularity of certain products, then we may not have sufficient inventory to meet demand. Alternatively, if demand or future sales do not reach forecasted levels, we could have excess inventory that we may need to hold for a long period of time, write down, sell at prices lower than expected or discard. If we are not successful in managing our inventory, our business, financial condition and results of operations could be adversely affected.

We may also be negatively affected by changes in retailers' inventory policies and practices. As a result of the desire of retailers to more closely manage inventory levels, there is a growing trend to make purchases on a "just-in-time" basis. This requires us to more closely anticipate demand and could require us to carry additional inventory. Policies and practices of individual retailers may adversely affect us as well, including those relating to access to and time on shelf space, price demands, payment terms and favoring the products of our competitors. Our retail customers make no binding long-term commitments to us regarding purchase volumes and make all purchases by delivering purchase orders. Any retailer can therefore freely reduce its overall purchase of our products, including the number and variety of our products that it carries, and reduce the shelf space allotted for our products. If demand or future sales do not reach forecasted levels, we could have excess inventory that we may need to hold for a long period of time, write down, sell at prices lower than expected or discard. If we are not successful in managing our inventory, our business, financial condition and results of operations could be adversely affected.

22.    The above statements identified in ¶¶ 20-21 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that Funko was experiencing lower than expected sales; (2) that, as a result, Funko was reasonably likely to incur a writedown for slower moving inventory; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

23.    On February 5, 2020, after the market closed, Funko issued a press release announcing preliminary fourth quarter 2019 financial results. Therein, Funko stated that "[n]et sales are expected to be approximately $214 million, a decrease of 8% compared to $233 million in the fourth quarter of 2018." The Company also disclosed a $16.8 million writedown to "dispose of slower moving inventory to increase operational capacity." The press release stated, in relevant part:

6

Net sales are expected to be approximately $214 million, a decrease of 8% compared to $233 million in the fourth quarter of 2018. Net sales were below expectations in mature markets, including the U.S., due to the challenging retail environment, which resulted in lower than expected purchases among Funko's top customers throughout the holiday season as well as softness in sales related to certain tentpole movie releases. These factors more than offset strong growth both in Europe and the Loungefly brand during the quarter.

For the fourth quarter of fiscal 2019, Funko estimates:

- Net sales in the U.S. will decrease approximately 9%, while net sales internationally will decrease approximately 8%, reflecting declines in mature international markets, including Australia and Canada, partially offset by continued double digit growth in Europe.

- On a product category basis, net sales of figures will decrease approximately 10% and net sales of other products will decrease approximately 3% versus the year ago period, respectively. Net sales of Loungefly items, included in other products, are expected to show continued double digit growth in the fourth quarter offset by declines in other branded products.

- The Company will incur a one-time $16.8 million charge related to the write-down of inventory as a result of the Company's decision to dispose of slower moving inventory to increase operational capacity. This charge is incremental to normal course reserves and will have an unfavorable impact to gross profit[], gross margin[], net loss and net loss per diluted share in the fourth quarter.

- Gross profit[] will be in the range of $62.3 million to $62.8 million, while gross margin1 will be 29.2% to 29.4%. Gross margin excluding the one-time inventory write-down[] will be 37.0% to 37.3%.

- The Company will have a net loss in the range of $6.7 million to $6.0 million and net loss per diluted share of $0.12 to $0.11.

- Adjusted EBITDA[] will be in the range of $24.7 million to $25.7 million.

7

CLASS ACTION COMPLAINT

- Adjusted Net Income[] will be in the range of $8.1 million to $8.9 million and Adjusted Earnings per Diluted Share[] will be in the range of $0.16 to $0.18.

"While we are disappointed in our fourth quarter results, we are confident that our strong track record of innovation through new product categories and properties, as well as continued international expansion, will continue to propel the Company in 2020 and beyond. The underlying strength of our Pop! and Loungefly brands, combined with Funko's unique ability to leverage evergreen properties will enable the Company to achieve high-single-digit to low-double-digit sales growth in 2020," stated Brian Mariotti, Chief Executive Officer.

24.     Moreover, the Company expected that sales trends would not improve until second half of fiscal 2020, stating in the same press release:

The Company expects its 2020 net sales growth rate to be in the high-single-digits to low-double-digits. Additionally, the Company anticipates that top line trends will improve gradually throughout 2020 and will be largely weighted toward the second half of the year, with net sales in the first half expected to be down low-single-digits to flat compared to the first half of 2019. Funko plans to provide expanded guidance for 2020 in connection with the release of fourth quarter and full year 2019 financial results on March 5, 2020.

25.     On this news, Funko's share price fell $6.20, or 40%, to close at $9.29 per share on February 6, 2020, on unusually heavy trading volume.

26.     On March 5, 2020, after the market closed, Funko issued a press release announcing its fourth quarter and full year 2019 financial results. Therein, Funko affirmed that net sales for fourth quarter had decreased 4% year-over-year to $213.6 million due to, among other things, "softness at retail during the holiday season which led to a decrease in orders."

27.     On this news, Funko's share price fell $0.32, or over 4%, to close at $6.92 on March 6, 2020, thereby injuring investors further.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and

8

entities that purchased or otherwise acquired Funko securities between October 31, 2019 and March 5, 2020, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

29.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Funko's shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Funko shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Funko or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

31.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

32.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Funko; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

33.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

### UNDISCLOSED ADVERSE FACTS

34.     The market for Funko's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Funko's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Funko's securities relying upon the integrity of the market price of the Company's securities and market information relating to Funko, and have been damaged thereby.

35.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Funko's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Funko's business, operations, and prospects as alleged herein.

36.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial

contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Funko's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

37.   Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

38.   During the Class Period, Plaintiff and the Class purchased Funko's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

39.   As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Funko,

11

their control over, and/or receipt and/or modification of Funko's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Funko, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

40.     The market for Funko's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Funko's securities traded at artificially inflated prices during the Class Period.  On October 31, 2019, the Company's share price closed at a Class Period high of $18.00 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Funko's securities and market information relating to Funko, and have been damaged thereby.

41.     During the Class Period, the artificial inflation of Funko's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Funko's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Funko and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

CLASS ACTION COMPLAINT

42.     At all relevant times, the market for Funko's securities was an efficient market for the following reasons, among others:

(a)     Funko shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Funko filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Funko regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Funko was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

43.     As a result of the foregoing, the market for Funko's securities promptly digested current information regarding Funko from all publicly available sources and reflected such information in Funko's share price. Under these circumstances, all purchasers of Funko's securities during the Class Period suffered similar injury through their purchase of Funko's securities at artificially inflated prices and a presumption of reliance applies.

44.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.   Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a

prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

45.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Funko who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

46.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

47.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i)

deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Funko's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

48.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Funko's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

49.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Funko's financial well-being and prospects, as specified herein.

50.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Funko's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Funko and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

51.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

52.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Funko's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

53.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Funko's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Funko's securities during the Class Period at artificially high prices and were damaged thereby.

54.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Funko was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Funko securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

55.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

56.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## **SECOND CLAIM**

### **Violation of Section 20(a) of The Exchange Act**

### **Against the Individual Defendants**

57.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

58.     Individual Defendants acted as controlling persons of Funko within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

60.     As set forth above, Funko and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class

suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  March 10, 2020

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Charles H. Linehan*
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Counsel for Plaintiff Gilberto Ferreira*

CLASS ACTION COMPLAINT

## SWORN CERTIFICATION OF PLAINTIFF

## FUNKO, INC. SECURITIES LITIGATION

I, Gilberto Ferreira, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.      I am duly authorized to institute legal action against Funko, Inc. and other defendants.

3.      I did not purchase the Funko, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

4.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

5.      My transactions in Funko, Inc. securities during the Class Period set forth in the Complaint are as follows:

        (See attached transactions)

6.      I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

7.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.


2/7/2020

_____

Date

_____

*DocuSigned by:*

*Gilberto Ferreira*

4231377D32C749B...

Gilberto Ferreira

**Gilberto Ferreira's Transactions in Funko, Inc. (FNKO)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 12/13/2019 | Bought | 667 | $15.1500 |