POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Movant*
*the Funko Investor Group*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO FERREIRA, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FUNKO, INC., BRIAN MARIOTTI, RUSSELL  NICKEL, and JENNIFER FALL JUNG, <br><br> Defendants. | Case No. 2:20-cv-02319-VAP-PJW <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION OF THE FUNKO INVESTOR GROUP FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF LEAD COUNSEL, AND IN OPPOSITION TO THE COMPETING MOTIONS <br><br> DATE:  June 8, 2020 <br> TIME:  2:00 p.m. <br> JUDGE:  Virginia A. Phillips <br> CTRM:  8A, 8th Floor |
| MOHAMED NAHAS, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. | Case No. 2:20-cv-03130-VAP-PJW |

MEMORANDUM OF POINTS AND AUTHORITIES

FUNKO, INC., BRIAN MARIOTTI, RUSSELL  NICKEL, and JENNIFER FALL JUNG,

Defendants.

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................1

II.   ARGUMENT...................................................................................................4

    A.    The Funko Investor Group Is the Presumptive Lead Plaintiff..................4

        a.    The Funko Investor Group Has the Largest Financial Interest in the Relief Sought by the Class.....................................................4

        b.    The Funko Investor Group Has Also Made the Requisite *Prima Facie* Showing of its Typicality and Adequacy Under Rule 23.....8

    B.    No Movant can Rebut the Strong Presumption in Favor of Appointing the Funko Investor Group as Lead Plaintiff.........................11

    C.    All Other Lead Plaintiff Motions Should be Denied ..............................11

        1.    Gerber Kawasaki's Motion Should Be Denied......................12

        2.    William Hurt's Motion Must Also be Denied .......................12

MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aguilar v. Vitamin Shoppe, Inc.*, 2:17-CV-6454-KM-MAH,
   2018 WL 1960444 (D.N.J. Apr. 25, 2018).................................................................3

*Apple v. LJ Intl. Inc.*, CV076076GAFJWJX,
   2008 WL 11343371 (C.D. Cal. Feb. 8, 2008) ...........................................................9

*Borochoff v. Glaxosmithkline PLC*,
   246 F.R.D. 201 (S.D.N.Y. 2007) ..............................................................................8

*Bruce v. Suntech Power Holdings Co. Ltd.*, CV 12-04061 RS,
   2012 WL 5927985 (N.D. Cal. Nov. 13, 2012) .........................................................9

*Camp v. Qualcomm Inc.*, 18-CV-1208-AJB-BLM,
   2019 WL 277360 (S.D. Cal. Jan. 22, 2019) .........................................................7, 12

*Doshi v. General Cable*, CV217025WOBCJS,
   2017 WL 5178673 (E.D. Ky. Nov. 7, 2017) ........................................................3, 12

*Fragala v. 500.com*, CV 15-01463 MMM (EX),
   2015 WL 12513580 (C.D. Cal. July 7, 2015)..........................................................11

*Garbowski v. Tokai Pharm., Inc.*,
   302 F. Supp. 3d 441 (D. Mass. 2018) ........................................................................7

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ...............................................................................8, 11

*In re Clearly Canadian Securities Litig.*,
   1999 WL 707737 (N.D. Cal. Sept. 3, 1999)..............................................................7

*In re Comdisco Securities Litig.*,
   150 F. Supp. 2d 943 (N.D. Ill. 2001)........................................................................7

*In re Quintus Securities Litig.*,
   201 F.R.D. 475 (N.D. Cal. 2001)............................................................................10

*Johnson v. OCZ Tech. Group, Inc.*, CV 12-05265 RS,
2013 WL 75774 (N.D. Cal. Jan. 4, 2013)...................................................................10

*Jolly Roger Offshore Fund LTD v. BKF Capital Grp., Inc.*, No. 07 CIV. 3923 (RWS),
2007 WL 2363610 (S.D.N.Y. Aug. 16, 2007)......................................................11

*Karp v. Diebold Nixdorf, Inc.*, 19 CIV. 6180(LAP),
2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019).....................................................12

*Karp v. Diebold Nixdorf, Inc.*, 19 CIV. 6180 (LAP),
2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019) .......................................................12

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015) ................................................................11

*Lechner v. InfuSystem Holdings, Inc.*, 216CV08295ODWAGRX,
2017 WL 5640523 (C.D. Cal. Feb. 17, 2017) ...................................................10

*Longo v. OSI Sys., Inc.*, No. LA17CV08841VAPSKX,
2018 WL 4860145 (C.D. Cal. Mar. 1, 2018).......................................................5

*McCracken v. Edwards Lifesciences Corp.*, 813CV1463JLSRNBX,
2014 WL 12694135 (C.D. Cal. Jan. 8, 2014)....................................................10

*McGee v. Am. Oriental Bioengineering, Inc.*, 2:12-CV-5476-SVW-SH,
2012 WL 12895668 (C.D. Cal. Oct. 16, 2012) ..............................................1, 5

*Micholle v. Ophthotech Corp.*, 17-CV-1758 (VSB),
2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018)..................................................12

*Micholle v. Ophthotech Corp.*, 17-CV-210 (VSB) *et al.*,
2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 13, 2018)) ................................3

*Milbeck v. TrueCar, Inc.*, 218CV02612SVWAGR,
2018 WL 4998269 (C.D. Cal. June 27, 2018)...................................................10

*Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB,
2013 WL 792642 (N.D. Cal. Mar. 4, 2013) ........................................................5

*Perlmutter v. Intuitive Surgical, Inc.*, 10-CV-03451-LHK,
2011 WL 566814 (N.D. Cal. Feb. 15, 2011) .......................................................2

*Plaut v. Goldman Sachs Group, Inc.*, 18-CV-12084 (VSB),
2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) ...............................................2, 12

*Richardson v. TVIA, Inc.*, C 06 06304 RMW,
   2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ................................................................. 8

*Romero v. Growlife, Inc.*, 2:14-CV-03015-CAS,
   2014 WL 3734543 (C.D. Cal. July 23, 2014) ................................................................. 8

*Sofran v. LaBranche & Co.*,
   220 F.R.D. 398 (S.D.N.Y. 2004) .................................................................................. 11

*Tanne v. Autobytel, Inc.*,
   226 F.R.D. 659 (C.D. Cal. 2005) ........................................................................ 8, 9, 11

*Waterford Township Police v. Mattel, Inc.*, 17CV04732VAPKSX,
   2017 WL 10667732 (C.D. Cal. Sept. 29, 2017) ............................................................. 1

*Weisz v. Calpine Corp.*, 4:02-CV-1200,
   2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) ...................................................... 7, 12

## Statutes

15 U.S.C. 78u-4 ............................................................................................................... 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................ 1, 11

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ........................................................................... 4, 11

PSLRA ................................................................................................................ *passim*

## Rules

Federal Rules of Civil Procedure Rule 23 ................................................................. *passim*

Lead Plaintiff Movant Abdul Baker, Zhibin Zhang and Huaiyu Zheng (collectively, the "Funko Investor Group") respectfully submits this Memorandum of Law in further support of its motion for (i) consolidation of the above-captioned actions (the "Actions"); (ii) appointment as Lead Plaintiff;  (iii) approval of its selection of Bernstein Liebhard LLP ("Bernstein Liebhard") and Pomerantz LLP ("Pomerantz") as Co-Lead Counsel for the proposed Class; and (iv) in opposition to all other competing Lead Plaintiff motions.[1]

## I.    PRELIMINARY STATEMENT

On May 11, 2020, six competing movants and movant groups filed timely motions for appointment as lead plaintiff.[2]  A review of these motions makes it clear that the Funko Investor Group has the largest financial interest of any qualified movant, satisfies the adequacy and typicality requirements of Rule 23, and therefore is the "most adequate" plaintiff as defined by the PSLRA.  Accordingly, and because there is no "proof" to rebut the "strong presumption" in its favor, the Funko Investor Group should be appointed Lead Plaintiff here and all other competing motions should be denied.

In securities class actions, the PSLRA directs courts to appoint as lead plaintiff the movant or movant group with the "largest financial interest in the relief sought by the class" who "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The predominant method for calculating financial interest in this Circuit is to calculate each movant's approximate losses under the "last-in-first-out" ("LIFO") accounting methodology. *Waterford Township Police v. Mattel, Inc.*, 17CV04732VAPKSX, 2017 WL 10667732, at \*5 (C.D. Cal. Sept. 29, 2017) (courts in the Ninth Circuit tend to use LIFO to approximate financial interest); *McGee v. Am. Oriental Bioengineering, Inc.*, 2:12-CV-5476-SVW-SH, 2012 WL 12895668, at

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meanings as set forth in the Funko Investor Group's opening memorandum.  *See* ECF No. 35.

[2] Lead Plaintiff motions were made by: (i) the Funko Investor Group; (ii) Gerber Kawasaki, Inc. ("Gerber Kawasaki"); (iii) William Hurt; (iv) Jarret Elion and Zheng Li ("Elion and Li"); (v) Ganesh Shenoy; and (vi) Angela Michl.

*4 (C.D. Cal. Oct. 16, 2012) ("[t]his Court agrees with [the] majority of courts that LIFO is the most appropriate technique for approximating which investor suffered the greatest losses because of Defendants' wrongdoing."); *Perlmutter v. Intuitive Surgical, Inc.*, 10-CV-03451-LHK, 2011 WL 566814, at *10 (N.D. Cal. Feb. 15, 2011) (placing more weight on the losses calculated using LIFO). Under this method, as well as under other Court-approved methods, the Funko Investor Group has the largest financial interest of any qualified movant by a wide margin.

The Funko Investor Group sustained over $484,000 in LIFO losses, which exceeds the claimed losses of the two next largest movants by approximately $50,000 and $150,000, respectively. Notably, Gerber Kawasaki claims the second largest LIFO losses here ($437,038), but its loss calculations are riddled with errors that should disqualify Gerber Kawasaki as a lead plaintiff movant altogether. Among other things, Gerber Kawasaki improperly included in its loss calculations the losses of an assignee that only made pre-class purchases and thus lacks standing to pursue any claims in these Actions. In addition to this fundamental error, Gerber Kawasaki failed to include the pre-class holdings of certain of its assignees and submitted a sworn certification with purported trades that are outside of the daily trading ranges for Funko. Gerber Kawasaki also submitted trades for assignees that exited their positions before any disclosure of the alleged fraud, *i.e.*, they were "in and out" investors. Moreover, Gerber Kawasaki mismatched the trades of certain of its assignees during the Class Period – a key step in calculating losses under LIFO. As a result of this multitude of errors, which are scattered across more than 80 assignees, Gerber Kawasaki filed a motion that misreported its LIFO losses to the Court by over $40,000 (and misreported its losses calculated under FIFO, the "first-in-first-out" methodology, by nearly $200,000).

The degree of carelessness exhibited in Gerber Kawasaki's motion is so extensive that it not only renders its asserted financial interest inaccurate – it negates its adequacy to serve as a Lead Plaintiff in these Actions altogether. *Plaut v. Goldman Sachs Group,*

*Inc.*, 18-CV-12084 (VSB), 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) ("certification errors in [a movant's] submissions 'militate against appointment and render [it] inadequate to serve as lead plaintiff under Rule 23's adequacy requirement.'") (quoting *Micholle v. Ophthotech Corp.*, 17-CV-210 (VSB) *et al.*, 2018 U.S. Dist. LEXIS 41120, at *24 (S.D.N.Y. Mar. 13, 2018)). Indeed, this slipshod submission is a foreshadowing of the serious problems that will undoubtedly arise if this unwieldly amalgam of over 80 investors serves in a representative capacity  in its attempted end run around the PSLRA process  *See Aguilar v. Vitamin Shoppe, Inc.*, 2:17-CV-6454-KM-MAH, 2018 WL 1960444, at *11 (D.N.J. Apr. 25, 2018) ("At some point, a group may become too large for its members to operate effectively as a unit…. Such unwieldiness would vitiate the PSLRA's purpose of having active and engaged plaintiffs supervise the conduct of the litigation"). It would be difficult and inefficient to coordinate a group of Gerber Kawasaki's size, including having over 80 individuals with 80 different views overseeing this litigation, sitting for depositions, and needing to sign off on a potential settlement or other important litigation matter.[3]

If Gerber Kawasaki is disqualified, as it should be, the Funko Investor Group's losses exceed the losses of the next largest movant, William Hurt, by over $150,000.

The Funko Investor Group has also made a *prima facie* showing of its typicality and adequacy under Rule 23. The Funko Investor Group's claims are typical of those of other Class members, *inter alia*, because they are based on the same legal theory and arise from the same event and course of conduct as the Class' claims.

The Funko Investor Group is likewise adequate because it is a small, cohesive group of like-minded and sophisticated investors whose interests are perfectly aligned

---

[3] Gerber Kawasaki also suffers from other issues as well, which militate in favor of denying its motion, including that Gerber Kawasaki is a net seller in Funko securities. *Doshi v. General Cable*, CV217025WOBCJS, 2017 WL 5178673, at *3 (E.D. Ky. Nov. 7, 2017) ("Courts regularly hold that plaintiffs who are net sellers and/or net gainers may be subject to unique defenses because they may have benefitted by selling pre-Class Period shares at allegedly inflated prices during the Class Period.")

with the Class's interests to maximize a recovery as a result of the alleged fraud. With its motion, the Funko Investor Group submitted a sworn declaration demonstrating the level of sophistication of each of its members, and each member's understanding and commitment to work together to undertake the responsibilities of Lead Plaintiff, which includes managing and overseeing counsel to ensure the efficient and effective prosecution of these Actions. In that regard, the Funko Investor Group has already demonstrated its adequacy even at this preliminary stage by negotiating a favorable fee with its chosen counsel for the benefit of the Class.

The Funko Investor Group has further demonstrated its adequacy because its substantial financial interest will ensure its vigorous prosecution of the Class' claims; it has no conflicts with other Class members; and it has selected experienced counsel, Bernstein Liebhard and Pomerantz, as Co-Lead Counsel for the Class.

For these reasons, the Funko Investor Group is entitled to the PSLRA's "strong presumption" of being the "most adequate plaintiff" and should be appointed Lead Plaintiff for the Class. The Funko Investor Group's presumptive lead plaintiff status can only be rebutted "upon proof" that it is inadequate or atypical to represent the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists here.

Accordingly, the Court should grant the Funko Investor Group's motion in its entirety and deny all other competing lead plaintiff motions.

## II. ARGUMENT

### A. The Funko Investor Group Is the Presumptive Lead Plaintiff

#### a. The Funko Investor Group Has the Largest Financial Interest in the Relief Sought by the Class

The Funko Investor Group has the largest financial interest in these Actions. In determining the movant with the largest financial interest, it is well-established that the most important factor is approximate losses, which courts in this Circuit prefer to calculate

using the LIFO methodology.  *See* 15 U.S.C. 78u-4; *McGee*, 2012 WL 12895668, at *4; *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) ("[t]he weight of authority puts the most emphasis on the competing movants' estimated losses, using a [LIFO] methodology").  *Cf. Longo v. OSI Sys., Inc.*, No. LA17CV08841VAPSKX, 2018 WL 4860145, at *4 (C.D. Cal. Mar. 1, 2018) ("[c]ourts in the Ninth Circuit have tended to give the final method the most emphasis and tend to use a [LIFO] methodology").  Under this methodology, there simply is no contest – the Funko Investor Group's losses are much larger than the losses asserted by any other movant:

| Movant | LIFO Losses |
|---|---|
| **Funko Investor Group** | **($484,077)** |
| | |
| **William Hurt** | **($330,056)** |
| | |
| **Elion & Li Group** | **($143,343.90)** |
| | |
| **Ganesh Shenoy** | **($61,300.00)** |
| | |
| **Angela Michl** | **($3,743,54)** |
| | |
| ~~**Gerber Kawasaki**~~ | ~~**($437,038)**~~ |

The foregoing alone should end the financial interest inquiry.

It bears noting, however, that Gerber Kawasaki claims to have lost $437,038, the second largest LIFO loss here, but its losses are beset by numerous significant errors. Therefore, Gerber Kawasaki should be disqualified as a lead plaintiff movant.  In what appears to be an attempt to circumvent the PSLRA process, Gerber Kawasaki asserts

losses based on assignments from an unwieldly group of over 80 different individuals. This improper grouping includes individuals that (i) only purchased shares outside of the Class Period and thus lack standing to pursue any claims here; (ii) did not hold any shares through any corrective disclosures; and (iii) submitted trades to the Court that were priced well outside of Funko stock's daily trading range. Gerber Kawasaki also mismatched purchases and sales from several different assignees in their LIFO calculations during Class Period.

For example, Genevieve Gambill only made pre-Class Period purchases in Funko securities, and thus lacks standing to pursue any claims in these Actions. Ms. Gambill purchased her Funko shares on September 20, 2018 and November 9, 2018, respectively, months before the Class Period started. *See* ECF 27-4 at 4. Accordingly, her transactions should not have been included in Gerber Kawasaki's losses at all. In addition to this fundamental error, certain trades attributed to Nicole Sahin and Marie Rotter occurred outside of the daily trading range for Funko stock. Specifically, Ms. Sahin purportedly purchased 1,850 shares of Funko on December 26, 2019 at a price of $15.37 per share. *See* ECF 27-4 at 9. On that day, however, Funko common stock traded between $16.18 and $16.70. *See* Funko Historical Data, Nasdaq (available at https://www.nasdaq.com/market-activity/stocks/fnko/historical) (last visited May 18, 2020). Additionally, Gerber Kawasaki claims that Marie Rotter purchased 3,000 shares of Funko stock on January 28, 2020 at a price of $15.34. *See* ECF 27-4 at 6. On that day, however, Funko common stock only traded between $15.43 and $15.88. These errors, among others, render Gerber Kawasaki's claimed losses inaccurate and unsupported. In fact, Gerber Kawasaki's carelessness has caused the it to file a deficient motion with the Court that has significantly misreported its LIFO losses – by over $40,000.

As a further example of Gerber Kawasaki's carelessness here, the movant also claims $686,946.09 in FIFO losses – but its miscalculations under FIFO are even more egregious. In addition to the errors discussed *supra*, Gerber Kawasaki grossly inflates its

FIFO losses by nearly $200,000 by improperly including a $450,000 cost-basis for its pre-class purchases in its loss charts.  In fact, Gerber Kawasaki should not have included any cost-basis for its pre-class purchases because the FIFO methodology cancels out pre-class period purchases against the first class period sales.  In any event, courts in this Circuit and nationwide typically decline to apply the FIFO methodology to calculate losses in securities fraud cases.  *Weisz v. Calpine Corp.*, 4:02-CV-1200, 2002 WL 32818827, at *7 (N.D. Cal. Aug. 19, 2002) ("[B]ecause [FIFO] encompasses purchases made outside the class period, courts have generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases."); *See also In re Comdisco Securities Litig.,* 150 F. Supp. 2d 943, 945-46 (N.D. Ill. 2001) (citing cases); *In re Clearly Canadian Securities Litig.*, 1999 WL 707737, at *4 (N.D. Cal. Sept. 3, 1999) ("use of the 'first in, first out' method of pairing purchases and sales of shares will identify damages where in reality there may be none; the 'FIFO' assumption is in no way based on actual trading practices in general, let alone the trades of actual claimants.").

The extent of Gerber Kawasaki's carelessness and errors not only renders its loss calculations inaccurate, but, as many courts have held under similar situations, demonstrate Gerber Kawasaki's inadequacy to represent the Class in these Actions.  *Camp v. Qualcomm Inc.*, 18-CV-1208-AJB-BLM, 2019 WL 277360, at *4 (S.D. Cal. Jan. 22, 2019) (significant errors in transactions records and loss calculations prohibit a movant from satisfying the adequacy and typicality requirements of Rule 23).  Accordingly, Gerber Kawasaki should be disqualified as a lead plaintiff movant.  *Garbowski v. Tokai Pharm., Inc.*, 302 F. Supp. 3d 441, 455 (D. Mass. 2018) (a law firm's willingness to submit an obviously defective sworn certification should raise a court's concerns about that counsel's ability to represent the class).

Moreover, even if Gerber Kawasaki had not submitted error-ridden papers, it is inconceivable that a group consisting of over 80 investors can act as a cohesive lead plaintiff.  While the 80 members of the Gerber Kawaskai group claim that they will

cooperate with one another for this case, it would be extremely burdensome and inefficient to coordinate depositions, manage discovery and achieve settlement approval for the over 80 different individuals that make up Gerber Kawasaki.

In addition to asserting the largest LIFO loss, the Funko Investor Group likewise asserts the largest financial interest of any qualified movant under other Court-approved methods for assessing financial interest at the lead plaintiff stage, including the so-called *Lax* factors. *See Richardson v. TVIA, Inc.*, C 06 06304 RMW, 2007 WL 1129344, at *3 (N.D. Cal. Apr. 16, 2007) (courts have typically considered the "Olsten-Lax" factors to determine who has the largest financial interest: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered."); *see also* Declaration of Jeremy Lieberman Ex. A.[4]

### b. The Funko Investor Group Has Also Made the Requisite *Prima Facie* Showing of its Typicality and Adequacy Under Rule 23

The Funko Investor Group also handily satisfies the typicality and adequacy requirements of Rule 23.  In appointing a lead plaintiff, a district court must determine whether the movant has made a *prima facie* showing of typicality and adequacy.  *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 666 (C.D. Cal. 2005).  The burden at this stage is relatively light. *Romero v. Growlife, Inc.*, 2:14-CV-03015-CAS, 2014 WL 3734543, at *3 (C.D. Cal. July 23, 2014).  Moreover, it is well established that the district court's consideration of adequacy and typicality is not a "beauty contest" amongst the movants. *Cavanaugh*, 306 F.3d at 732 ("[s]o long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.").

---

[4] Under the *Lax* factors, Gerber Kawasaki is also a net seller, which courts are loathe to appoint as lead plaintiffs.  *Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201, 205 (S.D.N.Y. 2007).

The Funko Investor Group easily satisfies the typicality requirement of Rule 23. The Funko Investor Group's claims are typical of those of other Class members because, like other Class members, the Funko Investor Group purchased Funko securities during the Class Period at prices artificially inflated by Defendants' misrepresentations and/or omissions that form the basis of the Actions. The Funko Investor Group suffered substantial losses as a result of the alleged fraud in the Actions. And, the Funko Investor Group's claims are based on the same legal theory and arise from the same events and course of conduct as the Class' claims. *Apple v. LJ Intl. Inc.*, CV076076GAFJWJX, 2008 WL 11343371, at *5 (C.D. Cal. Feb. 8, 2008).

The Funko Investor Group has also demonstrated its adequacy to serve as Lead Plaintiff in these Actions. First, as set forth *supra*, the Funko Investor Group has the largest financial interest in these Actions, which will ensure its vigorous and adequate prosecution of the Class' claims. *Tanne,* 226 F.R.D.at 666 (investors "with large losses will, more often than not, satisfy the typicality and adequacy requirements"). Second, the Funko Investor Group has no conflicts with other Class members. To the contrary, the Funko Investor Group's interests are perfectly aligned with the Class' interests of maximizing a recovery for the Class due to the alleged fraud in this Action. Third, the Funko Investor Group has demonstrated its adequacy by submitting a joint declaration attesting that each movant is a sophisticated investor, knowledgeable about the litigation, and committed to working together as Lead Plaintiff to protect the interests of the Class. *See Bruce v. Suntech Power Holdings Co. Ltd.*, CV 12-04061 RS, 2012 WL 5927985, at *3 (N.D. Cal. Nov. 13, 2012). Indeed, as set forth in the Joint Declaration submitted with their initial motion, the Funko Investor Group has acknowledged that its members understand the obligation of a Lead Plaintiff under the PSLRA and plan to prosecute this action efficiently. ECF No. 36-4 ¶7. They have also developed a robust decision-making apparatus to confront any disputes that may arise during the litigation of this case. ECF No. 36-4 ¶6.

Fourth, the Funko Investor Group has demonstrated its adequacy by selecting qualified counsel with substantial experience litigating securities class actions. *See* ECF No. 29; *Lechner v. InfuSystem Holdings, Inc.*, 216CV08295ODWAGRX, 2017 WL 5640523, at \*4 (C.D. Cal. Feb. 17, 2017).

Notably, even at this preliminary stage, the Funko Investor Group has already also demonstrated its ability to supervise counsel and ensure the efficient and effective prosecution of these Actions, which further militates in favor of a finding of its adequacy here. *In re Quintus Securities Litig.*, 201 F.R.D. 475, 482 (N.D. Cal. 2001). Indeed, the Funko Investor Group has negotiated a favorable fee with counsel for the benefit of the Class. *Quintus*, 201 F.R.D. at 482.

Lastly, the Funko Investor Group has further demonstrated its adequacy because it is a small cohesive group composed of highly educated and sophisticated investors with many years of experience investing in the securities markets, and because each of its members understands and is willing to undertake the responsibilities of Lead Plaintiff. ECF No. 36-4; *Milbeck v. TrueCar, Inc.*, 218CV02612SVWAGR, 2018 WL 4998269, at \*3 (C.D. Cal. June 27, 2018); *Johnson v. OCZ Tech. Group, Inc.*, CV 12-05265 RS, 2013 WL 75774, at \*3 (N.D. Cal. Jan. 4, 2013) ("Small, cohesive groups similar to the OCZ Investor Group are routinely appointed as Lead Plaintiff in securities actions when they have shown their ability to manage the litigation effectively in the interests of the class without undue influence of counsel."). Thus, the Funko Investor Group has more than made a *prima facie* showing of its adequacy under Rule 23.

For these reasons, the Funko Investor Group handily satisfies the typicality and adequacy requirements of Rule 23 and is entitled to the PSLRA's "strong presumption" of being the Lead Plaintiff. *McCracken v. Edwards Lifesciences Corp.*, 813CV1463JLSRNBX, 2014 WL 12694135, at \*4 (C.D. Cal. Jan. 8, 2014).

**B.      No Movant can Rebut the Strong Presumption in Favor of Appointing the Funko Investor Group as Lead Plaintiff**

For the foregoing reasons, the Funko Investor Group is entitled to the PSLRA's "strong presumption" of being the "most adequate plaintiff" in these Actions. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Courts in this Circuit and all over the nation have repeatedly held that once this presumption is triggered, the court must focus on the presumptive plaintiff alone.  *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002); *Tanne*, 226 F.R.D. at 669 (C.D. Cal. 2005) ("[a]s noted in Cendant, 'once the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job'"); *Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 535–36 (S.D.N.Y. 2015); *Jolly Roger Offshore Fund LTD v. BKF Capital Grp., Inc.*, No. 07 CIV. 3923 (RWS), 2007 WL 2363610, at *3 (S.D.N.Y. Aug. 16, 2007).

The "strong presumption" in favor of appointing the Funko Investor Group as Lead Plaintiff can only be rebutted with "proof" that the Funko Investor Group is atypical or inadequate.  15 U.S.C. §78u-4(a)(3)(B)(iii)(II); *see also Fragala v. 500.com*, CV 15-01463 MMM (EX), 2015 WL 12513580, at *10 (C.D. Cal. July 7, 2015) (the presumption may be rebutted "only upon proof" that it will not fairly and adequately protect the interests of the class or is subject to unique defenses that render it incapable of adequately representing the class).  No such proof exists here.

**C.      All Other Lead Plaintiff Motions Should be Denied**

As demonstrated *supra*, the Funko Investor Group has the largest financial interest in these Actions, it has made a *prima facie* showing of its typicality and adequacy, and there is no proof to rebut the strong presumption in favor of appointing it as Lead Plaintiff. Thus, the Court should deny all other lead plaintiff motions on this basis alone. Nevertheless, there are many other independent reasons to deny the competing motions.

### 1. Gerber Kawasaki's Motion Should Be Denied

As discussed *supra*, Gerber Kawasaki's motion should be rejected because it submitted an error-ridden filing to the Court that inaccurately reports its financial interest, includes as assignees individuals that lack standing to pursue any claims here, mismatches trades, and is an apparent attempt to circumvent the PSLRA's lead plaintiff process by aggregating an unwieldly group of more than 80 investors. *Plaut*, 2019 WL 4512774, at *5; *Micholle v. Ophthotech Corp.*, 17-CV-1758 (VSB), 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018).

These issues independently, but even more so holistically, disqualify Gerber Kawasaki from appointment as lead plaintiff. *Camp*, 2019 WL 277360, at *4 (errors in accompanying transaction records and loss calculations underscored the reliability of the movant's representations and the movant could not meet the adequacy requirement of Rule 23); *Karp v. Diebold Nixdorf, Inc.*, 19 CIV. 6180(LAP), 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019), adhered to on reconsideration, 19 CIV. 6180 (LAP), 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019) (same).

In addition, Gerber Kawasaki is a net seller in Funko securities during the Class Period, and courts are unwilling to appoint net sellers as lead plaintiffs in securities class actions. *See*, *e.g.*, *Weisz,*, 2002 WL 32818827, *7 (refusing to consider an application or lead plaintiff because the movant had sold more shares than it purchased during the class period.) Specifically, Gerber Kawasaki sold 20,595 more shares than it purchased during the Class Period. *See* Lieberman Decl. Ex. A. Gerber Kawasaki's movant's status as a net seller during the Class Period further militates in favor of disqualifying it from serving as a lead plaintiff in these Actions as courts frequently reject the lead plaintiff applications of net sellers. *Doshi,* 2017 WL 5178673, at *3.

### 2. William Hurt's Motion Must Also be Denied

William Hurt's motion likewise should be rejected for independent reasons, including, *inter alia*, because his motion expressly concedes that he alone either cannot or

is unwilling to undertake the responsibilities of Lead Plaintiff in these Actions. According to his sworn Declaration, Mr. Hurt – a 93 year old  – has "enlisted the assistance" of an accountant named Teresa A. Boyle to share the core duties of a lead plaintiff, including to "direct the litigation on behalf of the Class", "stay apprised of all material developments of the litigation", and to otherwise act in the Class' best interests.  *See* Declaration of William Hurt ("Hurt Decl.") ¶4.  This is a serious concern that cannot be ignored by the Court.  It goes without saying that the Court should select a movant that is fully committed and capable of taking on the responsibilities of a lead plaintiff, and the Class likewise should have a clear picture of who will be acting as a fiduciary on their behalf.  If Mr. Hurt is appointed here, and he should not be, the Court effectively would be appointing a completely unknown quantity to represent the Class.  Indeed, Mr. Hurt has unambiguously represented that he intends for Ms. Boyle to act as a proxy on his behalf to lead these Actions.

The Court should reject Mr. Hurt's proposed "tag team effort" for several other reasons.  Importantly, Ms. Boyle has not submitted a sworn certification in these Actions pursuant to the PSLRA; nor has she even committed to serve as a fiduciary for the Class here.  The Court cannot simply accept a conclusory statement made in Mr. Hurt's Declaration as a pledge from Ms. Boyle that she will undertake – or can even undertake – this important responsibility for the Class.  Moreover, the Court should not even be persuaded that Ms. Boyle understands what exactly Mr. Hurt is committing her to.  Also concerning is that Ms. Boyle has not evidenced that she herself has any interest whatsoever in these Actions, including whether she even bought a single share of Funko stock during the Class Period.  For these reasons, the Court should not appoint Mr. Hurt as Lead Plaintiff.  Appointing Mr. Hurt would essentially place control of these Actions in the hands of an unknown non-movant which would entirely undermine the PSLRA process.

The Funko Investor Group reserves the right to further address the competing movants' adequacy or typicality, if necessary.

Dated:  May 18, 2020                    POMERANTZ LLP

                                        */s/ Jennifer Pafiti*
                                        Jennifer Pafiti (SBN 282790)
                                        1100 Glendon Avenue, 15th Floor
                                        Los Angeles, CA 90024
                                        Telephone: (310) 405-7190
                                        jpafiti@pomlaw.com

                                        POMERANTZ LLP
                                        Jeremy A. Lieberman
                                        J. Alexander Hood II
                                        600 Third Avenue, 20th Floor
                                        New York, New York 10016
                                        Telephone: 212-661-1100
                                        Facsimile:  212-661-8665
                                        jalieberman@pomlaw.com
                                        ahood@pomlaw.com

                                        POMERANTZ LLP
                                        Patrick V. Dahlstrom
                                        10 South LaSalle Street, Suite 3505
                                        Chicago, IL 60603
                                        Telephone: 312-377-1181
                                        Facsimile:  312-377-1184
                                        pdahlstrom@pomlaw.com

                                        BERNSTEIN LIEBHARD LLP
                                        Stanley D. Bernstein
                                        Laurence J. Hasson
                                        Matthew E. Guarnero
                                        10 East 40th Street
                                        New York, NY 10016
                                        Telephone: (212) 779-1414
                                        Facsimile: (212) 779-3218
                                        bernstein@bernlieb.com
                                        lhasson@bernlieb.com
                                        mguarnero@bernlieb.com

*Counsel for the Funko Investor Group and
Proposed Co-Lead Counsel for the Class*

CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


/s/    *Jennifer Pafiti*
Jennifer Pafiti