Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
Danielle Smith (291237)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com
danielles@hbsslaw.com

*Attorneys for [Proposed] Lead Plaintiff
William Hurt*
[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| GILBERTO FERREIRA, Individually and On Behalf Of All Other Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FUNKO, INC., BRIAN MARIOTTI, RUSSELL NICKEL, and JENNIFER FALL JUNG,<br><br>Defendants. | No. 2:20-cv-02319-VAP-PJW<br><br>**MOVANT WILLIAM HURT'S OPPOSITION TO COMPETING MOTIONS FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**<br><br>Date:    June 8, 2020<br>Time:    2:00 p.m.<br>Courtroom:  8A, 8th Floor<br>Judge:    Hon. Virginia A. Phillips<br><br>ORAL ARGUMENT REQUESTED |

[Caption continued on the next page.]

010915-11/1269424 V1

MOHAMED NAHAS, Individually and On Behalf Of All Other Similarly Situated,

Plaintiff,

v.

FUNKO, INC., BRIAN MARIOTTI, RUSSELL NICKEL, and JENNIFER FALL JUNG,

Defendants.

No. 2:20-cv-03130-VAP-PJW

010915-11/1269424 V1

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ......................................................................... 1

II.     ARGUMENT ................................................................................................. 4

        A.      Mr. Hurt Is The Presumptive Lead Plaintiff ............................................. 4

        B.      Gerber Kawasaki Has No Financial Interest in the Litigation, is Atypical of Classmembers and Inadequate to Represent the Class........................ 5

        C.      The Funko Investor Group's Motion Should Be Denied....................... 14

III.    CONCLUSION ........................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Apple v. LJ Int'l Inc.*,
2008 WL 11343371 (C.D. Cal. Feb. 8, 2008) ....................................................15

*Asian Am. Mach. Movers & Logistics, LLC v. PK Rd. Logistics, Inc.*,
2017 WL 10874193 (C.D. Cal. Nov. 27, 2017) ..................................................10

*Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*,
171 F.R.D. 135 (S.D.N.Y.1997) .........................................................................11

*In re Bausch & Lomb*,
244 F.R.D. 169 (W.D.N.Y. 2007) .......................................................................13

*Baydale v. Am. Express Co.*,
2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009) ..................................................5, 8

*In re Bausch & Lomb*,
244 F.R.D. 169, 173-74 (W.D.N.Y. 2007)..........................................................13

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir.1975) .................................................................................9

*Cambridge Ret. Sys. v. Mednax, Inc.*,
2018 WL 8804814 (S.D. Fla. Dec. 6, 2018),
*report and recommendation adopted,* 2018 WL 6978626 (S.D. Fla.
Dec. 21, 2018)........................................................................................................9

*Carvelli v. Ocwen Fin. Corp.*,
2017 WL 11068524 (S.D. Fla. July 14, 2017) ......................................................4

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ........................................................................1, 4, 8

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ..................................................................................1

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur v.
Phillips Petroleum Co.*,
105 F.R.D. 16 (S.D.N.Y.1984).............................................................................11

*Crihfield v. CytRx Corp.*,
2016 WL 10587938 (C.D. Cal. Oct. 26, 2016) ....................................................14

*In re Critical Path*,
156 F. Supp. 2d 1102 (N.D. Cal. 2001).............................................................13

*Ellenburg v. JA Solar Holdings Co. Ltd.*,
262 F.R.D. 262,266 (S.D.N.Y. 2009)..............................................................10

*Essex Ins. Co. v. Hartford Fire Ins. Co.*,
2013 WL 3389549 (C.D. Cal. July 8, 2013) .....................................................2

*Frias v. Dendreon Corp.*,
835 F. Supp. 2d 1067 (W.D. Wash. 2011) .......................................................14

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*,
209 F.R.D. 447 (C.D. Cal. 2002)..............................................................14, 16

*In re Herley Indus. Sec. Litig.*,
2009 WL 3169888 (E.D. Pa. Sep. 30, 2009)......................................................7

*In re Imax Sec. Litig.*,
2009 WL 1905033 (S.D.N.Y. June 29, 2009).....................................................7

*Isaacs v. Musk*,
2018 WL 6182753 (N.D. Cal. Nov. 27, 2018), *reconsideration denied
sub nom. In re Tesla, Inc. Sec. Litig.*, 2018 WL 6609569 (N.D. Cal.
Dec. 17, 2018)............................................................................................13

*John Wiley & Sons, Inc. v. DRK Photo*,
882 F.3d 394 (2d Cir.), *cert. denied,* 139 S. Ct. 237, 202 L. Ed. 2d 129
(2018)..........................................................................................................6

*JPMorgan Chase Bank, N.A. v. KB Home*,
2010 WL 1994787 (D. Nev. May 18, 2010) .....................................................11

*Kinney v. Capstone Turbine Corp.*,
2016 WL 5341948 (C.D. Cal. Feb. 29, 2016) ...................................................15

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015).............................................................8

*Koos v. First Nat'l Bank*,
496 F.2d 1162 (7th Cir. 1974) .....................................................................1, 8

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
  756 F. Supp. 2d 928 (N.D. Ill. 2010)......................................................................10

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC,
  2017 WL 985875 (S.D.N.Y. Mar. 10, 2017).........................................................13

*Marcus v. J.C. Penney Co.*,
  2014 WL 11394911 (E.D. Tex. Feb. 28, 2014)......................................................13

*McGee v. Am. Oriental Bioengineering, Inc.*,
  No. 2:12-CV-5476-SVW-SH, 2012 WL 12895668 (C.D. Cal. Oct. 16,
  2012) .......................................................................................................................15

*In re Network Assocs., Inv. Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999).....................................................................16

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
  275 F.R.D. 187 (S.D.N.Y. 2011)...............................................................................5

*Reinschmidt v. Zillow, Inc.*,
  2013 WL 1092129 (W.D. Wash. Mar. 14, 2013)....................................................12

*In re Reserve Fund Sec. & Derivative Litig.*,
  2009 WL 10467937 (S.D.N.Y. Aug. 26, 2009) .......................................................7

*Royal Park Investments SA/NV v. Deutsche Bank Nat'l. Tr. Co.*,
  314 F.R.D. 341 (S.D.N.Y. 2016)..............................................................................11

*Ruland v. InfoSonics Corp.*,
  2006 WL 3746716 (S.D. Cal. Oct. 23, 2006)..........................................................12

*S. Ferry LP #2 v. Killinger*,
  271 F.R.D. 653 (W.D. Wash. 2011)...........................................................................7

*Schriver v. Impac Mortg. Holdings, Inc.*,
  2006 WL 6886020 (C.D. Cal. May 2, 2006)...........................................................16

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
  2014 WL 129814 (E.D. Tenn., Jan. 10, 2014) ........................................................11

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
  128 S.Ct. 2533 (2008)................................................................................................6

*Travelers Indent. Co. of Am. v. Kendrick Bros. Roofing, Inc.*,
   2013 WL 6681240 (D. Idaho Dec. 18, 2013).......................................................11

*Tsirekidze v. Syntax-Brillian Corp.*,
   2008 WL 942273 (D. Ariz. Apr. 7, 2008) .............................................................5

*United States v. City of Arcata*,
   629 F.3d 986 (9th Cir. 2010) ................................................................................5

*Weisz v. Calpine Corp.*,
   2002 WL 32818827 (N.D. Cal. Aug. 19, 2002)..................................................13

## Federal Statutes

15 U.S.C. § 78u-4 ...............................................................................................*passim*

15 U.S.C. § 78u-4(a)(3)(B)...........................................................................................5

15 U.S.C. § 78u-4(a)(3)(B)(i) .......................................................................................4

15 U.S.C. § 78u-4(a)(3)(B)(iii)....................................................................................14

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).................................................................................1

15 U.S.C. § 78u–4(a)(B)(iii)(I)(bb) ..............................................................................6

## Other Authorities

17 C.F.R. § 240.10b-5 ...................................................................................................9

Fed. R. Civ. P. 23......................................................................................................1, 4, 5

Fed. R. Civ. P. 23(a) .....................................................................................................4

Fed. R. Civ. P. 23(a)(4)................................................................................................14

*The Mannkind Sec. Actions*, No. 2:11-cv-00929-GAF-SS....................................16

Restatement (Second) of Contracts § 336 (2020).......................................................2

29 Williston on Contracts § 74:47 (4th ed.2003) .......................................................2

HURT OPP. TO COMP. MOTIONS TO CONSOL. REL. ACTIONS, APPOINT LEAD PL. AND APPROVE THE
SELECTION OF COUNSEL
Case No.: 2:20-cv-02319-VAP-PJW

- 4

## I. PRELIMINARY STATEMENT

In essence, there are three competing motions seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") are pending before the Court: (1) William Hurt ("Mr. Hurt") (ECF No. 29); (2) Gerber Kawasaki, Inc. (ECF No. 27); and (3) the self-styled "Funko Investor Group," composed of three unrelated investors (ECF No. 34).[1] In appointing a lead plaintiff, the Court's first duty is to identify the movant that is presumptively entitled to that status. The "'most capable' plaintiff - and hence the lead plaintiff - is the one who has the greatest financial stake in the outcome of the case, *so long as* he meets the requirements of Rule 23."[2]

Here, Mr. Hurt is demonstrably the "most capable" plaintiff, since he is the movant with the largest financial interest, who also satisfies the requirements of Rule 23. Mr. Hurt individually has suffered over $330,000 in losses, and therefore has a substantial financial interest in this litigation.[3] Moreover, Mr. Hurt – a Harvard-educated and renowned portfolio manager – fully understands the Lead Plaintiff's obligations to the Class under the PSLRA and is willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this action.[4]

By contrast, there are serious disqualifying issues with the two remaining movants who, either through a multitude of assignments or a lawyer-driven combination, purport to claim larger losses than Mr. Hurt in the aggregate.

*First*, Gerber Kawasaki – an investment advisor to over 80 unrelated, small Funko investors whose alleged LIFO/FIFO losses range from no more than

---

[1] Two other movants filed lead plaintiff applications: (i) Jarett Elion and Zheng Li; and (2) Angela Michl. However, these movants' claimed losses are substantially lower than the top three movants and therefore need not be considered.

[2] *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002); *In re Cendant Corp. Litig.*, 264 F.3d 201, 268-69 (3d Cir. 2001); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

[3] *See* ECF Nos. 30 at 10, 31-3.

[4] *See* ECF No. 30 at 11.

$54,150.55 to as low as $352.33 – clearly fails to satisfy the PSLRA's lead plaintiff requirements. Gerber Kawasaki admittedly has no financial stake in the outcome of the case. ECF No. 26 at 6. Unlike other class members, Gerber Kawasaki neither purchased nor held a single Funko security; instead, the securities were acquired by its clients. *Id*. And, although Gerber Kawasaki has secured assignments from each of these clients purportedly transferring their "claims," Gerber Kawasaki has separately agreed to remit any recovery thereon pro rata to the clients. ECF No. 27-4 at ¶ 7. Accordingly, Gerber Kawasaki lacks a financial interest in the litigation altogether.

Even if Gerber Kawasaki's aggregation were successful, it fails on three of the four Olston-Lax Factors. Gerber Kawasaki is a "net seller" having sold almost 21,000 shares more than it purchased in the Class Period, its total net funds expended during the Class Period is $234,121.63 (almost $100,000 less than Mr. Hurt), and its net losses during the Class Period are $234,121.63 (again almost $100,000 less than Mr. Hurt). The only factor in its favor is the number of shares purchased by its 84 unrelated clients.

Further, Gerber Kawasaki's status as both an assignee and advisor to the 84 real parties in interest creates a multitude of other issues rendering Gerber Kawasaki unsuitable to represent the class. As an initial matter, assuming Gerber Kawasaki stands in the shoes of its assignors, it is therefore subject to any defense which Defendants had against the clients prior to the assignment.[5] Consequently, should Gerber Kawasaki spearhead the case, Defendants' lead plaintiff discovery will focus on not only Gerber Kawasaki, but 84 disbursed investors — many of whom claim nominal losses or have actual gains. The risk that this so-called client discovery will become a major focus of the litigation diverting time and resources from the

---

[5] *See Essex Ins. Co. v. Hartford Fire Ins. Co.*, No. 2:12-cv-05067-DMG-DTB, 2013 WL 3389549, at *9 (C.D. Cal. July 8, 2013) (recognizing that assignee is subject to the same defenses as the assignor); *see also* Restatement (Second) of Contracts § 336 (2020); 29 Williston on Contracts § 74:47 (4th ed.2003) ("It has been held repeatedly that the assignee 'stands in the shoes' of the assignor . . . .").

HURT OPP. TO COMP. MOTIONS TO CONSOL. REL. ACTIONS, APPOINT LEAD PL. AND APPROVE THE SELECTION OF COUNSEL
Case No.: 2:20-cv-02319-VAP-PJW

- 2

prosecution of the Class's claims is obvious given the sheer number of Gerber Kawasaki's assignees.

Perhaps more troubling, the unique defenses to certain of the clients' claims raises real (not speculative) conflicts of interest between Gerber Kawasaki and the class. For example, Gerber Kawasaki intends to press the claims of at least five of its clients who are "in-and-out" traders that sold all of their Funko shares prior to any alleged partial disclosure of Defendants' fraud. Thus, Gerber Kawasaki will necessarily have to advance a novel damages theory differing from that of the class to save these investors' claims from Defendants' loss causation defense. Likewise, several of Gerber Kawasaki's clients realized profits by short-selling Funko securities (or selling pre-class period shares) during the class period at artificially inflated prices and not accounting for these profits.

Gerber Kawasaki is further inadequate because it has potential liability to its clients for advising them to purchase Funko stock. In turn, Gerber Kawasaki, in its capacity as advisor, will face unique superseding cause and contribution defenses, as well as potential breach of fiduciary duty claims from its clients. The positions Gerber Kawasaki will have to take in response to these affirmative defenses will place it at odds with the class. For these reasons, Gerber Kawasaki is anything but an ideal representative for the class.

***Second***, the so-called Funko Investor Group fares no better. The group members' individual losses are each admittedly less than those of Mr. Hurt. The largest member of the so-called Funko Investor Group, Ms. Zheng, has substantially less losses at $281,132 compared to Mr. Hurt at $330.056.00.[6] In addition, they have failed to meet their burden of showing that aggregating their losses as lead plaintiffs is appropriate. Instead, the deficient Joint Declaration proves it is "a group of investors who [is] simply an artifice cobbled together by cooperating counsel for the obvious

---

[6] Compare ECF No. 36-1 at 3 to ECF No. 31-3 at 2.

purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff.'"[7] As such, the Funko Investor Group's motion should be denied.

Accordingly, the Court should deny the competing motions, and grant Mr. Hurt's motion in its entirety.

## II. ARGUMENT

The lead plaintiff is the movant that is "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). Following the simple process outlined by the Ninth Circuit, the PSLRA requires the Court to "compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d at 730. The Court "must then focus its attention on that plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id.* (emphasis in original). If "the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Id.*

Application of the PSLRA and *Cavanaugh* here requires the Court to deny Gerber Kawasaki's and the Funko Investor Group's motions and grant Mr. Hurt's motion.

### A. Mr. Hurt Is The Presumptive Lead Plaintiff

Mr. Hurt is the ideal lead plaintiff. He has suffered more than $330,000 in losses as a result of defendants' alleged wrongdoing. Moreover, unlike other of the movants, Mr. Hurt has selected only one law firm to serve as counsel for the class, a decision which will inure to the entire class's benefit by reducing costs and expenses. "[O]ther

---

[7] *Carvelli v. Ocwen Fin. Corp.*, No. 9:17-cv-80500-RLR, 2017 WL 11068524, at *6 (S.D. Fla. July 14, 2017) (rejecting group of individual investors' motions for lead plaintiff appointment).

than pointing out its relatively low[er] financial stake in the litigation," it is unlikely that the other movants will make any argument against Mr. Hurt's appointment. *Tsirekidze v. Syntax-Brillian Corp.,* No. 2:07-cv-02204-FJM, 2008 WL 942273, at *5 (D. Ariz. Apr. 7, 2008).

Because Mr. Hurt has the largest financial interest and satisfies the requirements of Rule 23, his motion should be granted.

**B.      Gerber Kawasaki Has No Financial Interest in the Litigation, is Atypical of Classmembers and Inadequate to Represent the Class.**

**1.      Gerber Kawasaki Lacks Both Constitutional and Statutory Standing as it Suffered No Losses**

A Lead Plaintiff must be a class member *and* have standing to assert the claims on behalf of the putative class. 15 U.S.C. § 78u-4(a)(3)(B). Article III standing "requires the party who invokes the court's authority to 'show that he ***personally*** has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'" *United States v. City of Arcata*, 629 F.3d 986, 989 (9th Cir. 2010) (*quoting Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 472, 102 S. Ct. 752, 758 (1982). Here, Gerber Kawasaki has not established its own standing to sue or that it suffered an injury. Having failed to evidence this core requirement, Gerber Kawasaki cannot serve as lead plaintiff. *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191 (S.D.N.Y. 2011) (denying lead plaintiff motion filed by investment advisor because of unique standing defenses); *Baydale v. Am. Express Co.*, No. 1:09-cv-03016-WHP, 2009 WL 2603140, at *2 (S.D.N.Y. Aug. 14, 2009) (same).

In particular, Gerber Kawasaki lacks constitutional standing to sue for violations of the federal securities laws. In *W.R. Huff Asset Mgmt. Co., LLC v. DeLoitte & Touche LLP,* the Second Circuit held that the investment advisor plaintiff lacked "constitutional standing to sue for violations of federal securities laws on behalf of its

clients, who are the beneficial owners of the underlying securities." 549 F.3d 100, 103 (2d Cir. 2008).

Even though *W.R. Huff*, 549 F.3d at 103, suggests in *dicta* that an assignment such as the assignment in *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 128 S.Ct. 2533, 2542-44 (2008) will confer standing to bring suit, in *Sprint*, the assignee was entitled to financial compensation for its work from the recovery.[8] In *Sprint* "[t]he aggregator and payphone operator then separately agreed that the aggregator would remit all proceeds to the payphone operator and that the payphone operator would pay the aggregator for its services (typically via a quarterly charge)". *Id.* at 2534. Hence, in *Sprint*, the aggregator in fact had a financial stake, unlike here, where none is cited.

So too, courts (including the Second Circuit which authored *W.R.Huff*) do not find that the rationale in *Sprint*, based on a long historical practice of allowing assignment of contractual claims, necessarily applies to federal statutory claims. *See*, *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 407 (2d Cir.), *cert. denied,* 139 S. Ct. 237, 202 L. Ed. 2d 129 (2018). ("Even assuming that congressional silence may, in general, reflect an intention not to preclude suit on assigned claims, we do not think it follows that such an interpretive principle would govern copyright claims. To the contrary, we see reason to conclude that the trend towards liberal assignability of claims reflected in *Sprint* should not reach copyright infringement claims.").

Indeed, the PSLRA is a federal statute which explicitly rejects standing, at least for the lead plaintiff, unless it "has the largest financial interest in the relief sought by the class". 15 U.S.C. § 78u-4(a)(B)(iii)(I)(bb). Thus, Congress is not silent on the issue. To attain lead plaintiff status, the investment advisor must have a financial

---

[8] Importantly, in *Sprint*, Chief Justice Roberts and three other justices dissented, contending that historical practice required both legal title of the claim and a personal stake in the recovery. 128 S. Ct. at 2549.

interest. And here, while Gerber Kawasaki purports to have the assigned title to the claim, it lacks a financial interest.[9] Accordingly, it has no lead plaintiff standing.

Regardless, the purported assignments are insufficient to render Gerber Kawasaki an adequate lead plaintiff because "irrespective of whether the assignments of claim cure [Gerber Kawasaki]'s deficient Article III standing, [Gerber Kawasaki] now 'faces unique legal issues that other class members do not.' Were we to permit it to continue as lead plaintiff, it is possible that these issues could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal." *In re Imax Sec. Litig.*, No. 1:06-cv-06128-NRB, 2009 WL 1905033, at *3 (S.D.N.Y. June 29, 2009) (*citing In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009) (investment advisor did not satisfy the adequacy or typicality requirements, because "even if [the] Court held that the assignment was sufficient to cure the lack of standing, the Court of Appeals could hold otherwise")); *In re Herley Indus. Sec. Litig.*, No. 2:06-cv-02596-JS, 2009 WL 3169888, at *9 (E.D. Pa. Sep. 30, 2009) (same); *see also In re Reserve Fund Sec. & Derivative Litig.*, No. 1:08-cv-08060-PGG, 2009 WL 10467937, at *4 (S.D.N.Y. Aug. 26, 2009) (finding that an investment advisor plaintiff had constitutional standing where the investment advisor "actually purchased shares [. . .] and allegedly suffered an injury in fact from those purchases."); *S. Ferry LP #2 v. Killinger*, 271 F.R.D. 653, 659 (W.D. Wash. 2011), (noting that "[o]ther courts in securities class actions have found that the uncertain standing of a class representative creates unique legal issues for that plaintiff and destroys its typicality and adequacy as a class representative.") (internal citations omitted).

---

[9] Even assuming Securities Exchange Act claims can be assigned, Gerber Kawasaki has not met its burden of showing the effectiveness or enforceability of any one of the assignments. For each of the assignments, Gerber Kawasaki neither specifies the jurisdiction governing the agreement nor cites law holding such assignments are permitted under that jurisdiction.

Thus, Gerber Kawasaki's status as an investment advisor with no actual injury-in-fact "raises complex and novel issues of law which would require extensive factual [] legal analysis. Such a diversion would be a needless litigation sideshow . . . that ancillary issue, now revealed, can be circumvented at this early stage by selecting another lead plaintiff." *Baydale v. Am. Express Co.*, 2009 WL 2603140 at *3. "Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff . . . then the named plaintiff is not a proper class representative." *Koos v. First Nat'l Bank*, 496 F.2d 1162, 1164 (7th Cir. 1974).

Accordingly, Gerber Kawasaki's motion should be denied.

### 2.     Gerber Kawasaki's Aggregated Losses Fail Under the Olston-Lax Factors.

The PSLRA does not specify how to assess which movant has the "largest financial interest in the relief sought by the class," and the Ninth Circuit has left it to the district courts to "select accounting methods that are both rational and consistently applied" in making this determination. *In re Cavanaugh*, 306 F.3d 726, 730 n. 4 (9th Cir.2002). District courts "have typically considered the 'Olsten-Lax' factors to determine who has the largest financial interest: '(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.'" *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015).

Following Olston-Lax, Gerber Kawasaki has less of a financial interest in the litigation than Mr. Hurt:

|  | Gerber Kawasaki[10] | Hurt[11] |
|---|---|---|
| Shares Purchased | 76,348 | 30,000 |
| Net Shares Purchased | (20,935) | 30,000 |

[10] *See* Declaration of Danielle Smith ("Smith Decl."), Exhibit A.

[11] ECF No. 31-3 at 2.

| Net Funds Expended | $234,121.63 | $453.886.00 |
| Approximate Losses | $234,121.63 | $330,056.00 |

While these net calculations show much smaller losses than those calculated by Gerber Kawasaki, Gerber Kawasaki inflates its losses by using partial FIFO and LIFO accounting methods, which remove shares sold during the class period, and the profits made on those shares while the stock was artificially inflated. At a minimum, a true LIFO analysis would assign a purchase value and none appears to have been assigned here for the excess 20,935 shares sold here. Thus, Gerber Kawasaki completely ignores the gains from class period inflation on the 20,935 shares removed.[12]

As with other federal courts, in the Ninth Circuit, plaintiffs' losses must be netted against their profits attributable to the same fraud. *See Blackie v. Barrack*, 524 F.2d 891, 908-09 (9th Cir.1975) (holding that if the stock is resold at an inflated price the purchaser-seller's damages should be offset by any profits recovered due to inflation in the stock price attributable to the fraud). Thus, the net gain from the sale during a class period of shares acquired prior to a class period is relevant when assessing the amount of alleged losses among competing potential lead plaintiffs. *Cambridge Ret. Sys. v. Mednax, Inc.*, No. 18-61572-CIV, 2018 WL 8804814, at *6 (S.D. Fla. Dec. 6, 2018), *report and recommendation adopted,* No. 0:18-CV-61572-WPD, 2018 WL 6978626 (S.D. Fla. Dec. 21, 2018).

*Cambridge* is instructive. There, as is the case with Gerber Kawasaki, the court chastised a movant for failing to match its "pre-class holdings" with sales of such shares, stating:

---

[12] *See* Galley et al., *Limiting Rule 10b-5 Damage Claims*, Cornerstone Research and Goodwin Procter LLP (2014). https://www.cornerstone.com/GetAttachment/7de3f500-53eb-4d6c-b164-7d7f38ac89b8/Limiting-Rule-10b-5-Damages-Claims.pdf (last visited May 18, 2020) (discussing the need to offset recognized losses with gains caused by the sale of shares purchased pre-class period,); *See* Laura Robinson, *LIFO vs FIFO: A Red Herring?*, American Bar Association (Mar. 23, 2015), https://www.americanbar.org/groups/litigation/committees/criminal/articles/2015/spring2015-0315-lifo-vs-fifo-red-herring/.

The Court's review was rendered needlessly complicated by these entities' failure to use consistent reporting methods and their failure to disclose all relevant information. For example, Cambridge clearly matched its "Pre-class holdings" of 3,000 shares to the sale of 3,000 shares for a total of $190,010.46. MissPERS, however, did not match all of its 118,295 in "Pre-class holdings" with sales of such shares. *And neither entity reported its net gain from the sales of those shares purchased prior to the Class Period.* It wastes the Court's time when proposed lead plaintiffs, particularly investors possessing as much experience in securities class action litigation as these two entities, simply note that shares held prior to the Class Period were sold, without disclosing the net gain on the sale of those shares or, at minimum, carefully accounting for each of those shares.

Similarly, in *Ellenburg v. JA Solar Holdings Co. Ltd.*, 262 F.R.D. 262,266 (S.D.N.Y. 2009), the investor originally omitted the proceeds from the sale of his pre-class period holdings when calculating his alleged losses, but later asserted that the net gain from those sales should be deducted from the amount he lost from selling the other shares he bought during the class period. The court agreed with amended calculating, describing this approach as the "most accurate and realistic way to account for the gain realized from the [sale of the pre-class period holdings]."). [13]

Applying these principles, Gerber Kawasaki's clients' true aggregated losses are only $234,121.63, or nearly one-third less than those of Mr. Hurt.

### 3. Gerber Kawasaki is Atypical of Classmembers and Inadequate to Represent the Class.

It is well established that an assignee is subject to the same defenses that exist against an assignor at or before the assignment. *See Asian Am. Mach. Movers &*

---

[13] *See also Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 756 F. Supp. 2d 928, 935-36 (N.D. Ill. 2010) ("Accordingly, the measure of each plaintiff's out-of-pocket damages depends on when, and if, he bought and sold shares during the Damages Period. Consistent with the standard set forth above, damages in this case will be as follows: (1) for shares purchased during the Damages Period but not sold, damages will be the amount of artificial inflation at the time of purchase; (2) *for shares purchased before the class period and sold during the Damages Period at a gain or a loss damages will be plaintiff's out-of-pocket loss less any gain obtained or loss avoided because of artificial inflation at the time of the sale*; and (3) for shares purchased during the Damages Period, damages will be the artificial inflation at the time of purchase less the artificial inflation at the time of sale.").

*Logistics, LLC v. PK Rd. Logistics, Inc.*, No. 2:17-cv-03109-DMG-AFM, 2017 WL 10874193, at \*2 (C.D. Cal. Nov. 27, 2017). Applying this principle, courts have consistently held that an assignee litigant must assume the litigation obligations of its assignors, including all discovery obligations. *See, e.g., Royal Park Investments SA/NV v. Deutsche Bank Nat'l. Tr. Co.*, 314 F.R.D. 341, 343 (S.D.N.Y. 2016) (order compelling class representative proceeding as an assignee of investors to produce responsive documents in both its own files, as well as the documents held by the assignors of the rights upon which it now sues).[14]

Here, assuming the assignments are enforceable, Gerber Kawasaki undisputedly stands in the shoes of its clients and is therefore subject to any defense which Defendants had against the clients prior to the assignment. Accordingly, if Gerber Kawasaki were appointed lead plaintiff, Defendants' discovery will focus on not only Gerber Kawasaki's knowledge and trading strategies, but on the 84 disbursed investors' knowledge and reliance on Defendants' alleged false and misleading statements as well. In turn, Defendants' assessment of both the merits of Gerber Kawasaki's claims and suitability to represent the Class will likely entail document productions and depositions from both the relevant Gerber Kawasaki personnel

---

[14] *See, e g., In re Skelaxin (Metaxalone) Antitrust Litig.,* No. 1:12-md-02343-CLC-CHS, 2014 WL 129814, at \*2 (E.D. Tenn., Jan. 10, 2014) ("[I]t would be wholly unfair for Plaintiffs to step into the shoes of the assignors for the purposes of bringing their claims and not also assume a claimant's attendant discovery obligations."); *Travelers Indent. Co. of Am. v. Kendrick Bros. Roofing, Inc.*, No. 1:10-cv-00604-BLW, 2013 WL 6681240, at \*2 (D. Idaho Dec. 18, 2013) ("Travelers, as the assignee of Okland's claims and the plaintiff in this lawsuit, therefore bears the same discovery obligations that Okland would carry had it remained the plaintiff."); *JPMorgan Chase Bank, N.A. v. KB Home,* No. 2:08-cv-01711-JAD-RJJ, 2010 WL 1994787, at \*6 (D. Nev. May 18, 2010) ("It would be unfair to allow JPMorgan and the current debt holders to stand in the shoes of the original lenders in order to pursue this action without requiring them to produce discovery that the original lenders would be required to produce if they had brought the action themselves."); *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.,* 171 F.R.D. 135, 149 (S.D.N.Y.1997) (ordering defendant DIB to produce documents in the possession of Stanbic, the successor-in-interest to DIB s assignor Meridien Tanzania, because it would be "patently unfair if DIB were able to continue to discover relevant information from [plaintiff] BNY while relegating BNY to seek information from Stanbic as a non-party"); *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16, 33-34 (S.D.N.Y.1984) (holding that the French government, as the "principal" of the entity bringing the lawsuit, should be treated as a party for discovery purposes, but declining to issue an order to compel as a matter of comity).

involved in the subject transactions and the 84 different clients. Such vast and complex client discovery, which in many cases involve claims on nominal amounts,[15] will subject the Class to unnecessary and excessive costs, and distract the Lead Plaintiff from the efficient prosecution of the Class's claims. *See Ruland v. InfoSonics Corp.*, No. 3:06-cv-01231-JLS-WMC, 2006 WL 3746716, at *5 (S.D. Cal. Oct. 23, 2006) (declining to appoint movant lead plaintiff claiming largest loss where movant litigation of its atypical claims would require "considerable resources").

Moreover, the unique defenses to certain of Gerber Kawasaki's clients' claims present palpable conflicts of interest between Gerber and the Class. For example, the record shows that assignee clients Arbi Pedrosian, Kelvin Patterson, Jr., Keith Souza, Sharon Gerber and Nathan Yoshizaki sold all of their Funko shares weeks before the disclosures alleged to have revealed the fraud in any complaint. See ECF No. 27-4 and Smith Decl. Ex. A. Thus, Gerber Kawasaki will necessarily have to advance a novel damages theory differing from that the class to preserve these investors' claims from Defendants' loss causation defense. *See Reinschmidt v. Zillow, Inc*., No. 2:12-cv-02084-RSM, 2013 WL 1092129, at *4 (W.D. Wash. Mar. 14, 2013) (the court denied an "in-and-out" trader's motion for appointment as lead plaintiff because it would open the movant up to unique affirmative defenses).

Likewise, it appears that clients Martin Fern, Robert Gerber, Ross Gerber, Michael Sherman, Caroline Mascolo, Benjamin Hines, Mary Lee Wegner, Franklin Strauss, Arnold Cinman, Robin Camesale, Neil Macready, David Lansingh and Radine Oxley realized profits by short-selling Funko securities during the class period (or selling pre-class period shares) at artificially inflated prices — none of which profits are accounted for in Gerber Kawasaki's calculations. *Id.* (see highlighted class investors in Summary).[16]

---

[15] Indeed, only one of the assignees, Sam Ahdoot, claims LIFO losses in excess of $30,000.

[16] Indeed, 22 of the clients – Martin Fern, Robert Gerber, Susan Lewis, Jeremy Herman, Ross Gerber, Eyal Shmilovich, Michael Sherman, Jay Barron, Caroline Mascolo, Joseph Fazzio, Benjamin

These transactions subject Gerber Kawasaki to unique reliance defenses to these claims since "[s]hort sales raise the question of whether the seller was actually relying on the market price, and the class is not served by its representative coming under such scrutiny." *In re Critical Path*, 156 F. Supp. 2d 1102, 1110 (N.D. Cal. 2001). *See also Isaacs v. Musk*, No. 3:18-cv-04865-EMC, 2018 WL 6182753, at *2 (N.D. Cal. Nov. 27, 2018), *reconsideration denied sub nom. In re Tesla, Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC, 2018 WL 6609569 (N.D. Cal. Dec. 17, 2018); *Weisz v. Calpine Corp.*, No. 4:02-cv-01200-SBA, 2002 WL 32818827, at *8 (N.D. Cal. Aug. 19, 2002); *Marcus v. J.C. Penney Co.*, No. 6:13-cv-00736-RWS-KNM, 2014 WL 11394911, at *7 (E.D. Tex. Feb. 28, 2014).

Finally, by recommending Funko to its clients, Gerber Kawasaki, in its capacity as advisor, is subject to unique superseding causes and contribution defenses, as well as potential exposure to its clients for breach of fiduciary duty and negligence. *See, e.g., Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC, No. 1:12-cv-03723-PAC, 2017 WL 985875, at *7 (S.D.N.Y. Mar. 10, 2017) (sustaining defendant's third party complaint against collateral manager for contribution of plaintiff investor's alleged loss). In addressing these defenses, Gerber Kawasaki will likely take positions that could put its interests in conflict with those of the Class.

For example, the clients' dissimilar trading patterns raises questions concerning Gerber Kawasaki's investment advice. Gerber Kawasaki's certification (but not declaration) claims it made some undetermined number of investment decisions to purchase Funko shares, but the timing and amount of its clients' purchases and sales vary significantly. Questions also remain on whether Gerber Kawasaki even made the majority or just some of the decisions, and whether it made any of the decisions to

---

Hines, Garret Jamison, Keith Souza, Mary Lee Wegner, Jeffrey Barron, Franklin Strauss, Amir Shmilovich, Israel Salin, Arnold Cinman, Robin Camesale, Neil Macready, and Radine Oxley – are net sellers having sold more shares during the Class Period than they bought. This potentially raises unique reliance defenses as well. *See In re Bausch & Lomb*, 244 F.R.D. 169, 173-74 (W.D.N.Y. 2007) (denying net seller movant's motion for appointment of lead plaintiff).

sell. Moreover, it remains unclear why Ross Gerber – identified in each assignment as "President and Chief Executive Officer" of Gerber Kawasaki (ECF No. 27-5) – sold more than he bought, gained on some trades and halved his losses during the Class Period compared to other clients for whom he may have invested. In the face of liability for its recommendation of Funko, Gerber Kawasaki would have to defend itself as to the disparate treatment of clients, its trading strategies, and reliance on the market. Thus, Gerber Kawasaki's interests are "antagonistic" to those of the proposed class and he is therefore inadequate to serve as Lead Plaintiff. *Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1076 (W.D. Wash. 2011) (stating that to satisfy the "adequacy" requirement, the proposed lead plaintiff's interests cannot be "antagonistic" to the class's interests").

## C. The Funko Investor Group's Motion Should Be Denied.

Although the PSLRA provides that a lead plaintiff may be a group, the moving group must satisfy the same requirements set forth in the statute. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Consequently, as with any other movant for lead plaintiff, a plaintiff group must be able to establish that it satisfies the adequacy requirement, i.e., that the group will "fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4).

For plaintiff groups seeking to aggregate their financial losses, like the Funko Investor Group, courts consider as part of the adequacy analysis whether the group will be able to function cohesively to monitor counsel and make critical litigation decisions as a group. *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447 (C.D. Cal. 2002) (denying motion of group made up of previously unrelated persons on adequacy grounds). In doing so, district courts assess whether the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff. *Id*.; *Crihfield v. CytRx Corp.,* No. 2:16-cv-05519-SJO-SK, 2016 WL 10587938, at *4

(C.D. Cal. Oct. 26, 2016) (denying motion of investor group cobbled together by counsel). In instances in which the court determines the movant group with the largest losses had been created by the efforts of lawyers hoping to aggregate losses to ensure their eventual appointment as lead counsel, courts have consistently disqualified that movant. *See, e.g., Kinney v. Capstone Turbine Corp*., No. 2:15-cv-08914-DMG-RAO, 2016 WL 5341948, at *3 (C.D. Cal. Feb. 29, 2016) (declining motion of investor group without prior existing relationship).

Here, the Funko Investor Group has not demonstrated that it is an adequate lead plaintiff for several reasons. First, the three members of the Funko Investor Group do not have prior existing relationship with one another. "Because there is no evidence of a pre-existing relationship between the three, they are not a "group of persons" within the meaning of the PSLRA, and thus the Court will not consider the aggregated losses in determining which movant has the largest financial interest in this litigation." *McGee v. Am. Oriental Bioengineering, Inc*., No. 2:12-CV-5476-SVW-SH, 2012 WL 12895668, at *3 (C.D. Cal. Oct. 16, 2012) (holding that when a group does not have a pre-existing relationship, appointing that group as lead plaintiff would not best serve the class); *see also Apple v. LJ Int'l Inc*., No. 2:07-cv-06076-GAF-JWJ, 2008 WL 11343371, at *3 (C.D. Cal. Feb. 8, 2008) (explaining that "'[a]lthough the PSLRA does not explicitly prohibit a group of unrelated individuals from acting as lead plaintiff, courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff.'") (quoting *In re Gemstar–TV Guide Int'l, Inc. Secs. Litig*., 209 F.R.D. at 451-52 (C.D. Cal. 2002)).

Second, the Funko Investor Group presents no evidence that the three individuals – whose residence spans three different states, with different professions and varying levels of investment experience, should be presumed cohesive. Conspicuously missing from the Group's Joint Declaration is "how they will

cooperate collectively, and a description of the mechanisms that the four investors and their lead counsel have established to communicate with one another about the litigation." *See The Mannkind Sec. Actions*, No. 2:11-cv-00929-GAF-SS, 2011 WL 13218021, at *4 (C.D. Cal. Apr. 27, 2011); *see also Schriver v. Impac Mortg. Holdings, Inc.*, No. 8:06-cv-00031-CJC-RNB, 2006 WL 6886020, at *9 (C.D. Cal. May 2, 2006) (denying motion where group members failed to indicate how they intend to work together in the litigation to supervise their attorneys).

Third, the Funko Investor Group's inadequacy is further evidenced by its selection of not one, but rather two law firms to represent it. The appointment of multiple firms as co-lead counsel not only shows that the balance between client and counsel control is tilted decidedly in favor of the lawyers, but also ensures that the putative class will be saddled with unnecessary and duplicative expenses. Yet, the Institutional Investor Group "does not explain why it must be represented by two firms, each of which appears independently capable of prosecuting this action." *Gemstar*, 209 F.R.D. at 452; *Schriver*, 2006 WL 6886020, at *8 ("it is not apparent why the . . . Group needs to retain two law firms to represent it, either of which would appear to be sufficient in itself").

Finally, the Funko Investor Group fails to justify its composition and structure. For instance, the Group fails to explain how investors came to meet each other or how the group was formed. Indeed, there is no evidence that the Group members have even communicated with one another, let alone jointly decided to move as a group as opposed to individually. Indeed, the Group resembles the type of "artificial aggregation" manufactured for the simple purpose of qualifying to be lead plaintiff that courts have found inadequate for the purposes of determining lead-plaintiff appointment. *In re Network Assocs., Inv. Sec. Litig.*, 76 F. Supp. 2d 1017, 1026-27 (N.D. Cal. 1999) ("Artificial aggregation of the type here proposed should never be

allowed for any purpose, including to serve as lead plaintiff or to sponsor a subgroup as lead plaintiff.").[17]

### III.   CONCLUSION

For the foregoing reasons set forth above and in his opening brief, Mr. Hurt respectfully requests that the Court appoint him as Lead Plaintiff, approve his selection of Hagens Berman Sobol Shapiro LLP, and deny the competing motions.

                                    Respectfully submitted,

DATED: May 18, 2020                 HAGENS BERMAN SOBOL SHAPIRO LLP


                                    *s/ Danielle Smith*
                                       DANIELLE SMITH

                                    Reed R. Kathrein (139304)
                                    Lucas E. Gilmore (250893)
                                    Danielle Smith (291237)
                                    715 Hearst Avenue, Suite 202
                                    Berkeley, CA  94710
                                    Telephone: (510) 725-3000
                                    Facsimile:  (510) 725-3001
                                    reed@hbsslaw.com
                                    lucasg@hbsslaw.com
                                    danielles@hbsslaw.com

                                    Steve W. Berman
                                    Karl Barth
                                    HAGENS BERMAN SOBOL SHAPIRO LLP
                                    1301 Second Avenue, Suite 2000
                                    Seattle, WA 98101
                                    Telephone: (206) 623-7292
                                    Facsimile:  (206) 623-0594
                                    steve@hbsslaw.com

---

[17] To the extent the Court were to consider movants Eilon and Li's application, these points apply with equal force as they too are unrelated investors who have failed to demonstrate the adequacy of their group.

karlb@hbsslaw.com

*Attorneys for [Proposed] Lead Plaintiff William Hurt*