POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Movant*
*the Funko Investor Group*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO FERREIRA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FUNKO, INC., BRIAN MARIOTTI, RUSSELL NICKEL, and JENNIFER FALL JUNG,<br><br>Defendants. | Case No. 2:20-cv-02319-VAP-PJW<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION OF THE FUNKO INVESTOR GROUP FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL, AND IN OPPOSITION TO ALL COMPETING MOTIONS<br><br>DATE:  June 8, 2020<br>TIME:  2:00 p.m.<br>JUDGE:  Virginia A. Phillips<br>CTRM:  8A, 8th Floor |
| MOHAMED NAHAS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v. | Case No. 2:20-cv-03130-VAP-PJW |

MEMORANDUM OF POINTS AND AUTHORITIES

FUNKO, INC., BRIAN MARIOTTI,
RUSSELL  NICKEL, and JENNIFER
FALL JUNG,

Defendants.

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ...........................................................................1

II.    ARGUMENT ..........................................................................................................5

    A.    The Funko Investor Group Is An Appropriate Movant Group ................5

    B.    Zhang Is A Perfectly Appropriate Lead Plaintiff Movant ......................6

    C.    The Funko Investor Group Respectfully Requests That The Court Consider Its Motion As Timely Filed ....................................................9

    D.    The Competing Motions Must Be Denied ...............................................10

        1.    Gerber Kawasaki Is An Inadequate Class Representative ..............10

        2.    Hurt Is An Inadequate Class Representative....................................11

III.    CONCLUSION.....................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Vitamin Shoppe, Inc.*, 2:17-CV-6454-KM-MAH,
2018 WL 1960444 (D.N.J. Apr. 25, 2018) ..................................................................... 11

*Apple v. LJ Intl. Inc.*, CV076076GAFJWJX,
2008 WL 11343371 (C.D. Cal. Feb. 8, 2008) ................................................................... 2

*Bruce v. Suntech Power Holdings Co. Ltd.*, CV 12-04061 RS,
2012 U.S. Dist. LEXIS 167702 (N.D. Cal. Nov. 13, 2012) ....................................... 3, 5

*China Agritech, Inc. v. Resh*,
138 S. Ct. 1800 (2018) ..................................................................................................... 5

*Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP,
2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008) .............................................. 8

*Feyko v. Yuhe Int'l Inc.*, No. CV 11-05511 DDP,
2012 U.S. Dist. LEXIS 28040 (C.D. Cal. Mar. 2, 2012) ................................................ 6

*Fragala v. 500.com*, CV 15-01463 MMM (EX),
2015 U.S. Dist. LEXIS 188276 (C.D. Cal. July 7, 2015) ........................................... 2, 6

*GGCC, LLC v. Dynamic Ledge Sols, Inc.*, 17-cv-06779-RS *et al.*,
2018 U.S. Dist. LEXIS 43728 (N.D. Cal. Mar. 16, 2018 ............................................. 10

*Hufnagle v. Rino Int'l Corp.*, Case No. CV 10-8695-VBF(VBKx),
2011 U.S. Dist. LEXIS 19771 (C.D. Cal. Feb. 14, 2011) .......................................... 3, 6

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ........................................................................................ 10

*In re Providian Fin. Corp. Sec. Litig.*, No. C 01-03952 CRB,
2004 U.S. Dist. LEXIS 31107 (N.D. Cal. Jan. 15, 2004) .......................................... 3, 7

*Johnson v. OCZ Tech. Group, Inc.*, CV 12-05265 RS,
2013 U.S. Dist. LEXIS 1610 (N.D. Cal. Jan. 4, 2013) .............................................. 3, 5

*Mariconda v. Farmland Partners Inc.*, No. 18-cv-02104-DME-NYW,
2018 U.S. Dist. LEXIS 204411 (D. Colo. Dec. 3, 2018) ............................................... 7

*McGee v. Am. Oriental Bioengineering, Inc.*, 2:12-CV-5476-SVW-SH,
   2012 WL 12895668 (C.D. Cal. Oct. 16, 2012) ................................................................ 1

*Micholle v. Ophthotech Corp.*, 17-CV-210 (VSB) *et al.*,
   2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 13, 2018)) ........................................ 10

*Middlesex County Ret. Sys. v. Semtech Corp.*, CV 07-7114 CAS (FMOx),
   2010 U.S. Dist. LEXIS 145971 (C.D. Cal. Aug. 27, 2010) ...................................... 3, 7

*Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB,
   2013 WL 792642 (N.D. Cal. Mar. 4, 2013) ................................................................. 2

*Perlmutter v. Intuitive Surgical, Inc.*, 10-CV-03451-LHK,
   2011 WL 566814 (N.D. Cal. Feb. 15, 2011) ................................................................ 1

*Plaut v. Goldman Sachs Group, Inc.*, 18-CV-12084 (VSB),
   2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) ........................................................... 10

*Robb v. Fitbit Inc.*, No. 16-cv-00151-SI,
   2016 U.S. Dist. LEXIS 62457 (N.D. Cal. May 10, 2016) ........................................ 3, 5

*Takeda v. Turbodyne Techs., Inc.*,
   67 F. Supp. 2d 1129 (C.D. Cal. 1999) ......................................................................... 9

*Tanne v. Autobytel, Inc.*,
   226 F.R.D. 659 (C.D. Cal. 2005) ................................................................................. 2

*Waterford Township Police v. Mattel, Inc.*, 17CV04732VAPKSX,
   2017 WL 10667732 (C.D. Cal. Sept. 29, 2017) ....................................................... 1, 10

*Weisz v. Calpine Corp.*, 4:02-CV-1200,
   2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) .......................................................... 11

## Statutes

15 U.S.C. §78u-4(a)(3)(A)(II) ..................................................................................... 4, 9

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ................................................................................ 1, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb) ............................................................... 2, 6

## Rules

Fed. R. Civ. P. 23 ................................................................................................*passim*

Lead Plaintiff Movant the Funko Investor Group[1] respectfully submits this Memorandum of Law in further support of its motion for (i) consolidation of the Actions; (ii) appointment as Lead Plaintiff;  (iii) approval of its selections of Bernstein Liebhard and Pomerantz as Co-Lead Counsel for the proposed Class; and (iv) in opposition to all other competing motions.

## I.      PRELIMINARY STATEMENT

The PSLRA instructs the Court to appoint as Lead Plaintiff the movant or group of movants with the greatest financial interest in the outcome of the litigation; ***and*** who satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Of the four competing motions that remain before the Court, only the Funko Investor Group satisfies the statutory criteria.

The Funko Investor Group incurred losses of ***more than $484,000*** calculated on a LIFO basis as a result of the fraud alleged in the Actions, which is $150,000 more than any other movant that properly calculated its losses.  And, while Gerber Kawasaki purports to assert larger losses than the Funko Investor Group on a FIFO basis, its loss calculations are riddled with errors, wildly inaccurate, and must be disregarded.  *See* Memorandum of Points and Authorities in Further Support of the Motion of the Funko Investor Group ("Funko Investor Group Opp. Brief"), ECF No. 48 at 2-3, 6-8, 12-13.  Moreover, courts routinely decline to apply the FIFO method to assess financial interest in securities litigations; indeed, the overwhelming majority of courts, including in this Circuit, apply LIFO.  *Waterford Township Police v. Mattel, Inc.*, 17CV04732VAPKSX, 2017 WL 10667732, at *5 (C.D. Cal. Sept. 29, 2017); *McGee v. Am. Oriental Bioengineering, Inc.*, 2:12-CV-5476-SVW-SH, 2012 WL 12895668, at *4 (C.D. Cal. Oct. 16, 2012); *Perlmutter v. Intuitive Surgical, Inc.*, 10-CV-03451-LHK, 2011 WL 566814, at *10 (N.D. Cal. Feb. 15, 2011).  The Funko Investor Group thus has the largest financial interest of any movant

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meanings as set forth in the Funko Investor Group's moving or opposition briefs.  *See* ECF Nos. 35, 48.

in these Actions. *See*, *e.g.*, *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) ("[t]he weight of authority puts the most emphasis on the competing movants' estimated losses, using a [LIFO] methodology").

In addition to having the largest financial interest, the Funko Investor Group has made the requisite *prima facie* showings of adequacy and typicality within the meaning of Rule 23. The Funko Investor Group's claims are typical of those of other Class members, *inter alia*, because they are based on the same legal theory and arise from the same event and course of conduct as the Class' claims. *See*, *e.g.*, *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 666 (C.D. Cal. 2005). The Funko Investor Group has further demonstrated its adequacy because its substantial financial interest will ensure its vigorous prosecution of the Class' claims; it has no conflicts with other Class members; and it has selected experienced counsel, Bernstein Liebhard and Pomerantz, as Co-Lead Counsel for the Class. *Apple v. LJ Intl. Inc.*, CV076076GAFJWJX, 2008 WL 11343371, at *5 (C.D. Cal. Feb. 8, 2008). Moreover, as set forth in detail below, the group has further demonstrated its adequacy by submitting a Joint Declaration attesting to, *inter alia*, their sophistication, cohesiveness, and readiness to vigorously prosecute the Actions on behalf of the Class. *See generally* ECF No. 48-2 ("Joint Declaration").

Having alleged the largest financial interest in this litigation and demonstrated their adequacy and typicality within the meaning of Rule 23, the "strong presumption" in favor of appointing the Funko Investor Group may only be rebutted by "***proof***" that the group is inadequate or "subject to unique defenses". 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb) (emphasis added); *Fragala v. 500.com*, CV 15-01463 MMM (EX), 2015 U.S. Dist. LEXIS 188276, at *33-*34 (C.D. Cal. July 7, 2015). Other movants have only adduced meritless arguments against the Funko Investor Group's adequacy, or argued for denial of its motion on other unavailing grounds, none of which rises to the high standard of proof necessary to rebut the presumption:

*First*, both Gerber Kawasaki and Hurt have attacked the cohesiveness of the Funko Investor Group, purporting to take issue with its composition. Yet these arguments are at odds with both the record and Ninth Circuit precedent. The Funko Investor Group has submitted a Joint Declaration attesting to, *inter alia*, its members' sophistication, cohesiveness, understanding of the responsibilities of a lead plaintiff, and readiness to supervise their chosen counsel to prosecute the putative Class's claims. *See generally* ECF No. 48-2 ("Joint Declaration"). Courts in the Ninth Circuit routinely appoint small, cohesive investor groups under such circumstances. *See*, *e.g.*, *Johnson v. OCZ Tech. Group, Inc.*, CV 12-05265 RS, 2013 U.S. Dist. LEXIS 1610, at *7-*8 (N.D. Cal. Jan. 4, 2013); *Bruce v. Suntech Power Holdings Co. Ltd.*, CV 12-04061 RS, 2012 U.S. Dist. LEXIS 167702, at *7-*9 (N.D. Cal. Nov. 13, 2012); *Robb v. Fitbit Inc.*, No. 16-cv-00151-SI, 2016 U.S. Dist. LEXIS 62457, at *14 (N.D. Cal. May 10, 2016).

*Second*, Gerber Kawasaki argues that one member of the Funko Investor Group, Zhibin Zhang ("Zhang"), lacks standing because all of his Funko shares were acquired after February 5, 2020—the date on which Funko announced its preliminary fourth quarter 2019 financial results. This self-serving argument has been repeatedly rejected by courts and appears to deliberately overlook the fact that Zhang purchased his shares *before* the fraud was revealed in full on March 5, 2020, when Funko announced its *final* fourth quarter *and* full year 2019 financial results. Courts in the Ninth Circuit routinely appoint as Lead Plaintiffs investors who acquired the securities at issue after a partial corrective disclosure. *See*, *e.g.*, *Hufnagle v. Rino Int'l Corp.*, Case No. CV 10-8695-VBF(VBKx), 2011 U.S. Dist. LEXIS 19771, at *22 (C.D. Cal. Feb. 14, 2011); *In re Providian Fin. Corp. Sec. Litig.*, No. C 01-03952 CRB, 2004 U.S. Dist. LEXIS 31107, at *14-*15 (N.D. Cal. Jan. 15, 2004); *Middlesex County Ret. Sys. v. Semtech Corp.*, CV 07-7114 CAS (FMOx), 2010 U.S. Dist. LEXIS 145971, at *13 (C.D. Cal. Aug. 27, 2010).

*Third*, Elion and Li argue that the Funko Investor Group's motion, along with every motion except for Elion and Li's, must be denied as untimely for being filed after

4:00 p.m. on May 11, 2020 pursuant to the Court's Standing Order. The Funko Investor Group is sincerely apologetic for filing its motion after the Court's 4:00 p.m. deadline, but respectfully submits that it did timely file its motion with respect to the 60-day period prescribed in the PSLRA, which allows for such filings up until 11:59 PM on the 60th day. *See* 15 U.S.C. §78u-4(a)(3)(A)(II).

To the extent that the Court deems the Funko Investor Group's motion untimely with respect to the 4:00 p.m. deadline for filings set forth in the Court's Standing Order, the group respectfully requests that the Court consider it nonetheless. The goal of the PSLRA is to facilitate the appointment of the "most adequate plaintiff" in securities class actions, and adopting the rigid approach advocated by Elion and Li would require the Court to deny without consideration four of the five motions filed on May 11, 2020, including the three motions alleging the largest losses here. The Funko Investor Group respectfully submits that rendering the lead plaintiff appointment process less competitive and excluding at the outset the Class members with the greatest stakes in the outcome of this litigation is fundamentally at odds with the purpose of the PSLRA.

Finally, in addition to the fact that the "strong presumption" in favor of appointing the Funko Investor Group cannot be rebutted, the Court should deny the competing motions for other independent reasons. As set forth in detail in the Funko Investor Group Opp. Brief, Gerber Kawasaki is disqualified from consideration for a litany of reasons, including its submission of an error-ridden filing that inaccurately states its financial interest, its inclusion of the assignment of claims of individuals who lack standing to pursue any claims in this litigation, and the fact that "Gerber Kawasaki" is in reality not an entity but an unwieldy assemblage of more than 80 investors with widely diverging trading strategies, representing a transparent attempt to circumvent the PSLRA's lead plaintiff process. Hurt's motion, meanwhile, concedes that he has "enlisted the assistance" of an unknown accountant to share the core duties of a lead plaintiff, raising serious doubts about Hurt's commitment and capacity to manage the fiduciary

responsibilities of a class representative.  Hurt Decl. ¶ 4.  Hurt thus falls well short of even the requisite *prima facie* showing of adequacy required at this stage.

Accordingly, for the reasons set forth herein and in its moving and opposition briefs, the Funko Investor Group respectfully requests that the Court grant its motion in its entirety and deny the competing motions.

## II.    ARGUMENT

### A.    The Funko Investor Group Is An Appropriate Movant Group

Gerber Kawasaki and Hurt desperately try to rebut the "strong presumption" in favor of appointing The Funko Investor Group by arguing that it is not an appropriate lead plaintiff group.  However, contrary to their assertions, the Funko Investor Group is an appropriate movant group, the appointment of which is *expressly* permitted by the PSLRA (*see* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ("the most adequate plaintiff . . . is the person or *group* of persons . . .") (emphasis added)), and the propriety of which was recently endorsed by the Supreme Court in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018) (finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups").

Moreover, the Funko Investor Group submitted with its motion a Joint Declaration attesting to the group members' sophistication, knowledge of the litigation, understanding of the responsibilities of a lead plaintiff, and shared committed to working together as Co-Lead Plaintiffs to protect the interests of the Class.  *See generally* Joint Declaration. Courts in the Ninth Circuit routinely appoint investor groups as lead plaintiffs in such circumstances.  *See, e.g.*, *OCZ Tech. Group*, 2013 U.S. Dist. LEXIS 1610, at *7-*8 ("Small, cohesive groups similar to the OCZ Investor Group are routinely appointed as Lead Plaintiff in securities actions when they have shown their ability to manage the litigation effectively in the interests of the class without undue influence of counsel."); *Suntech Power*, U.S. Dist. LEXIS 167702, at *7-*9; *Fitbit*, 2016 U.S. Dist. LEXIS 62457, at *14.

The PSLRA expressly requires "***proof***" that a movant is inadequate of "protect[ing] the interests of the class" or "subject to unique defenses" for that movant to be disqualified from consideration.    15 U.S.C.  §  78u-4(a)(3)(B)(iii)(II)(aa)-(bb)  (emphasis added); *Fragala v. 500.com*, CV 15-01463 MMM (EX), 2015 U.S. Dist. LEXIS 188276, at \*33-\*34 (C.D. Cal. July 7, 2015).  "[S]peculative assertions are insufficient to rebut the lead plaintiff presumption."  *Feyko v. Yuhe Int'l Inc.*, No. CV 11-05511 DDP (PJWx), 2012 U.S. Dist. LEXIS 28040, at \*10 n.6 (C.D. Cal. Mar. 2, 2012).  To assume without evidence—and indeed, at odds with the record before the Court—that the members of the Funko Investor Group are somehow passive litigants incapable of or uninterested in supervising their chosen counsel is the very definition of speculation.

### B.    Zhang Is A Perfectly Appropriate Lead Plaintiff Movant

Gerber Kawasaki asserts that one member of the Funko Investor Group, Zhang, purportedly lacks standing to pursue claims in this action, but Gerber Kawasaki is wrong. Gerber Kawasaki bases its argument on the fact that Zhang purchased all of his shares of Funko securities after February 5, 2020—the date on which the Company announced its preliminary fourth quarter 2019 financial results—and as such all of Zhang's losses were caused by the drop in the Company's stock price following the March 5, 2020 announcement of its ***final*** fourth quarter ***and*** full year 2019 financial results.  Accordingly, Gerber Kawasaki claims that "[b]ecause Zhang does not have *any* damages attributable to the fraud under the pending complaints, he is not a proper lead plaintiff candidate and his claimed losses should not be considered."  ECF No. 44 at 6-7.  There is no merit to Gerber Kawasaki's self-serving argument, and it has been repeatedly rejected by courts.

In fact, courts routinely find lead plaintiff movants to be typical and adequate within the meaning of Rule 23, and not subject to unique defenses, when the movants purchased the securities at issue after a partial—or even full—disclosure of the alleged fraud. *See*, *e.g.*, *Hufnagle* , 2011 U.S. Dist. LEXIS 19771, at \*22 ("Courts have ruled that purchases of stock by the class representatives after negative announcements during the class period

or even after the close of the class period do not destroy typicality."); *Providian*, 2004 U.S. Dist. LEXIS 31107, at *14-*15 ("[P]urchases subsequent to a partial or full disclosure of the alleged fraud do not render a proposed class representative atypical because once accurate disclosures are made, the true value of the stock is reflected in the market price."); *Semtech*, 2010 U.S. Dist. LEXIS 145971, at *13 ("the fact of these purchases [*i.e.*, after a partial corrective disclosure] do not give rise to a unique defense that would preoccupy lead plaintiff or its counsel."). Indeed, "[c]ourts have routinely held that these sorts of timing issues do not constitute unique defenses within the meaning of the PSLRA because most if not all class members will have similar issues—common sense dictates that most shareholders will have purchased their securities at least in part before all of the alleged violations occurred." *Mariconda v. Farmland Partners Inc.*, No. 18-cv-02104-DME-NYW, 2018 U.S. Dist. LEXIS 204411, at *19 (D. Colo. Dec. 3, 2018).

Here, Gerber Kawasaki's assertion that Zhang's losses are not attributable to the fraud at issue in this litigation is puzzling, because the disclosures of February 5, 2020 and March 5, 2020 both served to lay bare—first in part, and then in whole—a single fraudulent course of conduct by Defendants. Both Complaints in the Actions clearly alleged that during the Class Period, Defendants failed to disclose to investors that: (i) Funko was experiencing lower than expected sales; (ii) consequently, Funko was reasonably likely to incur a writedown for slower moving inventory; and (iii) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

On February 5, 2020, Funko issued a press release announcing its preliminary fourth quarter 2019 financial results. Therein, Funko stated that "[n]et sales are expected to be approximately $214 million, a decrease of 8% compared to $233 million in the fourth quarter of 2018." The Company also disclosed a $16.8 million writedown to "dispose of slower moving inventory to increase operational capacity." On this news, Funko's stock

price fell $6.20 per share, or 40%, to close at $9.29 per share on February 6, 2020, on unusually heavy trading volume. Then, on March 5, 2020, after the market closed, Funko issued a press release announcing its fourth quarter and full year 2019 financial results. Therein, Funko affirmed that net sales for fourth quarter had decreased 4% year-over-year to $213.6 million due to, among other things, "softness at retail during the holiday season which led to a decrease in orders." On this news, Funko's stock price fell $0.32 per share, or over 4%, to close at $6.92 per share on March 6, 2020, thereby injuring investors further. Both of these disclosures exposed Defendants' prior misstatements and/or omissions regarding its sales and inventory issues, which were clearly part and parcel of the same fraudulent course of conduct.

Accepting Gerber Kawasaki's argument that Zhang is unable to pursue fraud claims against the Defendants due to the timing of certain of his purchases would run contrary to prevailing law and effectively find that any Class member who purchased Funko securities after the partial corrective disclosure of March 5, 2020 is unable to recover their losses in this litigation. That is absurd. For all intents and purposes, this would effectively carve one month off of a seven-month Class Period at the very outset of this litigation, thereby truncating the Class Period by approximately 14% and excluding a significant number of potential Class members. "[I]t is unclear why a plaintiff would argue for . . . reducing the class size and limiting the potential amount of damages, *unless it was in the best interest of that particular plaintiff only*." *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *6 (N.D. Cal. Aug. 22, 2008) (emphasis added).

In addition, the Funko Investor Group notes that Gerber Kawasaki's own motion expressly acknowledged a Class Period ending on March 5, 2020, and thus a Class definition that includes investors who acquired Funko securities after the partial corrective disclosure of February 5, 2020, but prior to the second corrective disclosure of March 5, 2020 (which Gerber Kawasaki also acknowledges in its motion brief). *See* ECF No. 26 at 1, 3-4. That Gerber Kawasaki only expressed concerns as to the standing of such investors

for the first time in its opposition brief—*i.e.*, after it perceived some tactical advantage to doing so—suggests that its purported concerns may be less than genuine.

### C.    The Funko Investor Group Respectfully Requests That The Court Consider Its Motion As Timely Filed

Movants Elion and Li, who suffered relatively small losses compared to the three top movants here,  opportunistically urge the Court to deny four of the five lead plaintiff motions filed in the Actions—*i.e.*, every motion except their own—without consideration, because these motions were all filed after the 4:00 p.m. deadline prescribed by the Court's Standing Order.  *See* Standing Order of Hon. Virginia A. Phillips, Rule 6 (Electronic filing).  The Funko Investor Group respectfully requests that the Court reject this argument and consider its motion as timely filed.

First, the Funko Investor Group apologizes for filing its motion late with respect to the deadline set by the Court's Standing Order.  The Funko Investor Group respectfully submits that its motion was timely filed pursuant to the PSLRA within 60 days of the publication of the notice of pendency of this action—*i.e.*, by 11:59 p.m. on May 11, 2020. *See* 15 U.S.C. §78u-4(a)(3)(A)(II) ("not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.").

Second, to the extent that the Court considers the Funko Investor Group's motion and all other motions filed after 4:00 p.m. on May 11, 2020 to be untimely, the group respectfully submits that denying these motions without consideration is at odds with the fundamental goal of the PSLRA, to ensure appointment of the "most adequate plaintiff" of the Class—that is, the representative with the largest financial interest in the outcome of the litigation, in order "to ensure vigorous advocacy." *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1137 (C.D. Cal. 1999).  Three of the motions that the Court would preclude by taking this approach reflect the three largest losses alleged in this action.   Accordingly,  accepting  Elion  and  Li's  argument  would  result  in  the disqualification, sight unseen, of the movants with the greatest financial stakes in the

outcome of this action, despite their good-faith efforts to seek appointment within the time prescribed by statute. The Funko Investor Group respectfully submits that neither the purposes of the PSLRA nor the interests of the Class would be well served by the rigid approach advocated by Elion and Li. Indeed, consistent with this statutory purpose and in the interest of justice, courts frequently consider lead plaintiff motions filed after the statutory deadline in PSLRA actions. *See*, *e.g.*, *Mattel*, 2018 U.S. Dist. LEXIS 229452, at *13 ("[S]ince [movant's] motion was filed on the correct calendar day, but one hour late, in the interest of justice the Court accepts [movant's] motion as properly filed."); *GGCC, LLC v. Dynamic Ledge Sols, Inc.*, 17-cv-06779-RS *et al.*, 2018 U.S. Dist. LEXIS 43728, at *16 (N.D. Cal. Mar. 16, 2018) (considering lead plaintiff motion filed one day after PSLRA deadline, finding that "refusing to consider [movant's] motion would be an unnecessarily stringent application of the statutory deadlines that would undercut the PSLRA's preference for appointing the plaintiff with the greatest financial stake in the outcome") (citing *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002)).

### D.    The Competing Motions Must Be Denied

#### 1.    Gerber Kawasaki Is An Inadequate Class Representative

The Funko Investor Group reiterates that Gerber Kawasaki is inadequate to serve as Lead Plaintiff for several reasons. Gerber Kawasaki's initial and subsequent submissions to the Court are riddled in errors, misstate the movant's financial interest in this litigation by a significant margin, and included, among other fundamental errors, an assignment of claims from an investor who lacks standing to pursue any claims in this action. *See*, *e.g.*, *Plaut v. Goldman Sachs Group, Inc.*, 18-CV-12084 (VSB), 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) ("certification errors in [a movant's] submissions 'militate against appointment and render [it] inadequate to serve as lead plaintiff under Rule 23's adequacy requirement.'") (quoting *Micholle v. Ophthotech Corp.*, 17-CV-210 (VSB) *et al.*, 2018 U.S. Dist. LEXIS 41120, at *24 (S.D.N.Y. Mar. 13, 2018)). Moreover, Gerber Kawasaki is a net seller in Funko securities during the Class Period, having sold 20,595

more shares than it purchased during the Class Period. *See* ECF No. 48-2. Courts generally decline to appoint net sellers as lead plaintiffs in securities class actions. *Weisz v. Calpine Corp*., 4:02-CV-1200, 2002 WL 32818827, at \*7 (N.D. Cal. Aug. 19, 2002).

In addition, Gerber Kawasaki is not "exactly the type of institutional investor favored by the PSLRA" that it boldly describes itself as (Dkt. No. 44 at 1), but is rather an unwieldy aggregation of more than 80 individuals shamelessly trying to circumvent the PSLRA process. *See Aguilar v. Vitamin Shoppe, Inc.*, 2:17-CV-6454-KM-MAH, 2018 WL 1960444, at \*11 (D.N.J. Apr. 25, 2018) ("At some point, a group may become too large for its members to operate effectively as a unit. . . . Such unwieldiness would vitiate the PSLRA's purpose of having active and engaged plaintiffs supervise the conduct of the litigation"). Indeed, the errors in Gerber Kawasaki's loss calculations and its inclusion of individuals who lack standing to pursue fraud claims in this litigation have already illustrated some of the difficulties inherent in litigating on behalf of such a large and unwieldy group. *See* Funko Investor Group Opp. Brief at 2-3, 6-8, 12-13. The instant action against the Defendants is at its earliest stages. Its complexity will only increase as the case progresses, and with it the need for organized and coordinated leadership. The Funko Investor Group respectfully submits that considering Gerber Kawasaki's apparent difficulties thus far in accurately coordinating the submissions of its more than 80 constituent investors, Gerber Kawasaki's appointment as Lead Plaintiff would not evidently bode well for Class members if or when this matter ultimately proceeds to discovery, which would necessarily entail deposing and organizing document production from more than 80 individuals.

### 2.  Hurt Is An Inadequate Class Representative

Finally, the PSLRA likewise mandates denial of Hurt's motion because his submissions fall well short of even the *prima facie* showing of adequacy required at this stage of the litigation. Rather than attesting to his own ability and desire to prosecute this action on behalf of the Class, Hurt has instead proposed that one Teresa A. Boyle, an

accountant, share the core duties of a lead plaintiff, including to "direct the litigation on behalf of the Class", "stay apprised of all material developments of the litigation", and to otherwise act in the Class's best interests. Hurt Decl. ¶ 4. Yet Ms. Boyle has not submitted a Certification, nor any sworn statement on her own behalf committing to serve in such capacity. In short, Ms. Boyle is a stranger to the Court, and Hurt's willingness to surrender the core duties of a lead plaintiff to this unknown individual at the outset of this litigation demonstrates his inadequacy to serve as a class representative.

## III. CONCLUSION

For the foregoing reasons, and for the reasons set forth in its moving and opposition briefs (ECF Nos. 34, 48), the Funko Investor Group respectfully requests that the Court grant its motion in its entirety and deny the competing motions of Gerber Kawasaki, Hurt, and Elion and Li.

Dated: May 22, 2020

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile: 212-661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505

Chicago, IL 60603
Telephone: 312-377-1181
Facsimile:  312-377-1184
pdahlstrom@pomlaw.com

BERNSTEIN LIEBHARD LLP
Stanley D. Bernstein
Laurence J. Hasson
Matthew E. Guarnero
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
bernstein@bernlieb.com
lhasson@bernlieb.com
mguarnero@bernlieb.com

*Counsel for the Funko Investor Group and Proposed Co-Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/   *Jennifer Pafiti*
Jennifer Pafiti