**JOHNSON FISTEL, LLP**
Frank J. Johnson (SBN 174882)
FrankJ@johnsonfistel.com
Brett M. Middleton (SBN 199427)
BrettM@johnsonfistel.com
655 West Broadway, Suite 1400
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856

*Counsel for Lead Plaintiff Movant*
*Gerber Kawasaki, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO FERREIRA, on behalf of himself and a class of similarly situated investors,<br><br>Plaintiff,<br><br>v.<br><br>FUNKO, INC., BRIAN MARIOTTI, RUSSELL NICKEL, and JENNIFER FALL JUNG,<br><br>Defendants. | Case No.: 2:20-cv-02319-VAP-PJW<br><br>**GERBER KAWASAKI, INC.'S RESPONSE IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF**<br><br>DATE:    June 8, 2020<br>TIME:    2 p.m.<br>CTRM:   8A, 8th Floor<br>JUDGE:  Hon. Virginia A Phillips |
| MOHAMED NAHAS, on behalf of himself and a class of similarly situated investors,<br><br>Plaintiff,<br><br>v.<br><br>FUNKO, INC., BRIAN MARIOTTI, RUSSELL NICKEL, and JENNIFER FALL JUNG,<br><br>Defendants. | Case No.: 2:20-cv-03130-VAP-PJW |

GERBER KAWASAKI, INC.'S RESPONSE IN FURTHER SUPPORT OF ITS MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF

# **TABLE OF CONTENTS**

I.       INTRODUCTION ...................................................................................1

II.      ARGUMENT ........................................................................................2

   A.   The Court Should Exercise Its Discretion to Consider Gerber Kawasaki's Lead Plaintiff Motion ...............................................2

   B.   Gerber Kawasaki is the Presumptive Lead Plaintiff ...............................3

      *1.   Gerber Kawasaki Has the Largest Financial Interest* ...................3

      *2.   Hurt's Damage Analysis Is Illogical and Is Not Supported by The Cited Authorities*.....................................3

      *3.   The Lax Factors Do Not Alter the Financial Interest Analysis*.................................................6

      *4.   Gerber Kawasaki Has Made A Prima Facie Showing of Typicality and Adequacy*...............................8

   C.   The Competing Movants Have Not Provided Sufficient "Proof" to Rebut Gerber Kawasaki's Presumptive Lead Plaintiff Status...............................................8

III.     CONCLUSION .....................................................................................12

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adcock v. Netbank*,
   2008 WL 11322962 (N.D. Ga. Apr. 21, 2008) ..........................................................7

*Baydale v. Am. Express Co.*,
   2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009) ..........................................................10

*Bo Young Cha v. Kinross Gold Corp.*,
   2012 WL 2025850 (S.D.N.Y. May 31, 2012) ...........................................................5

*Cambridge Ret. Sys. v. Mednax, Inc.*,
   2018 WL 8804814 (S.D. Fla. Dec. 6, 2018) .........................................................5, 6

*Ellenburg v. JA Solar Holdings Co. Ltd.*,
   262 F.R.D. 262 (S.D.N.Y. 2009).............................................................................5

*EZRA Charitable Trust v. Rent-Way*,
   136 F. Supp. 2d 435 (W.D. Pa. 2001) ....................................................................11

*Ferrari v. Gisch*,
   225 F.R.D. 599 (C.D. Cal. 2004) .............................................................................8

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011)..............................................................................6

*In re Able Labs. Sec. Litig.*,
   425 F. Supp. 2d 562 (D.N.J. 2006) ..........................................................................9

*In re Advanced Tissue Sciences Sec. Litig.*,
   184 F.R.D. 346 (S.D. Cal. 1998).............................................................................9

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002)...............................................................................3, 7

*In re eSpeed, Inc. Sec. Litig.*,
   232 F.R.D. 95 (S.D.N.Y. 2005)................................................................................5

*In re Herley Indus. Sec. Litig.*,
   2009 WL 316888 (E.D. Pa. Sept. 30, 2009) ..........................................................10

*In re IMAX Sec. Litig.*,
   2009 WL 1905033 (S.D.N.Y. June 29, 2003)..........................................................10

*In re Molson Coors Brewing Co. Sec. Litig.*,
   233 F.R.D. 147 ........................................................................................................9

*In re NTL, Inc. Sec. Litig.*,
   2006 WL 330113 (S.D.N.Y. Feb. 14, 2006) ............................................................7

GERBER KAWASAKI, INC.'S RESPONSE IN FURTHER SUPPORT OF ITS MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF

*In re Reserve Fund Sec. & Deriv. Litig.*,
    2009 WL 10467937 (S.D.N.Y. Aug. 26, 2009) .......................................................10

*In re SLM Corp. Sec. Litig.*,
    258 F.R.D. 112 (S.D.N.Y. 2009)...........................................................................10

*In re Solar City Corp. Sec. Litig.*,
    2017 WL 363274 (N.D. Cal. Jan. 25, 2017) ............................................................8

*Jaffe Pension Plan v. Household Intern., Inc.*,
    756 F. Supp. 2d 928 (N.D. Ill. 2010) ......................................................................5

*John Wiley & Sons, Inc. v. DRK Photo*,
    882 F.3d  (2d Cir. 2018).......................................................................................10

*Markette v. XOMA Corp.*,
    2016 WL 2902286 (N.D. Cal. May 13, 2016) ........................................................11

*Melucci v. Corcept Therapeutics, Inc.*,
    2019 WL 4933611 (N.D. Cal. Oct. 7, 2019).............................................................6

*Nicolow v. Hewlett Packard Co.*,
    2013 WL 792642 & n.5 (N.D. Cal. Mar. 4, 2013)....................................................6

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
    609 F. Supp. 2d 938 (N.D. Cal. 2009) .....................................................................9

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
    779 F.3d 1036 (9th Cir. 2015)...............................................................................12

*Oaktree Capital Mngmt., L.P. v. KPMG*,
    963 F. Supp. 2d 1064 (D. Nev. 2013) ......................................................................9

*Pipefitters' Local No. 636 v. Bank of Am.Corp.*,
    275 F.R.D. 187 (S.D.N.Y. 2011)...........................................................................10

*Reinschmidt v. Zillow, Inc.*,
    2013 WL 1092129 (W.D. Wash. Mar. 14, 2013) ...................................................12

*Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
    314 F.R.D. 341 (S.D.N.Y. 2016)...........................................................................11

*Ruland v. InfoSonics Corp.*,
    2006 WL 3746716 (S.D. Cal. Oct. 23, 2006) ........................................................12

*S. Ferry LP #2 v. Killinger*,
    271 F.R.D. 653 (W.D. Wash 2011).......................................................................10

*Sokolow v. LJM Funds Mgmt., Ltd.*,
    2018 WL 3141814 (N.D. Ill. June 26, 2018) ................................................9, 10, 11

*Sprint Communs. Co., L.P. v. APCC Servs.*,
    554 U.S. 269 (2008) ...............................................................................................9

iii

GERBER KAWASAKI, INC.'S RESPONSE IN FURTHER SUPPORT OF ITS MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF

*Villella v. Chemical & Mining Co. of Chile Inc.*,
  2018 WL 2958361 (S.D.N.Y. June 13, 2018) ..............................................................11

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
  549 F.3d 100 (2d Cir. 2008) ...........................................................................................9

*Waterford Twp. Police & Fire Ret. Sys. v. Mattel, Inc.*,
  2017 WL 10667732 (C.D. Cal. Sept. 29, 2017) ........................................................2, 3

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
  216 F.R.D. 248 (S.D.N.Y. 2003) ....................................................................................9

**Statutes**

15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ...........................................................................................2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ...........................................................................................8

15 U.S.C. § 78u- 4(a)(3)(B)(iii)(II) ........................................................................................8

GERBER KAWASAKI, INC.'S RESPONSE IN FURTHER SUPPORT OF ITS MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF

## I.      INTRODUCTION[1]

Gerber Kawasaki, a sophisticated investment management company which exercised its discretionary authority to purchase Funko securities in its clients' accounts, is a proper lead plaintiff with the greatest financial interest in this litigation. Investment advisors are routinely appointed lead plaintiff where they made the underlying investment decisions and received valid assignments of their clients' claims.  Such is the case here.

The competing movants challenge Gerber Kawasaki's $434,164[2] LIFO loss arguing that its true loss is approximately $40,000 less (according to the FI Group) or about $200,000 less (according to Hurt).  Yet, even if the FI Group were correct, Gerber Kawasaki's financial interest would still exceed the next largest individual movant by nearly $65,000.  And Hurt's calculations are illogical and not supported by the legal authority he relies upon.  The enormous amount of documentation Hurt submits to support his analysis is meant to confuse and raise numerous speculative issues so that the Court will appoint Hurt instead, despite his loss being significantly less than Gerber Kawasaki's loss.  But that is not how the PSLRA works.  Congress enacted the statute to encourage the appointment of institutional investors which have significant financial interests in the litigation, like Gerber Kawasaki.  Despite the speculative and meritless arguments proffered by the FI Group and Hurt, Gerber Kawasaki has demonstrated that under any accepted, rational analysis, it has the greatest financial interest.  Because Gerber Kawasaki has also made a *prima facie* showing of its typicality and adequacy, it is presumptively the "most adequate plaintiff" under the PSLRA.

[1] Four movants continue to seek appointment as lead plaintiff in this action: (1) Gerber Kawasaki, Inc. ("Gerber Kawasaki"); (2) the "Funko Investor Group" ("FI Group"); (3) William Hurt ("Hurt"); and (4) the Elion and Li Group ("E&L Group").

[2] Gerber Kawasaki mistakenly included $2,873 in LIFO losses from the account of Genevieve Gambill as part of the $437,037 loss estimate in its opening brief.  Because the purchases were in 2018 and not 2019, they are outside of the Class Period.  This inadvertent error does not alter the analysis of the movants' financial interests.

1

GERBER KAWASAKI, INC.'S RESPONSE IN FURTHER SUPPORT OF ITS MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF

Gerber Kawasaki's presumptive lead plaintiff status can only be rebutted by *proof* that it is inadequate or atypical to represent the Class. Because the competing movants' attempts to rebut the presumption here amount to little more than speculation, they have not satisfied their burden.

## II.   ARGUMENT

### A.   The Court Should Exercise Its Discretion to Consider Gerber Kawasaki's Lead Plaintiff Motion

The E&L Group's opposition argues that 4 of the 6 competing lead plaintiff motions, including Gerber Kawasaki's Motion, must be denied for failure to abide by this Court's 4:00 p.m. filing deadline. *See* Dkt. 46.

At the time of filing its initial Motion, Gerber Kawasaki was unaware of the Court's Standing Order requiring filings to be completed by 4:00 p.m. *See* Declaration of Brett M. Middleton ("BMM Decl.") (submitted herewith) ¶ 2.[3] Because it did not file either of the two related cases before the Court, and its counsel had not previously entered appearances, Gerber Kawasaki was not served with a copy of the Court's Standing Order. *See* Dkt. 9; *Nahas* Action, Dkt. 13. Instead, after being retained to represent Gerber Kawasaki, counsel internally docketed the due date for lead plaintiff motions in this action (and in the *Dachev* action in W.D. Wash.) based solely upon the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). BMM Decl. ¶ 4. Nonetheless, counsel for Gerber Kawasaki fully appreciates its responsibilities and apologizes for its oversight. *See* BMM Decl. ¶ 4.

Gerber Kawasaki respectfully requests that in the interest of justice the Court consider its Motion. *Waterford Twp. Police & Fire Ret. Sys. v. Mattel, Inc.*, 2017 WL 10667732, at \*3 (C.D. Cal. Sept. 29, 2017) ("the Court retains the discretion to

---

[3] Upon internally docketing the opposition date, counsel for Gerber Kawasaki discovered the 4:00 p.m. requirement and later timely filed its opposition brief. *See* BMM Decl., ¶ 3. Inexplicitly, despite being on notice of the 4:00 p.m. deadline through the E&L Group's timely opposition (Dkt. 46), the FI Group (which is also represented by the same counsel that filed the *Nahas* Action) waited until after 8:30 p.m. and Hurt waited until after 10 p.m. to file their respective opposition briefs.

2

consider documents that are not timely filed"). As set forth in the accompanying Declaration, Gerber Kawasaki's losses were set at the time of the deadline and it did not manipulate its loss calculation after reviewing any competing motion, timely-filed or not. BMM Decl. ¶ 5; *Mattel*, 2017 WL 10667732, at \*4 (courts that disregard late filings are concerned with a movant manipulating its losses after seeing timely filings and late filings delaying the litigation). Nor will its late filing delay this litigation as it was filed on the correct calendar day. *Id.*

**B.     Gerber Kawasaki is the Presumptive Lead Plaintiff**

**1.     Gerber Kawasaki Has the Largest Financial Interest**

Applying a widely accepted LIFO analysis, which has been utilized by this Court and courts throughout the country, Gerber Kawasaki has an estimated loss of $434,164, far greater than any of the competing individuals. *See* Dkt. 44 at 3-6 (explaining why the Court should not consider appointment of a group); *Mattel*, 2017 WL 10667732, at \*5 (applying LIFO). The FI Group fails to support its contention that Gerber Kawasaki overstated its LIFO loss "by over $40,000" during the Class Period. Dkt. 48 at 2, 6. However, even if its LIFO damages were $40,000 less, it would still have the greatest financial interest of any of the individual movants. Hurt claims that Gerber Kawasaki's LIFO damages are much less. Dkt. 49 at 10. But Hurt's loss analysis is illogical.

**2.     Hurt's Damage Analysis Is Illogical and Is Not Supported by The Cited Authorities**

Hurt argues that Gerber Kawasaki's actual loss is just $234,121.63. *See* Dkt. 49 at 10; Dkt. 49-1. But his calculations are not LIFO and they lack any basis in common sense, logic, or the law. *See In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002) (requiring "rational" and consistent accounting methods).

For example, the first individual loss chart supplied by Hurt is for Radine Oxley whose account already held 1,500 shares prior to the beginning of the Class Period. Dkt. 27-3 at p. 17 of 30. Additional purchases in her account were made on 12/31/19

3

(1,500 shares) and 1/24/20 (500 shares).  *See* Dkt. 27-4 at p. 11 of 11; Dkt. 27-3 at p. 30 of 30.  Under LIFO, the loss in her account was reported as *$14,648*.  Dkt. 27-3 at p. 30 of 30.  Yet Hurt takes what was paid for her *2,000 shares* purchased during the Class Period ($33,450.00), compares it to what was received for the sale of *3,500 shares* after the February 5, 2020 corrective disclosure ($32,900.00), and concludes that she lost *$550*.  Dkt. 49-2 at p. 5 of 90.  Yet, of course she made more money selling 3,500 shares than she would have made selling just 2,000 shares.  Gerber Kawasaki's calculation ***correctly matches the 2,000 Class Period purchases at inflated prices against 2,000 shares sold after the inflation came out*** from the corrective disclosure.  Dkt. 27-3 at p. 30 of 30.  The 1,500 uninflated pre-Class shares and the matching 1,500 shares also sold on 2/6/20 (after the inflation came out on the 40% drop) ***are irrelevant to the LIFO damage analysis***.[4]

These are not cherry-picked examples.  Hurt repeatedly assumes that pre-Class shares sold before the end of the Class Period but *after* the February 5, 2020 corrective disclosure somehow result in a profit to Gerber Kawasaki.  This is untrue since the shares were neither inflated at purchase nor inflated anymore at the time of sale.  Hurt's analysis wrongly posits that any sale of a pre-Class shares before Class Period end results in a fraud-generated profit for the seller.  While this could be the case for a sale prior to any corrective disclosure, it is clearly not the case when the sale occurs ***after the inflation has already come out*** on a corrective disclosure.  In this case, the

---

[4] Another example is Franklin Strauss with *$6,624* in losses.  Dkt. 27-3 at p. 27 of 30.  Strauss's account held 2,000 uninflated shares at the start of the Class Period, and another 1,000 artificially inflated shares were purchased on 1/21/20 during the Class Period.  *See* Dkt. 27-4 at p. 9 of 11; Dkt. 27-3 at p. 13 of 30; Dkt. 27-3 at p. 27 of 30.  In computing LIFO loss, Gerber Kawasaki correctly matched the 1,000 inflated shares purchased during the Class Period with 1,000 of the shares sold on 2/6/20, after the 40% drop on the corrective disclosure.  Dkt. 27-3 at p. 27 of 30.  Again, the remaining uninflated 2,000 pre-Class shares and the sale of those same (at the time, uninflated) 2,000 shares after the corrective disclosure on 2/5/20, are irrelevant to any loss calculation.  Incredibly, Hurt claims Strauss's account did not lose any money at all; instead, it made a profit of *$12,310!*  Dkt. 49-2 at p. 26 of 90.  Hurt's illogical calculation matches the purchase of *1,000* Class Period shares for $16,100 against the post-disclosure sale of *3,000* shares for $28,410.  Dkt. 49-2 at p. 26 of 90.

4

corrective disclosure occurred on February 5, 2020 when new information was revealed to the market and Funko's stock price crashed 40%. *See* Dkt. 44 at 6-9.

The cases Hurt relies upon for his loss calculation do not support his methodology. In *Cambridge Ret. Sys. v. Mednax, Inc.*, the court sought to apply a type of modified LIFO whereby it first applied LIFO and then it attempted to eliminate any gain on pre-class period shares that were sold prior to the corrective disclosure. 2018 WL 8804814, at *6 (S.D. Fla. Dec. 6, 2018). It stated: "As to pre-class holdings that were sold during the Class Period, the damages would be plaintiffs' 'out-of-pocket loss less any gain obtained or loss avoided because of artificial inflation at the time of the sale.'" *Id.* (quoting *Jaffe Pension Plan v. Household Intern., Inc.*, 756 F. Supp. 2d 928, 936 (N.D. Ill. 2010)); *see Ellenburg v. JA Solar Holdings Co. Ltd.*, 262 F.R.D. 262, 266-67 (S.D.N.Y. 2009) (offsetting gains on sales of pre-class shares at inflated prices). This methodology has its limitations and courts have been reluctant to apply it. *See Bo Young Cha v. Kinross Gold Corp.*, 2012 WL 2025850, at *5-*6 (S.D.N.Y. May 31, 2012) ("the *Ellenburg* methodology may be workable for the unusual single-purchase/single-sale case, but it is profoundly ill-suited to a fact-pattern" with a large number of sales and purchases).

For these same reasons, there is no advantage to applying a *modified* LIFO methodology here. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005) ("The main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due [to] the inflation of the stock price."). Contrary to Hurt's contention, ***Gerber Kawasaki experienced a loss on its pre-Class shares sold prior to the corrective disclosure***. *See* Dkt. 49 at 9; *see also* BMM Decl. at Ex. A (showing a loss per share in 10 of 11 accounts that sold pre-Class shares prior to a corrective disclosure). Thus, eliminating the gain in the one client account that profited on the pre-Class holdings sold before the February 5, 2020 corrective disclosure ***would decrease Gerber Kawasaki's LIFO loss by*** *only* ***$645***. *Id.*

GERBER KAWASAKI, INC.'S RESPONSE IN FURTHER SUPPORT OF ITS MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF

Finally, *Cambridge*'s modified LIFO methodology can be used to estimate the additional "loss avoided" for pre-Class shares. *See Cambridge,* 2018 WL 8804814, at *6. Gerber Kawasaki had 6,700 pre-Class Period shares that were sold prior to the February 5, 2020 corrective disclosure. *See* BMM Decl., Ex. A. Assuming a constant Class Period inflation through February 5, 2020, these shares had $6.20 in artificial inflation at the time of sale. *See* Dkt. 1 ¶ 25. Thus, Gerber Kawasaki's estimated LIFO loss would be decreased by $41,540 ($6.20 x 6,700), leaving it with the greatest financial interest of $392,624. *See* BMM Decl., Ex. A.

### 3. The Lax Factors Do Not Alter the Financial Interest Analysis

Hurt and the FI Group both argue that they have greater financial interests when considering the other Lax factors such as: "the number of net shares purchased during the class period" and "the total net funds expended during the class period." Dkt. 49 at 8-9; *see also* Dkt. 48 at 8. "Tellingly, [Hurt and the FI Group] [] made no reference to net shares purchased or a retained shares calculation in [their] opening motion[s] seeking appointment as lead plaintiff, shifting [their] argument only after [competing movants] came forward with larger LIFO losses." *See Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *4 & n.5 (N.D. Cal. Mar. 4, 2013); Dkt. 44 at 2 n.2.

Nevertheless, net shares purchased during the class period and net funds expended during the class period may greatly distort movants' financial interests where—as here—there is a corrective disclosure prior to the end of the class period. This is because courts that rely on these measures reason that shares sold prior to class period end likely did not experience a recoverable loss. *See Melucci v. Corcept Therapeutics, Inc.*, 2019 WL 4933611, at *3 (N.D. Cal. Oct. 7, 2019). "Thus, a measure of loss based solely on shares retained at the end of the class period could easily undervalue a plaintiff's potential recovery" in a case where there are multiple corrective disclosures. *Id.*; *see also Nicolow*, 2013 WL 792642, at *4. As the court in *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 130-31 (S.D.N.Y. 2011) explained:

GERBER KAWASAKI, INC.'S RESPONSE IN FURTHER SUPPORT OF ITS MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF

Furthermore, while Johnson's net shares purchased and net funds expended are greater than Danica's, this is only because Danica sold many shares during the class period.  As discussed in detail below, Danica's low, or even negative, number of net shares purchased, and net funds expended does not seem terribly relevant to which movant has the greatest financial interest since all of Danica's sales occurred *after* partial corrective disclosures.

Here, most of Gerber Kawasaki's sales came *after* the February 5, 2020 corrective disclosure which caused Funko's share price to plummet 40% or $6.20 per share.  Thus, Gerber Kawasaki experienced the $6.20 per share loss on most of its Class Period purchases.  That these same sales were not made after the end of the Class Period is of no consequence since class members who held through the end of the Class Period (March 5, 2020), ***at most, suffered an additional 4% or $0.32 per share loss***.  Dkt. 1 ¶ 27.  However, under the net sales and net funds factors, Gerber Kawasaki would be penalized by subtracting the shares sold after February 5, 2020 (but before the March 5, 2020 disclosure) from the earlier Class Period purchases.  Likewise, its funds expended on Class Period purchases would be decreased by the funds received on its post-February 5, 2020 sales.  This would be an absurd result.  *In re Cavanaugh*, 306 F.3d at 730 n.4. (requiring rational accounting methods).[5]

The Court should therefore focus on the fourth Lax factor, approximate losses.

---

[5] The FI Group claims that Gerber Kawasaki should not be appointed because it is a "net seller." Dkt. 48 at 3 n.3, 8 n.4, 12; *see also* Dkt. 49 at 2.  Again, courts have rightly held that the net-seller analysis is not applicable where there are partial disclosures.  *In re NTL, Inc. Sec. Litig.*, 2006 WL 330113, at *10-11 (S.D.N.Y. Feb. 14, 2006); *Adcock v. Netbank*, 2008 WL 11322962, at *6 n.9 (N.D. Ga. Apr. 21, 2008).  If the Court does consider the remaining Lax factors, it should do so within the context of this particular case and the two very different corrective disclosures on February 5, 2020 (40% drop in response to new information) and March 5, 2020 (4% drop after initially increasing, with no new information alleged).  Dkt. 1 ¶¶ 23-27.  Gerber Kawasaki's sales after the February 5, 2020 40% drop should not be netted.

#### 4. Gerber Kawasaki Has Made A *Prima Facie* Showing of Typicality and Adequacy

In addition to having the "largest financial interest" among the lead plaintiff movants, Gerber Kawasaki also "otherwise satisfies the requirements of Rule 23." *See* Dkt. No. 26 at pp. 6-8; Dkt. 44 at 10-11. Because Gerber Kawasaki has the largest financial interest and satisfies Rule 23's requirements, it is presumptively the "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

#### C. The Competing Movants Have Not Provided Sufficient "Proof" to Rebut Gerber Kawasaki's Presumptive Lead Plaintiff Status

The other movants' attempts to rebut Gerber Kawasaki's presumptive lead plaintiff status do not come close to the "proof" of atypicality or inadequacy that is required to unseat Gerber Kawasaki. 15 U.S.C. § 78u- 4(a)(3)(B)(iii)(II).

Most of the issues raised by the competing movants may be dismissed out of hand. Hurt, for example, repeatedly speculates that Gerber Kawasaki shorted Funko shares. Dkt. 49 at 3, 12-13. This is untrue. *See* BMM Decl., Ex. B. The FI Group claims that Gerber Kawasaki is inadequate because two trades on its Certification were outside of the reported daily trading price range. Dkt. 48 at 6. But these trades are correctly reported albeit with incorrect dates.[6] Thus, the Certification contains the Class Period "transactions of the plaintiff" as required, and the correct dates do not change the amount of Gerber Kawasaki's loss or otherwise render it inadequate. *See In re Solar City Corp. Sec. Litig.*, 2017 WL 363274, at \*4, \*6 (N.D. Cal. Jan. 25, 2017) (finding lead plaintiff adequate despite errors on his certification increasing losses by almost $200,000). Moreover, that Gerber Kawasaki unintentionally overstated its LIFO loss by $2,873, which also does not affect the financial interest analysis, does not make it inadequate. *See Ferrari v. Gisch*, 225 F.R.D. 599, 605 (C.D. Cal. 2004)

---

[6] Although the trades were recorded with the correct amounts and prices, they actually both occurred on December 17, 2019. BMM Decl., Ex. B. Thus, Gerber Kawasaki's claimed losses are unaffected by this mistake. The error appears to be the result of an earlier internal scrivener's error at Gerber Kawasaki which did not occur in connection with this case or the lead plaintiff process. *Id.*

8

GERBER KAWASAKI, INC.'S RESPONSE IN FURTHER SUPPORT OF ITS MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF

($25,000 overstatement of loss did not disqualify the movant); *In re Advanced Tissue Sciences Sec. Litig.*, 184 F.R.D. 346, 351 n.12 (S.D. Cal. 1998) ("computational and typographical errors" were not "so substantial as to overcome the statutory presumption in favor of the [movant]").

The bulk of the remaining attacks target Gerber Kawasaki's status as an investment advisor. However, Courts routinely appoint investment advisors as PSLRA lead plaintiffs where the advisors purchased shares in their clients' discretionary accounts and were given assignments of claims, as allowed under U.S. Supreme Court precedent and the Second Circuit's *Huff* opinion. *See* Dkt. 27-4 ¶ 5 (showing Gerber Kawasaki's discretionary authority and assignment of claims); *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) ("an assignment of claims transfers legal title or ownership of those claims and thus fulfills the constitutional requirement of an 'injury-in-fact.'"); *Sprint Communs. Co., L.P. v. APCC Servs.*, 554 U.S. 269, 439 (2008) (an assignee who holds legal title to an injured party's claim has constitutional standing to pursue the claim, "even when the assignee has promised to remit the proceeds of the litigation to the assignor"). *See also Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 609 F. Supp. 2d 938, 942 (N.D. Cal. 2009) (finding the reasoning of *Huff* on investment advisor standing persuasive), *rev'd on other grounds*, 615 F.3d 1106 (9th Cir. 2010); *Oaktree Capital Mngmt., L.P. v. KPMG*, 963 F. Supp. 2d 1064, 1079 (D. Nev. 2013) (same).[7]

In *Sokolow v. LJM Funds Mgmt., Ltd.*, 2018 WL 3141814 (N.D. Ill. June 26, 2018), the Court appointed as lead plaintiff an investment advisor which received assignments from more than 200 of its clients. *Id.* at *7. In doing so, it rejected the same arguments made here, that investment advisors lack standing to bring claims on

---

[7] Even before *Huff*, courts did not hesitate to appoint investment advisors as lead plaintiffs where they supplied proof of their standing. *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 255-56 (S.D.N.Y. 2003); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 149 n. 5, 151 (D. Del. 2005); *In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d 562, 571-73 (D.N.J. 2006).

9

behalf of their clients. *Id.* at \*5-\*6 (applying *Huff*). It further rejected as speculation arguments, also made here, that the advisor was conflicted because it faced potential liability to its clients for purchasing the fraudulently inflated shares at issue. *Id.* at \*7; Dkt. 49 at 13. Here too, the Court should reject the competing movants' baseless attacks and appoint Gerber Kawasaki as lead plaintiff.[8]

Hurt's reliance on *Baydale v. Am. Express Co.* is misplaced. In *Baydale*, a Swedish money manager movant did not attempt to show that it had "legal title to, or a proprietary interest in, the claim" under *Huff*. 2009 WL 2603140, at \*1, \*3 (S.D.N.Y. Aug. 14, 2009). Instead, unlike this case, it attempted to rely on the "third party standing" exception to the "injury-in-fact" requirement. *Id.* at \*3. The opinion in *Pipefitters' Local No. 636 v. Bank of Am. Corp.* ("*BOA*") also involved a Swedish fund manager. 275 F.R.D. 187, 189 (S.D.N.Y. 2011). The *BOA* court acknowledged *Huff*'s holding but declined to appoint the foreign entity. *Id.* at 191. The Court noted that it had many of the same concerns present in the *Baydale* opinion, which stated: "LFAB's status raises complex and novel issues of law which would require extensive factual and foreign legal analysis." *Id.* (quoting *Baydale*, 2009 WL 2603140, at \*3). Here, Gerber Kawasaki relies upon the reasoning in *Huff*. There are no issues of "third party standing" or interpretation of foreign law.[9]

---

[8] Hurt's authorities are distinguishable. Dkt. 49 at 7. In *In re IMAX Sec. Litig.*, 2009 WL 1905033, at \*3 (S.D.N.Y. June 29, 2003) and *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 114, 116 (S.D.N.Y. 2009) the investor was disqualified because it did not have client assignments at the time it was appointed lead plaintiff. Whether the investor could cure its standing after-the-fact was the uncertain issue. *Id.* at 116. In *In re Herley Indus. Sec. Litig.*, 2009 WL 316888, at \*11 (E.D. Pa. Sept. 30, 2009), the court followed *Huff* and allowed the investment advisor with assignments to continue as lead plaintiff. *In re Reserve Fund Sec. & Deriv. Litig.*, 2009 WL 10467937, at \*4 (S.D.N.Y. Aug. 26, 2009) did not involve an investment advisor or assignments at all. Standing was an issue in *S. Ferry LP #2 v. Killinger*, 271 F.R.D. 653, 658-59 (W.D. Wash 2011) because there was a question under German law as to whether the assignments were valid.

[9] *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 407 (2d Cir. 2018) did not hold that "federal statutory claims" are outside of the reasoning of *Sprint Communs*. Dkt. 49 at 6. It instead compared copyrights to patents (which claims may not be assigned), to hold that copyright claims are also not assignable. *John Wiley*, 882 F.3d at 409-10.

GERBER KAWASAKI, INC.'S RESPONSE IN FURTHER SUPPORT OF ITS MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF

The FI Group claims that Gerber Kawasaki is attempting "to circumvent the PSLRA's lead plaintiff process by aggregating an unwieldy group of more than 80 investors." Dkt. 48 at 3, 12. It contends that 80 investors cannot "act as a cohesive lead plaintiff" and argues that each would need to individually approve any settlement. *Id.* at 7-8. However, Gerber Kawasaki is a single lead plaintiff movant:

> Ms. Godkin argues that the investment advisors are aggregating claims of dozens or even hundreds of investors for no apparent reason other than to manufacture the largest loss. But the investment advisors have only been assigned claims of their clients—not claims of entirely unrelated parties. Given that the PSLRA favors institutional investors, there is nothing improper with an investment advisor pursuing claims it holds title to in order to recover money for its clients. This is not the kind of lawyer-driven aggregation prohibited in the cases cited by Ms. Godkin.

*Sokolow,* 2018 WL 3141814, at *5 n.4; *accord Markette v. XOMA Corp.*, 2016 WL 2902286, at *4 (N.D. Cal. May 13, 2016).

In this case, Gerber Kawasaki has made every Funko investment decision. Dkt. 27-4 at p. 2 of 11, ¶ 5. Apparently missing this point, the FI Group speculates that the individual clients will need to be deposed. Dkt. 48 at 7-8. Hurt thinks that as assignee of its clients' claims, Gerber Kawasaki must turn over the documents held by its clients. Dkt. 49 at 11. The only specific discovery identified by any movant concerns each client's "knowledge and reliance on Defendants' alleged false and misleading statements." Dkt. 49 at 11. However, since Gerber Kawasaki made the investment decisions, purchases, and sales, its "knowledge and reliance," not the knowledge and reliance of its clients, would only be relevant.[10] *See Villella v. Chemical & Mining Co. of Chile Inc.*, 2018 WL 2958361, at *4 (S.D.N.Y. June 13, 2018) (the reliance of an investment advisor with "sole authority to purchase and sell securities" is relevant, not the reliance of the client which had no part in undertaking the transaction); *cf. EZRA Charitable Trust v. Rent-Way*, 136 F. Supp. 2d 435, 442 (W.D. Pa. 2001)

---

[10] *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co*., 314 F.R.D. 341 (S.D.N.Y. 2016) and the similar cases cited by Hurt (at Dkt. 49 at 10) are therefore distinguishable. Further, Hurt has not proven that any proper client-related discovery would be so burdensome as to render Gerber Kawasaki inadequate.

("investment advisors with the delegated authority to make investment decisions for clients are purchasers under the securities law.").

Hurt further hypothesizes that if Gerber Kawasaki is appointed as lead plaintiff the Article III standing issue will be reversed at class certification or on appeal. Dkt. 49 at 7. Speculation aside, this is hardly proof of inadequacy. And, although the Ninth Circuit has not directly addressed the issue, it has decided at least one case premised upon valid investment advisor assignments pursuant to *Huff*. *See Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043-44, 1048 (9th Cir. 2015) (deciding whether the trial court abused its discretion in allowing an investment advisor to amend after obtaining post-complaint assignments under *Huff*).

Finally, Hurt asserts that Gerber Kawasaki will press the claims of one group of its clients to the detriment of another group of its clients and the Class. Dkt. 49 at 12-13. Yet, Gerber Kawasaki has affirmed under oath that it understands its duties as lead plaintiff and that it will undertake such duties to the best of its ability. Dkt. 27-6 ¶¶ 7, 9-14. Hurt's speculation to the contrary should be rejected.[11]

## III.    CONCLUSION

Because the competing movants have failed to rebut Gerber Kawasaki's lead plaintiff presumption, it respectfully requests appointment as Lead Plaintiff and approval of its choice of Lead Counsel, Johnson Fistel, LLP.

Respectfully Submitted,

Dated: May 29, 2020                    **JOHNSON FISTEL, LLP**

By:  */s/ Brett M. Middleton*
BRETT M. MIDDLETON

---

[11] Hurt says that the court in *Reinschmidt v. Zillow, Inc.*, 2013 WL 1092129 (W.D. Wash. Mar. 14, 2013) denied an "in-and-out" trader's lead plaintiff motion for lack of typicality. Dkt. 49 at 12. Not true. The court was concerned about reliance because the movant day traded. *Id.* at \*4. Nonetheless, the court *did not* disqualify the movant from consideration as lead plaintiff. *Id.* at \*5. Also, the court in *Ruland v. InfoSonics Corp.*, 2006 WL 3746716, at \*5 (S.D. Cal. Oct. 23, 2006) (Dkt. 49 at 12) *did not*, as Hurt represents, decline to appoint the movant with the largest loss since its atypical claims would require "considerable resources."

GERBER KAWASAKI, INC.'S RESPONSE IN FURTHER SUPPORT OF ITS MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF

FRANK J. JOHNSON
655 West Broadway, Suite 1400
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856
BrettM@johnsonfistel.com
FrankJ@iohnsonfistel.com

13

GERBER KAWASAKI, INC.'S RESPONSE IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF