UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gilberto Ferreira, <br><br> Plaintiff, <br><br> v. <br><br> Funko, Inc. et al , <br><br> Defendant. | 2:20-cv-02319-VAP-PJWx <br><br> **Order Consolidating Cases, Appointing Lead Plaintiff, and Selecting Class Counsel (Dkts. 19, 23, 25, 29, 34).** |

On May 11, 2020, the following parties filed motions seeking consolidation, appointment as lead plaintiff, and approval of their respective selections to be lead counsel: Ganesh Shenoy (Dkt. 14); Jarett Elion and Zheng Li ("Elion and Li") (Dkt. 19); Angela Michl (Dkt. 23); Gerber Kawasaki, Inc. ("Gerber Kawasaki") (Dkt. 25); William Hurt ("Hurt") (Dkt. 29); and Abdul Baker, Zhibin Zhang, and Huaiyu Zheng (together, "Funko Investor Group") (Dkt. 34) (the "Competing Motions"[1]).

On May 18, 2020, Gerber Kawasaki (Dkt. 44), Funko Investor Group (Dkt. 48), and Hurt (Dkt. 19) filed oppositions to the other Competing Motions. On May 22, 2020, Funko Investor Group (Dkt. 51), Hurt (Dkt. 52), Elion and Li (Dkt. 53), and Gerber Kawasaki (Dkt. 54) filed replies in support of their respective motions.

---

[1] On May 18, 2020, Shenoy withdrew his motion (Dkt. 43) and Michl filed a notice of non-opposition (Dkt. 47). Accordingly, "Competing Motions" refers to the motions filed by Funko Investor Group, Gerber Kawasaki, Hurt, and Elion and Li.

1

Pursuant to Local Rule 7-15, the Court finds the Competing Motions appropriate for resolution without a hearing. After considering the papers filed in support of, and in opposition to, the Competing Motions, the Court rules as follows:

- The Court GRANTS Funko Investor Group, Gerber Kawasaki, Hurt, Michl, and Elion and Li's motions to consolidate the instant case and *Mohamed Nahas v. Funko, Inc. et al*, Case No. 2:20-cv-03130-VAP-PJWx, for all purposes, including trial. **All further filings in this matter shall be made in Case No. 2:20-cv-02319-VAP-PJWx and shall bear that case number in the caption**.
- The Court GRANTS Funko Investor Group's motion to be appointed lead plaintiff and DENIES Gerber Kawasaki, Hurt, Elion and Li, and Michl's respective motions to be appointed lead plaintiff.
- The Court GRANTS Funko Investor Group's motion seeking the selection of class counsel and DENIES AS MOOT Gerber Kawasaki, Hurt, Elion and Li, and Michl's respective motions seeking the selection of class counsel.
- **Funko Investor Group is directed to file a consolidated class action complaint on or before July 13, 2020.**

## I. BACKGROUND

This lawsuit is one of two, related securities class actions currently pending in this district. The other, *Mohamed Nahas v. Funko, Inc. et al*, Case No. 2:20-cv-03130-VAP-PJWx (hereafter, "*Nahas*"), was filed three weeks later and alleges substantially identical claims (*see generally Nahas* Dkt. 1). On May 5, 2020, the

1 Court issued an Order Re Transfer Pursuant to General Order 19-03 transferring
2 *Nahas* to the Court's docket. (*Nahas* Dkt. 12).

4 Defendant Funko, Inc. ("Funko") is a pop culture consumer products
5 company that creates figures, plush, accessories, apparel, and homewares regarding
6 movies, TV shows, videogames, musicians, and sports teams. (Dkt. 1 ¶ 2). Plaintiff
7 Gilberto Ferreira ("Ferreira") alleges that Defendants made materially false
8 representations that artificially inflated or maintained the value of Funko securities.
9 In particular, Ferreira asserts that Funko and its management failed to disclose that
10 Funko was experiencing lower than expected sales and, consequently, was likely to
11 incur a writedown for certain inventory. (Dkt. 1 ¶ 3).

13 Ferreira alleges he purchased publicly traded Funko securities between
14 October 31, 2019 and March 5, 2020[2], relying on Defendant's third quarter 2019
15 financial reporting. (*See* Dkt. 1 ¶¶ 20–36). Ferreira alleges that, on October 31,

---

[2] A third, related case was filed in the United States District Court for the Western District of Washington. *See Dachev v. Funko, Inc., et al.*, Case No. 2:20-cv-00544 (W.D. Wash.). Although the *Dachev* action is not the subject of the instant motions, all movants here seek to adopt the proposed class period from that case—August 8, 2019 to March 5, 2020—instead of the dates referenced in Ferreira's complaint. (*See generally* the Competing Motions). At this stage in the litigation, the Court need not establish a binding definition of the class period and adopts the more inclusive period (beginning August 8, 2020, the "Class Period") for present purposes. *See Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624–25 (E.D. Wis. 2009) ("[A]ll courts agree that they should not make any binding determinations regarding the proper class period as part of the lead-plaintiff analysis. [Collecting cases]. This is so because the lead-plaintiff determination is made during the earliest stages of a purported class action and without the defendants' participation. Further, nothing in the lead-plaintiff provisions of the PSLRA suggests that the court should make any effort to define the class before it has selected a lead plaintiff. Thus, rather than ruling on the proper class period, courts usually . . . use the most inclusive class period . . . ." (internal citations omitted)).

2019, Defendants issued third quarter financial results reflected a bullish outlook for Funko. (*Id.*). According to Ferreira, however, Defendants failed to disclose material weaknesses in the company's performance. (*Id.*). These weaknesses allegedly came to light on February 5, 2020, when Funko announced preliminary fourth quarter 2019 financial results, sending the share price down 40%. (*Id.* ¶¶ 23–25). Funko confirmed the February 5 numbers on March 5, 2020, deepening the slide by another 4%. (*Id.* ¶ 26–27).

On this basis, Ferreira and the *Nahas* action assert two claims: one for violation of § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and a claim for violation of § 20(a) of the Exchange Act. (*Id.* ¶¶ 46–60; *Nahas* Dkt. 1 ¶¶ 46–60).

## II. DISCUSSION

### A. Motions for Consolidation

Under the Private Securities Litigation Reform Act ("PSLRA"), "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," a court cannot appoint a lead plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

"[D]istrict courts have broad discretion to consolidate complaints." *Garity v. APWU Nat'l Labor Org.,* 828 F.3d 848, 855-56 (9th Cir. 2016); *see also* Fed. R. Civ. P. 42(a) (noting that a court may consolidate actions that "involve a common question of law or fact"). In determining whether consolidation is appropriate, the district court "weighs the saving of time and effort consolidation would produce

4

against any inconvenience, delay, or expense that it would cause." *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984), *subsequent history omitted*. "Accordingly, consolidation is inappropriate where it leads to inefficiency, inconvenience, or unfair prejudice to a party." *Ginger Root Office Assocs., LLC v. Advanced Packaging & Prod. Co. et al. Ginger Root Office Assocs., LLC*, 2010 WL 11515360, at *3 (C.D. Cal. Oct. 7, 2010). "The burden is on the moving party to persuade the court that consolidation is warranted." *Id.*

The Competing Motions seek consolidation of the above-captioned case with the *Nahas* class action. (Dkt. 19 at 3; Dkt. 26 at 8; Dkt. 29 at 3; Dkt. 34 at 2). Each argues that both cases each involve common questions of law and fact. (*Id.*).

A review of the complaints filed reveals that both cases involve the same core defendants, identical class periods and factual allegations, and two largely identical claims for violations of the Exchange Act. In short, these actions involve common questions of law and fact, and consolidation would promote judicial economy.

Furthermore, because no Defendants filed opposition to any of the motions to consolidate, the Court concludes that Defendants have "consent[ed] to the granting . . . of the motion[s]" to consolidate, *see* Local Rule 7-12, and consolidation does not pose a risk of prejudice to the Defendants.

The Court, therefore, GRANTS Funko Investor Group, Gerber Kawasaki, Hurt, Elion and Li, and Michl's motions to consolidate the instant case and the *Nahas* action for all purposes, including trial.

**B. Motions Seeking Appointment of Lead Plaintiff**

The PSLRA states:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—
>
> I. of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> II. that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

After notice has been published, a lead plaintiff must be appointed. The PSLRA procedure for appointing a lead plaintiff is as follows:

> Not later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and

6

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members.

15 U.S.C. § 78u-4(a)(3)(B)(i).

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

This presumption can be rebutted only "upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

1. <u>Notice Was Published as Required by the PSLRA</u>

Under the PSLRA, a plaintiff's early notice must (1) be published not later than 20 days after the complaint is filed; (2) be published in a widely circulated

7

national business-oriented publication; (3) advise the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period"; and (4) advise the purported plaintiff class that not later than 60 days after the notice's publication any member may move the Court to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i).

On March 10, 2020, Ferreira published a notice of the instant securities class action. (Dkt. 21-4). Ferreira's notice (1) was published the same day as the complaint (2) in *Business Wire*, a widely circulated national business-oriented wire service; (3) the notice stated "Glancy Prongay & Murray LLP announces that it has filed a class action lawsuit in the United States District Court for the Central District of California . . . on behalf of persons and entities that purchased or otherwise acquired Funko, Inc. . . . securities between October 31, 2019 and March 5, 2020" and contained a general description of the claims in the suit; and it (4) advised the purported plaintiff class that "[i]nvestors are hereby notified that they have **60 days from the date of this notice** to move the Court to serve as lead plaintiff in this action." (*Id.* (emphasis in original)).

The Court finds that Ferreira's notice met the requirements set forth in the PSLRA.

2. <u>Funko Investor Group is Presumptively the Most Adequate Lead Plaintiff</u>

The Court must presume a plaintiff as the "most adequate plaintiff" if the plaintiff (1) "has either filed the complaint or made a motion in response to [the early notice]"; (2) "has the largest financial interest in the relief sought by the

class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### a. The Court Will Consider All Competing Motions

As noted above, Ferreira published notice of the instant securities class action on March 10, 2017. (Dkt. 21-4). The sixty-day window to move for appointment as lead plaintiff closed on May 11, 2020. The Court's Standing Order establishes a deadline of 4:00 p.m. for filing electronic motions. (Dkt. 9 at 7). Although all movants filed motions on May 11, 2020, Elion and Li point out the other movants did so after 4:00 p.m. (Dkt. 53 at 4–6). Funko Investor Group, Hurt, and Gerber Kawasaki ask the Court to exercise its discretion to consider their motions nonetheless. (Dkt. 54 at 4–5; Dkt 52 at 14–16; Dkt. 51 at 15–16).

As an initial matter, the Court notes that the 4:00 p.m. deadline is a product of this Court's Standing Order rather than statutory prescription; the PSLRA merely requires that motions be filed within 60 days. The Local Rules give the Court retains discretion to consider documents that are not timely filed or do not comply with the Court's Standing Order. Local Rule 7-12 ("The Court *may* decline to consider any memorandum or other documents not filed within the deadline set by order or local rule.") (emphasis added). Given that the Competing Motions satisfy the PSLRA's timing requirements, the Court finds that "refusing to consider [them] would . . . undercut the PSLRA's preference for appointing the plaintiff with the greatest financial stake in the outcome." *GGCC, LLC v. Dynamic Ledger Sols., Inc.*, 2018 WL 1388488, at *4 (N.D. Cal. Mar. 16, 2018) (citing *In re Cavanaugh*, 306 F.3d 726, 729–30 (9th Cir. 2002)).

9

Additionally, this Court has previously noted that two main concerns underlie enforcement of the PSLRA's 60-day deadline: "(1) unscrupulous litigants should not be permitted to manipulate their financial loss calculation after reviewing timely-filed motions and (2) late filings should not cause significant delays in the litigation." *Waterford Twp. Police v. Mattel, Inc.*, 2017 WL 10667732, at *4 (C.D. Cal. Sept. 29, 2017) (citing *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 398 (S.D.N.Y. 2014)).

Elion and Li fail to address the *Mattel* factors; the Court finds this failure weighs in favor of considering all the Competing Motions. Applying the factors, the Court believes the risk of Funko Investor Group, Hurt, and Gerber Kawasaki manipulating financial loss calculations was low or zero, as each of these parties describes in its reply brief (*see* Dkt. 54 at 4–5; Dkt 52 at 14–16; Dkt. 51 at 15–16), and Elion and Li do not suggest anything untoward occurred here. Furthermore, if any party misrepresented its financial losses, the advantage would be short-lived, since the other parties have had the opportunity to scrutinize these financial representations and raise concerns about their accuracy or validity. The Court also finds that Funko Investor Group, Hurt, and Gerber Kawasaki have not caused a significant delay in the litigation, as their respective Competing Motions were filed only hours late and, as noted above, within the deadline set by the PSLRA.

   b. *The Funko Investor Group Has the Largest Financial Interest*

If several persons or entities seek to represent the class, the PSLRA establishes a presumption that the person or entity with "the largest financial interest in the relief sought by the class" is the "most adequate plaintiff" and may be designated Lead Plaintiff. *See* 15 U.S.C. § 77z–1(a)(3)(B)(iii)(I). It also "provides

in categorical terms that the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy." *Cavanaugh*, 306 F.3d at 732 (emphasis in original).

There is no prescribed method for determining which movant has the largest financial interest. Instead, the Court may select accounting methods that are both rational and consistently applied in order to determine which movant "has the most to gain from the lawsuit." *Id.* at 730.

Different district courts have set forth methods for estimating which party has the largest financial stake: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *Ruland v. InfoSonics Corp.*, 2006 WL 3746716, at *4 (S.D. Cal. Oct. 23, 2006); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 995 (N.D. Cal. 1999) (same). Courts in the Ninth Circuit tend to employ the final method and to use a "last in, first out ('LIFO') methodology." *Bodri v. Gopro, Inc.*, at *3 (N.D. Cal. Apr. 28, 2016); *Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013).

Although the question of which party has the largest financial interest is one that should be susceptible to resolution with mathematical certainty, three

1 movants—Hurt, Funko Investor Group, and Gerber Kawasaki—all lay claim to the
2 title.³

4 On its face, Funko Investor Group's claimed loss of $484,078 under LIFO
5 methodology represents the largest financial interest. (Dkt. 48 at 11). Hurt alleges
6 a loss of $330,056 during the class period (Dkt. 31-3), and Gerber Kawasaki claims
7 a $437,037.99 loss (Dkt. 26 at 10). Gerber Kawasaki and Hurt challenge Funko
8 Investor Group's alleged loss on two grounds: first, that Funko Investor Group is an
9 impermissible aggregation of investors (Dkt. 44 at 8–11; Dkt. 49 at 21–24) and,
10 second, that Funko Investor Group member Zhang lacks standing (Dkt. 44 at 11–
11 15).

13 As to the second argument, Gerber Kawasaki contends that "Zhang does not
14 have *any* damages attributable to fraud under the pending complaints," because his
15 "claimed losses of $51,923 are *entirely* attributable to shares purchased after the
16 February 5, 2020 corrective disclosure." (*Id.* at 11 (emphasis in original)).⁴ By
17 February 6, 2020, according to Gerber Kawasaki, the market had priced in
18 Defendants' misrepresentations. (*Id.* at 11–15). Gerber Kawasaki emphasizes that
19 the March 5, 2020 financial reports reiterated the same information presented in
20 Funko's February 5, 2020 preliminary report. (*Id.* at 13–14).

---

³ Elion and Li allege a loss of $143,343.90—substantially less than the other movants—and pin their hopes of appointment as lead plaintiff on the Court declining to consider the other Competing Motions, as discussed in Section II.B.2.a, *supra*.

⁴ Courts typically address the timing of stock purchases under Rule 23(a)'s "typicality" analysis. (Dkt. 44 at 14). Indeed, although courts sometimes find a party is *atypical* for having acquired securities after a disclosure, Gerber Kawasaki fails to cite a case in which a court found a movant lacked *standing* in circumstances similar to Zhang's.

This argument fails. The complaint alleges the price of Funko securities dropped not only after the February 5, 2020 preliminary report but also following the company's March 5, 2020 announcement—and throughout the intervening month—indicating that the market did not completely assimilate Defendants' alleged malfeasance on February 5, 2020. By Gerber Kawasaki's logic, the class period effectively ended February 5, 2020, a conclusion inconsistent with Gerber Kawasaki's preferred class period. Moreover, Courts typically find that purchasing securities after a partial, or even full, disclosure of alleged fraud does not disqualify potential lead plaintiffs. *See, e.g.*, *Hufnagle v. Rino Int'l Corp.*, 2011 WL 710704, at *8 (C.D. Cal. Feb. 14, 2011), *adopted*, 2011 WL 710676 (C.D. Cal. Feb. 16, 2011); *In re Providian Fin. Corp. Sec. Litig.*, 2004 WL 5684494, at *4 (N.D. Cal. Jan. 15, 2004) (collecting cases); *Middlesex Cty. Ret. Sys. v. Semtech Corp.*, 2010 WL 11507255, at *4 (C.D. Cal. Aug. 27, 2010).

Hurt and Gerber Kawasaki's argument about the composition of Funko Investor Group is a closer call. "The PSLRA was provoked by a wide-spread perception that securities class actions had become 'lawyer-driven,' *i.e.*, that such litigation had been typically initiated and controlled by plaintiff's counsel, bark to core, start to finish." *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999). "Although the PSLRA allows the appointment of 'person or group of persons,' *see* 15 U.S.C.A. § 78u-4(a)(3)(B)(iii)(I), as the presumptive most adequate plaintiff, many courts have refused to aggregate the losses of a group of unrelated persons so that the group can serve as lead plaintiff." *McGee v. Am. Oriental Bioengineering, Inc.*, 2012 WL 12895668, at *3 (C.D. Cal. Oct. 16, 2012). Given these concerns, courts often scrutinize investor groups to consider (1)

13

"whether a movant group is too large to represent the class in an adequate manner," *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 450 (C.D. Cal. 2002) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001), and (2) "whether the proposed group is capable of performing the lead plaintiff function," *In re Network Assocs.*, 76 F. Supp. 2d at 1020.

Here, the Court finds that Funko Investor Group is not "too large for its members to operate effectively as a single unit." *In re Gemstar-TV Guide Int'l*, 209 F.R.D. at 450. *See also id.* ("While there are no bright-line rules governing this inquiry, 'courts should generally presume that groups with more than five members are too large to work effectively.'" (quoting *In re Cendant Corp.*, 264 F.3d at 267)). Courts in the Ninth Circuit often appoint lead plaintiffs consisting of three or more individual investors. *See, e.g.*, *Johnson v. OCZ Tech. Grp., Inc.*, 2013 WL 75774, at *3 (N.D. Cal. Jan. 4, 2013) ("The OCZ Investor Group consists of four sophisticated investors. Small, cohesive groups similar to the OCZ Investor Group are routinely appointed as Lead Plaintiff in securities actions when they have shown their ability to manage the litigation effectively in the interests of the class without undue influence of counsel."); *Robb v. Fitbit Inc.*, at *4–6 (N.D. Cal. May 10, 2016) (appointing a group of five investors).

Indeed, the Supreme Court has noted that claims aggregation is more the rule than exception under the PSLRA, stating "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups, so even a small shareholder could apply for lead-plaintiff status, hoping to join with other shareholders to create a unit with the largest financial interest. (*See* Choi & Thompson, Securities Litigation and Its Lawyers: Changes During the First Decade After the PSLRA, 106 Colum. L. Rev.

1489, 1507, 1521, 1530 (2006) (80% of securities class actions in post-PSLRA data sample had two or more co-lead counsel firms).” *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018).

The Court also finds Funko Investor Group capable of performing the lead plaintiff function. In support of its motion, Funko Investor Group submitted a joint declaration of its members, which describes Zheng, Baker, and Zhang's experience and sophistication as investors; asserts they understand the role and responsibilities of a lead plaintiff, particularly in overseeing their lawyers and efficiently prosecuting the case; and provides a process for decision-making and addressing disagreements within the group. (Dkt. 36–4). While this is not a detailed blueprint, the Court finds Funko Investor Group's members have demonstrated that they appreciate their duty to manage the litigation firmly and actively. The Court notes it retains the right to remove Funko Investor Group as lead plaintiff at any stage should its members prove unequal to the task.

Even were the Court inclined to agree with the arguments against Funko Investor Group, Gerber Kawasaki's claim to the largest financial interest is beset with flaws. Most significantly, its claimed $437,037.99 LIFO loss (Dkt. 26 at 10) relies on questionable calculations. Gerber Kawasaki includes a loss for a client who made only pre-Class Period purchases, for instance, and two others who somehow purchased securities at prices outside the daily trading range for Funko stock. (*See* Dkt. 27-3 (loss analysis for Genevieve Gambill, Nicole Sahin, and Marie Rotter)).

The greatest error is likely Gerber Kawasaki's failure to offset its claimed loss with gains for Funko securities purchased *before* the Class Period and sold *during* the Class Period. *See Blackie v. Barrack*, 524 F.2d 891, 908–09 (9th Cir. 1975) ("[E]ach purchaser recovers the difference between the inflated price paid and the value received . . .. If the stock is resold at an inflated price, the purchaser-seller's damages, limited by § 28(a) of the Act, 15 U.S.C. s 78bb(a) to 'actual damages,' must be diminished by the inflation he recovers from his purchaser."). *See also Cambridge Ret. Sys. v. Mednax, Inc.*, 2018 WL 8804814, at *6 (S.D. Fla. Dec. 6, 2018) (noting that several circuits have adopted a damages model requiring plaintiffs' losses to be netted against profits attributable to the same fraud); *Ellenburg v. JA Solar Holdings Co. Ltd.*, 262 F.R.D. 266 (S.D.N.Y. 2009) (describing this approach as the "most accurate and realistic way to account for the gain realized from the [sale of the pre-class period holdings]."). Without knowing the cost basis of its pre-Class Period purchases, and given that Gerber Kawasai was a net seller of Funko securities, its losses may have been significantly lower than $437,037.99. *See Weisz v. Calpine Corp.*, 2002 WL 32818827, at *7 (N.D. Cal. Aug. 19, 2002) (finding a net seller "may have actually profited, not suffered losses, as a result of the allegedly artificially inflated stock price."). Here, as in *Cambridge Ret. Sys.*, the Court notes its "review was rendered needlessly complicated by [the movant's] failure to use consistent reporting methods and their failure to disclose all relevant information. . . .. It wastes the Court's time when proposed lead plaintiffs, particularly investors possessing as much experience in securities class action litigation as these . . . entities, simply note that shares held prior to the Class Period were sold, without disclosing the net gain on the sale of those shares or, at minimum, carefully accounting for each of those shares." 2018 WL 8804814, at *6.

16

      *c.*    *Funko Investor Group Meets Rule 23(a)'s Typicality and Adequacy Requirements*

The PSLRA requires that presumptive lead plaintiffs show that they "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." The Ninth Circuit has determined that this inquiry is largely limited to determining whether the plaintiff has demonstrated he satisfies the "typicality" and "adequacy" requirements of Fed. R. Civ. P. 23(a). *Cavanaugh*, 306 at 730. *See also Lloyd v. CVB Fin. Corp.*, 2011 WL 13128303, at *5 (C.D. Cal. Jan. 21, 2011) ("A wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration on a motion for class certification.") (internal citations and quotation marks removed). The Court "must rely on the presumptive lead plaintiff's complaint and sworn certification; there is no adversary process to test the substance of [these] claims." *Cavanaugh*, 306 F.3d at 730.

      i.    <u>Typicality</u>

Fed. R. Civ. P. 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality inquiry is intended to determine whether the lead plaintiff has incentives that are aligned with the rest of the class members. *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1136 (C.D. Cal. 1999).

Funko Investor Group alleges the same violations of the Exchange Act and reliance on the same misrepresentations as other putative class members. Jennifer Pafiti, counsel for Funko Investor Group, has submitted a sworn declaration on behalf of Funko Investor Group identifying its purchases and sales of Funko

securities within the class period.  (Dkt. 36-1).  These purchases appear to be typical of the putative class's claims.

### ii. Adequacy

Fed. R. Civ. P. 23(a)(3) requires that the representative parties will fairly and adequately protect the interests of the class.  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Here, it appears that Funko Investor Group's interests do not conflict with the interests of the putative class members.  Its members' joint declaration demonstrates their commitment to prosecuting the class's claims, and their financial stake in the outcome will help ensure their interests align with those of the putative class.  Funko Investor Group's selection of experienced counsel also suggests it will adequately represent the class. (*See* Dkts. 36-5 and 36-6; *Cavanaugh*, 306 F.3d at 732).

### 3. Hurt and Gerber Kawasaki Fail to Rebut the Presumption that Funko Investor Group Should be Appointed Lead Plaintiff

Once a presumptive lead plaintiff has been identified, the other movants have the opportunity to present evidence that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  *Cavanaugh*, 306 F.3d at 730.

The Court's financial interest analysis, above, addresses Hurt and Gerber Kawasaki's arguments as to why Funko Investor Group is not an appropriate lead

18

plaintiff, and the Court finds the competing movants fail to rebut the presumption in favor of Funko Investor Group.

Accordingly, the Court GRANTS Funko Investor Group's motion for appointment as lead plaintiff. The Court DENIES Gerber Kawasaki, Hurt, Elion and Li, and Michl's respective motions seeking appointment as lead plaintiff.

### C. The Court Accepts Funko Investor Group's Selection of Class Counsel

The PSLRA states "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cavanaugh*, 306 F.3d at 733 n.11 ("At a later stage in the proceedings, the district court must approve the lead plaintiff's choice of counsel, but Congress gave the lead plaintiff, and not the court, the power to select a lawyer for the class."). At this stage in the proceedings, courts give great deference to the most adequate plaintiff's selection of counsel as "the [PSLRA] evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention . . .. [A] properly-selected lead plaintiff is likely to do as good or better job than the court at these tasks." *Cavanaugh*, 306 F.3d at 734 n.14 (quoting *In re Cendant Corp.*, 264 F.3d at 276).

Funko Investor Group has selected Pomerantz LLP and Bernstein Liebhard LLP as co-lead counsel for the putative class. (Dkt. 35 at 15–17). A review of the record reveals both firms have relevant experience litigating securities class action suits such as this one and have obtained successful outcomes for their clients in such cases. (*See* Dkts. 36-5 and 36-6). Accordingly, the Court GRANTS Funko Investor Group's motion and Pomerantz LLP and Bernstein Liebhard LLP as co-

lead counsel. The Court DENIES AS MOOT Gerber Kawasaki, Hurt, Elion and Li, and Michl's respective motions seeking the selection of class counsel.

### III. CONCLUSION

The Court therefore GRANTS Funko Investor Group, Gerber Kawasaki, Hurt, and Elion and Li's motions to consolidate the instant case and *Mohamed Nahas v. Funko, Inc. et al*, Case No. 2:20-cv-03130-VAP-PJWx, for all purposes, including trial. **All further filings in this matter shall be made in Case No. 2:20-cv-02319-VAP-PJWx and shall bear that case number in the caption**.

The Court GRANTS Funko Investor Group's motion to be appointed lead plaintiff and DENIES Gerber Kawasaki, Hurt, Elion and Li, and Michl's respective motions to be appointed lead plaintiff.

The Court GRANTS Funko Investor Group's motion seeking the selection of class counsel and DENIES AS MOOT Gerber Kawasaki, Hurt, Elion and Li, and Michl's respective motions seeking the selection of class counsel.

**Funko Investor Group is directed to file a consolidated class action complaint on or before July 13, 2020.**

**IT IS SO ORDERED.**

Dated: 6/11/20

Virginia A. Phillips
United States District Judge

20