ESKOVITZ LAW
Sean Eskovitz (State Bar No. 241877)
seane@eskovitz.com
1217 Wilshire Blvd, # 3683
Santa Monica, CA 90403
Tel: 323.821.5836

AEGIS LAW GROUP LLP
Michael K. Ross (*pro hac vice forthcoming*)
mross@aegislawgroup.com
Sean M. Roberts (*pro hac vice forthcoming*)
sroberts@aegislawgroup.com
Market Square West, Suite 740
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: 202.737.3500

Counsel for ACON Defendants

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

GILBERTO FERREIRA,
Individually and On Behalf of All
Others Similarly Situated,

    Plaintiff,

    v.

FUNKO, INC., BRIAN MARIOTTI,
RUSSELL NICKEL, ANDREW
PERLMUTTER, JENNIFER FALL
JUNG, KEN BROTMAN, GINO
DELLOMO, ADAM KRIGER, ACON
INVESTMENTS, L.L.C., ACON
FUNKO MANAGER, L.L.C., ACON
FUNKO INVESTORS, L.L.C., ACON
FUNKO INVESTORS HOLDINGS 1,
L.L.C., ACON FUNKO INVESTORS
HOLDINGS 2, L.L.C., ACON FUNKO
INVESTORS HOLDINGS 3, L.L.C.,
and ACON EQUITY GENPAR, L.L.C.

    Defendants.

Case No. 2:20−cv−02319−VAP−PJW

**ACON DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing
Date: January 25, 2021
Time: 2:00 PM
Courtroom: 8A
Judge: Hon. Virginia A. Phillips

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on January 25, 2021, at 2:00 PM in Courtroom 8A of the Honorable Virginia A. Phillips, located at 350 West 1st Street, Los Angeles, California, defendants ACON Investments, L.L.C., ACON Funko Manager, L.L.C, ACON Funko Investors, L.L.C., ACON Funko Investors Holdings 1, L.L.C., ACON Funko Investors Holdings 2, L.L.C., ACON Funko Investors Holdings 3, L.L.C., and ACON Equity GenPar, L.L.C. (collectively, "ACON Defendants") will move for an order to dismiss lead plaintiffs Abdul Baker, Zhibin Zhang, and Huaiyu Zheng's ("Plaintiffs") Consolidated Amended Complaint ("CAC") for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and the Private Securities Litigation Reform Act.

Plaintiffs fail to state a claim under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 because: (i) Plaintiffs fail to adequately plead that the ACON Defendants made a material misrepresentation or omission and (ii) Plaintiffs fail to adequately plead that the ACON Defendants acted with scienter.

Plaintiffs fail to state a claim under Section 20(a) of the Exchange Act because: (i) Plaintiffs fail to plead a primary violation by Funko and (ii) Plaintiffs fail to adequately plead that the ACON Defendants controlled Funko.

Finally, Plaintiffs fail to state a claim under Section 20A of the Exchange Act because: (i) Plaintiffs fail to plead a predicate violation of the Exchange Act, and (ii) Plaintiffs fail to adequately plead that the ACON Defendants possessed material, nonpublic information when they sold stock.

This motion is based on this Notice of Motion and Motion to Dismiss, the accompanying Memorandum of Points and Authorities, the Declaration of Kevin M. McDonough in Support of Funko Defendants' Motion to Dismiss the Consolidated Amended Complaint and exhibits thereto, the Funko Defendants' Request for Judicial Notice, the ACON Defendants' Notice of Joinder and Joinder

to the Funko Defendants' Request for Judicial Notice, the CAC, the Court's record on this matter, and on such oral arguments and evidence that may be presented at the hearing.

**Compliance with Local Rule 7-3.**  This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 1, 2020. The parties were unable to resolve the issues raised by this motion.

Respectfully submitted,

Dated:  October 2, 2020

ESKOVITZ LAW

By: /s/ Sean Eskovitz
Sean Eskovitz
(State Bar No. 241877)
1217 Wilshire Blvd, # 3683
Santa Monica, CA 90403
Tel: +1.323.821.5836
E-mail:  seane@eskovitz.com

AEGIS LAW GROUP LLP

Michael K. Ross
(*pro hac vice forthcoming*)
Sean M. Roberts
(*pro hac vice forthcoming*)
Market Square West, Suite 740
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel:  +1.202.737.3500
E-mail:  mross@aegislawgroup.com
E-mail:  sroberts@aegislawgroup.com

*Counsel for ACON Investments, L.L.C., ACON Funko Manager, L.L.C., ACON Funko Investors, L.L.C., ACON Funko Investors Holdings 1, L.L.C., ACON Funko Investors Holdings 2, L.L.C., ACON Funko Investors Holdings 3, L.L.C., and ACON Equity GenPar, L.L.C.*

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants ACON Investments, L.L.C. ("ACON Investments"), ACON Funko Manager, L.L.C ("ACON Funko Manager"), ACON Funko Investors, L.L.C. ("ACON Funko Investors"), ACON Funko Investors Holdings 1, L.L.C. ("ACON Funko Investors Holdings 1"), ACON Funko Investors Holdings 2, L.L.C. ("ACON Funko Investors Holdings 2"), ACON Funko Investors Holdings 3, L.L.C. ("ACON Funko Investors Holdings 3"), and ACON Equity GenPar, L.L.C. ("ACON Equity GenPar") (collectively, "ACON Defendants") submit this memorandum of law in support of their motion to dismiss the Consolidated Amended Complaint ("CAC").

## PRELIMINARY STATEMENT

In September 2019, four ACON Defendants – ACON Funko Investors, ACON Funko Investors Holdings 1, ACON Funko Investors Holdings 2, ACON Funko Investors Holdings 3 – sold approximately 15% percent of their holdings in Funko, Inc. ("Funko") as part of a long-planned secondary offering. At the time, Funko had enjoyed eight consecutive quarters of over 20% sales growth. And even after the sale, Funko reported yet another quarter of over 20% sales growth.

*Over four months after the stock sales*, Funko reported disappointing fourth quarter sales (for a quarter that occurred entirely after the ACON Defendants sold stock) and decided to take an inventory write-down. After Funko's stock price dropped, Plaintiffs filed this action against Funko and various Funko officers alleging they made false statements about Funko's sales forecasts and inventory. Notably, Plaintiffs' original complaints did not allege insider trading, and never even mentioned the ACON Defendants.

Nonetheless, Plaintiffs now assert claims against the ACON Defendants for (1) unspecified violations of Section 10(b) of the Exchange Act, (2) control person liability under Section 20(a) of the Exchange Act, and (3) insider trading under Section 20A of the Exchange Act. The factual allegations against the ACON

Defendants are sparse, generic, and for the most part conclusory. Plaintiffs do not allege with any particularity that the ACON Defendants made any false statements, were involved in Funko's inventory accounting or sales forecasts, or had any reason to believe in September 2019 that Funko's stock price would drop over four months later. Instead, Plaintiffs' claims against the ACON Defendants rest almost entirely on the mere fact that they sold stock. These allegations fall far short of meeting the strict pleading requirements under the Private Securities Litigation Reform Act.

## ARGUMENT

### I.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE ACON DEFENDANTS UNDER SECTION 10(b) OF THE EXCHANGE ACT

Plaintiffs' Section 10(b) claim is based upon a fraud-on-the-market theory – in particular, that defendants allegedly schemed to artificially inflate Funko's stock price through false statements and omissions about Funko's sales projections and inventory. But Plaintiffs fail to meet their burden of alleging with particularity any misrepresentation or omission by the ACON Defendants, nor do they adequately allege that the ACON Defendants acted with scienter.[1] Each of these pleading deficiencies is independently fatal to Plaintiffs' 10(b) claim.

### A.    Plaintiffs Fail to Identify Any Misrepresentations or Omissions

It is fundamental that "[p]laintiffs in securities actions must distinguish among those they sue and identify with particularity the role each defendant played in the alleged fraud." *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1093 (C.D. Cal. 2008). Plaintiffs have failed to do so here. Although the Consolidated Amended Complaint ("CAC") alleges that *other* defendants made false statements—and alleges misrepresentations by all "Defendants" generally—it

---

[1] "The basic elements of a Section 10(b) claim are "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005).

lacks any "specific factual allegations to link" the ACON Defendants to any of the allegedly false statements, as required to state a claim against the ACON Defendants. *Id.*

### B.    Plaintiffs Fail to Plead Facts Giving Rise to a Strong Inference of Scienter

Moreover, Plaintiffs' 10(b) claims fail for the additional, independent reason that the CAC fails to allege with particularity facts sufficient to plead the ACON Defendants' scienter.  To state a claim under Section 10(b), a plaintiff must state with particularity facts giving rise to a strong inference of scienter, "a mental state embracing intent to deceive, manipulate, or defraud." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014).  To survive a motion to dismiss, the complaint must "plead in great detail facts demonstrating, at a minimum, a degree of recklessness that strongly suggests the required degree of intent." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999); *see NVIDIA.*, 768 F.3d at 1053 (9th Cir. 2014) ("recklessness only satisfies scienter under § 10(b) to the extent that it reflects some degree of intentional or conscious misconduct").  The inference of scienter must be "cogent and compelling," such that "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

Here, far from pleading "in great detail" facts demonstrating the ACON Defendants' scienter, Plaintiffs merely point to the ACON Defendants' sale of stock itself as evidence of scienter.  CAC ¶ 165.  That single, bare-boned allegation falls woefully short of adequately pleading scienter.

Although suspicious stock sales by a corporate insider can be probative of scienter, "[i]nsider stock sales are not inherently suspicious." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1092 (9th Cir. 2002).  Rather, a stock sale is suspicious

"only when it is dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1005 (9th Cir. 2009) (internal quotation marks omitted). Relevant factors include "(1) the amount and percentage of shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's prior trading history." *Id.* at 986. And, even when suspicious, stock sales are rarely, if ever, sufficient alone to create the required inference of scienter. *See In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1081 (N.D. Cal. 2001) ("Although viable circumstantial evidence of scienter, stock sales alone cannot create a strong inference of scienter." (internal quotation marks omitted)).

The ACON Defendants' stock sales were not suspicious in amount. Collectively, the ACON Defendants sold 3.6 million shares, which constituted approximately 15.4 percent of their Funko holdings. *See* CAC ¶ Ex. 33 (Supplemental Prospectus) at 33 (23,416,726 Class A shares held by ACON Defendants or redeemable through exchange of common units);[2] *cf. Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001) (sales of "10 percent and 17 percent" of defendants' respective holdings were not suspicious in amount).

Nor was the timing of the sales suspicious. The ACON Defendants sold their shares in September 2019 as part of a long-anticipated secondary offering that was registered with the SEC in April 2019. *See* CAC ¶ 205; Ex. 12 (Apr. 19, 2019 Form S-3). Approximately six weeks later, "Funko issued a press release reporting positive results for the 3Q2019, including a 26% increase in net sales as compared to the same quarter in the prior year." CAC ¶ 129. The alleged corrective disclosures occurred in February and March 2020, over four and five months later, respectively. *Cf. Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1281 (N.D. Cal.

---

[2] Citations to "Ex. __" refer to exhibits attached to the Declaration of Kevin M. McDonough in Support of Funko Defendants' Motion to Dismiss the Consolidated Amended Complaint.

MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:20-cv-02319-VAP-PJW

2019) (steep drop in price at least two months after corporate insiders' and individual defendants' stock sales did not weigh in favor of scienter).

Notably, Plaintiffs do not allege that Defendants Nickel and Jung—Funko's former and current chief financial officers—sold any shares during the class period, further undermining any inference of scienter. *Cf. Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008) (noting that one of the defendants "sold nothing at all, suggesting that there was no insider information from which to benefit").

Additional factors highlight the absence of scienter under the facts alleged in the CAC. Plaintiffs do not allege that the ACON Defendants made any false statements, nor do Plaintiffs allege that the ACON Defendants had any role in the Funko's sales projections or inventory accounting. In fact, the ACON Defendants are not Funko officers or employees, nor did they have any involvement in Funko's day-to-day operations; rather, they are private equity entities based across the country from Funko.

In sum, the CAC falls fall short of alleging facts sufficient to establish a strong inference of scienter on the part of the ACON Defendants. *See Daou*, 411 F.3d at 1024 (complaint failed to establish scienter against director on basis of suspicious stock sales where "there [was] nothing to suggest [the director] was involved in the day-to-day operations of Daou, much less heavily involved in the details and personally directing the accounting irregularities"); *Silicon Graphics*, 183 F.3d at 988 (stock sales by outside director did not support strong inference of scienter where the director was based in a different city than the company, did not have day-to-day contact with company's officers, was not involved in operations, and did not make any of the allegedly misleading statements at issue).

## II.   PLAINTIFFS FAIL TO STATE A SECTION 20(a) CLAIM AGAINST THE ACON DEFENDANTS FOR CONTROL PERSON LIABILITY

Plaintiffs also assert control-person liability against the ACON Defendants under Section 20(a) of the Exchange Act.  But to state a claim under Section 20(a), Plaintiffs must establish that (1) Funko committed a primary violation of the Securities Act and (2) the ACON Defendants exercised actual power or control over Funko.  *See Howard v. Everex Sys., Inc.,* 228 F.3d 1057, 1065 (9th Cir. 2000). Plaintiffs fail to allege facts establishing either required element with regard to the ACON Defendants.

*First,* for the reasons set forth in the Funko Defendants' Motion to Dismiss—which the ACON Defendants join and incorporate herein by reference— the CAC fails to plead a primary violation by Funko.  *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 623 (9th Cir. 2017) (where a court determines that there was a failure to plead a primary violation, "control-person" claims must be dismissed).

*Second,* Plaintiffs do not adequately allege that the ACON Defendants exercised *actual* power or control over Funko.  For purposes of a Section 20(a) claim, "control" is defined as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. §230.405.  Whether a person is a control person involves "scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1162 (9th Cir. 1996).  Boilerplate allegations of control are *not* sufficient to state a claim for control person liability.  *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1163 (C.D. Cal. 2007).

Here, Plaintiffs do not allege that the ACON Defendants participated in Funko's day-to-day affairs.  They do not allege that the ACON Defendants were in

any way involved in Funko's accounting practices or sales projections. They do not allege that the ACON Defendants had the power to direct the management and policies of Funko. Instead, Plaintiffs merely allege generally that the ACON Defendants controlled Funko based on stock ownership and the ability to appoint board members. CAC ¶ 197.

Plaintiffs' threadbare allegations against the ACON Defendants fall far short of establishing control person liability. The ACON Defendants were minority Funko shareholders[3] with the ability to appoint a minority of the board. *See* CAC ¶ 30; *Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1053 (N.D. Cal. 2019) ("[H]olding a minority share of a company does not establish control person liability."); *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1243 (N.D. Cal. 1994) (status as minority shareholder with an agent on the board insufficient to establish control person liability); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. C 99-00109 SBA, 2000 WL 1727405, at *16 (N.D. Cal. Sept. 29, 2000) ("[A] significant stock position is relevant, but it does not by itself carry an allegation of control person liability."); *In re Alstom SA*, 406 F. Supp. 2d 433, 492 (S.D.N.Y. 2005) ("Minority stock ownership and the ability to appoint a minority of the board do not create power to direct management and policies, and thus do not constitute sufficient control under Section 20(a).").

Accordingly, Count II should be dismissed with respect to the ACON Defendants.

---

[3] Before the stock sale, ACON Defendants collectively held 12,921,039 Class A shares and 10,495,687 Class B shares, for a total of 23,416,726 Funko shares. *See Ex.* 33 at 33 & n.(1)(b)-(d). At the time, 32,500,043 Class A Funko shares and 16,630,314 Class B Funko shares were outstanding, for a total of 49,130,357 outstanding Funko shares. *Id.* at 32. Thus, the combined voting power of the ACON Defendants was less than 50%.

### III.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE ACON DEFENDANTS FOR INSIDER TRADING UNDER SECTION 20A

Because Plaintiffs do not adequately allege that the ACON Defendants violated Section 10(b) or Rule 10b-5, Plaintiffs' insider trading claim under Section 20A necessarily fails. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 (9th Cir. 2002) ("[T]o prevail on their claims for violations of § 20(a) and § 20A, plaintiffs must first allege a violation of § 10(b) or Rule 10b-5.").

In addition, Plaintiffs' Section 20A claim fails for the further, independent reason that Plaintiffs do not allege with particularity that any ACON Defendant possessed material, nonpublic information when selling Funko stock, as required for a Section 20A claim. *See* 15 U.S.C. § 78t-1 ("Any person who violates any provision of this chapter or the rules or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information . . . .").

Plaintiffs generally allege that the ACON Defendants were aware of Funko's "excessive inventory" based on unspecified discussions at unspecified board meetings attended by unspecified "representatives or members" of the ACON Defendants. *See* CAC ¶ 201. Such allegations are plainly insufficient to demonstrate that the ACON Defendants knew about Funko's alleged excessive inventory at the time of the stock sales. *See In re Copper Mountain Securities Litigation*, 311 F. Supp. 2d 857, 871 (N.D Ca. 2004) (no strong inference regarding defendants' knowledge where complaint failed to describe "(1) when and where the alleged communications took place; (2) who was present; (3) how [plaintiff] learned what was said during such conversations; and (4) what, specifically, was said during those conversations"). Moreover, without additional specificity regarding what was said at these board meetings, the CAC does not demonstrate

that the information allegedly conveyed was both non-public and material.[4]  Count III must also be dismissed as to the ACON Defendants.

## IV.   ALL CLAIMS AGAINST ACON INVESTMENTS, LLC SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NAMED THE WRONG CORPORATE DEFENDANT

Although Plaintiffs' claims should be dismissed as to all of the ACON Defendants, the CAC is especially defective regarding ACON Investments, LLC. In the Prospectus and other SEC filings forming the basis of the CAC, "ACON" refers to "ACON Funko Investors, L.L.C., a Delaware limited liability company, and certain funds affiliated with ACON Funko Investors, L.L.C." *See* Ex. 33 at S-iii.  In the CAC, however, Plaintiffs incorrectly define "ACON" as "ACON Investments, L.L.C." CAC ¶ 6.  As a result, the CAC is replete with allegations against ACON Investments, LLC that have no basis in the underlying documents. *See* CAC ¶¶ 22, 30, 31, 112, 165, 208.

Even the allegations in the CAC specifically referencing "ACON Investments" are deficient.  Plaintiffs allege that ACON Investments, LLC controls ACON Funko Manager and ACON Equity GenPar, but they provide no factual support for this conclusory allegation.  CAC ¶ 33.  Plaintiffs also allege that ACON Investments, LLC designated Defendants Brotman, Dellomo, and Kriger as members of Funko's board, but this again is an instance of Plaintiffs' erroneously equating the defined term "ACON" with ACON Investments, LLC. *See* CAC ¶ 34-35; Ex. 33 at S-42 ("After the consummation of this offering, ACON will continue to have the right to designate three ACON Directors.").

---

[4] Indeed, given Funko's August 8, 2019 disclosure that it increased reserves for "slower-moving inventory of some old lines" (CAC ¶ 119), Plaintiffs' failure to allege with particularity what the ACON Defendants knew regarding Funko's inventory is especially problematic.

In sum, even if the CAC stated a claim against any of the other ACON Defendants—and it does not—Plaintiffs still fail to state a cognizable claim against ACON Investments, LLC.

## CONCLUSION

For the reasons set forth above, the ACON Defendants respectfully request that the Consolidated Amended Complaint be dismissed as to the ACON Defendants.

Respectfully submitted,

Dated:  October 2, 2020

ESKOVITZ LAW

By:  */s/ Sean Eskovitz*
    Sean Eskovitz
    (State Bar No. 241877)
    1217 Wilshire Blvd, # 3683
    Santa Monica, CA 90403
    Tel: +1.323.821.5836
    E-mail:  seane@eskovitz.com

AEGIS LAW GROUP LLP

    Michael K. Ross
    (*pro hac vice forthcoming*)
    Sean M. Roberts
    (*pro hac vice forthcoming*)
    Market Square West, Suite 740
    801 Pennsylvania Avenue, N.W.
    Washington, D.C. 20004
    Tel:  +1.202.737.3500
    E-mail:  mross@aegislawgroup.com
    E-mail:  sroberts@aegislawgroup.com

*Counsel for ACON Investments, L.L.C., ACON Funko Manager, L.L.C., ACON Funko Investors, L.L.C., ACON Funko Investors Holdings 1, L.L.C., ACON Funko Investors Holdings 2, L.L.C., ACON Funko Investors Holdings 3, L.L.C., and ACON Equity GenPar, L.L.C.*