LATHAM & WATKINS LLP
  Benjamin A. Naftalis (*pro hac vice*)
  *benjamin.naftalis@lw.com*
  Kevin M. McDonough (*pro hac vice*)
  *kevin.mcdonough@lw.com*
885 Third Avenue
New York, New York  10022-4834
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864

LATHAM & WATKINS LLP
  Meryn C. N. Grant (State Bar No. 291315)
  *meryn.grant@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, California  90071-1560
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

Attorneys for the Funko Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO FERREIRA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FUNKO, INC., BRIAN MARIOTTI, RUSSELL NICKEL, ANDREW PERLMUTTER, JENNIFER FALL JUNG, KEN BROTMAN, GINO DELLOMO, ADAM KRIGER, ACON INVESTMENTS, L.L.C., ACON FUNKO MANAGER, L.L.C., ACON FUNKO INVESTORS, L.L.C., ACON FUNKO INVESTORS HOLDINGS 1, L.L.C., ACON INVESTORS HOLDINGS 2, L.L.C., ACON INVESTORS HOLDINGS 3, L.L.C., and ACON EQUITY GENPAR, L.L.C.,<br><br>Defendants. | Case No. 2:20−cv−02319−VAP−PJW<br><br>**FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**<br><br>Hearing<br>Date: January 25, 2021<br>Time: 2:00 PM<br>Courtroom: 8A<br>Judge: Hon. Virginia A. Phillips |

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ...................................................................................................... 2

I. PLAINTIFFS ALLEGE NO FALSE OR MISLEADING STATEMENT ...................................................................................... 2

    A. Mariotti Had No Duty To Correct His August 8, 2019 Statements .............................................................................. 2

    B. The October 31, 2019 Statements Are Not Actionable Or False ....................................................................................... 5

    C. Funko's Inventory Statements Are Not Materially False .................... 8

    D. Funko's Risk Disclosures Are Not False Or Misleading ................... 8

II. PLAINTIFFS' SCIENTER ARGUMENTS FAIL ......................................... 9

    A. The CWs Do Not Support A Strong Inference Of Scienter ................................................................................... 9

    B. The Class Period Stock Sales Do Not Establish Scienter ................. 10

III. PLAINTIFFS' SECTION 20(A) AND 20A CLAIMS FAIL ...................... 12

CONCLUSION ................................................................................................. 12

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
LOS ANGELES

i

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Azar v. Yelp, Inc.*,
    2018 WL 6182756 (N.D. Cal. Nov. 27, 2018).........................................................11

*Berson v. Applied Signal Technology, Inc.*,
    527 F.3d 982 (9th Cir. 2008)..................................................................................8

*Bodri v. GoPro, Inc.*,
    252 F. Supp. 3d 912 (N.D. Cal. 2017)....................................................................6

*City of Dearborn Heights v. Align Tech., Inc.*,
    856 F.3d 605 (9th Cir. 2017)..................................................................................7

*In re Cutera Sec. Litig.*,
    610 F.3d 1103 (9th Cir. 2010)................................................................................5

*In re Downey Sec. Litig.*,
    2009 WL 2767670 (C.D. Cal. Aug. 21, 2009).......................................................6

*Eckert v. PayPal Holdings Inc.*,
    --- F. App'x ----, 2020 WL 7399009 (9th Cir. Dec. 17, 2020) ........................9, 12

*In re Invision Techs., Inc. Sec. Litig.*,
    2006 WL 538752 (N.D. Cal. Jan. 24, 2006) .......................................................4, 8

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2019)..................................................................................8

*In re LDK Solar Sec. Litig.*,
    2008 WL 4369987 (N.D. Cal. Sept. 24, 2008)......................................................3

*Markette v. XOMA Corp.*,
    2017 WL 4310759 (N.D. Cal. Sept. 28, 2017).......................................................7

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008)..........................................................................11, 12

*Oaktree Principal Fund V, L.P. v. Warburg Pincus LLC*,
    2018 WL 6137169 (C.D. Cal. Aug. 29, 2018)......................................................3

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
LOS ANGELES

ii

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS

*Park v. GoPro, Inc.*,
  2019 WL 1231175 (N.D. Cal. Mar. 15, 2019) ........................................................ 7

*In re Quality Sys. Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ............................................................ 4, 9, 10

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) .......................................................................... 11

*Schueneman v. Arena Pharmaceuticals, Inc.*,
  840 F.3d 698 (9th Cir. 2016) ............................................................................ 8

*Shreiber v. Synacor, Inc.*,
  --- F. App'x ----, 2020 WL 6165909 (2d Cir. Oct. 22, 2020) ............................ 7

*In re Solarcity Corp. Sec. Litig.*,
  274 F. Supp. 3d 972 (N.D. Cal. 2017) .............................................................. 6

*Todd v. STAAR Surgical Co.*,
  2016 WL 6699284 (C.D. Cal. Apr. 12, 2016) ................................................ 3, 4

*In re UTStarcom, Inc. Sec. Litig.*,
  617 F. Supp. 2d 964 (N.D. Cal. 2009) .............................................................. 5

*Waterford Twp. Police v. Mattel, Inc.*,
  321 F. Supp. 3d 1133 (C.D. Cal. 2018) ............................................................ 4

*In re Yahoo! Inc. Sec. Litig.*,
  611 F. App'x 387 (9th Cir. 2015) ...................................................................... 3

*Zaghian v. Farrell*,
  675 F. App'x 718 (9th Cir. 2017) ...................................................................... 7

*Zucco Partners LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) .......................................................................... 10

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
LOS ANGELES

iii

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS

# PRELIMINARY STATEMENT[1]

Plaintiffs' Opposition ("Opp.") confirms that they have failed to plead any plausible theory of fraud. Plaintiffs' theory, in essence, is that the Funko Defendants should have predicted that Funko would fall short of its sales projections and record a write-down to inventory at the end of 2019. But the federal securities laws do not require corporate officials to be clairvoyant, and in any event, Plaintiffs do not dispute the following points, each of which strongly undermines any theory of fraud:

- When Funko increased its sales projections in 2019, it was in the midst of a very strong sales year and eight-quarter streak of greater than 20% sales growth, and it had never missed a sales projection, Mot. 1, 4-5; ¶¶ 3, 47;

- Funko exceeded expectations in Q3 and needed only modest sales growth in Q4 to achieve the full year projections, Mot. 4-5; ¶ 116; Opp. 26 n.27;

- Funko accurately reported its inventory balance during the Class Period, Mot. 6-7; Opp. 9-12, and was not required to take a write-down in Q2 or Q3, Opp. 9-10 n.3;

- The Company did not conceal the Q4 sales miss, but instead accelerated its usual financial reporting timeline to inform investors of the Q4 results, Mot. 5; ¶¶ 138-39; Opp. 6-7;

- The miss was caused by weak holiday sales and weak sales tied to major movies released in late Q4, ¶¶ 138, 151, developments which could not have been known before the end of Q4;

- Only two of the seven Individual Defendants sold any stock during the Class Period, and both retained very large quantities of Funko stock through the end of the period, Mot. 21-23; Opp. 30, 32 n.34; and

- Two of the only three individuals alleged to have made misstatements sold no stock at all during the Class Period, Mot. 21-23; Opp. 32 n.34.

In light of the above, Plaintiffs offer no logical, much less compelling, explanation for how Defendants' actions constitute securities fraud. Nor could they.

---

[1] Unless otherwise stated, capitalized terms have the meanings set forth in Defendants' motion ("Mot.") to dismiss the CAC (cited as "¶"), quotation marks are omitted, and emphasis is added.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS

The only compelling inference to be drawn from the allegations in the CAC is that Funko management was optimistic about the second half of 2019, and increased its sales projections accordingly. When Funko fell short of its projections due to a disappointing Q4, the Company promptly informed investors. And having sold less inventory in Q4 than it had projected, Funko recorded and disclosed a corresponding write-down to inventory. That is not fraud, and moreover, Plaintiffs have not stated particularized allegations establishing that Defendants made materially misleading statements and did so with fraudulent intent. Accordingly, Plaintiffs' claims should be dismissed in their entirety.

## ARGUMENT

## I.    PLAINTIFFS ALLEGE NO FALSE OR MISLEADING STATEMENT

### A.    Mariotti Had No Duty To Correct His August 8, 2019 Statements

Plaintiffs' theory of falsity regarding the August 8, 2019 statements about future sales is exceedingly narrow, and it fails. Plaintiffs do not contest that Nickel's August 8 statement announcing Funko's increased sales projections was a protected forward-looking statement and true when made. Mot. 9-10; Opp. 14 n.13. They also do not dispute that Mariotti's related statements—that the content in 2019 was "extremely strong," Funko had "2 big bullets left to fire with *Frozen 2* and *Star Wars: Episode IX*," and it had "many different ways" to monetize its properties in the second half of 2019—were true when made. Opp. 14-16. Instead, Plaintiffs argue that Mariotti violated the federal securities laws by not later correcting his statements, which merely provided color on the increased projections, even though they concede Funko had no duty to correct the projections themselves. *Id.* at 14 n.13. This theory fails for multiple reasons.

*First*, Mariotti had no "duty to correct" his statements because Plaintiffs do not allege that those statements were false when made. Mot. 10. Assuming

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS

*arguendo* that a duty to correct exists at all,[2] according to Plaintiffs' own authority it applies only where the speaker learns that a historical statement was untrue or misleading *when made*, in light of information that existed at the time of the statement but was not known to the speaker. For example, in *Oaktree Principal Fund V, L.P. v. Warburg Pincus LLC*, the court found that the defendants had a duty to correct a prior EBITDA disclosure because they subsequently discovered information that existed when the statement was made and rendered it false. 2018 WL 6137169, at *11-13 (C.D. Cal. Aug. 29, 2018). None of Plaintiffs' cases stands for the sweeping proposition that corporate officers have a continuous duty to correct prior *accurate* statements based on events that occur after those statements are made. *See id.*; *Todd v. STAAR Surgical Co.*, 2016 WL 6699284, at *11 (C.D. Cal. Apr. 12, 2016) (statements at issue were "misleading *when made*"); *In re LDK Solar Sec. Litig.*, 2008 WL 4369987, at *9-11 (N.D. Cal. Sept. 24, 2008) (duty to correct "if defendants *made false statements unknowingly* but learned of the falsity of their statements thereafter"). Accordingly, because Plaintiffs do not allege that Mariotti's statements were false when made, there is no basis for their claim that he violated a duty to correct. Opp. 14-15 (conceding "Mariotti learned that his statements *were no longer* accurate" in late August or early September 2019).

*Second*, there are no particularized allegations in the CAC showing that later events rendered Mariotti's statements false or misleading. *See id.* at 14-16. Plaintiffs point to unspecified sales "data" from late August or early September 2019 to imply "there was not enough customer demand or products in the Company's pipeline to meet the FY2019 guidance," "the gap/shortfall could not be closed in time for Defendants to meet the Company's guidance," and the "guidance was unattainable." *Id.* at 14-15. But none of the actual allegations in the CAC establishes

---

[2] The Ninth Circuit noted in 2015 that neither it nor the Supreme Court "has recognized a duty to correct," and it declined to do so. *In re Yahoo! Inc. Sec. Litig.*, 611 F. App'x 387, 389-90 (9th Cir. 2015). Plaintiffs point to no post-*Yahoo!* Ninth Circuit case recognizing a duty to correct.

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
LOS ANGELES

3

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS

Mariotti's knowledge of this purported information in August or September, *id.*, and it does not render Mariotti's statements false in any event. Mariotti did not guarantee that Funko would achieve its sales targets, nor did he say that *Star Wars* and *Frozen 2* would "carry" Funko to those targets. *Id.* at 15. He merely said that those movies gave Funko two "big bullets left to fire" in 2019 and that the increased guidance reflected that the "content year as a whole" was "extremely strong." ¶ 125. That inherently subjective statement was well supported by the following undisputed facts: (i) "the first half of 2019 had been great for Funko" and Q3 "exceed[ed] expectations"; (ii) the 2019 content included "the highest grossing film of all time" and the successful *Fortnite* videogame; and (iii) *Star Wars* and *Frozen 2* were highly anticipated movies scheduled for release in late November and December 2019. ¶¶ 94, 116, 125. Moreover, Plaintiffs provide no basis for their conclusory assertion that investors understood the statement that Funko had "so many different ways to monetize different properties" to mean it had "many different ways to make up [an] earnings shortfall." Opp. 15; ¶ 125. Mariotti said nothing of the kind, and Plaintiffs may not manufacture a claim by rewriting his actual statements. *In re Invision Techs., Inc. Sec. Litig.*, 2006 WL 538752, at *6 (N.D. Cal. Jan. 24, 2006) (claims "must be based upon what Defendants *actually* said, not upon Plaintiffs' desired interpretation" (emphasis in original)).

*Third*, Mariotti's statements were inactionable puffery. Mot. 10; *see also Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1148-49 & n.1 (C.D. Cal. 2018). Plaintiffs assert that statements about Funko's "strong" content year and the "many . . . ways" it had to monetize its properties were objectively verifiable, Opp. 16, but do not bother to explain how. And even Plaintiffs' own cases explain that statements similar to Mariotti's constitute puffery. *See, e.g.*, *In re Quality Sys. Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017) ("the opportunity for system placement at hospitals 'is still very, very large'"); *STAAR*, 2016 WL 6699284, at *8 (the "company was expecting 'solid' loan origination and acquisition").

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

4

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS

## B.    The October 31, 2019 Statements Are Not Actionable Or False

Plaintiffs argue that the October 31, 2019 forward-looking statements by Funko and Jung reaffirming the 2019 sales projections were made with "actual knowledge" of falsity and thus do not qualify for protection under the PSLRA safe harbor. Opp. 20. But it is well settled that to avoid the safe harbor, Plaintiffs must demonstrate both that the statements were made with actual knowledge of their falsity *and* were not accompanied by meaningful cautionary language. Mot. 11-12; *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1113 & n.5 (9th Cir. 2010). Plaintiffs do not dispute that the October 31 statements were accompanied by meaningful cautionary language. *See* Opp. 20.[3] For that reason alone, the PSLRA safe harbor applies to the October 31 statements, and they are immune from liability. Mot. 11-12; *In re Cutera*, 610 F.3d at 1112 ("[I]f a forward-looking statement is identified as such and accompanied by meaningful cautionary statements, then the state of mind of the individual making the statement is irrelevant, and the statement is not actionable regardless of the plaintiff's showing of scienter."). In any event, the CAC comes nowhere close to clearing the high bar for pleading that the October 31 sales projections were made with "actual knowledge" of falsity. Mot. 11.

It is undisputed that when Funko and Jung reaffirmed the full year sales projections on October 31, Funko had just recorded its *ninth* consecutive quarter of more than 20% sales growth and, having exceeded expectations for Q3 2019, ¶¶ 47, 116, needed only 11-15% growth in Q4 (far less than the 28% and 38% growth achieved, respectively, in Funko's prior two Q4s) to meet the 2019 sales projections,[4] *see* Mot. 13. Plaintiffs ignore that critical context, clinging instead to

---

[3] Plaintiffs challenge Funko's inventory risk disclosures, *see* Opp. 13-14, but not Funko's robust cautionary language regarding the "seasonal nature" of its business, its reliance on products tied to movie releases "before demand for the underlying content is known," and other risks that materialized in Funko's fourth quarter sales. *See* Mot. 12; Opp. 20.

[4] This positive context distinguishes the facts here from *In re UTStarcom, Inc. Securities Litigation*, 617 F. Supp. 2d 964 (N.D. Cal. 2009), where there were "numerous alleged examples of declining demand, declining margins, operational

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

CASE NO. 2:20-cv-02319-VAP-PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS

the speculative and subjective views from CW1 that Funko would not be able to reach its Q4 sales target because (i) the "content" associated with Funko's products, *i.e.*, movies, television shows, videogames, was not strong enough to drive the projected sales; and (ii) there allegedly was an unspecified "shortfall," at some unspecified time, "between the internal sales forecasts based on actual customer demand and the public guidance." Opp. 15, 17, 19; ¶¶ 92, 95-97. Those allegations, however, do not establish that Funko and Jung knew in October that the full year sales projections were unachievable and thus false. *See* Mot. 12-14.

*First*, as to CW1's "content" allegation, he does not assert that Funko had insufficient inventory to hit the sales targets, and indeed Plaintiffs contend that the Company had *too much* inventory, not a shortage. *E.g.*, ¶ 58. Accordingly, CW1's allegations in this regard boil down to (i) his apparent pessimism about two of the most popular movie franchises in recent history; and (ii) his disagreements, after being employed by Funko for mere weeks, with more senior employees who, unlike CW1, had experience with the Company's sales process and ability to estimate future demand. ¶ 120(a) (CW1 was hired in July 2019). But such "second-guessing" of management by CW1, a new mid-level employee who was multiple layers removed from Jung and the other Individual Defendants, ¶¶ 56-57, "does not provide a basis for securities fraud," *In re Downey Sec. Litig.*, 2009 WL 2767670, at *11 (C.D. Cal. Aug. 21, 2009); *see also In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1001 (N.D. Cal. 2017) ("Hindsight [and] opinions of former employees do not generally rise to the level of falsity.").

*Second*, CW1 fails to provide "any content of the original or revised forecasts that quantifies or clarifies what Defendants knew and when," or to allege facts showing that any supposed shortfall between actual sales and the projections was in fact insurmountable. *See Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 925, 930, 932-33 (N.D. Cal. 2017) ("Vague claims of reducing 'internal forecasts' are a far cry difficulties, increased costs, and internal control problems," which led to three restatements and an SEC investigation. *Id.* at 972, 974.

from the exact numbers . . . ."); Opp. 18-19.  Plaintiffs merely ask the Court to assume it was known by October—one month into Q4 and before the late-November and December releases of the movies expected to drive Q4 sales—that Funko would fall short of its projections.  But they have not alleged particularized facts to support this theory, and it makes no sense that Funko and Jung would reaffirm sales projections they knew were unachievable, when doing so carried no alleged benefit—only harm—for Funko, Jung, and the other Individual Defendants.  *See* Mot. 13-14.  With no allegation from CW1 or anyone else that Jung or any other Individual Defendant believed the sales projections were unachievable or that any "shortfall" existed before October 31 and was, in fact, insurmountable, Plaintiffs have not carried their burden to allege that the October 31 statements were made with actual knowledge of falsity.[5]  *See Park v. GoPro, Inc.*, 2019 WL 1231175, at *14-18 (N.D. Cal. Mar. 15, 2019) (no actual knowledge that guidance was false where allegations, "at most, show[ed] that [the company's] employees were underwhelmed by its new product offerings").

The October 31 statements are not actionable for the independent reason that they constitute opinions, and Plaintiffs have failed to satisfy the test for opinion liability.  Contrary to Plaintiffs' incorrect assertion, Opp. 20, no magic words, such as "believed" or "thought," are necessary to bring subjective or predictive statements within the ambit of *Omnicare.  See Shreiber v. Synacor, Inc.*, --- F. App'x ----, 2020 WL 6165909, at *1 (2d Cir. Oct. 22, 2020); *Markette v. XOMA Corp.*, 2017 WL 4310759, at *5 (N.D. Cal. Sept. 28, 2017); Mot. 14 n.6.  The October projections were opinions, and the CAC is devoid of particularized allegations that they were "*not actually* believed," there was "*no reasonable basis* for" them, or "the speaker [was] aware of undisclosed facts tending *seriously to undermine*" their accuracy. *City of Dearborn Heights v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017).

---

[5] *Zaghian v. Farrell*, 675 F. App'x 718 (9th Cir. 2017), is inapposite.  Unlike here, that case included "*particularized facts*" that defendants helped to craft forecasts that were built to accommodate a knowingly unachievable financial outcome. *Id.* at 720.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES

7

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS

## C.    Funko's Inventory Statements Are Not Materially False

Plaintiffs argue that Nickel misled investors by making the truthful statement in August 2019 that Funko had taken "higher reserves for slower-moving inventory." Opp. 9.  In support of that theory, Plaintiffs rely on nothing more than their own self-serving characterization of what Nickel said and the impression his statement supposedly created. *Id*. at 9-11.  But Plaintiffs cannot manufacture a false statement by dint of their own interpretation. *See Invision*, 2006 WL 538752, at *6.  Moreover, Plaintiffs' vague speculation that there was "no reasonable basis to anticipate" that some unspecified amount of inventory could be sold, and thus an unspecified amount was obsolete as of August 2019, cannot be reconciled with the undisputed fact that Funko accurately accounted for and disclosed its inventory balance in every quarter during the Class Period, or with Plaintiffs' concession that they "do not claim that Defendants improperly failed to write down inventory." Opp. 9-11 & n.3.

Further, Plaintiffs' purportedly "instructive" authority—*Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982 (9th Cir. 2008)—provides no support for their challenge to Nickel's truthful statement.  Opp. 10.  In *Berson*, the defendant concealed its receipt of "stop work" orders on government contracts *and* artificially inflated its reported "backlog," a metric used to inform investors of the dollar value of future contract work, by including the cancelled contracts in that calculation.  527 F.3d at 984.  Here, by contrast, it is undisputed that Funko accurately reported the amount and value of its inventory in August 2019 (and throughout the Class Period). The law does not require a more colorful or detailed disclosure of Funko's inventory position or its reserve, *see* Mot. 15-16, and Plaintiffs cite no case to the contrary.[6]

## D.    Funko's Risk Disclosures Are Not False Or Misleading

Plaintiffs argue that Funko's quarterly "Risk Factor" disclosures regarding the

---

[6] Plaintiffs' reliance on *Schueneman v. Arena Pharmaceuticals, Inc.*, 840 F.3d 698 (9th Cir. 2016) and *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2019), where the disclosures concealed the existence of contradictory information, is misplaced.  Opp. 10 n.4.  Nickel did not say that no write-downs would occur in the future, and Plaintiffs admit none was required as of August 2019. *Id*. at 9-10 n.3.

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
LOS ANGELES

8

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS

possibility of excess inventory and the need to take corresponding write-downs were materially misleading because the warned-of risk allegedly had already materialized. *See* Opp. 12-13; Mot. 16-18.  In reality, Funko disclosed to investors that "if demand or future sales do not reach forecasted levels, we could have excess inventory that we may need to hold for a long period of time, write down, sell at prices lower than expected or discard." ¶¶ 122, 136.  That is, by definition, a continuous and ongoing risk for companies, like Funko, that manufacture goods for sale to retailers and consumers.  In any event, there is no allegation that Funko missed an actual demand or sales forecast prior to Q4 2019, and Plaintiffs themselves concede that no write-down was required when the challenged risk disclosures were made.  Opp. 10 n.3. Put another way, when the warned-of risk (lower than expected sales) materialized, Funko disclosed it and took actions consistent with the Company's risk disclosures. Thus, Plaintiffs' attempt to find a false statement in Funko's risk disclosures fails.

## II.   PLAINTIFFS' SCIENTER ARGUMENTS FAIL

Plaintiffs' claims also fail because their CW allegations and allegations of stock sales by two Individual Defendants do not give rise to a "cogent and compelling inference" of scienter.  *Eckert v. PayPal Holdings Inc.*, --- F. App'x ----, 2020 WL 7399009, at *1 (9th Cir. Dec. 17, 2020).

### A.   The CWs Do Not Support A Strong Inference Of Scienter

For the reasons discussed in the Motion and Section I.B *supra*, CW1's speculative allegations do not establish that any of the Individual Defendants acted with scienter, and the other CW allegations fare no better.  Mot. 21-22.  Plaintiffs attempt to bolster their CW allegations by citing *Quality Systems*, but that case only underscores the paucity of Plaintiffs' allegations.  *E.g.*, Opp. 16-17, 22, 25-26.  In *Quality Systems*, the witnesses included "three high-level officers," all of whom had been on the Board of Directors, one of whom was the former COO, and another who had resigned after accusing the company and senior leaders of committing securities law violations, and bringing suit against them.  865 F.3d at 1138-39.  There are no

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS

such CWs here, and unlike in *Quality Systems*, there are no allegations, let alone particularized allegations, that Funko's officers made admissions contradicting their public statements. *Id.* at 1139, 1144; Mot. 18-21.[7]

Further, the Opposition vastly overstates and obfuscates the actual content of the CW allegations in the CAC, as just two examples (of many) illustrate. *First*, Plaintiffs contend CW1 told Jung that Funko would not meet its Q4 sales goals and "fixing the shortfall was impossible." Opp. 24 (citing ¶ 100). But the CAC does not say when this alleged conversation occurred, let alone whether it occurred before or after October 31. ¶ 100. Nor does the CAC say how large the alleged shortfall was or whether anyone at Funko other than CW1 believed any alleged shortfall was insurmountable. *See generally* CAC. *Second*, Plaintiffs mischaracterize their own CW allegations to suggest that Mariotti was aware of a sales shortfall through weekly sales meetings starting in late August or early September 2019 and because emails with sales data "would be" sent to him. Opp. 15. But in fact, the CAC alleges that Mariotti first started attending sales meetings in *November 2019*, ¶ 101, and there is no allegation that he received any email at any time showing an actual (much less an insurmountable) sales gap, *id.* As these examples show, and as Defendants explained in their Motion, the CWs do not allege facts indicating that any Individual Defendant possessed information contradicting the statements at issue, and many of the CWs had no contact whatsoever with the Individual Defendants during the Class Period. Mot. 19-21. Accordingly, the CW allegations in the CAC fall well short of establishing a strong inference of scienter.

**B.    The Class Period Stock Sales Do Not Establish Scienter**

Plaintiffs' argument that scienter can be inferred from the Class Period stock

---

[7] The remainder of Plaintiffs' authorities on this point are inapposite because, unlike here, those cases contained detailed allegations of (i) admissions by the defendants or internal documents that directly contradicted their public statements or conveyed knowledge of undisclosed risks; or (ii) internal projections that differed from those disclosed to investors. Opp. 25 (citing cases).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS

sales by two of the seven Individual Defendants fails for multiple reasons. *See* Mot. 21-22; *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 1005 (9th Cir. 2009).

*First*, it is undisputed that Mariotti retained a large quantity of Funko stock through the end of the Class Period, Opp. 30, and that Perlmutter *increased* his ownership of Class A shares during the Class Period, Mot. 22.  Plaintiffs' cited authority does nothing to rebut the common-sense conclusion that when a defendant retains most of his or her shares, it undermines an inference of scienter because the defendant would "suffer the same losses as other investors" if the stock price fell. Mot. 22; *see also Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008) ("We typically require larger sales amounts [than 37%]—and corroborative sales by other defendants—to allow insider trading to support scienter.").

*Second*, as Plaintiffs concede, all of the sales by Mariotti and Perlmutter during the Class Period were made in connection with the SPO or were non-discretionary sales pursuant to 10b5-1 plans.  Opp. 32.  Plaintiffs say virtually nothing about Perlmutter's sales in the Opposition, and they offer no defense for their failure to include in the CAC any of the necessary contextual information for analyzing his sales.  Mot. 21; Opp. 28-32.  Plaintiffs attempt to brush aside the pre-planned nature of Mariotti's stock sales by arguing that there are factual issues regarding when his plan was adopted.  That misses the point, as Plaintiffs' own cases make clear.  The date Mariotti adopted his 10b5-1 plan matters *only* to the extent his sales "were 'dramatically out of line with prior trading practices.'" *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *18 (N.D. Cal. Nov. 27, 2018) (quoting *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001)).  Here, Mariotti's 10b5-1 sales were consistent with his sales in prior months, Mot. 23, and in any event Plaintiffs do not allege that he adopted or amended the plan during the Class Period.  As *Yelp* clarified, the notion that 10b5-1 plans do not undermine scienter at the pleading stage "is out of step with the weight of authority in the Ninth Circuit."  2018 WL 6182756, at *4.  The use of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS

a 10b5-1 plan "may . . . rebut an inference of scienter," and it does so here. *Metzler*, 540 F.3d at 1067 n.11.

*Third*, it is undisputed that no Class Period sales occurred after the October 31 reaffirmance of Funko's sales projections.  Plaintiffs argue, inexplicably, that it is "telling" that pre-planned sales took place just before the October 31 statements. Opp. 31.  But it is in no way indicative of fraud that two executives sold stock *before* an allegedly fraudulent statement—which Plaintiffs say was designed to artificially inflate Funko's stock price—and sold *no* shares after that statement, including in the period leading up to the February and March 2020 disclosures which allegedly revealed the artificial price inflation.  Indeed, Plaintiffs point to no authority holding that a strong inference of scienter can arise under analogous circumstances.

*Fourth*, the undisputed fact that there were *no* Class Period stock sales by five of the seven Individual Defendants—including Jung and Nickel even though both are alleged to have made false statements—further underscores the absence of scienter here.  Opp. 32 n.34; Mot. 23-24; *Metzler*, 540 F.3d at 1067.

*Lastly*, it is undisputed that the same Defendants who allegedly lied about sales and inventory voluntarily accelerated Funko's financial reporting process to disclose the inventory write-down and sales miss weeks before the Company's deadline to report its 2019 financial results.  Nothing in the CAC or the Opposition explains why Defendants "had a motive to mislead investors in [October] but not in [January]," *Eckert*, 2020 WL 7399009, at *1, and Defendants' transparent disclosure of Funko's disappointing performance is yet one more contra-indicator of fraudulent intent for which Plaintiffs have no answer.  Mot. 5.

## III.   PLAINTIFFS' SECTION 20(A) AND 20A CLAIMS FAIL

Plaintiffs' Section 20(a) and Section 20A claims fall with Plaintiffs' failure to adequately plead a predicate violation of the Exchange Act.  *See* Mot. 25.

## CONCLUSION

For these reasons, the CAC should be dismissed as to the Funko Defendants.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS

Dated:  December 30, 2020          Respectfully submitted,


                                    **LATHAM & WATKINS LLP**

                                    By:  */s/* Kevin M. McDonough
                                          Kevin M. McDonough

                                    *Attorneys for the Funko Defendants*

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
LOS ANGELES

13

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS