ESKOVITZ LAW
Sean Eskovitz (State Bar No. 241877)
seane@eskovitz.com
1217 Wilshire Blvd, # 3683
Santa Monica, CA 90403
Tel: 323.821.5836

AEGIS LAW GROUP LLP
Michael K. Ross (*pro hac vice forthcoming*)
mross@aegislawgroup.com
Sean M. Roberts (*pro hac vice forthcoming*)
sroberts@aegislawgroup.com
Market Square West, Suite 740
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: 202.737.3500

Counsel for the ACON Defendants

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

GILBERTO FERREIRA,
Individually and On Behalf of All
Others Similarly Situated,

  Plaintiff,

  v.

FUNKO, INC., BRIAN MARIOTTI,
RUSSELL NICKEL, ANDREW
PERLMUTTER, JENNIFER FALL
JUNG, KEN BROTMAN, GINO
DELLOMO, ADAM KRIGER, ACON
INVESTMENTS, L.L.C., ACON
FUNKO MANAGER, L.L.C., ACON
FUNKO INVESTORS, L.L.C., ACON
FUNKO INVESTORS HOLDINGS 1,
L.L.C., ACON FUNKO INVESTORS
HOLDINGS 2, L.L.C., ACON FUNKO
INVESTORS HOLDINGS 3, L.L.C.,
and ACON EQUITY GENPAR, L.L.C.

  Defendants.

Case No. 2:20−cv−02319−VAP−PJW

**REPLY IN SUPPORT OF ACON DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**

Hearing
Date: January 25, 2021
Time: 2:00 PM
Courtroom: 8A
Judge: Hon. Virginia A. Phillips

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................... 1

ARGUMENT .......................................................................................... 1

I.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE ACON DEFENDANTS UNDER SECTION 10(b) OF THE EXCHANGE ACT ................................................ 1

    A.    Plaintiffs Fail to Identify Any Misrepresentations or Omissions ....... 2

    B.    Plaintiffs Fail to Identify Facts Giving Rise to a Strong Inference of Scienter ................................................ 2

II.    PLAINTIFFS FAIL TO STATE A SECTION 20(a) CLAIM AGAINST THE ACON DEFENDANTS FOR CONTROL PERSON LIABILITY ................................................ 8

III.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE ACON DEFENDANTS FOR INSIDER TRADING UNDER SECTION 20A ...................................................... 11

IV.    ALL CLAIMS AGAINST ACON INVENTMENTS, LLC SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NAMED THE WRONG CORPORATE DEFENDANT .......................... 13

CONCLUSION ..................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Arthur Children's Tr. v. Keim*,
994 F.2d 1390 (9th Cir. 1993) ........................................................................ 9

*Batwin v. Occam Networks, Inc.*,
No. CV 07-2750 CAS (SHX), 2008 WL 2676364 (C.D. Cal. July 1, 2008) ..... 2

*Brasher v. Broadwind Energy, Inc.*,
No. 11 CV 991, 2012 WL 1357699 (N.D. Ill. Apr. 19, 2012) ........................ 10

*Curry v. Yelp Inc.*,
No. 14-CV-03547-JST, 2015 WL 1849037 (N.D. Cal. Apr. 21, 2015) ............. 7

*Hammer v. Frontier Fin. Corp.*,
No. C10-643 JCC, 2012 WL 13020032 (W.D. Wash. Apr. 20, 2012) ............. 4

*In re Am. Apparel, Inc. S'holder Litig.*,
No. CV1006352MMMRCX, 2013 WL 10914316 (C.D. Cal. Aug. 8, 2013) .. 11

*In re ChinaCast Educ. Corp. Sec. Litig.*,
809 F.3d 471 (9th Cir. 2015) ........................................................................ 9

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) .................................................................... 3, 8

*In re Galena Biopharma, Inc. Sec. Litig.*,
117 F. Supp. 3d 1145 (D. Or. 2015) ............................................................ 11

*In re Kosmos Energy Ltd. Sec. Litig.*,
955 F. Supp. 2d 658 (N.D. Tex. 2013) ........................................................ 10

*In re Secure Computing Corp. Sec. Litig.*,
184 F. Supp. 2d 980 (N.D. Cal. 2001) .......................................................... 7

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002) ...................................................................... 8

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
258 F. Supp. 3d 1037 (N.D. Cal. 2017) ........................................................ 9

*In re Wet Seal, Inc. Sec. Litig.*,
518 F. Supp. 2d 1148 (C.D. Cal. 2007) ...................................................... 12

*Kuhns v. Ledger*,
202 F. Supp. 3d 433 (S.D.N.Y. 2016) .......................................................... 11

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) ...................................................................... 11

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) .......................................................................... 5

*No. 84 Employer-Teamster v. America West Holding*,
  320 F. 3d 920 (9th Cir. 2003) .......................................................................... 11

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004) ....................................................................... 5, 6

*Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014) .......................................................................... 12

*Silsby v. Icahn*,
  17 F. Supp. 3d 348 (S.D.N.Y. 2014) ................................................................. 9

*Wojtunik v. Kealy*,
  394 F. Supp. 2d 1149 (D. Ariz. 2005) ............................................................... 5

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981(9th Cir. 2009) ........................................................................ 2, 7

**Statutes**

15 U.S.C. § 78u-4(b)(2)(A) ................................................................................ 12

Defendants ACON Investments, L.L.C. ("ACON Investments"), ACON Funko Manager, L.L.C ("ACON Funko Manager"), ACON Funko Investors, L.L.C. ("ACON Funko Investors"), ACON Funko Investors Holdings 1, L.L.C. ("ACON Funko Investors Holdings 1"), ACON Funko Investors Holdings 2, L.L.C. ("ACON Funko Investors Holdings 2"), ACON Funko Investors Holdings 3, L.L.C. ("ACON Funko Investors Holdings 3"), and ACON Equity GenPar, L.L.C. ("ACON Equity GenPar") (collectively, "ACON Defendants") respectfully submit this reply brief in further support of their motion to dismiss the Consolidated Amended Complaint ("CAC").

## PRELIMINARY STATEMENT

Plaintiffs' allegations against the ACON Defendants in the CAC are sparse, generic, and conclusory. Their Opposition is more of the same. Plaintiffs repeatedly lump the ACON Defendants in with the "Defendants" generally – asserting that the "Defendants" knew this and the "Defendants" did that – but Plaintiffs do not identify particularized allegations that the ACON Defendants made any false statements, that the ACON Defendants were involved in Funko's inventory accounting or sales forecasts, or that the ACON Defendants had reason to believe in September 2019 that Funko's stock would drop over four months later. Plaintiffs' claims against the ACON Defendants should be dismissed for failure to meet the stringent pleading requirements of the Private Securities Litigation Reform Act ("PSLRA").

## ARGUMENT

**I.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE ACON DEFENDANTS UNDER SECTION 10(b) OF THE EXCHANGE ACT**

As explained in the ACON Defendants' opening brief, Plaintiffs' 10(b) claim against the ACON Defendants fails for two reasons, each of which is independently fatal. *First*, Plaintiffs fail to allege with particularity any misrepresentations or omissions by the ACON Defendants. *Second*, Plaintiffs do not adequately allege that the ACON Defendants acted with scienter. Although Plaintiffs assert that both

requirements have been met, their Opposition does not identify allegations that satisfy either element.

### A. Plaintiffs Fail to Identify Any Misrepresentations or Omissions

In claiming that they adequately pled misrepresentations and omissions, Plaintiffs point only to allegedly misleading disclosures by Funko and allegedly misleading statements by certain Funko officers. *See* Plaintiffs' Omnibus Opposition ("Opp.") 8-21. Plaintiffs do not, and cannot, identify any misrepresentations or omissions by the ACON Defendants (or their appointees on Funko's board). Thus, Count I should be dismissed with respect to the ACON Defendants. *See Batwin v. Occam Networks, Inc.*, No. CV 07-2750 CAS (SHX), 2008 WL 2676364, at *16 (C.D. Cal. July 1, 2008) (dismissing § 10(b) misrepresentation claims against venture capital defendants where plaintiffs failed to point to a deceptive act by those defendants).

### B. Plaintiffs Fail to Identify Facts Giving Rise to a Strong Inference of Scienter

Plaintiffs argue that they have adequately pled scienter based on (1) confidential witness ("CW") allegations that the "Defendants" ostensibly had knowledge of information undermining Funko's inventory disclosures and sales forecasts and (2) insider stock sales. Yet none of the CW allegations support the inference that the *ACON Defendants* possessed information undermining Funko's inventory disclosures and sales forecasts, and the ACON Defendants' stock sales are not themselves suspicious. Altogether, the CAC falls far short of creating the strong inference of "intentional conduct or deliberate recklessness" required to allege scienter against the ACON Defendants. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 992 (9th Cir. 2009).

**1. Plaintiffs Fail to Identify Facts Showing that the ACON Defendants Possessed Information Undermining Funko's Inventory Disclosures and Sales Forecasts.**

Although Plaintiffs attempt to lump the ACON Defendants in with "Defendants" generally – claiming that they "have pled that Defendants had access to and/or actual knowledge of undisclosed facts undermining the accuracy" of the alleged misrepresentations – their Opposition treats the ACON Defendants as an afterthought. *See* Opp. 22. Over several pages, Plaintiffs recount allegations from various CWs concerning Funko and its officers, but they do not point to any CW testimony implicating the ACON Defendants. *See* Opp. 22- 28.

In a footnote, Plaintiffs assert that the Individual Defendants' scienter can be imputed to the ACON Defendants based on common law agency principles. *See* Opp. 24 n.23. But there is no basis in law or fact to impute scienter to the ACON Defendants from individuals unaffiliated with them – namely, Defendants Mariotti, Nickel, Perlmutter, and Jung. Even assuming scienter could be imputed from the ACON Defendants' designees on Funko's board (Defendants Brotman, Dellomo, and Kriger), the CAC's allegations do not support an inference of scienter with respect to those individuals.

Notably, Plaintiffs fail to point to any allegation from a CW indicating that the ACON Defendants or their board designees knew that Funko would miss its FY2019 sales projection. With respect to inventory, Plaintiffs fail to point to any CW allegation that Messrs. Brotman, Dellomo, or Kriger were involved in Funko's inventory accounting or disclosures.[1] Instead, Plaintiffs rely solely on CW2's allegation that excess inventory was a topic at Funko's quarterly board meetings. *See* Opp. 23 (citing CAC ¶ 81). This lone, vague allegation falls far short of supporting an inference of scienter, for several reasons.

---

[1] *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1024 (9th Cir. 2005) (holding that complaint failed to establish scienter as to outside director and finding it important that "there is nothing to suggest [the director] was involved in the day-to-day operations of [the company], much less heavily involved in the details and personally directing the accounting irregularities").

*First*, CW2 does not identify the specific quarterly board meetings at which the discussion about "excess inventory" allegedly occurred. CW2's two-plus year tenure (May 2017 through July 2019) does little to narrow the realm of possible meetings, except to rule out any board meetings after July 2019 (and thus any board meetings during the class period). *See* CAC ¶¶ 61, 81.

*Second*, CW2 does not indicate that the directors appointed by the ACON Defendants were present at particular board meetings. Rather, CW2 merely alleges that *unnamed* board members attended. Despite singling out Defendants Mariotti, Nickel, and Perlrmutter, CW2 makes no mention of Messrs. Brotman, Dellomo, or Kriger. *See* CAC ¶¶ 81, 162.

*Third*, CW2 provides no specifics about what was supposedly said at the quarterly board meetings about "excess inventory." *See Hammer v. Frontier Fin. Corp.*, No. C10-643 JCC, 2012 WL 13020032, at *4 (W.D. Wash. Apr. 20, 2012) (discounting CW allegation that "provides the topic of conversation, but none of the necessary particulars"). General knowledge that Funko carried excess inventory does not support an inference of scienter. Since long before the class period, Funko has maintained – and disclosed – "reserves for excess and obsolete inventories." Ex. 13,[2] 2018 Form 10-K, at 80, 92. Funko increased those reserves multiple times, including a $1.4 million increase at year-end 2018 and another increase in August 2019 – all of which were publicly disclosed. *Id.* at 66; CAC ¶ 119.

Indeed, the alleged "misrepresentation" regarding inventory at the heart of Plaintiffs' claim is Defendant Nickel's report that Funko had increased its excess inventory reserves. *See* Opp. 9. Plaintiffs parse Defendant Nickel's statement to allege that he misleadingly attributed the increase to "slower-moving inventory of some old lines" as opposed to a glut of obsolete inventory that would never be sold. *Id.* at 9-10. Yet when alleging what was discussed at the board meetings, Plaintiffs

---

[2] Citations to "Ex. __" refer to exhibits attached to the Declaration of Kevin M. McDonough in Support of Funko Defendants' Motion to Dismiss the Consolidated Amended Complaint.

REPLY IN SUPPORT OF MOTION TO DISMISS CAC
Case No. 2:20-cv-02319-VAP-PJW

do not distinguish between "slower moving inventory" and a glut of obsolete inventory that would never be sold.  Rather, CW2 simply refers to "excess inventory" and the need to clear out warehouses.  *See* CAC ¶ 81.

CW2's lone vague allegation does not support any inference – much less a strong inference – that the ACON Defendants knew as of August 9, 2020, that Funko had a glut of obsolete inventory, beyond what was already captured in Funko's inventory reserves, such that a write-down would become necessary.[3]  Thus, Plaintiffs' CW allegations do not support the required "strong inference of scienter" as to the ACON Defendants.

### 2. The ACON Defendants' Stock Sales Do Not Support a Strong Inference of Scienter.

Despite Plaintiffs' attempts to cast misguided suspicion, the ACON Defendants' stock sales do not themselves support a strong inference of scienter. The ACON Defendants sold only 15.4 percent of their Funko holdings, far less than what courts in this Circuit typically deem suspicious.  *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008) ("We typically require larger sales amounts [than 37%] — and corroborative sales by other defendants — to allow insider trading to support scienter.").  Moreover, the ACON Defendants sold their shares over one month before Funko reported record Q3 2019 sales, and over four months before Funko took an inventory write down and reported that it had missed its Q4 2019 sales projections.

Plaintiffs attempt to rely on *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1232 (9th Cir. 2004), for their argument that when "stock

---

[3] *See Wojtunik v. Kealy*, 394 F. Supp. 2d 1149, 1169 (D. Ariz. 2005) (complaint did not adequately plead scienter as to outside directors where it was missing "factual allegations setting forth what information was presented to the outside directors about any of the alleged misrepresentations, omissions, GAAP violations, etc. that put them on actual or constructive notice of fraudulent activity, *e.g,* facts such as what the audit committee's role was, how many board meetings each outside director attended, when they attended them, what information or reports were provided to them concerning IFC's financial affairs, the contents of such information, etc.").

sales result in a truly astronomical figure, less weight should be given to the fact that they may represent a small portion of the defendant's holdings." *See* Opp. 30.  But *Oracle* involved a unique set of circumstances far different than this case.  In what the Ninth Circuit referred to as a "novel situation," a single individual – the CEO of Oracle – had sold $900 million in Oracle stock.  *Oracle*, 380 F.3d at 1232.  The ACON Defendants' $90 million stock sale here – particularly in the context of institutional investors like the ACON Defendants – does not present the sort of "truly astronomical figure" at issue in *Oracle*.

Moreover, the *Oracle* court did not find that the "astronomical" size of the CEO's stock sale itself created a strong inference of scienter, but rather found scienter based on the totality of the circumstances.  *See id.* at 1234 ("Considered separately, Plaintiffs' allegations may not create a strong inference of scienter.").  In *Oracle*, after five years of not selling any stock, the CEO suddenly sold $900 million worth of shares just one month before Oracle's report of lower-than-expected sales.  *Id.* at 1232.  The complaint in *Oracle* also included several allegations indicating that Oracle's executives knew the company would report lower than expected sales, including improper revenue accounting records and an admission from the CEO that he "love[s] getting involved in every detail of the business" and was heavily involved in deals that fell through.  *See id.* at 1232-34.

In short, *Oracle* involved an "astronomical" and uncharacteristic stock sale, one month before the company reported that it had missed its sales projections, by its admittedly hands-on CEO who was himself heavily involved in sales that fell through.  Here, the ACON Defendants – investors that Plaintiffs do not allege had any actual involvement in Funko's accounting, inventory management, or sales forecasting – sold their shares over four months before Funko reported an inventory write down and lower than expected sales.  *Oracle* does not support scienter with respect to the ACON Defendants.

REPLY IN SUPPORT OF MOTION TO DISMISS CAC
Case No. 2:20-cv-02319-VAP-PJW

Plaintiffs also attempt to support scienter based on a claim that this stock sale was the "ACON Defendants' first sale ever." *See* Opp. 30. But this argument is a red herring because Plaintiffs make no such allegation in the CAC. *See Zucco*, 552 F.3d at 1005 ("For individual defendants' stock sales to raise an inference of scienter, plaintiffs must provide a 'meaningful trading history' for purposes of comparison to the stock sales within the class period."). In any event, given Funko's recent IPO (less than two years before the class period), an allegation that this was the ACON Defendants' first sale would not support an inference of scienter. *See* CAC ¶¶ 46, 205; *Curry v. Yelp Inc.*, No. 14-CV-03547-JST, 2015 WL 1849037, at *13 (N.D. Cal. Apr. 21, 2015) (lack of trading history due to recency of IPO – 19 months before class period – foreclosed finding that sales were out of line with prior trading practices).

Plaintiffs reliance on *In re Secure Computing Corp. Sec. Litig.*, 184 F. Supp. 2d 980 (N.D. Cal. 2001), is also misplaced. *See* Opp. 30. In that case, all of the individual defendants – six officers on the company's executive committee – suddenly sold stock for the first time. *In re Secure Computing*, 184 F. Supp. 2d at 983, 990. In the course of approximately one month, the defendants announced that the company was in line to meet its revenue projections, sold a majority of the shares at issue, and then announced revenues of just over half of what was previously expected. *Id.* at 990. The court found the stock sales suspicious based on the "timing of these sales combined with the unrebutted assertion that they were the first sales of any stock by *any of the individual Defendants*," noting in particular the coordination of the sales between the six officers. *Id.* (emphasis added).

Contrary to Plaintiffs' suggestion, this case bears little resemblance to *Secure Computing*. The ACON Defendants are not Funko officers, and Plaintiffs do not allege the sort of coordinated first-time officer sales that raised the court's suspicion in *Secure Computing*. Multiple Funko officers (including Funko's CFO) did not sell any stock during the class period, both officers who did sell stock had already sold

stock before the class period, and one of the officers sold only pursuant to a Rule 10b5-1 trading plan.  *See* CAC ¶ 164; Ex.4, A. Perlmutter Holdings Analysis Appendix.  Moreover, all of the stock sales at issue in this case occurred more than four months before Funko's alleged corrective disclosures.  *See* CAC ¶¶ 173, 203, 205, 210.

### 3. Viewed Holistically, Plaintiffs' Allegations Fail to Create a Strong Inference of Scienter as to the ACON Defendants.

Viewed holistically, the CAC falls far short of establishing a strong inference of scienter as to the ACON Defendants.  Plaintiffs rely almost entirely on the ACON Defendants' stock sales, which are not suspicious in either timing or amount.  Moreover, Plaintiffs do not allege that the ACON Defendants made any misrepresentations or were otherwise involved in Funko's inventory disclosures and sales forecasts, further dispelling any inference of scienter.  *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1094 (9th Cir. 2002) (fact that chairman was "not alleged to have uttered a word, or have participated in preparing statements, during the entire class period" helped dispel any inference of fraud as to the chairman's stock sales); *see Daou*, 411 F.3d at 1024 (complaint failed to establish scienter against director based on suspicious stock sales where "there [was] nothing to suggest [the director] was involved in the day-to-day operations of Daou, much less heavily involved in the details and personally directing the accounting irregularities").

Accordingly, Count I should be dismissed with respect to the ACON Defendants.

### II. PLAINTIFFS FAIL TO STATE A SECTION 20(a) CLAIM AGAINST THE ACON DEFENDANTS FOR CONTROL PERSON LIABILITY

Plaintiffs' Section 20(a) claim fails for two independent reasons: (1) Plaintiffs fail to plead a primary violation by Funko,[4] and (2) Plaintiffs do not adequately

---

[4] The ACON Defendants join and incorporate by reference the Funko Defendants' Reply in Support of their Motion to Dismiss.

allege that the ACON Defendants controlled Funko with respect to any of the alleged primary violations.

Plaintiffs contend that the ACON Defendants' control over Funko can be imputed from Defendants Brotman, Dellomo, and Kriger based on respondeat superior liability. *See* Opp. 33 n.35. However, the case Plaintiffs cite, *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015), concerns respondeat superior liability for a *primary* violation of the Exchange Act. Here, Plaintiffs attempt to stack respondeat superior liability on top of a Section 20(a) claim, which is itself already a form of secondary liability. Even if this were permissible – and Plaintiffs cite no case indicating that it is – Plaintiffs' allegations still do not support imputing control to the ACON Defendants, for two reasons.

*First*, the CAC does not sufficiently allege that Messrs. Brotman, Dellomo, or Kriger controlled Funko. Plaintiffs cannot meet their burden by merely pointing to these individuals' status as directors of Funko, and the CAC is devoid of any allegations demonstrating that Messrs. Brotman, Dellomo, or Kriger were involved in Funko's day-to-day affairs. *See Arthur Children's Tr. v. Keim,* 994 F.2d 1390, 1396 (9th Cir. 1993) ("A director is not automatically liable as a controlling person."); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 258 F. Supp. 3d 1037, 1048 (N.D. Cal. 2017) (dismissing Section 20(a) claim against chairman of management board where there were no allegations supporting that the chairman was active in the day-to-day affairs of the corporation).

*Second*, the CAC does not plead facts demonstrating that the ACON Defendants controlled Messrs. Brotman, Dellomo, and Kriger in their capacities as directors of Funko. *See Silsby v. Icahn*, 17 F. Supp. 3d 348, 371 (S.D.N.Y. 2014) (allegation that "Icahn employed the two individuals that he nominated to" the board of directors "lends no support to the plaintiffs' allegation that Icahn exercised control over primary violators because" the two nominees "were not working within the scope of their employment for Icahn when acting in their capacity as" directors); *In*

*re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 676 (N.D. Tex. 2013) ("[T]he Court . . . cannot assume that Warburg's and Blackstone's designees on the Kosmos Board of Directors were acting on behalf of Warburg and Blackstone in their capacity as Kosmos directors.").

Plaintiffs' direct allegations of control against the ACON Defendants do not fare any better. Plaintiffs point to a generic statement in Funko's IPO that the ACON Defendants "will have significant influence over [Funko] . . . including over decisions that require the approval of the stockholders." Opp. 34. But the primary violations alleged in the CAC concern Funko's inventory accounting and sales forecasts, not matters that require the approval of stockholders.

Plaintiffs allege that in 2015, Defendant Brotman stated that he viewed the ACON Defendants as a partner to Funko. *See* Opp. 35 (citing CAC ¶ 45). But this innocuous alleged statement from *four years before the class period* does not support the inference that the ACON Defendants controlled Funko at the time of the alleged Section 10(b) violations.

Plaintiffs further attempt to rely on a claim that the ACON Defendants "held a majority of [Funko's] Class A shares." Opp. 35. This is false,[5] but it is also beside the point. Class A shares and Class B shares are both voting shares with equal voting power. *See* Ex. 33, Supplemental Prospectus, at S-13. In terms of voting power – the obvious data point for control – the ACON Defendants were minority shareholders. Minority stock ownership, even if substantial, is not itself sufficient to plead control. *See Brasher v. Broadwind Energy, Inc.*, No. 11 CV 991, 2012 WL 1357699, at *12 (N.D. Ill. Apr. 19, 2012) (47.7 percent stock ownership and "general statements contained in the 2008 Form 10–K that Tontine 'influences [Broadwind's] affairs significantly'" were insufficient to plead control); *Kuhns v. Ledger*, 202 F.

---

[5] The Prospectus indicates that the ACON Defendants would collectively own 55% of Class A shares if they converted all of the FAH common units to Class A Funko shares, cancelled all of their Class B Funko shares, and – critically – no other shareholder converted their FAH common units to Class A Funko shares. *See* Ex. 33 at 32-33. The ACON Defendants did not, as Plaintiffs state, hold 55% of Funko's Class A shares.

REPLY IN SUPPORT OF MOTION TO DISMISS CAC
Case No. 2:20-cv-02319-VAP-PJW

Supp. 3d 433, 440 (S.D.N.Y. 2016) (47% stock ownership alone insufficient to plead control). The cases cited by Plaintiffs are inapposite.[6]

Finally, Plaintiffs point to the ACON Defendants' power to appoint three of the eight members of Funko's board. *See* Opp. 34. For the same reason minority stock ownership alone does not entail control, however, neither does the ability to appoint a minority of the board. Critically, the CAC does not plead facts demonstrating that the ACON Defendants' three board designees had any control over Funko's inventory disclosures and sales forecasting. *See In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1202 (D. Or. 2015) (dismissing § 20(a) claim where plaintiffs did "not sufficiently allege that Galena or its personnel had control over DreamTeam's day-to-day operations, management, policies, or decisions with respect to the promotional scheme").

Accordingly, Count II should be dismissed with respect to the ACON Defendants.

## III. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE ACON DEFENDANTS FOR INSIDER TRADING UNDER SECTION 20A

To sustain a Section 20A claim against the ACON Defendants, Plaintiffs must first plead a predicate violation of the Exchange Act by the ACON Defendants. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 (9th Cir. 2002) ("[T]o prevail on their claims for violations of § 20(a) and § 20A, plaintiffs must first allege a violation of § 10(b) or Rule 10b-5."). Far from being "inconsequential," as Plaintiffs state, *see* Opp. 33 n.35, Plaintiffs' failure to adequately allege a Section 10(b) violation by the ACON Defendants is fatal to their Section 20A claim against the ACON Defendants.

---

[6] *See No. 84 Employer-Teamster v. America West Holding*, 320 F. 3d 920, 945-46 (9th Cir. 2003) (control defendants, who allegedly joined forces, together held approximately 57.4% of the total voting power and the ability to appoint a majority of the board of directors); *In re Am. Apparel, Inc. S'holder Litig.*, No. CV1006352MMMRCX, 2013 WL 10914316, at *36 (C.D. Cal. Aug. 8, 2013) (defendant's board designees signed the allegedly misleading report at issue).

In addition, Plaintiffs do not allege with particularity that the ACON Defendants actually possessed material, nonpublic information at the time of the stock sales. Plaintiffs assert that the knowledge of the ACON Defendants' appointees to the Funko board can be imputed to the ACON Defendants, but the CAC does not support the inference that the appointees themselves possessed material nonpublic information at the time of the sales.

In their Opposition, Plaintiffs claim that "[t]he CAC clearly alleges that the Board was kept abreast of all financial information about Funko, including, specifically, inventory and sales figures." Opp. 36 (citing CAC ¶¶ 81, 197). But the CAC does no such thing. Plaintiffs do not point to any allegations supporting the inference that the board generally – much less the ACON Defendants' designees specifically – were aware of any problems with Funko's sales forecasts at the time of the stock sales. With respect to inventory, Plaintiffs merely point to CW2's vague assertion that "excess inventory" was a repeated topic at quarterly board meetings. As explained in Section I.B.1 *supra*, this lone allegation does not support a strong inference that the board members designated by the ACON Defendants possessed material, nonpublic information at the time of the ACON Defendants stock sales.[7] *See Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 610 (9th Cir. 2014) (upholding dismissal of § 20A insider trading claim because the "alleged material, non-public information is the same information at issue in the" deficient § 10(b) misrepresentation claim).

Accordingly, Count III should be dismissed as to the ACON Defendants.

---

[7] Plaintiffs imply that Section 20A claims are subject to a lesser pleading standard. *See* Opp. 36 (distinguishing *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, (N.D. Cal. 2004) because it "does not address 20A claims"). However, whether in the context of a 10(b) claim or a 20A claim, possession of material, nonpublic information (*i.e.,* knowledge) is a state of mind element subject to both the particularity and strong inference requirements of the PSLRA. *See* 15 U.S.C. § 78u-4(b)(2)(A); *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1152 (C.D. Cal. 2007) (dismissing § 20A claim because plaintiffs had failed to plead with sufficient particularity that defendant "traded on material nonpublic information").

### IV.    ALL CLAIMS AGAINST ACON INVESTMENTS, LLC SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NAMED THE WRONG CORPORATE DEFENDANT

Plaintiffs appear to concede that the CAC erroneously named ACON Investments, LLC, but they also assert that this entity "announced the purchase of Funko and claims the property on its website." *See* Opp. 34 n.37. To the extent Plaintiffs still intend to assert claims against ACON Investments, LLC, these new assertions are (1) not alleged in the CAC and (2) do not support any claims against ACON Investments, LLC.

Thus, even if the CAC stated a claim against any of the other ACON Defendants – and it does not – Plaintiffs still fail to state a cognizable claim against ACON Investments, LLC.

### CONCLUSION

For the reasons set forth above, as well as in their opening memorandum, the ACON Defendants respectfully request that the Consolidated Amended Complaint be dismissed as to the ACON Defendants.

Respectfully submitted,

Dated:  December 30, 2020

ESKOVITZ LAW

By:  /s/ Sean Eskovitz
　　　Sean Eskovitz
　　　(State Bar No. 241877)
　　　1217 Wilshire Blvd, # 3683
　　　Santa Monica, CA 90403
　　　Tel: +1.323.821.5836
　　　E-mail:  seane@eskovitz.com

AEGIS LAW GROUP LLP

　　　Michael K. Ross
　　　(*pro hac vice forthcoming*)
　　　Sean M. Roberts
　　　(*pro hac vice forthcoming*)
　　　Market Square West, Suite 740
　　　801 Pennsylvania Avenue, N.W.
　　　Washington, D.C. 20004
　　　Tel:  +1.202.737.3500
　　　E-mail:  mross@aegislawgroup.com
　　　E-mail:  sroberts@aegislawgroup.com

*Counsel for ACON Investments, L.L.C.,
ACON Funko Manager, L.L.C., ACON
Funko Investors, L.L.C., ACON Funko
Investors Holdings 1, L.L.C., ACON
Funko Investors Holdings 2, L.L.C.,
ACON Funko Investors Holdings 3,
L.L.C., and ACON Equity GenPar, L.L.C.*

REPLY IN SUPPORT OF MOTION TO DISMISS CAC
Case No. 2:20-cv-02319-VAP-PJW