LATHAM & WATKINS LLP
  Benjamin A. Naftalis (*pro hac vice*)
  *benjamin.naftalis@lw.com*
  Kevin M. McDonough (*pro hac vice*)
  *kevin.mcdonough@lw.com*
885 Third Avenue
New York, New York  10022-4834
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864

LATHAM & WATKINS LLP
  Meryn C. N. Grant (State Bar No. 291315)
  *meryn.grant@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, California  90071-1560
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

Attorneys for the Funko Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO FERREIRA, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FUNKO, INC., BRIAN MARIOTTI, RUSSELL NICKEL, ANDREW PERLMUTTER, JENNIFER FALL JUNG, KEN BROTMAN, GINO DELLOMO, ADAM KRIGER, ACON INVESTMENTS, L.L.C., ACON FUNKO MANAGER, L.L.C., ACON FUNKO INVESTORS, L.L.C., ACON FUNKO INVESTORS HOLDINGS 1, L.L.C., ACON INVESTORS HOLDINGS 2, L.L.C., ACON INVESTORS HOLDINGS 3, L.L.C., and ACON EQUITY GENPAR, L.L.C., <br><br> Defendants. | Case No. 2:20−cv−02319−VAP−PJW <br><br> **FUNKO DEFENDANTS' SUPPLEMENTAL REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT** <br><br><br> Hearing Vacated |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' SUPPLEMENTAL REPLY
IN SUPPORT OF THEIR MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bodri v. GoPro, Inc.*,
   252 F. Supp. 3d 912 (N.D. Cal. 2017)...........................................................4, 5

*In re Cisco Sys. Inc. Sec. Litig.*,
   2013 WL 1402788 (N.D. Cal. Mar. 29, 2013) .....................................................5

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010) ............................................................................1

*In re Skechers U.S.A., Inc. Sec. Litig.*,
   2005 WL 8168047 (C.D. Cal. Mar. 21, 2005), *aff'd*, 273 F. App'x
   626 (9th Cir. 2008) ..............................................................................................5

*Waterford Twp. Police v. Mattel, Inc.*,
   321 F. Supp. 3d 1133 (C.D. Cal. 2018), *aff'd*, 794 F. App'x 669
   (9th Cir. 2020) .....................................................................................................1

*Wozniak v. Align Tech., Inc.*,
   2011 WL 2269418 (N.D. Cal. June 8, 2011) .......................................................2

*Yanek v. Staar Surgical Co.*,
   388 F. Supp. 2d 1110 (C.D. Cal. 2005)...............................................................4

## STATUTES

15 U.S.C. § 78u-5(c)(1)(A)-(B).................................................................................1

L A T H A M & W A T K I N S LLP
ATTORNEYS AT LAW
LOS ANGELES

i

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' SUPPLEMENTAL REPLY
IN SUPPORT OF THEIR MOTION TO DISMISS

In accordance with the Court's order dated January 12, 2021 (ECF No. 130), the Funko Defendants hereby submit this supplemental reply in further support of their motion to dismiss and in response to the newly-advanced argument in Plaintiffs' corrected opposition (ECF No. 131, "Corr. Opp.") regarding the PSLRA safe harbor for forward-looking statements.[1]

## I. ARGUMENT

In their prior briefing, Plaintiffs argued that the October 31, 2019 statements by Defendants Funko and Jung reiterating Funko's 2019 sales projections were made with "actual knowledge of falsity" and, as a consequence, are not protected by the PSLRA safe harbor for forward-looking statements. (ECF No. 123, at 20). The allegations in the CAC are insufficient to satisfy the PSLRA's demanding "actual knowledge of falsity" requirement, Mot. 11-14; Reply 5-7, but such a showing would not defeat the safe harbor for forward-looking statements in any event, 15 U.S.C. § 78u-5(c)(1)(A)-(B). To the contrary, to avoid the safe harbor, Plaintiffs must demonstrate *both* that the October 31 sales projections were made with actual knowledge of falsity and that the statements were not accompanied by meaningful cautionary language. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1113 & n.5 (9th Cir. 2010) (holding that the PSLRA safe harbor "should be read in the disjunctive"); *Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1149-50 (C.D. Cal. 2018) (safe harbor applies when forward-looking statements are accompanied by "meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement[s]"), *aff'd*, 794 F. App'x 669 (9th Cir. 2020).[2]

---

[1] Unless otherwise stated, capitalized terms have the meanings set forth in Defendants' motion (cited as "Mot.") to dismiss the CAC (cited as "¶") or their reply in support of that motion (cited as "Reply"), quotation marks are omitted, emphasis is added, and citations to "Ex." refer to exhibits attached to the Declaration of Kevin M. McDonough, submitted with the motion.

[2] It is undisputed that the October 31 projections were identified as forward-looking and expressly subject to Funko's extensive risk factor disclosures. *See* Mot. 12; Corr. Opp. 20-21; *see also* Ex. 27, Q3 2019 Form 8-K at 7-8; Ex. 28, Q3 2019 Earnings Call Tr. at 4.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES

1

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' SUPPLEMENTAL REPLY
IN SUPPORT OF THEIR MOTION TO DISMISS

Plaintiffs now argue in the corrected opposition that the cautionary language accompanying the October 31 sales projections was not meaningful. Corr. Opp. 17, 20-22; ¶¶ 129-30, 133. They are wrong. Cautionary language is "meaningful" for purposes of the safe harbor where it warns of the risks that allegedly materialize, resulting in the purported losses. *See Wozniak v. Align Tech., Inc.*, 2011 WL 2269418, at *7 (N.D. Cal. June 8, 2011); Mot. 12. The risk disclosures accompanying the October 31 sales projections warned investors that Funko could experience "reduced sales" due to "underperformance" of products tied to movie franchises and developed "before demand for the underlying content is known;" that a weak holiday season could have a disproportionate impact on total sales due to the "seasonal nature" of Funko's business; and that Funko could experience potentially "significant[]" quarterly and yearly fluctuations in sales owing to shifts in the "popularity" of relevant content from period to period. Ex. 26, Q3 2019 Form 10-Q at 42, 45-46. That cautionary language is unquestionably meaningful because it warned of precisely the type of risks that unfortunately materialized in Funko's disappointing fourth quarter sales: (i) "lower than expected purchases among Funko's top customers throughout the holiday season;" (ii) "softness in sales related to certain tentpole movie releases," which had "underperformed;" and (iii) "difficult comparisons to [the videogame] *Fortnite*," which had been "a significant sales driver" in the fourth quarter of 2018. ¶¶ 138-40, 148, 151-52, 155; *see Wozniak*, 2011 WL 2269418, at *7.

Notwithstanding the direct connection between the warned-of risks and the factors that allegedly caused Plaintiffs' losses, Plaintiffs offer three arguments challenging the adequacy of Funko's cautionary language under the PSLRA. Corr. Opp. 20-22. All three of those arguments fail.

*First*, Plaintiffs try to recast an "actual knowledge of falsity" argument as a basis for challenging the adequacy of Funko's risk disclosures. Specifically, they argue that, according to CW1, there was insufficient demand for products tied to the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

CASE NO. 2:20-cv-02319-VAP-PJW
FUNKO DEFENDANTS' SUPPLEMENTAL REPLY
IN SUPPORT OF THEIR MOTION TO DISMISS

fourth quarter movie releases for Funko to reach its 2019 sales projections, and that Funko should have warned investors accordingly. *Id.* at 20.[3] But there are no particularized allegations in the CAC that management shared CW1's view, and moreover, there is no requirement that Funko disclose, as a risk factor or otherwise, that an employee does not share management's optimism or expectations regarding the demand that ultimately will be generated by as-yet-unreleased movies. Mot. 13-14; Reply 6-7. In any event, Funko did warn investors specifically that:

> . . . the success of the underlying content has a critical impact on the level of consumer interest in the associated products we are offering. . . . If the performance of one or more of such movie franchises failed to meet expectations or if there was a shift in consumer tastes away from such franchises generally, our results of operations could be adversely affected. . . . Additionally, we have no guarantee that any particular property we license will translate into a successful product. *Products tied to a particular content release may be developed and released before demand for the underlying content is known. The underperformance of any such product may result in reduced sales and operating profit for us.*

Ex. 26, Q3 2019 Form 10-Q at 42. That disclosure put investors on notice of precisely one of the risks that later materialized in Plaintiffs' alleged losses: notwithstanding Funko's high expectations for products developed in anticipation of the major fourth quarter 2019 movies (*Star Wars* and *Frozen 2*), when the movies were released, enthusiasm for the related products did not match Funko's expectations, and that in turn resulted in reduced sales.

*Second*, and relatedly, Plaintiffs contend the risk that the fourth quarter tentpole movie releases would not generate the necessary sales for Funko to meet its fourth quarter projections somehow had materialized one month into the fourth quarter and *before* those movies were released. Corr. Opp. 21. This illogical argument depends solely on the existence of vague references to "internal sales

---

[3] To the extent that Plaintiffs attempt to twist CW1's alleged pessimism regarding the strength of the content into a theory that Funko lacked enough product (*i.e.*, inventory) to achieve the projected sales, their own pleading asserts that the Company had a *surplus* of inventory, not a shortage. *E.g.*, ¶ 58; *see also* Reply 6.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES

3

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' SUPPLEMENTAL REPLY
IN SUPPORT OF THEIR MOTION TO DISMISS

data," which the CAC never describes with particularity, nor makes any attempt to quantify. *See id.*; Mot. 12-14; Reply 6-7. This is no technical pleading defect: with two months to go in the crucial holiday shopping season, and with the movies in question weeks away from release, the risk could not possibly have materialized unless the sales data definitively showed that any alleged sales gap was insurmountable. The CAC lacks the particularized facts (or indeed, any facts) necessary to make that showing.[4] *See Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 925, 931-32 (N.D. Cal. 2017) (rejecting notion that sales "had already collapsed to the point [p]laintiff implies" where plaintiff "failed to provide any content" of the alleged sales data). The risk associated with products based on future content was in the future, and Funko disclosed the risk that enthusiasm for products based on future content may not materialize as expected, which in turn could cause lower-than-expected sales. Ex. 26, Q3 2019 Form 10-Q at 42.

*Lastly*, Plaintiffs claim that Funko's cautionary language about the "seasonal nature" of its business was "boilerplate" and, thus, not meaningful. Corr. Opp. 21-22. But as Plaintiffs' own authority makes clear, "boilerplate" risk disclosures are those that describe risks "so broad that they apply to any business that sells products to consumers." *See id.* (citing *Yanek v. Staar Surgical Co.*, 388 F. Supp. 2d 1110, 1123 (C.D. Cal. 2005)). By contrast, Funko's seasonality disclosures warned investors that, due to the nature of Funko's products, its sales performance depends heavily on the holiday season. Ex. 26, Q3 2019 Form 10-Q at 45. And Funko's cautionary language regarding the specific seasonality of its business put investors on notice of the risk that underperformance during the holiday season could have an outsized impact on the Company's yearly sales performance—which is exactly what

---

[4] For instance, Plaintiffs claim that "customers placed fourth quarter orders in August and September." Corr. Opp. 19 (citing ¶ 96). Even if that were true, Plaintiffs never allege that customers could not reorder or renew during the quarter (and in practice, that is what they did).

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

4

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' SUPPLEMENTAL REPLY
IN SUPPORT OF THEIR MOTION TO DISMISS

happened here. *Id.*; ¶¶ 138, 148, 151-52.[5]  Moreover, the mere fact that the subject matter of the risk disclosure—*e.g.*, seasonality of sales—might apply to other companies does not render the disclosure insufficiently meaningful to trigger safe harbor protection.  *See, e.g.*, *GoPro*, 252 F. Supp. 3d at 931 (warnings about below-forecast sales "during the holiday season"); *In re Cisco Sys. Inc. Sec. Litig.*, 2013 WL 1402788, at *16 (N.D. Cal. Mar. 29, 2013) (warning about the "negative impact" of "the seasonality of some of our businesses" on gross margin); *In re Skechers U.S.A., Inc. Sec. Litig.*, 2005 WL 8168047, at *5 (C.D. Cal. Mar. 21, 2005) (warnings about "the importance of the back-to-school and holiday shopping seasons"), *aff'd*, 273 F. App'x 626 (9th Cir. 2008).

## II.    CONCLUSION

For these reasons, as well as the reasons detailed in the Funko Defendants' motion and reply, the CAC should be dismissed as to the Funko Defendants.

Dated:  January 22, 2021                Respectfully submitted,

                                        **LATHAM & WATKINS LLP**

                                        By:  */s/* Kevin M. McDonough
                                             Kevin M. McDonough

                                        *Attorneys for the Funko Defendants*

---

[5] Plaintiffs do not contest that the "seasonal nature" of its business leaves Funko more exposed than other businesses to the risk that holiday sales will not materialize, nor do they dispute that this was the risk that materialized.  *See* Mot. 5-6, 12; Corr. Opp. 20-22.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' SUPPLEMENTAL REPLY
IN SUPPORT OF THEIR MOTION TO DISMISS