**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Co-Lead Counsel for*
*Lead Plaintiffs*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO FERREIRA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FUNKO, INC., et al.,<br><br>Defendants. | Case No. 2:20-cv-02319-VAP-PJW |

## LEAD PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

Lead Plaintiffs Abdul Baker, Zhibin Zhang, and Huaiyu Zheng ("Plaintiffs") submit this Supplemental Brief in support of their opposition to the Funko Defendants' and ACON Defendants' (collectively "Defendants") motions to dismiss the Consolidated Amended Complaint ("CAC"), addressing the Ninth Circuit's decision in *Kurt Friedman, et al. v. Tesla, Inc., et al.,*   No. 19-15672, (9th Cir. Jan. 26, 2021), ECF No. 133 ("*Tesla*").

The Ninth Circuit's decision in *Tesla* is completely distinguishable from this case because, unlike what the *Tesla* plaintiffs lacked, (1) Plaintiffs here have adequately pled that Funko's forward-looking statements were not accompanied by meaningful cautionary language; and (2) Plaintiffs here have adequately pled facts showing that Defendants' Class Period statements concerning the Company's FY2019 sales projections and inventory disclosures were false and misleading.

## I.   *TESLA* CONFIRMS THAT DEFENDANTS' CAUTIONARY LANGUAGE WAS NOT MEANINGFUL

The Ninth Circuit's discussion concerning the adequacy of Tesla's cautionary language actually confirms that Funko's cautionary language, by contrast, was not meaningful and therefore does not insulate Defendants' forward-looking statements.  *Tesla* at 22; Lead Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint (Jan. 14, 2021), ECF. No. 131, at 20-22 (the "Corrected Opp'n").  The plaintiffs in *Tesla* alleged that the defendants misled investors about Tesla's progress in building production capacity for the Model 3 electric vehicle, by misrepresenting that the company was on track to meet the production goal of 5,000 vehicles per week by the end of 2017 when they knew that goal was unachievable.  *Tesla* at 5.  In contrast to Defendants' alleged cautionary language here, Tesla's cautionary language spoke directly to the plaintiffs' alleged fraudulent misstatements.  For example, at the time Tesla communicated its production goal to the market it also warned of "significant delays or other complications" that it had experienced in the past when producing a new vehicle and warned it may experience similar

delays in production of the Model 3. *Id*. at 4-5. Tesla also specifically warned that it had "no experience to date in manufacturing vehicles at such a high volume." *Id* at 5.[1]

By contrast, Funko's cautionary language – which merely warned that sales could underperform because the Company develops products before they know what the demand will be – failed to speak to the risk that CW1 warned of throughout the Class Period – that there may not be enough product tied to releases to generate projected sales.[2]  ¶¶ 95, 96, 100, 131.  The CAC sets forth facts showing that Defendants' FY2019 guidance was unachievable because there were not enough products tied to Funko's fourth quarter releases to meet the projections.  *Id*.  Moreover, CW1 was actually employed during the Class Period (unlike the former employees relied upon by the plaintiffs in *Tesla*) and was personally responsible for analyzing Funko's internal customer sales data and developing Company-wide sales forecasts based on that data. ¶ 56.  Finally, CW1 actually reported the shortfall between the Company's projected sales guidance and the internal customer sales data to Defendants on a weekly basis during the Class Period, starting in late August 2019.  ¶¶ 97-99.

Defendants' failure to warn of the risk that CW1 alleged materialized – that there may not be enough product tied to releases to generate projected sales – distinguishes this case from *Tesla* and renders Funko's cautionary language not meaningful.[3]

## II.    PLAINTIFFS HAVE PLED FACTS SHOWING FALSITY

---

[1] Because the plaintiffs in *Tesla* asserted that the alleged false and misleading statements at issue were not forward-looking statements, they did not challenge the adequacy of Tesla's cautionary language.  *Tesla* at 22.

[2] *See* Funko Defendants' Motion to Dismiss (ECF No. 116) (Oct. 2, 2020) at 12 (setting forth Funko's purported cautionary language).

[3] *Tesla* did not address whether cautionary language relating to risks that have already transpired or boilerplate warnings are meaningful.  Accordingly, Plaintiffs' arguments on these points are unaffected by *Tesla. See* Corrected Opp'n at 21-22.

LEAD PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT- Case No. 2:20-cv-02319-VAP-PJW

The factual allegations set forth in the CAC meet the falsity elements set forth in *Tesla*.  For example, the Ninth Circuit held that the plaintiffs in *Tesla* failed to allege any facts supporting their allegation that the defendants knew it was impossible to achieve the company's goal of mass-producing 5,000 Model 3 cars per week in 2017.  *Tesla* at 23.  Importantly, neither of the two former Tesla employees who allegedly told the defendants that the goal was impossible to achieve worked at Tesla during the Class Period – ***both left Tesla one year prior to the first alleged false and misleading statements***  .    Accordingly, the Ninth Circuit found that the plaintiffs had failed to plead facts showing the defendants ever shared or accepted the former employees' views.  *Id*.

Here, the CAC contains detailed factual allegations that CW1, Funko's then-Director of Merchandise and Planning, repeatedly advised Defendants throughout the Class Period that Funko would not meet its 4Q2019 sales targets in person at weekly sales meetings (attended by Defendant Jung), through emails summarizing each meeting (sent to Defendant Mariotti), and in monthly investment meetings (attended by Defendant Mariotti). ¶¶ 97-103; *see also* Corrected Opp'n at 14-19. Specifically, CW1 told Defendants that Funko's 4Q2019 sales projections were unrealistic based on the Company's sales data because the Company did not have enough new products to meet the sales goal and customer demand was lower than what the Defendants had anticipated.  ¶ 100.

Further, unlike *Tesla*, the CAC alleges facts showing that Defendant Jung actually accepted CW1's warning that there was a shortfall between the internal sales data and the projected guidance and thus, did not "honestly" believe that the guidance would be met.  *See* ¶  100; *compare Tesla*  at 23. Specifically, in response to being told by CW1 that the Company did not have enough new products to meet its 4Q2019 sales projections, Defendant Jung acknowledged the sales shortfall was real by conceding that "we need to fix the shortfall." ¶ 100. CW1 told Defendant Jung  that  fixing  the  shortfall  was  impossible short  of

LEAD PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT- Case No. 2:20-cv-02319-VAP-PJW

"making up another movie," which was not possible. *Id*. The plaintiffs in *Tesla*, failed to make a similar showing since the former employees that allegedly warned the defendants that their goal was impossible were not employed at Tesla during the class period and are not alleged to have had any contact with the defendants during the class period. *Tesla* at 23.

Lastly, *Tesla* further confirms that Defendants' opinion statements are actionable because they were misleading. "[A] reasonable investor may . . . understand an opinion statement to convey facts about how the speaker formed the opinion—or, otherwise put, about the speaker's basis for holding that view" and when that that opinion conflicts with facts that are not provided, the investors can be misled. *See Tesla* at 12 (quoting *Omnicare, Inc. v. Laborers Dist. Council Constr. Ind. Pension Fund*, 575 U.S. 175, 188 (2015)). Here, Defendants' opinion statements about Funko's FY2019 sales projections did not comport with the Company's internal sales and customer order data. *See* ¶¶ 56, 93, 97-103. Because a reasonable investor would expect when a Company is projecting future sales that those projections are supported by underlying sales, Defendant's guidance statements are actionable.

## III. *TESLA* ILLUSTRATES THAT DEFENDANTS' INVENTORY RISK DISCLOSURES WERE ALSO FALSE AND MISLEADING

The Ninth Circuit's discussion of whether the risk language in *Tesla* constituted a misleading omission further confirms that Funko's inventory risk disclosures were false and misleading. *See Tesla* at 27; Corrected Opp'n at 12-13. Funko's risk statements with respect to the accumulation of excess inventory misleadingly represented that the risks had not yet materialized. *See* ¶ 122, 136 ("*we must avoid* accumulating excess inventory," "if demand or future sales do not reach forecasted levels, we *could* have excess inventory that we *may* need to hold for a long period of time, write down, sell at prices lower than expected or discard"). In reality, numerous CWs reported that Funko's inability to accurately forecast customer demand had already resulted in millions of units of excess inventory. *See* ¶¶ 58, 60-63, 65-68, 69, 71, 75, 77, 79, 80, 83-88, 137, 162.

4

While the plaintiffs in *Tesla* similarly argued that by failing to disclose that some of the production risks that the company warned of had already happened, Tesla's risk language constituted misleading omissions, the Ninth Circuit disagreed. *See T esla* at 27. The Ninth Circuit found that the challenged statements in *Tesla* "contained no explicit or implicit representation that Tesla had *not* already experienced such issues" and noted that one of the challenged statements affirmatively acknowledged that Tesla *had* experienced certain challenges. *Id*. Therefore, the statements in *Tesla* are easily distinguishable from the statements in this case, where Funko declared that it "must avoid" accumulating excess inventory, thus implicitly stating the condition had not occurred.

Accordingly, unlike the risk language in *Tesla*, Defendants' inventory risk statements are similar to the misleading omissions at issue in *Berson v. Applied Signal Tech., Inc.* , 527 F.3d 982, 987 (9th Cir. 2008) because Funko's risk language "speaks entirely of as-yet-unrealized risks and contingencies" and "nothing alerts the reader that some of these risks may already have come to fruition." *See* Corrected Opp'n at 9-12. By presenting the risk as a future possibility, instead of a present reality, Defendants created an impression of a state of affairs that differs in a material way from one that exists. *See* Tesla at 27.

## CONCLUSION

*Tesla* confirms that Defendants' motions to dismiss the well-pleaded and factually distinct allegations in the CAC in this case must fail.

DATED: January 29, 2021          Respectfully submitted,

**BERNSTEIN LIEBHARD LLP**

*/s/ Stephanie Beige*
Stanley D. Bernstein
(*pro hac vice* forthcoming)
Stephanie Beige
(admitted *pro hac vice*)

5

LEAD PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT- Case No. 2:20-cv-02319-VAP-PJW

Laurence J. Hasson
(*pro hac vice* forthcoming)
Peter J. Harrington
(*pro hac vice* forthcoming)
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
Email: bernstein@bernlieb.com
beige@bernlieb.com
lhasson@bernlieb.com
pharrington@bernlieb.com


*Co-Lead Counsel for Lead Plaintiffs*

**POMERANTZ LLP**
Jeremy A. Lieberman
(admitted *pro hac vice*)
Cara David
(admitted *pro hac vice*)
600 Third Ave., 20th Fl.
New York, NY 10016
(212) 661-1100
jalieberman@pomlaw.com
cdavid@pomlaw.com


**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email:  jpafiti@pomlaw.com


*Co-Lead Counsel for Lead Plaintiffs*


**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165

6

Telephone: (212) 697-6484
Email: peretz@bgandg.com

*Additional Counsel for Lead Plaintiffs*

LEAD PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT- Case No. 2:20-cv-02319-VAP-PJW