LATHAM & WATKINS LLP
  Benjamin A. Naftalis (*pro hac vice*)
  *benjamin.naftalis@lw.com*
  Kevin M. McDonough (*pro hac vice*)
  *kevin.mcdonough@lw.com*
1271 Avenue of the Americas
New York, New York  10020
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864

LATHAM & WATKINS LLP
  Meryn C. N. Grant (State Bar No. 291315)
  *meryn.grant@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, California  90071-1560
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

Attorneys for the Funko Defendants

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO FERREIRA, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>FUNKO, INC., BRIAN MARIOTTI, RUSSELL NICKEL, ANDREW PERLMUTTER, JENNIFER FALL JUNG, KEN BROTMAN, GINO DELLOMO, ADAM KRIGER, ACON INVESTMENTS, L.L.C., ACON FUNKO INVESTORS, L.L.C., ACON FUNKO INVESTORS HOLDINGS 1, L.L.C., ACON INVESTORS HOLDINGS 2, L.L.C., ACON INVESTORS HOLDINGS 3, L.L.C., and ACON EQUITY GENPAR, L.L.C.,<br><br>                              Defendants. | Case No. 2:20−cv−02319−VAP−PJW<br><br>**FUNKO DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br><u>Hearing</u><br>Date: September 20, 2021<br>Time: 2:00 PM<br>Courtroom: 8A<br>Judge: Hon. Virginia A. Phillips |

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE   that on September 20, 2021 at 2:00 PM in Courtroom 8A of the above-entitled court, located at 350 West 1st Street, Los Angeles, California, Defendants Funko, Inc., Brian Mariotti, Russell Nickel,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO'S NOTICE OF MOTION AND MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT

Andrew Perlmutter, Jennifer Fall Jung, Ken Brotman, Gino Dellomo, and Adam Kriger (the "Funko Defendants") will move for an order dismissing Plaintiffs' Consolidated Second Amended Class Action Complaint ("SAC" or "Second Amended Complaint") for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and the Private Securities Litigation Reform Act.

Plaintiffs fail to state a claim under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 because: (i) Plaintiffs do not adequately plead that the Funko Defendants made a material misrepresentation or omission and (ii) Plaintiffs do not adequately plead that the Funko Defendants acted with scienter.  Absent a predicate violation of the Exchange Act, Plaintiffs' Section 20A claims must necessarily fail and they also cannot establish control-person liability under Section 20(a).

**Compliance with Local Rule 7-3**.  This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on April 30, 2021.  The parties were unable to resolve the issues raised by this motion.

Respectfully submitted,

Dated:  May 7, 2021

**LATHAM & WATKINS LLP**

By:  /s/ Kevin M. McDonough
Benjamin A. Naftalis
(admitted *pro hac vice*)
Kevin M. McDonough
(admitted *pro hac vice*)
1271 Avenue of the Americas
New York, New York  10020
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864
Email: benjamin.naftalis@lw.com
        kevin.mcdonough@lw.com

Meryn C. N. Grant
(State Bar No. 291315)
355 South Grand Avenue, Suite 100
Los Angeles, California  90071
Telephone: +1.213.485.1234

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:20–cv–02319–VAP–PJW
FUNKO'S NOTICE OF MOTION AND MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT

Facsimile: +1.213.891.8763
Email: meryn.grant@lw.com

*Counsel for Funko, Inc., Brian Mariotti,
Russell Nickel, Andrew Perlmutter,
Jennifer Fall Jung, Ken Brotman, Gino
Dellomo, Adam Kriger*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO'S NOTICE OF MOTION AND MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT

# **TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ................................................................. 1

II.  FACTUAL BACKGROUND ................................................................ 3

    A.  The Parties ................................................................................ 3

    B.  Funko's 2019 Sales Forecasts ................................................. 4

    C.  Funko's Inventory Disclosures ................................................ 4

III.  PROCEDURAL HISTORY ................................................................. 6

IV.  APPLICABLE LEGAL STANDARDS ............................................... 6

V.  ARGUMENT ....................................................................................... 8

    A.  The Second Amended Complaint Fails To Plead A Section 10(b) Claim ..................................................................... 8

        1.  Plaintiffs Do Not Allege A Materially False Or Misleading Statement Or Omission ............................ 8

            a.  The October 31, 2019 Guidance Statements Are Non-Actionable Forward-Looking Statements ............................................................... 8

            b.  The October 31, 2019 Guidance Statements Are Non-Actionable Opinions ................................ 11

            c.  Funko's Inventory Statements Are Shielded By The PSLRA Safe Harbor ............................... 12

        2.  The Second Amended Complaint Fails To Plead Scienter As A Matter Of Law ................................... 14

            a.  The CW Allegations Do Not Support A "Strong Inference" Of Scienter ....................... 15

            b.  The Class Period Stock Sales Do Not Establish Scienter ...................................................... 19

    B.  PLAINTIFFS' SECTION 20(A) AND 20A CLAIMS FAIL .................................................................................... 21

CONCLUSION ........................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Adecco S.A.*,
434 F. Supp. 2d 815 (S.D. Cal. 2006) ................................................................20

*City of Dearborn Heights v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ..............................................................................12

*Curry v. Yelp Inc.*,
875 F.3d 1219 (9th Cir. 2017) ...............................................................................7

*In re Downey Sec. Litig.*,
2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ............................................. 10, 19

*Ferreira v. Funko, Inc.*,
2021 WL 880400 (C.D. Cal. Feb. 25, 2021) ...............................................*passim*

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) .................................................................................8

*In re Leapfrog Enter., Inc. Sec. Litig.*,
200 F. Supp. 3d 987 (N.D. Cal. 2016) ................................................................14

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) .................................................................................7

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ...............................................................................7

*Miller v. PCM Inc.*,
2018 WL 5099722 (C.D. Cal. Jan. 3, 2018) (Phillips, J.) ....................................7

*Morgan v. AXT, Inc.*,
2005 WL 2347125 (N.D. Cal. Sept. 23, 2005)....................................................14

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ...............................................................................7

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) ............................................................................................12

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:20−cv−02319−VAP−PJW
MEMORANDUM OF POINTS AND AUTHORITIES

*Osher v. JNI Corp.*,
   308 F. Supp. 2d 1168 (S.D. Cal. 2004), *aff'd in part, vacated in part on other grounds*, 183 F. App'x 604 (9th Cir. 2006) ........................... 13, 18

*Paddock v. Dreamworks Animation SKG, Inc.*,
   2015 WL 12711653 (C.D. Cal. Apr. 1, 2015), *aff'd sub nom. Roofers Loc. No. 149 Pension Fund v. Dreamworks Animation SKG, Inc.*, 677 F. App'x 376 (9th Cir. 2017) ....................................................... 13

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   2012 WL 1868874 (N.D. Cal. May 22, 2012), *aff'd*, 759 F.3d 1051 (9th Cir. 2014) ................................................................................................. 20

*Prodanova v. H.C. Wainwright & Co., LLC*,
   2021 WL 1307882 (9th Cir. Apr. 8, 2021).................................................... 17, 20

*In re Rackable Sys., Inc. Sec. Litig.*,
   2010 WL 199703 (N.D. Cal. Jan. 13, 2010) ................................................. 14, 17

*In re Rackable Sys., Inc. Sec. Litig.*,
   2010 WL 3447857 (N.D. Cal. Aug. 27, 2010).................................................... 11

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) ....................................................................... 11, 19

*Shreiber v. Synacor, Inc.*,
   832 F. App'x 54 (2d Cir. 2020)........................................................................... 11

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ............................................................................. 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................................. 7

*In re Vantive Corp. Sec. Litig.*,
   283 F.3d 1079 (9th Cir. 2002)............................................................................ 19

*Waterford Twp. Police v. Mattel, Inc.*,
   321 F. Supp. 3d 1133 (C.D. Cal. 2018), *aff'd sub nom. Castro v. Mattel, Inc.*, 794 F. App'x 669 (9th Cir. 2020) .......................................... 7, 8, 16

*Wochos v. Tesla*,
   985 F.3d 1180 (9th Cir. 2021)................................................................... 8, 9, 12

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
LOS ANGELES

iii

CASE NO. 2:20−cv−02319−VAP−PJW
MEMORANDUM OF POINTS AND AUTHORITIES

*Wozniak v. Align Tech., Inc.*,
  2011 WL 2269418 (N.D. Cal. June 8, 2011) ........................................................ 9

*Yaron v. Intersect ENT, Inc.*,
  2020 WL 6750568 (N.D. Cal. June 19, 2020) ..................................................... 5

*In re YogaWorks, Inc. Sec. Litig.*,
  2020 WL 2549290 (C.D. Cal. Apr. 23, 2020)...................................................... 10

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009)............................................................. 7, 15, 19, 20

**Statutes**

15 U.S.C. § 78u-4 ...................................................................................... 7, 14

Defendants Funko, Inc. ("Funko" or the "Company"), Brian Mariotti, Russell Nickel, Andrew Perlmutter, Jennifer Fall Jung, Ken Brotman, Gino Dellomo, and Adam Kriger (collectively, the "Individual Defendants," and together with Funko, "Funko Defendants") submit this memorandum of law in support of their motion to dismiss the Consolidated Second Amended Complaint ("SAC" or "Second Amended Complaint") (Ex. 1, cited as "SAC ¶ _").[1]

## I.      PRELIMINARY STATEMENT

This is Plaintiffs' second bite at the apple, and they again fail to state a claim for relief under the Securities Exchange Act of 1934 (the "Exchange Act").

In their prior complaint (the "Consolidated Amended Complaint" or "CAC") (Ex. 2, cited as "CAC ¶ _"), Plaintiffs alleged that the Funko Defendants committed securities fraud by making allegedly false statements, with scienter, regarding Funko's full year 2019 sales guidance and risks associated with the Company's inventory.  On February 25, 2021, the Court issued an order dismissing the CAC because Plaintiffs failed to state particularized allegations that the Funko Defendants made materially false or misleading statements with fraudulent intent.  *See generally Ferreira v. Funko, Inc.*, 2021 WL 880400 (C.D. Cal. Feb. 25, 2021).  The Second Amended Complaint fares no better.  To the contrary, Plaintiffs have narrowed their claims and in the process presented a theory of fraud that is even less coherent than before.

After previously challenging eight statements as materially false and misleading, Plaintiffs now base their claims on five alleged misstatements: (i) three statements on October 31, 2019 reaffirming Funko's full year 2019 sales projections; and (ii) two identical risk disclosures—made in Funko's August 8, 2019 and October 31, 2019 quarterly SEC filings—regarding the possibility that Funko would be

---

[1] Unless otherwise indicated, all internal citations and quotation marks are omitted, emphasis is added, and citations to "Ex. _" refer to exhibits attached to the Declaration of Kevin M. McDonough.

required to record an inventory write-down or take other adverse actions with respect to its inventory. SAC ¶¶ 127-37. Plaintiffs contend that Funko, Mariotti, and Jung made these allegedly misleading statements so that two of the seven Individual Defendants and a private equity firm could sell modest portions of their Funko stock at artificially inflated prices, while retaining huge quantities of stock through the end of the Class Period. That theory of fraud does not hold for a multitude of reasons, including that: (i) *four* of the five alleged misstatements were made *after* the stock sales in question; (ii) one of the two Individual Defendants who sold Funko stock during the Class Period (Perlmutter) did not make any allegedly misleading statements; (iii) no insider stock sales were made in temporal proximity to the alleged corrective disclosures that led to this lawsuit; and (iv) rather than conceal or delay the bad news about its fourth quarter 2019 performance, Funko accelerated its financial reporting timeline to give investors early notice of the Company's disappointing fourth quarter sales and its inventory write-down.

At bottom, the story of the Second Amended Complaint (like Plaintiffs' prior pleading) is that, following a nine-quarter streak of sales growth, Funko unexpectedly experienced a one-quarter sales decline and relatedly concluded that a write-down to inventory was required, all of which the Company timely and transparently disclosed to investors. That does not state a claim for securities fraud, and the allegations in the Second Amended Complaint fail to satisfy the demanding standards of the Private Securities Litigation Reform Act ("PSLRA") for multiple reasons. *Funko*, 2021 WL 880400, at *10.

*First*, Plaintiffs fail to plead an actionable misstatement or omission. The alleged misstatements reaffirming Funko's sales guidance are inactionable pursuant to the PSLRA safe harbor for forward-looking statements, *id.* at *22, and the test for opinion liability. And Funko's inventory risk disclosures are protected by the safe harbor as well.

*Second*, Plaintiffs do not allege particularized facts to support a compelling

inference that any Funko Defendant acted with fraudulent intent.  Plaintiffs' scienter theory relies heavily on the same six confidential witnesses ("CWs") they included in the CAC.  As the Court previously held, with the exception of CW1, none of the confidential witnesses "had personal knowledge that would support a strong inference of scienter[,]" and the allegations from CW1 "seem more reasonably interpreted as [a] disagreement with Funko's management about their sales projections." *Id.* at *27-28.  Plaintiffs' attempt to cure this flaw is nothing more than a semantic change; instead of alleging the Funko Defendants knew the Company's sales guidance was "unachievable," Plaintiffs now allege the Funko Defendants knew their sales target was "impossible to meet." *Compare* CAC ¶ 163, *with* SAC ¶ 163.  But, as before, Plaintiffs do not provide the factual allegations required to support that assertion.  Indeed, there is not a single allegation in the Second Amended Complaint that any Individual Defendant knew or believed that Funko's sales projections were impossible to achieve or that a material portion of Funko's inventory was obsolete, such that a write-down was required before the end of 2019.  Furthermore, Plaintiffs do not provide any coherent theory for why the Funko Defendants would reaffirm an "impossible to meet" sales goal *after* all of the Class Period insider stock sales were made and then promptly disclose the bad news when Funko fell short of its goal.

Accordingly, the Second Amended Complaint fails to state a claim for securities fraud, and it should be dismissed.

## II.    FACTUAL BACKGROUND

### A.    The Parties

Plaintiffs are three individual investors, each of whom alleges purchases of Funko stock during the Class Period.  They assert claims against Funko, CEO Brian Mariotti, Russell Nickel, who served as CFO until August 13, 2019, current CFO Jennifer Fall Jung, President Andrew Perlmutter, and board members Ken Brotman, Gino Dellomo, and Adam Kriger.  SAC ¶¶ 24-31, 36-38.  Plaintiffs allege no

materially false or misleading statements by Perlmutter, Brotman, Dellomo, or Kriger, and Plaintiffs have dropped their Section 10(b) claims against this group and Nickel.

## B.   Funko's 2019 Sales Forecasts

Funko is a Washington-based company that creates and sells unique products that allow consumers to express their affinity for their favorite pop culture icons. *See* SAC ¶¶ 2, 24.  After its November 2017 IPO, Funko produced "nine consecutive quarters of more than 20% net sales growth."  CAC ¶ 47.  In the midst of that period of impressive growth, Funko announced in August 2019 that it was increasing its 2019 full year sales projections, based on (among other things) Funko's banner performance through the first two quarters of 2019, and its expectations for strong sales of merchandise tied to two highly anticipated holiday-season movies from blockbuster franchises, *Star Wars: Episode IX* and *Frozen 2*.  CAC ¶¶ 90, 91.  The Company's optimism was validated by strong sales in the third quarter, which again exceeded expectations, SAC ¶ 98, and on October 31, 2019, Funko reiterated the full year sales projection it had announced in August, SAC ¶ 129.  However, fourth quarter sales did not materialize as Funko expected, largely due to softness in holiday season sales, and as a result the Company fell short of its full year 2019 projections— the first sales miss in Funko's history as a public company.  SAC ¶¶ 138, 151-52.  Although it was not required to do so by any law or regulation, Funko voluntarily accelerated its financial reporting timeline, releasing its final 2019 results in February 2020, a month ahead of schedule.  *See* SAC ¶ 138.  Those results reflected an 8% year-over-year decline in sales, from $233 million in the fourth quarter of 2018, to $214 million in the fourth quarter of 2019.  *Id.*

## C.   Funko's Inventory Disclosures

As a consumer products business, Funko maintains inventory to fill orders from major retailers and other customers.  Before and during the putative Class Period, Funko made periodic disclosures regarding its inventory levels and practices,

including by disclosing its inventory balance—and increases to that balance—in filings with the SEC and on quarterly earnings calls. *See* SAC ¶¶ 127, 136. In addition, Funko regularly warned investors that its unique business model required the Company to order inventory from third-party manufacturers well in advance of customer ordering. *Id.* Funko also disclosed that such advance ordering created a risk the Company would over- or under-estimate the amount of inventory it needed to carry, because it was "difficult to respond to changes in consumer preferences and market conditions, which, for pop culture products, can change rapidly." *See id.* (quoting Ex. 5, Q2 2019 Form 10-Q at 42 and Ex. 7, Q3 2019 Form 10-Q at 43).

Pursuant to those statements, Funko expressly disclosed that it was required to "make judgments" and "estimate[s of] obsolescence based on assumptions regarding future demand" by "maintain[ing] reserves for excess and obsolete inventories to reflect the inventory balance at the lower of cost or net realizable value." Ex. 4, 2018 Form 10-K at 80-81, 92.[2] Funko regularly adjusted its inventory reserves when necessary, and warned investors that, notwithstanding its reserve amounts, a write-down of inventory remained possible. *Id.* at 26. For example, on the August 8, 2019 earnings call, Nickel disclosed that inventory was "up to $75.3 million," representing an "increase of about 17%" compared to Q2 of 2018, but an

---

[2] The Court previously declined to take judicial notice of this statement because the portion of the Q2 2019 Form 10-Q risk factor disclosures that Defendants attached to their motion —pages 40 to 46— did not "include the reference to the 2018 Form 10-K." *Funko*, 2021 WL 880400, at *18 n.2. Defendants now attach the entire "Risk Factor" sections in the Q2 and Q3 2019 10-Qs, both of which begin by "encourag[ing]" investors "to consider the following discussion of risk factors in its entirety, *in addition to other information contained in or incorporated by reference into this Quarterly Report on Form 10-Q and our other public filings with the [SEC].*" Ex. 5, Q2 2019 Form 10-Q at 36; Ex. 7, Q3 2019 Form 10-Q at 37. The "significant accounting policies" and "critical accounting policies" sections from the 10-Qs refer investors to the corresponding sections in the 2018 10-K, which in turn contain the inventory reserve disclosure quoted above. Ex. 5, Q2 2019 Form 10-Q at 10, 21, 33; Ex. 7, Q3 2019 Form 10-Q at 10, 22, 34; Ex. 4, 2018 Form 10-K at 80, 92; *see also Yaron v. Intersect ENT, Inc.*, 2020 WL 6750568, at *4 (N.D. Cal. June 19, 2020) (courts may take judicial notice "to determine the information available to the market"). On that basis, Defendants respectfully request that the Court take judicial notice of the inventory disclosures in Funko's 2018 10-K in connection with this motion.

overall decrease of "13% compared to year-end 2018." Ex. 6, Q2 2019 Earnings Call Tr. at 9. Nickel further explained that Funko had recorded another increase to its reserve for "slower-moving inventory of some old lines" of products. *Id.* at 8; CAC ¶ 119. On the October 31, 2019 earnings call, Jung disclosed that inventory was "94.3 million versus $82.3 million" for the same time in 2018, representing "an increase of about 15%." Ex. 9, Q3 2019 Earnings Call Tr. at 8. On February 5, 2020, as part of its voluntarily accelerated earnings announcement, Funko further disclosed to the market a $16.8 million write-down to inventory. SAC ¶¶ 138, 149.

## III.   PROCEDURAL HISTORY

On February 25, 2021, the Court dismissed the CAC for failure to state a claim. ECF No. 141. The Court held that six of the eight challenged statements in the CAC were "not actionable and [could not] form the basis for Plaintiffs' securities fraud claims" because, among other things, the statements were either too "vague," constituted a "statement of corporate puffery or opinion that is not actionable under the PSLRA," or were "forward-looking statement[s] accompanied by sufficient cautionary language such that [they were] shielded by the PSLRA safe harbor." *Funko*, 2021 WL 880400, at *12-25. The Court also held that the allegations in the CAC failed to establish the element of scienter because "[e]ven in combination, the CAC's scienter allegations [did] not 'create a strong inference of intentional conduct or deliberate recklessness.'" *Id.* at *25-30 (quoting *Curry v. Yelp Inc.*, 875 F.3d 1219, 1226 (9th Cir. 2017)). As a result, the Court held that the CAC failed to state a claim under Section 10(b), Rule 10b-5, Section 20(a), or Section 20A. *Id.* at *30-31. The Court granted Plaintiffs leave to amend, *id.* at *31, and Plaintiffs filed the Second Amended Complaint on March 29, 2021. ECF No. 142.

## IV.   APPLICABLE LEGAL STANDARDS

To plead securities fraud under Section 10(b) and Rule 10b-5, a plaintiff must allege facts showing: (1) a material misrepresentation or omission in connection with the purchase or sale of a security; (2) scienter; (3) reliance; (4) economic loss; and

(5) loss causation. *Loos v. Immersion Corp.*, 762 F.3d 880, 886-87 (9th Cir. 2014). Such claims must satisfy the heightened and "formidable pleading requirements" of Rule 9(b) and the PSLRA. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008). Rule 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The PSLRA requires Plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B).

The PSLRA also requires plaintiffs to state with particularity facts giving rise to a strong inference of scienter—*i.e.*, that defendants acted with an intent "to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 319 (2007). To plead scienter, plaintiffs must "allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." *Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1151 (C.D. Cal. 2018), *aff'd sub nom. Castro v. Mattel, Inc.*, 794 F. App'x 669 (9th Cir. 2020). The recklessness standard is "much closer to one of intent," *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014); each statement must constitute an "extreme departure from the standards of ordinary care" that "presents a danger of misleading . . . that is either known to the defendant or is so obvious that the actor must have been aware of it." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). A complaint will survive "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Curry*, 875 F.3d at 1226; *Miller v. PCM Inc.*, 2018 WL 5099722, at *5 (C.D. Cal. Jan. 3, 2018) (Phillips, J.). To determine whether there is a strong inference of scienter, "the court must consider all reasonable inferences . . . including inferences

unfavorable to the plaintiffs." *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002).

## V.   ARGUMENT

### A.   The Second Amended Complaint Fails To Plead A Section 10(b) Claim

#### 1.   Plaintiffs Do Not Allege A Materially False Or Misleading Statement Or Omission

##### a.   The October 31, 2019 Guidance Statements Are Non-Actionable Forward-Looking Statements

Plaintiffs again challenge Funko's and Jung's reiteration of the Company's net sales projection for 2019, as well as Jung's statement that "even with our current guidance, Q4 will be our biggest quarter ever as a company." *See Funko*, 2021 WL 880400, at *19, *22-23; SAC ¶¶ 129-30, 133.  The Court previously held that these statements are inactionable under the PSLRA safe harbor for forward-looking statements. *Funko*, 2021 WL 880400, at *11, *22-24; *see also Wochos v. Tesla*, 985 F.3d 1180, 1192 (9th Cir. 2021) ("[S]tatements that [the company] was 'on track' to achieve [its] goal . . . are likewise forward-looking statements."); *Mattel*, 321 F. Supp. 3d at 1151. There is nothing in the Second Amended Complaint that could disturb that holding.

As the Court already found, the October 31 statements regarding Funko's sales projections were accompanied by "meaningful" cautionary language that included "express cautionary statements about future predictions." *Funko*, 2021 WL 880400, at *20-24.  In particular, Funko's risk disclosures describe the very factors that later materialized in the lower-than-expected fourth quarter sales, including: (i) the disproportionate impact on total sales that a weak holiday season could have due to the "seasonality" of Funko's business; (ii) that Funko could experience "reduced sales" due to "underperformance" of products tied to movie franchises and developed "before demand for the underlying content is known"; and (iii) potentially

"significant[]" quarterly and yearly fluctuations in sales owing to shifts in the "popularity" of relevant content from period to period. *See Funko*, 2021 WL 880400, at *19-24 (listing Funko's risk factors by heading); Ex. 8, Q3 2019 Form 8-K at 7-8; Ex. 9, Q3 2019 Earnings Call Tr. at 4; Ex. 7, Q3 2019 Form 10-Q at 42, 45-46; *see also Wozniak v. Align Tech., Inc.*, 2011 WL 2269418, at *7 (N.D. Cal. June 8, 2011) ("These cautionary statements identified the risks plaintiff alleges ultimately materialized . . . .").[3]   Plaintiffs allege, in conclusory fashion, that "Defendants knew that it was *impossible* to meet the FY2019 earnings guidance." SAC ¶ 7; *see also* SAC ¶¶ 94, 131, 163.  But Defendants' knowledge has no bearing on whether its cautionary language was meaningful, and to hold otherwise would "blur the distinction" between the cautionary language and actual knowledge of falsity prongs of the safe harbor. *Funko*, 2021 WL 880400, at *20.  Accordingly, as the Court previously held, the safe harbor applies to Defendants' October 31 forward-looking statements based on the robust cautionary language accompanying those statements. *Id.* at *22-24.

The PSLRA safe harbor also applies for the independent reason that Plaintiffs fail to allege that the October 31 sales projection statements were made with "actual knowledge" of falsity.  *See Tesla*, 985 F.3d at 1189-90.  In the Second Amended Complaint, Plaintiffs repeat their allegation that Mariotti, Jung, and Perlmutter became aware of a shortfall between customer orders and Funko's sales targets, with three to four months left in the year, including the all-important holiday shopping season. SAC ¶¶ 110-11.  But there is not a single allegation in the Second Amended Complaint, let alone particularized allegations, that any Funko Defendant had concluded at any point prior to October 31, 2019 that Funko's full year sales projections were impossible to achieve or even unlikely to be achieved, or that any

---

[3] *Compare* Ex. 7, Q3 2019 Form 10-Q at 42, 45-46, *with* SAC ¶¶ 138, 148, 151-52 (explaining that FY2019 net sales were below expectations due to "lower than expected purchases among Funko's top customers throughout the holiday season," underperformance by tentpole movie releases, and "difficult comparisons" to Q4 2018 releases).

Funko Defendant received information showing that the sales goals could not be met. *See Funko*, 2021 WL 880400, at *21 ("Plaintiffs have not alleged particularized facts to show Defendants knew their FY2019 guidance was impossible to meet.").

Plaintiffs again rely heavily on CW1, but even his amended allegations do not establish "actual knowledge" of falsity (or scienter) as a pleading matter.  For example, after previously alleging he had concluded that "Funko did not have enough new content to meet" the Company's sales targets, CAC ¶ 95, CW1 now alleges he held the view (at some point) that it was "statistically impossible" to close the gap between actual sales and Funko's sales targets, SAC ¶ 105.  That subjective view apparently was based on the false premise that Funko only had (i) "new products (*i.e.*, products from additional new releases or different products from the planned releases)," for which CW1 thought demand was lagging; and (ii) "obsolete" products, *i.e.*, those which could not be sold and therefore could not make up for any underperformance of new products.  SAC ¶¶ 105-06.  But as Plaintiffs themselves have alleged, nearly *half* of Funko's sales are traditionally derived from existing (*i.e.*, "evergreen") products—which CW1 conveniently ignores.[4] *Funko*, 2021 WL 880400, at *2 (quoting CAC ¶¶ 49-50); *see also* SAC ¶ 50 (noting that "[t]he majority"—*i.e.*, about 55%—"of Funko's sales are generated from the sales of new products").[5]

In any event, the Second Amended Complaint, like Plaintiffs' prior pleading, contains no "facts showing that [the Funko Defendants] ever accepted [CW1's] views that the goal was impossible." *Funko*, 2021 WL 880400, at *21 (quoting *Tesla*, 985 F.3d at 1194); *see also In re Downey Sec. Litig.*, 2009 WL 2767670, at

---

[4] "Evergreen" products are based on older releases that are so popular that they transcend fad status. *Funko*, 2021 WL 880400, at *2 (quoting CAC ¶¶ 49-50).  As Jung reported on the Q3 2019 earnings call, sales of Funko's evergreen products had risen to 58%.  Ex. 9, Q3 2019 Earnings Call Tr. at 7.

[5] "[T]he Court may consider the [CAC]'s allegations as part of its context-specific inquiry into whether the [SAC] plausibly suggests an entitlement to relief based on its judicial experience and common sense . . . as required under *Iqbal*." *In re YogaWorks, Inc. Sec. Litig.*, 2020 WL 2549290, at *3 (C.D. Cal. Apr. 23, 2020).

*11 (C.D. Cal. Aug. 21, 2009) ("[T]he second-guessing of management decisions by confidential witnesses does not provide a basis for securities fraud."); *Ronconi v. Larkin*, 253 F.3d 423, 430 n.12, 432 (9th Cir. 2001) ("[H]onest optimism followed by disappointment is not the same as lying or misleading . . . ."). Accordingly, CW1's subjective "gloomy view" does not support the inference that the Funko Defendants knew or believed their sales projections were impossible to meet, nor does any other allegation in the Second Amended Complaint. *See Funko*, 2021 WL 880400, at *21; *In re Rackable Sys., Inc. Sec. Litig.*, 2010 WL 3447857, at *5 (N.D. Cal. Aug. 27, 2010) (dismissing claims where plaintiffs could not show the company believed its strategy to meet projections would be ineffective).

In sum, the October 31, 2019 forward looking statements qualify for protection under both prongs of the PSLRA's safe harbor, because Funko's cautionary language was "detailed and meaningful," and Plaintiffs fail to adequately plead that Defendants had "actual knowledge" of the falsity of their sales projections.

### b. The October 31, 2019 Guidance Statements Are Non-Actionable Opinions

The October 31 statements reaffirming Funko's sales projections are not actionable for the independent reason that they constitute opinions, and Plaintiffs have failed to satisfy the test for opinion liability. *See Shreiber v. Synacor, Inc.*, 832 F. App'x 54, 57 (2d Cir. 2020) ("[Company]'s expectations and projections for the future[] were quintessential opinion statements . . . ."). There are "three different standards for pleading falsity of opinion statements": (i) "when a plaintiff relies on a theory of material misrepresentation, the plaintiff must allege both that the speaker did not hold the belief she professed and that the belief is objectively untrue;" (ii) "when a plaintiff relies on a theory that a statement of fact contained within an opinion statement is materially misleading, the plaintiff must allege that the supporting fact [the speaker] supplied [is] untrue;" and (iii) "when a plaintiff relies

on a theory of omission, the plaintiff must allege facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *City of Dearborn Heights v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017) (citing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194-95 (2015)); *see also Tesla*, 985 F.3d at 1189.

Plaintiffs make no attempt to plead that the Funko Defendants disbelieved the sales projections or that those projections included a false statement of fact. Further, the allegations in the Second Amended Complaint do not establish that the projections were materially false by omission, which is "no small task" for Plaintiffs. *Omnicare*, 575 U.S. at 194. Indeed, the Second Amended Complaint is devoid of any particularized allegations that the Funko Defendants omitted material information regarding the basis for the 2019 sales projections that rendered those projections misleading to a reasonable investor reading them "fairly and in context." *Id.* at 194-201; *see also City of Dearborn Heights*, 856 F.3d at 618.

### c. Funko's Inventory Statements Are Shielded By The PSLRA Safe Harbor

The Second Amended Complaint also alleges that inventory risk disclosures in two Funko 10-Qs were materially misleading because, according to Plaintiffs, "the risk that the Company could have excess inventory as a result of customer demand not reaching forecasted levels had already materialized" as of the date of Funko's warnings. SAC ¶ 128. In support of this theory, Plaintiffs repeat their prior allegations that Funko "had amassed millions of dollars of obsolete inventory in various Funko warehouses due to the Company's haphazard internal sales forecasting practices" and that Funko was aware that inventory "would need to be written down." SAC ¶¶ 3, 162. The Court previously held that the challenged portions of Funko's risk factor disclosures are forward-looking statements, although it also held that there was insufficient cautionary language to bring those statements

within the protection of the PSLRA safe harbor. *Funko*, 2021 WL 880400, at *18, *25. For purposes of this motion, the Funko Defendants do not ask the Court to reconsider that holding. Instead, the Funko Defendants contend that the safe harbor applies because the Second Amended Complaint does not adequately plead that the risk disclosures were made with "actual knowledge" of their falsity.

Notwithstanding Plaintiffs' references to "excess" inventory, the salient risk that Funko identified is not that it might accumulate a large volume of inventory; indeed, supposedly excess or large volumes of inventory is not problematic insofar as the inventory can be sold or otherwise has value. The salient risk that Funko identified in its inventory risk disclosure is that the Company could be left holding obsolete or otherwise valueless inventory for which some adverse action may be required: "we could have excess inventory *that we may need to hold for a long period of time, write down, sell at prices lower than expected or discard*." Ex. 5, Q2 2019 Form 10-Q at 42; Ex. 7, Q3 2019 Form 10-Q at 43. And it is the risk of an inventory write-down (not the existence of high levels of inventory) that Plaintiffs allege materialized at the end of 2019 and contributed to their purported losses. *See* SAC ¶¶ 138, 173-74 (alleging, as corrective disclosure, Funko's decision to write down inventory).

Plaintiffs do not allege that the Individual Defendants concluded or believed as of August 8, 2019 or October 31, 2019 that Funko held a material amount obsolete inventory that needed to be written down, sold at discounted prices, or discarded.[6]

---

[6] Whether an inventory write-down is required turns on subjective accounting judgments, and Plaintiffs do not question Funko's accounting judgment that no write-down was required prior to the end of 2019. *See* Ex. 3, ASC 330-10-35 (setting forth the process and numerous judgments involved in accounting for and measuring the value of inventory); *Paddock v. Dreamworks Animation SKG, Inc.*, 2015 WL 12711653, at *6 (C.D. Cal. Apr. 1, 2015) ("[GAAP] tolerate[s] a range of reasonable treatments, leaving the choice among alternatives to management."), *aff'd sub nom. Roofers Loc. No. 149 Pension Fund v. Dreamworks Animation SKG, Inc.*, 677 F. App'x 376 (9th Cir. 2017); *Osher v. JNI Corp.*, 308 F. Supp. 2d 1168, 1193 (S.D. Cal. 2004) (allegations that company "was left with excess product in the fourth quarter" insufficient to allege that GAAP required a write down in that quarter), *aff'd in part, vacated in part on other grounds*, 183 F. App'x 604 (9th Cir. 2006).

And that pleading failure is underscored by the fact that Plaintiffs do not question (i) the accuracy of Funko's disclosed inventory balances for the second and third quarter of 2019; (ii) the timing of Funko's inventory write-down at the end of 2019; or (iii) the accuracy of Nickel's August 2019 statement that Funko had taken higher reserves for slower-moving inventory of some old lines, which the Court recognized "could be construed as referencing the very excess or obsolete inventory" Plaintiffs say was hidden from them, *Funko*, 2021 WL 880400, at \*13.[7]  Accordingly, Plaintiffs have not adequately pled that Defendants had actual knowledge that Funko's inventory risk disclosures were materially false, and the safe harbor therefore applies to those statements. *See In re Leapfrog Enter., Inc. Sec. Litig.*, 200 F. Supp. 3d 987, 1004 (N.D. Cal. 2016) (finding no "specific evidence demonstrating that the Defendants did not believe their assessment of the inventory problem"); *In re Rackable Sys., Inc. Sec. Litig.*, 2010 WL 199703, at \*6 (N.D. Cal. Jan. 13, 2010) (rejecting CW allegations that company "appeared to have a lot of excess inventory"); *Morgan v. AXT, Inc.*, 2005 WL 2347125, at \*14 (N.D. Cal. Sept. 23, 2005) ("A pleading must provide some particularized support regarding . . . when [the] plaintiffs think the write-down should have occurred.").

### 2.    The Second Amended Complaint Fails To Plead Scienter As A Matter Of Law

The Second Amended Complaint should be dismissed for the additional reason that it fails to plead particularized facts to support a strong inference of scienter.  15 U.S.C. § 78u-4(b)(2); *Funko*, 2021 WL 880400, at \*30.  Plaintiffs must allege scienter in "great detail," through "facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974, 979 (9th Cir. 1999) (plaintiffs must "state specific

---

[7] And in sections of its 2018 Form 10-K incorporated by reference into both the Q2 and Q3 2019 Forms 10-Q, Ex. 5, Q2 2019 Form 10-Q at 10, 21, 33, 36; Ex. 7, Q3 2019 Form 10-Q at 10, 22, 34, 37, Funko disclosed that it maintained "reserves for excess and obsolete inventories," Ex. 4, 2018 Form 10-K at 80, 92.

facts indicating no less than a degree of recklessness that strongly suggests actual intent"). Plaintiffs' scienter allegations, again, fall far short of this standard.

### a. The CW Allegations Do Not Support A "Strong Inference" Of Scienter

Confidential witness allegations do not support a "strong inference" of scienter unless they: (i) are described with sufficient particularity to establish their reliability and personal knowledge of the matters alleged; and (ii) offer statements that are "indicative of scienter." *Zucco*, 552 F.3d at 995; *Funko*, 2021 WL 880400, at *26. Plaintiffs offer no new CWs, and the existing CWs' allegations still fail to satisfy that test for the reasons that the Court has already noted. *Funko*, 2021 WL 880400, at *27-28.

**CW2 and CW6.** The Court concluded in its prior opinion that because CW2 and CW6 were not employed at Funko during the Class Period, "they did not have personal knowledge of the levels of Funko's inventory at the time of the alleged false or misleading statements." *See id.* at *27 (citing *Zucco*, 552 F.3d at 996). Although the Second Amended Complaint now alleges that CW2 attended a meeting at which the Board discussed the "need to consolidate the inventory," SAC ¶ 85, Plaintiffs add no allegations that would change the dates of the witnesses' employment, suggest that the Funko Defendants' accounting and valuation judgments regarding Funko's inventory were mistaken (much less reckless), or that the Funko Defendants knew and concealed information indicating that their inventory warnings were materially misleading. *See Funko*, 2021 WL 880400, at *27; SAC ¶¶ 85, 92.

**CW3, CW4, and CW5.** The Second Amended Complaint also does not cure any of the deficiencies the Court identified with respect to CW3, CW4, and CW5. In particular, the Second Amended Complaint "fails to allege CW3, CW4, or CW5 had direct contact with any of the Funko Defendants, let alone that they could opine competently and with personal knowledge as to what any of the Defendants knew about Funko's inventory levels or sales projections during the Class Period." *See*

*Funko*, 2021 WL 880400, at *27 (citing *Mattel*, 321 F. Supp. 3d at 1154); SAC ¶¶ 63-72, 86-89.

The few additional allegations attributed to those CWs in the Second Amended Complaint do not advance Plaintiffs' claims.  The Second Amended Complaint includes *no* new allegations at all with respect to CW4.  As to CW3, Plaintiffs merely add that he "provided weekly sales updates for his unit"—which consisted of a single account, Wal-Mart, SAC ¶ 64—to "a large group of executives at Funko, including Perlmutter" and that he believes his updates were folded into "company-wide forecasts."  SAC ¶ 66.  However, CW3 offers no allegations about the alleged "company-wide forecasts," much less allegations indicating that the Funko Defendants had any information showing that the sales projections were unachievable as of October 31, 2019.

CW5, who only focused on Funko's Latin American territory, SAC ¶ 72, adds that he "participated in large monthly sales meetings . . . where excess inventory and the fact that Funko's warehouses were overstocked was discussed," without providing any detail on the scope of these alleged meetings, their attendees, or the substance of any discussions purportedly related to "excess inventory."  *See id.*  Thus, the Second Amended Complaint fails to overcome the "narrow scope of responsibilities" held by CW3, CW4, and CW5, or to explain how "through their positions [they] either understood or were familiar with Funko's global operations and had a complete understanding of Funko's inventory holdings in relation to its business operations."  *See Funko*, 2021 WL 880400, at *27; *Mattel*, 321 F. Supp. 3d at 1154 (holding "relatively junior marketing analyst who focused entirely on one large client" did not have access to global retail inventory levels and did not allege meaningful contact with executives to support an inference of scienter); SAC ¶¶ 64, 71-72.

**CW1.**  As was the case in the First Amended Complaint, the CW1 allegations in the Second Amended Complaint "do not support a strong inference of scienter."

*Funko*, 2021 WL 880400, at *28. Plaintiffs' new pleading adds the following allegations from CW1, a brand new employee when the Class Period started: (i) Aged Inventory Reports were circulated to attendees of Weekly Sales Meetings beginning August 2019, SAC ¶ 80; (ii) in September 2019 Funko began tracking excess inventory through an "Open to Buy" plan, SAC ¶ 81; and (iii) beginning in July 2019 certain Funko Defendants were aware that Funko had what CW1 terms obsolete inventory, SAC ¶ 83. That is not enough to support a strong inference of scienter. *See Prodanova v. H.C. Wainwright & Co., LLC*, 2021 WL 1307882, at *6 (9th Cir. Apr. 8, 2021) ("general awareness of the day-to-day workings of the company's business does not establish scienter . . . absent some additional allegation of specific information conveyed to management and related to the fraud.").

After previously alleging that Funko held "millions of dollars of obsolete inventory," ¶ CAC 55, Plaintiffs now offer CW1's estimates that Funko had obsolete inventory "worth approximately $10-11.25 million at cost" in July 2019 and "approximately $12.5-15 million at cost" by October 2019. SAC ¶ 75. Yet this still does not support an inference that any Funko Defendant had concluded prior to October 31 that a material amount of Funko's inventory was obsolete. *See Rackable*, 2010 WL 199703, at *6 (rejecting CW allegations that company "appeared to have a lot of excess inventory"). Indeed, while CW1 alleges that Jung agreed that some of Funko's "excess inventory" was "obsolete and could not be sold," he tellingly stops short of saying when Jung supposedly reached that conclusion or the amount of inventory Jung allegedly agreed was obsolete. SAC ¶ 82.[8] CW1's allegations, therefore, do not support an inference that the Defendants acted with fraudulent

---

[8] Plaintiffs' attempt to bolster their Puyallup warehouse allegations also misses the mark. The Second Amended Complaint does not even allege that Funko used the facility prior to October 31, 2019. *See* SAC ¶ 87 (Funko opened the warehouse "*in or around* October 2019"). Further, while CW1 alleges that he was told of a plan to destroy inventory in the Puyallup facility, he does not allege that the plan was ever implemented or that any Funko Defendant agreed with it. SAC ¶ 79. And CW1 offers no explanation for his curious allegation that Funko leased the new warehouse for the purpose of storing inventory the Company had already decided to destroy, instead of simply destroying it.

intent in making the inventory risk disclosures.

Further, Plaintiffs' theory of fraud regarding the inventory disclosures cannot be reconciled with the fact that (i) Funko disclosed the carrying value of its inventory, Ex. 5, Q2 2019 Form 10-Q at 4, 5; Ex. 7, Q3 2019 Form 10-Q at 4, 5—which Plaintiffs do not contend was inaccurate; (ii) Funko disclosed that it had increased the reserve for slower moving inventory, Ex. 6, Q2 2019 Earnings Call Tr. at 8; CAC ¶ 119; (iii) even Plaintiffs do not contend that an inventory write-down should have been taken prior to end of 2019; and (iv) when Funko did reach the conclusion that a write-down was required, it promptly informed investors. *See Osher*, 308 F. Supp. 2d at 1193 (allegations that company "was left with excess product in the fourth quarter" insufficient to allege that GAAP required a write down in that quarter).

Moreover, as discussed *supra*, Section V.A.1.a, CW1's allegations that Jung, Mariotti, and Perlmutter "knew" of a purported shortfall in sales, SAC ¶¶ 110-11, do not constitute particularized facts to "show [that] Defendants shared CW1's 'pessimism' or 'gloomy view' that Funko could not meet its FY2019 guidance or sales projections." *Funko*, 2021 WL 880400, at *21 (quoting *Tesla*, 985 F.3d at 1194). In this connection, CW1 tellingly does not allege that any of the Funko Defendants *actually believed* that Funko could not meet its sales guidance, or that he ever told any of the Individual Defendants that he believed Funko could not meet its FY2019 and fourth quarter sales guidance, *cf.* SAC ¶ 97 (CW1 commenting on sales guidance to his "direct report[]").

Instead, CW1 offers generalized and conclusory allegations that "the purpose of Weekly Sales Meetings was to . . . reach a consensus," without stating what the consensus was, *see* SAC ¶ 78; and that "everyone who attended the Weekly Sales Meetings agreed that a shortfall existed," *see* SAC ¶ 109, with no mention of when that supposed conclusion was reached or whether the Funko Defendants (or anyone else) agreed that the shortfall could not be overcome by, *e.g.*, additional marketing

efforts, reorders of new products to coincide with the holiday shopping season, and/or sales of the "evergreen" products that Plaintiffs admit made up at least 45% of Funko sales. CAC ¶ 50. Accordingly, "[i]nstead of raising a strong inference of scienter," CW1's allegations are "more reasonably interpreted as his disagreement with Funko's management about their sales projections for FY2019, especially for the fourth quarter of 2019, based on CW1's own reading and interpretation of Funko's sales data." *Funko*, 2021 WL 880400, at *28; *see Downey*, 2009 WL 2767670, at *11 ("[T]he second-guessing of management decisions by confidential witnesses does not provide a basis for securities fraud."); *Ronconi*, 253 F.3d at 437 ("Calling executives bad managers, or bad forecasters, does not plead fraud.").

### b. The Class Period Stock Sales Do Not Establish Scienter

The Court previously held that Plaintiffs' allegations of Class Period stock sales by Defendants Perlmutter and Mariotti did not support a "strong inference" of scienter, because the allegations did not suggest that the sales were suspicious or unusual. *Funko*, 2021 WL 880400, at *29-30; *see also Zucco*, 552 F.3d at 1005; *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1092 (9th Cir. 2002) ("Insider stock sales are not inherently suspicious."). The stock sales allegations in the Second Amended Complaint fare no better.

As to Perlmutter, Plaintiffs once again "fail to allege any facts to show [his] prior trading history," and his single Class Period sale "took place several months before Funko's corrective disclosures and the drop in Funko's stock price." *Funko*, 2021 WL 880400, at *29; SAC ¶ 165. "The paucity of the [SAC's] allegations about [this] transaction[] demonstrate[s] Plaintiffs fail to establish a strong inference of scienter on this basis." *Funko*, 2021 WL 880400, at *29.

Nor have the allegations about Mariotti changed in a way that would alter the Court's prior decision. As before, Mariotti's "alleged sale of 400,000 shares of Funko stock was in connection with Funko's secondary stock offering, which took

place several months before Funko's corrective disclosures" and it "reduced his holdings minimally, by only 1.4%." *Id.*; *see* SAC ¶¶ 123-24. Further, the Second Amended Complaint contains no allegations that could change the conclusion that Mariotti's other sale during the putative Class Period was "consistent with his typical practice." *Funko*, 2021 WL 880400, at *29; SAC ¶ 164. And "[u]nder Ninth Circuit law, the absolute value of [Mariotti's] stock sale does not on its own give rise to an inference of scienter." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *22 (N.D. Cal. May 22, 2012), *aff'd*, 759 F.3d 1051 (9th Cir. 2014). Plaintiffs' allegations therefore no more establish "Mariotti's stock sales were suspicious or sufficient to constitute circumstantial evidence of scienter" than they did in the CAC. *See Funko*, 2021 WL 880400, at *29; *Zucco*, 552 F.3d at 1005.

Setting aside the details of the individual stock sales, moreover, Plaintiffs' amendments have rendered their theory of motive even less logical, because the stock sales at issue occurred in September and October—*before* Funko allegedly lied to the market about its fourth quarter sales projections. *See Prodanova*, 2021 WL 1307882, at *6 ("[T]he lack of a plausible motive certainly makes it much less likely that a plaintiff can show a strong inference of scienter.").[9]

Finally, the Second Amended Complaint cannot overcome the far more plausible, non-fraudulent inference that Funko accurately disclosed its inventory levels throughout the Class Period and that as of October 31, its management believed in good faith that the Company's projections were still achievable based on the strength of its content, the upcoming holidays, and its recent historical performance. This inference is well-supported by the facts, undisputed in the CAC and still undisputed now, that: (i) Funko's sales for the first three quarters

---

[9] Moreover, Plaintiffs concede that other Funko executives, including Nickel and Perlmutter, could have sold shares in the September 2019 secondary public offering, but did not. *See* SAC ¶¶ 119, 122. This further cuts against an inference of scienter. *See Alaska Elec. Pension Fund v. Adecco S.A.*, 434 F. Supp. 2d 815, 834 (S.D. Cal. 2006) (stock sales did not support scienter where other "equally knowledgeable insiders act in a way inconsistent with the inference that the favorable characterizations of the company's affairs were known to be false when made").

"exceed[ed] expectations," *see supra* § II.B; SAC ¶ 98; (ii) Funko disclosed the amount of its inventory, and Plaintiffs do not question the accuracy of the Company's disclosed inventory balances or the timing of its inventory write-down, *see supra* § V.A.1.c; (iii) Defendants accelerated their disclosure of Funko's disappointing results and the need for a write-down, SAC ¶ 138; (iv) only two Individual Defendants were alleged to have sold stock during the Class Period, and those sales occurred well before the Company reaffirmed guidance on October 31; *see* SAC ¶¶ 123-24, 165; and (v) Jung, the only Individual Defendant alleged to have spoken in furtherance of this so-called scheme, sold *no* stock at all during the Class Period, SAC ¶¶ 164-66.   Weighed against Plaintiffs' illogical theory, only one conclusion follows:  Plaintiffs' allegations do not support a strong inference of scienter.

### B.    PLAINTIFFS' SECTION 20(A) AND 20A CLAIMS FAIL

Because Plaintiffs have not adequately pleaded a predicate violation of the Exchange Act, they can neither maintain control-person liability under Section 20(a), nor a violation of Section 20A.  *Funko*, 2021 WL 880400, at *30-31.

### CONCLUSION

For these reasons, the Second Amended Complaint should be dismissed with prejudice.

Dated:  May 7, 2021

Respectfully submitted,
**LATHAM & WATKINS LLP**

By:  */s/* Kevin M. McDonough
Kevin M. McDonough

*Attorneys for the Funko Defendants*