**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Co-Lead Counsel for*
*Lead Plaintiffs*

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GILBERTO FERREIRA, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FUNKO, INC., BRIAN MARIOTTI, RUSSELL NICKEL, ANDREW PERLMUTTER, JENNIFER FALL JUNG, KEN BROTMAN, GINO DELLOMO, ADAM KRIGER, ACON INVESTMENTS, L.L.C., ACON FUNKO MANAGER, L.L.C., ACON FUNKO INVESTORS, L.L.C., ACON FUNKO INVESTORS HOLDINGS 1, L.L.C., ACON FUNKO INVESTORS HOLDLINGS 2, L.L.C., ACON FUNKO INVESTORS HOLDINGS 3, L.L.C., and ACON EQUITY GENPAR, L.L.C., <br><br> Defendants. | Case No. 2:20-cv-02319-VAP-PJWx <br><br> **LEAD PLAINTIFFS' OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT** <br><br> Hearing <br> Date: September 20, 2021 <br> Time: 2:00 p.m. <br> Courtroom: 8A <br> Judge: Hon. Virginia A. Phillips |

1

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF RELEVANT FACTS ...................................................................3

ARGUMENT ...............................................................................................................5

I.     LEGAL STANDARD ........................................................................5

II.    THE COMPLAINT PROPERLY ALLEGES FALSE AND
MISLEADING STATEMENTS .......................................................6

    A.    Funko's Inventory Risk Statements Were Misleading .............6

        1.    Funko's Misleading Inventory Risk Statements Are Not
Protected by the Safe Harbor ...........................................6

            a.    Defendants Knew Their Risk Warnings Were
False and Misleading ...........................................9

    B.    Funko's FY2019 Guidance Was Materially False and
Misleading .................................................................................11

        1.    Funko's Cautionary Language Was Not Meaningful...13

        2.    Defendants' Forward-Looking Statements are Not
Protected Opinions ......................................................16

III.    THE SAC RAISES A STRONG INFERENCE OF SCIENTER .....18

    A.    Scienter is Sufficiently Pled For Each of Defendants'
Misrepresentations .................................................................19

    B.    Plaintiffs' Allegations are Based on Reliable Sources ..........23

    C.    Holistically, Plaintiffs' Allegations Demonstrate that the
Inference of Scienter is at Least As Compelling as the Innocent
Inference ....................................................................................25

CONCLUSION ..........................................................................................................25

i

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE
CONSOLIDATED SECOND AMENDED COMPLAINT        Case No. 2:20-cv-02319-VAP-PJWx

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer L.P.*,
2021 WL 1264027 (E.D. Pa. Apr. 6, 2021)...........................................15, 17, 18

*Bell v. Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................5

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) ............................................................................24

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) ....................................................18

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ..............................................................................6

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ............................................................................18

*Doyun Kim v. Advanced Micro Devices, Inc.*,
2019 WL 2232545 (N.D. Cal. May 23, 2019).....................................................7

*Ferreira v. Funko, Inc.*,
2021 WL 880400 (C.D. Cal. Feb. 25, 2021) ............................................ *passim*

*In re Am. Apparel, Inc. S'holder Litig.*,
855 F. Supp. 3d 1043 (C.D. Cal. 2012) ............................................................14

*In re Atossa Genetics Inc. Sec. Litig.*,
868 F.3d 784 (9th Cir. 2017) ............................................................................18

*In re Coinstar Inc. Sec. Litig.*,
2011 WL 4712206 (W.D. Wash. Oct. 6, 2011)..................................................22

*In re Copper Mountain Sec. Litig.*,
311 F. Supp. 2d 857 (N.D. Cal. 2004)...............................................................14

*In re Countrywide Fin. Corp. Derivative Litig.*,
554 F. Supp. 2d 1044 (C.D. Cal. 2008).............................................................24

ii

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE
CONSOLIDATED SECOND AMENDED COMPLAINT        Case No. 2:20-cv-02319-VAP-PJWx

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008) ...........................................................15

*In re Downey Sec. Litig.*,
   2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ..................................................13

*In re Facebook, Inc. Sec. Litig.*,
   477 F. Supp. 3d 980 (N.D. Cal. 2020) ...............................................................7

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ...........................................................................9

*In re Immune Response Sec. Litig.*,
   375 F. Supp. 2d 983 (S.D. Cal. 2005) ........................................... 13, 19, 20, 21

*In re Intuitive Surgical Sec. Litig.*,
   2014 WL 7146215 (N.D. Cal. Dec. 15, 2014) ..................................................22

*In re Leapfrog Enter., Inc. Sec. Litig.*,
   200 F. Supp. 3d 987 (N.D. Cal. 2016) ..............................................................10

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017) ...........................................................19, 22, 23

*In re Rackable Sys. Inc. Sec. Litig.*,
   2010 WL 199703 (N.D. Cal. Jan. 13, 2010) ...............................................10, 20

*In re STEC Inc. Sec. Litig.*,
   2011 WL 2669217 (C.D. Cal. June 17, 2011) ..................................................14

*In re UTStarcom, Inc. Sec. Litig.*,
   617 F. Supp. 2d 964 (N.D. Cal. 2009) ..............................................................12

*In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*,
   694 F. Supp. 2d 1192 (W.D. Wash. 2009) ......................................................22

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ........................................................................5, 6

*Lacey v. Maricopa Cnty.*,
   693 F.3d 896 (9th Cir. 2012) ............................................................................1

*Matrixx Initiatives Inc. v. Siracusano*,
   563 U.S. 27 (2011)...........................................................................................25

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE
CONSOLIDATED SECOND AMENDED COMPLAINT          Case No. 2:20-cv-02319-VAP-PJWx

*Morgan v. AXT Inc.*,
  2005 WL 2347125 (N.D. Cal. Sept. 23, 2005) ................................................10

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004) ........................................................................22

*ODS Capital LLC v. JA Solar Holdings Co. Ltd.*,
  2020 WL 7028639 (S.D.N.Y. Nov. 30, 2020)..................................................17

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,
  780 F. App'x 480 (9th Cir. 2019) ....................................................................23

*Omnicare, Inc., v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015).................................................................................16, 17

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598, 606 (9th Cir. 2014) .....................................................................9

*Osher v. JNI Corp.*,
  308 F. Supp. 2d 1168 (S.D. Cal. 2004) *aff'd in part, vacated in part,*
  183 F. App'x 604 (9th Cir. 2006) ....................................................................11

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) ...........................................................................6

*Robb v. Fitbit, Inc.*,
  2017 WL 219673 (Jan. 19, 2017) ....................................................................23

*Roberts v. Zuora, Inc.*,
  2020 WL 2042244 (N.D. Cal. Apr. 28, 2020)..................................................22

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) ....................................................................13, 21

*S. Ferry LP, # 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ...........................................................................19

*Schueneman v. Arena Pharm.*,
  840 F.3d 698 (9th Cir. 2016) ...........................................................................18

*Shenwick v. Twitter, Inc.*,
  282 F. Supp. 3d 1115 (N.D. Cal. 2018)..............................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).............................................................................5, 19, 22

*Todd v. STARR Surgical Co.*,
    2016 WL 6699284 (C.D. Cal. Apr. 12, 2016) ......................................................18

*Vignola v. FAT Brands, Inc.*,
    2019 WL 6888051 (C.D. Cal. Dec. 17, 2019)......................................................18

*Waterford Twp. Police v. Mattel, Inc.*
    321 F. Supp. 3d 1133 (C.D. Cal. 2018), *aff'd sub nom. Castro v. Mattel, Inc.*25

*Webb v. Solarcity Corp.*,
    884 F.3d 844 (9th Cir. 2018) ...............................................................................23

*Weiss v. Mentor Graphics Corp.*,
    1999 WL 985141 (D. Or. Oct. 6, 1999)..............................................................19

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) ..................................................................... *passim*

*Wozniak v. Align Technology Inc.*,
    2011 WL 2269418 (N.D. Cal. June 8, 2011)......................................................14

*Yanek v. Starr Surgical Co.*,
    388 F. Supp. 2d 1110 (C.D. Cal. 2005) ..............................................................16

*Zaghian v. Farrell*,
    675 F. App'x 718 (9th Cir. 2017) .................................................................12, 14

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ...............................................................................24

**Statutes**

15 U.S.C. § 78u-4(b)(1)(B)............................................................................................6

15 U.S.C. § 78u-4(b)(2)(A)..........................................................................................18

15 U.S.C. § 78u-5(c)(1) ......................................................................................9, 10, 16

PSLRA ..........................................................................................................................18

**Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................................5

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE
CONSOLIDATED SECOND AMENDED COMPLAINT      Case No. 2:20-cv-02319-VAP-PJWx

Lead Plaintiffs Abdul Baker, Zhibin Zhang, and Huaiyu Zheng submit this memorandum of law in support of their opposition to the Funko Defendants' motion to dismiss the Consolidated Second Amended Compliant ("SAC").[1]

## PRELIMINARY STATEMENT

The Court previously held that the CAC sufficiently alleged that Funko's inventory risk warnings were actionable misstatements. *See Ferreira v. Funko, Inc.*, 2021 WL 880400, *1, *16-19, *25 (C.D. Cal. Feb. 25, 2021). However, when dismissing the CAC with leave to amend, the Court identified deficiencies relating to falsity, specifically holding that the CAC did not allege that "Defendants knew Funko's FY2019 guidance was impossible to achieve" (*Id*. at *21-23), and scienter. *Id*. at *30. The SAC cures these deficiencies with compelling allegations based on CW1's first-hand knowledge and personal interactions with the Individual Defendants. [2]

For example, the SAC alleges that Defendants knew that their FY2019 guidance was impossible to achieve because, among other things, by September 2019, Funko's internal customer order data showed a $30-40 million shortfall in sales. Defendant Jung discussed the shortfall with CW1 (and others) and agreed with the consensus that the shortfall could not be made up. Further, CW1 personally advised Defendant Mariotti on at least six different occasions that customer demand was lacking and that his request to order more products would not generate additional sales.

---

[1] The Second Amended Complaint is referred to as the "SAC." The Consolidated Amended Complaint is referred to as the "CAC." Unless otherwise noted, all paragraph references are to the SAC. The Funko Defendants' Motion to Dismiss is referred to as "MTD."

[2] In addition to the SAC's new allegations, the SAC realleges certain of Plaintiffs' original allegations so at to preserve those issues for appeal. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012).

The SAC also pleads a strong inference of scienter by alleging, *inter alia*, Defendants' knowledge that Funko's risk warnings were misleading through Defendants Jung's and Perlmutter's (i) attendance at weekly meetings that CW1 attended; (ii) receipt of internal reports that tracked and quantified Funko's obsolete inventory and related discussions regarding the eventual write down of the inventory; and (iii) knowledge that Funko leased a warehouse for the purpose of storing obsolete inventory that was to destroyed.

The SAC's allegations support the compelling inference that Defendants acted with fraudulent intent. While motive is not necessary to establish Defendants' scienter, Plaintiffs' allegations are bolstered by allegations that Defendants Mariotti, Perlmutter and the ACON Defendants took full advantage Funko's peak trading price during the Class Period, selling nearly $105 million in Funko stock while in possession of non-public material information concerning Funko's obsolete inventory condition and FY2019 guidance.

Defendants' motion ignores the SAC's new allegations (falsely asserting that "there is not a single allegation" that any Individual Defendant knew that Funko's sales projections were impossible to achieve) and mischaracterizes Plaintiffs' claims (incorrectly arguing that Plaintiffs' claims rest on whether Funko was required to write down its inventory prior to the end of 2019). But the SAC clearly alleges that CW1 personally told Defendant Jung that the sales projections were impossible to achieve and discussed this impossibility with her at numerous weekly meetings. And Plaintiffs inventory claim is not based on the timing of Funko's inventory write-down. Rather, it is based on Defendants' knowledge that the hypothetical risks that Funko warned of in its risk warnings had already come to fruition.

For these reasons, and those discussed below and in the ACON Opposition, Defendants' motions should be denied in their entirety.

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT          Case No. 2:20-cv-02319-VAP-PJWx

## STATEMENT OF RELEVANT FACTS

Leading up to the Class Period, Funko had amassed millions of dollars of obsolete inventory as a result of its inability to properly forecast customer demand. ¶¶ 52-75. CW1, Funko's Director of Merchandise Planning, was hired in July 2019 to address Funko's internal forecasting problems. ¶ 54. When CW1 started in July 2019, Funko had at least $10 million of obsolete inventory. ¶ 75. By October 2019, it had grown by 25-50%. *Id.* CW1 learned of Funko's plan for dealing with its obsolete inventory during an August 2019 Weekly Sales meeting when the Director of Financial Planning and Analysis announced that Funko acquired a warehouse in Puyallup, Washington to store obsolete products that the Company planned to destroy. ¶ 79.

Multiple CWs reported that Funko's obsolete inventory problem was well-known. ¶¶ 73-93. In addition, Defendants Nickel, Jung and Perlmutter knew that Funko had millions of units of obsolete inventory that would not be sold since at least July 2019 through their attendance at Weekly Sales meetings, where the writing-down of obsolete inventory was routinely discussed. ¶¶ 77, 79-81. Defendants Nickel, Jung and Perlmutter also received regular reports starting in August and September 2019 that quantified Funko's obsolete inventory and projected inventory to be written down. ¶¶ 80-81. Funko's excess inventory problem was also discussed at Funko Board meetings attended by Defendants Mariotti, Nickel, Perlmutter, Brotman, Dellomo and Kriger, including a meeting that took place in late-June or early-July 2019 when Defendants discussed consolidating the obsolete inventory. ¶ 85. Defendant Mariotti was also advised of the inventory issues via emails summarizing each Weekly Sales meeting. ¶ 111.

Nevertheless, Defendants misleadingly portrayed the risk that the Company could accumulate excess inventory that it "may need to hold for a long period of

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT       Case No. 2:20-cv-02319-VAP-PJWx

time, write down, sell at prices lower than expected or discard" as only a potential risk. ¶¶ 127, 136.

By late-August or early-September 2019, Defendants also knew that Funko's FY2019 guidance was impossible to achieve. ¶¶ 99-117. Funko's customer orders in early-September 2019 showed a $30-40 million shortfall in sales, and it was statistically impossible to close the gap. ¶¶ 104-106. The shortfall was discussed at Weekly Sales meetings, and the consensus of the meeting attendees was that the shortfall could not be made up. Defendant Jung was part of these discussions, and always agreed with the analysis. ¶¶ 108-110. Defendant Mariotti knew of the shortfall via emails summarizing the Weekly Sales meetings. ¶ 111. Defendant Mariotti was also aware that demand for Funko's fourth quarter products was lacking through interactions with CW1 and Funko's planning team, who informed him on at least six occasions that ordering more units of existing products would not generate additional sales. ¶ 112.

After learning of the Company's inventory and sales problems, Defendants rushed to conduct a Secondary Public Offering (the "Offering") while Funko's stock was trading at or near its peak stock price. ¶¶ 120-22. On September 19, 2019, Defendant Mariotti and the ACON Defendants sold over $101 million in stock in the Offering – the largest sale ever for Mariotti and the only sale for ACON. ¶ 123.

Tellingly, these sales took place shortly before Defendants announced on October 31, 2019, that Funko was maintaining its FY2019 guidance – an announcement Defendants knew the market would react negatively to since the market expected Funko to increase its guidance. ¶ 126. However, the reconfirmed guidance was itself misleading because Defendant Jung confirmed the guidance with full knowledge and agreement that Funko's internal sales projections did not support it. ¶¶ 129-130.

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT        Case No. 2:20-cv-02319-VAP-PJWx

On February 5, 2020, after the market closed, Funko shocked the market by revealing that instead of an expected *increase* of 22% to 24% in net sales, Funko experienced a *decrease* in net sales of 8% for 4Q2019. ¶ 138. Defendants also disclosed a $16.8 million write-down to "dispose of slower moving inventory to increase operational capacity." *Id.* Analysts were stunned by the revelations, noting "credibility concerns." ¶¶ 141-47. On this news, Funko's share price fell $6.20, or 40%, to close at $9.29 per share on heavy trading volume. ¶ 140.

On March 5, 2020, after the market closed, Funko confirmed that sales decreased 8% year-over-year to $213.6 million – well below expectations. ¶ 148. Defendant Mariotti conceded that Funko's forecasting and inventory management practices were in need of refinement. ¶ 153. On this news, Funko's share price fell $0.32, or over 4%, to close at $6.92 on March 6, 2020. ¶ 155.

## ARGUMENT

### I.    LEGAL STANDARD

Dismissal pursuant to Rule 12(b)(6) "is appropriate only where the complaint lacks a cognizable theory or sufficient facts to support a cognizable theory." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted). A complaint must only allege "enough facts to state a claim to relief that is plausible on its face." *Bell v. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint may survive a motion to dismiss even if the possibility of recovery is extremely "remote and unlikely." *Twombly*, 550 U.S. at 556. When "faced with a Rule 12(b)(6) motion to dismiss a §10(b) action, courts must, as with any [12(b)(6) motion,] accept all factual allegations in the complaint as true … [and] consider the complaint in its entirety." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007).

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT          Case No. 2:20-cv-02319-VAP-PJWx

## II.    THE COMPLAINT PROPERLY ALLEGES FALSE AND MISLEADING STATEMENTS

The SAC pleads particularized facts showing that Defendants' Class Period inventory risk statements and FY2019 earnings guidance were materially false and misleading. ¶¶ 128, 131-132, 134-135, 137. A misrepresentation or omission is actionable if it creates "an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). "'[O]nly if "reasonable minds" could not disagree that the challenged statements were not misleading should the district court dismiss under 12(b)(6).'" *Shenwick v. Twitter, Inc.,* 282 F. Supp. 3d 1115, 1133-34 (N.D. Cal. 2018) (quoting *Warshaw v. Xoma Corp.,* 74 F.3d 955, 959 (9th Cir. 1996)). The SAC adequately alleges falsity by "'specify[ing] … each statement alleged to have been misleading, … the reason or reasons why the statement is misleading, and … stat[ing] with particularity all facts on which that belief is formed.'" *Khoja,* 899 F.3d at 1008; 15 U.S.C. § 78u-4(b)(1)(B).

### A.    Funko's Inventory Risk Statements Were Misleading

#### 1.    Funko's Misleading Inventory Risk Statements Are Not Protected by the Safe Harbor

The Court previously held that Funko's inventory risk warnings were misleading and not protected by the safe harbor because they were not meaningful. *See Ferreira v. Funko, Inc.*, 2021 WL 880400, at *18, *25. The SAC strengthens these allegations by pleading additional facts demonstrating that Defendants knew the inventory risk statements were misleading. ¶¶ 74-76; 85; 87; 89; 92. *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.,* 759 F.3d 1051, 1058 (9th Cir. 2014).

During the Class Period, Defendants warned investors of possible risks to its business *if* customer demand failed to meet forecasted levels and *if* Funko was not successful in managing excess inventory. Specifically, Funko warned:

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT          Case No. 2:20-cv-02319-VAP-PJWx

> *If* demand or future sales do not reach forecasted levels, we *could* have excess inventory that we *may* need to hold for a long period of time, write down, sell at prices lower than expected or discard. *If* we are not successful in managing our inventory, our business, financial condition and results of operations *could* be adversely affected.

¶¶ 127; 136 (emphasis added).

The Court previously held that Plaintiffs pled particularized facts demonstrating that these risk warnings were misleading and not meaningful because, at the time they were issued, Defendants' haphazard sales forecasting had already caused the Company to amass millions of dollars of excess, obsolete inventory. *See Funko*, 2021 WL 880400, at *18, *25 (finding that Funko's inventory statements set forth "various hypothetical risks associated with maintaining excess inventory without disclosing that this risk had materialized"). The Court distinguished Funko's risk disclosures with those found meaningful by the Ninth Circuit in *Wochos v. Tesla, Inc.*, 985 F.3d 1180 (9th Cir. 2021), "in as much as Tesla actually disclosed the types of challenges it had experienced in connection with ramping up its production of the Model 3 among its risk disclosures." *Funko*, 2021 WL 880400, at *18. Unlike the risk warnings in *Tesla*, Funko's risk statements did not implicitly or explicitly disclose that Funko had already accumulated $10-$15 million worth of obsolete inventory that Defendants knew would not be sold. *See In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1017 (N.D. Cal. 2020) (risk disclosure is misleading if the risk warned of was "already affecting" the defendant); *Doyun Kim v. Advanced Micro Devices, Inc.*, 2019 WL 2232545, at *7 (N.D. Cal. May 23, 2019) (same).

Defendants do not challenge the Court's holding that Funko's Class Period inventory risk statements were materially misleading and not meaningful. MTD at 13. Indeed, the SAC only strengthens the allegations that the Court already found sufficient with respect to Funko's obsolete inventory. *See* ¶ 75 (quantifying the

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT          Case No. 2:20-cv-02319-VAP-PJWx

amount of inventory Funko held in July 2019 and October 2019); ¶¶ 75, 79 (explaining that Funko leased a warehouse in Puyallup to store approximately 80% of Funko's obsolete inventory that Defendants had "no intention of selling").

Instead, Defendants refer to documents outside the four corners of the SAC to imply that Funko disclosed its true inventory condition.[3] *See* MTD at 4-5; 14 n.7. However, none of the purported "disclosures" are among Funko's risk disclosures and none of them disclosed the challenges that Funko was then-facing with respect to its obsolete inventory. Funko's purported "disclosures" are therefore unlike the risk disclosures in *Tesla* that explicitly warned of "ramping challenges" Tesla was then-facing. *Tesla*, 985 F.3d at 1195.

For example, Defendants refer to Funko's August 8, 2019 and October 31, 2019 earnings conference calls, where Defendants reported Funko's *total* inventory holdings. *See* Ex. 6 at 9 (reporting total inventory of $75.3 million); Ex. 9 at 8 (reporting total inventory of $94.3 million). But Funko did not identify how much of the total consisted of new or old inventory and did not alert investors that Funko had accumulated millions of dollars of obsolete inventory that would not be sold.

Similarly, Defendant Nickel's statement that Funko had taken higher reserves for slower moving inventory of some old lines did not alert investors that Funko had millions of dollars of obsolete inventory that could not be sold. Nickel's statement, at best, alerted investors that Funko had *some* obsolete inventory; it did not disclose that Funko had amassed a material amount of obsolete inventory that was certain to adversely affect the Company. Indeed, the Court previously held that this statement was vague. *See Funko*, 2021 WL

---

[3] Plaintiffs oppose the Funko Defendants' Request for Judicial Notice ("RJN") with respect to Exhibits 2-7. *See* Plaintiffs' Opposition to Defendants' RJN filed contemporaneously herewith.

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT          Case No. 2:20-cv-02319-VAP-PJWx

880400, at *12 (citing *Or. Pub. Emps. Ret. Fund v. Apollo* Grp. Inc., 774 F.3d 598, 606 (9th Cir. 2014)) (noting that investors do not rely on vague statements).[4]

Funko's 2018 10-K likewise did not disclose that the Company's inventory risk warnings were no longer *potential* risks. MTD at 5 n.2. The statements Defendants rely upon are not part of their risk disclosures, but rather are set forth in Funko's accounting policies. Specifically, Funko's *Critical Accounting Policies and Estimates* (Ex. 4 at 80-81) describes how Funko treats excess and obsolete inventory for accounting purposes, and Funko's *Significant Accounting Policies* (Ex. 4 at 92), describes how Funko values reserves for excess and obsolete inventory for accounting purposes ("[t]he Company maintains reserves for excess and obsolete inventories to reflect the inventory balance at the lower of cost or net realizable value"). These statements did not disclose the truth about Funko's current inventory condition.

### a.    Defendants Knew Their Risk Warnings Were False and Misleading

The SAC pleads particularized facts showing that Funko's risk warnings are not protected by the safe harbor because they were made with actual knowledge that they were false and misleading. *See* 15 U.S.C. §78u-5(c)(1). The Individual Defendants knew that Funko had accumulated millions of units of excess, obsolete inventory that would not be sold, and would need to be written off or discarded.[5]

---

[4] At best, this statement, as well as the other statements relied upon, create a question of fact as to whether investors were on notice that the potential future risks Funko warned of had already come to fruition. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (holding "a district court ruling on a motion to dismiss is not sitting as a trier of fact" and that evaluating questions of fact is "best reserved for later stages of the proceedings").

[5] Defendants' claim that "excess" or large amounts of inventory are not problematic in a vacuum ignores the context of the use of the word "excess" in the Company's risk language and in the SAC. *See* MTD at 13. Funko's risk language specifically notes that the Company must "avoid accumulating excess inventory" (¶ 127) and the excess inventory being referred to

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT        Case No. 2:20-cv-02319-VAP-PJWx

For example, the SAC alleges that (i) Defendants Jung and Perlmutter received weekly Aged Inventory Reports that quantified the amount of inventory Funko had accumulated (¶¶ 80-81); (ii) the Aged Inventory Reports, and the question of how much inventory Funko would eventually need to write off, were discussed at Weekly Sales meetings (*id*.); (iii) in August 2019, Defendants Jung and Perlmutter were told that Funko acquired the Puyallup warehouse to store products that were to be destroyed (¶ 79); (iv) starting in September 2019, during Weekly Sales meetings, Defendants Jung and Perlmutter reviewed results from an Open to Buy tool created by CW1 that tracked Funko's obsolete inventory (¶ 81); (v) Defendants Jung and Perlmutter agreed that Funko had obsolete inventory that could not be sold (¶ 83); (vi) Defendant Mariotti received emails summarizing each Weekly Sales meeting discussing Funko's obsolete inventory (¶¶ 83, 111); and (vii) Funko's excess inventory was such a problem that it was discussed at Funko's quarterly Board of Directors meetings that were attended by Defendants Mariotti, Nickel, Perlmutter, Brotman, Dellomo and Krieger (¶ 85).[6]

Faced with detailed allegations, Defendants wrongly assert that unless Plaintiffs show that Defendants knew that a write-down should have been taken in August or September, Plaintiffs have not pled that Defendants knew the risks they warned of had materialized. MTD at 13. Defendants are wrong. *First*, a write-down is just one of the risks Defendants warned of and, in any event, Plaintiffs pled facts showing Defendants knew as early as August 2019 that the

in the risk language clearly refers to inventory that is obsolete, or otherwise impaired. Further, the SAC refers to "excess obsolete inventory" not merely "excess" inventory. *See* ¶¶ 73, 162.

[6] Plaintiffs' detailed allegations regarding Defendants' knowledge of Funko's inventory problems are distinguishable from the allegations found insufficient in *In re Leapfrog Enter., Inc. Sec. Litig.,* 200 F. Supp. 3d 987, 1004 (N.D. Cal. 2016) (plaintiff's complaint did not allege any specific evidence demonstrating that the defendants' statements concerning the status of hang-over inventory was known to be false or misleading) and *In re Rackable Sys. Inc. Sec. Litig.*, 2010 WL 199703, at *6 (N.D. Cal. Jan. 13, 2010) (relying on the vague CW statement that defendants "appeared to have a lot of excess inventory"). *Morgan v. AXT Inc*., 2005 WL 2347125, at *14 (N.D. Cal. Sept. 23, 2005), is similarly distinguishable because Plaintiffs have not alleged a GAAP violation.

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT          Case No. 2:20-cv-02319-VAP-PJWx

obsolete inventory would need to be written down.[7] ¶¶ 79-80, 82-83. *Second*, Plaintiffs' claim is not based on whether Funko properly accounted for the obsolete inventory pursuant to GAAP or whether the write down was timely pursuant to GAAP. Accordingly, Plaintiffs must only plead facts showing that Defendants knew that Funko was storing a material amount of obsolete inventory that would require one or more of the adverse actions set forth in their risk warnings (holding for a long period, selling at a discount, writing down or discarding). Plaintiffs have done so.[8]

### B.    Funko's FY2019 Guidance Was Materially False and Misleading

On October 31, 2019, Funko issued a press release reporting its results for 3Q2019 and reiterating its earlier FY2019 guidance, stating in part "[t]he Company expects net sales to be in a range of $840 million to $850 million." ¶129. On an earnings call the same day, Defendant Jung reiterated the guidance, stating "we are maintaining our guidance ranges we laid out on the second quarter conference call, which are: net sales of $840 million to $850 million, representing year-over-year growth of 22% to 24% . . . ." ¶ 130. In response to a question as to why the Company was not increasing its guidance, Defendant Jung assured the market that "even with our current guidance, Q4 [2019] will be our biggest ever as a company." ¶ 133.

---

[7] Funko's inventory risk statements warned of various risks if Funko failed to accurately forecast customer demand: "we *could* have excess inventory that we *may* need to hold for a long period of time, write-down, sell at prices lower than expected *or* discard." ¶¶ 127; 136 (emphasis added). Defendants' focus only on the potential risk of a write down ignores the risk language itself, as well as the SAC's allegations that Defendants knew that Funko was storing excess, obsolete inventory that was going to be destroyed. ¶¶ 76-78; 80-83; 85.

[8] Since Plaintiffs do not allege that Funko violated GAAP with respect to the timing of Funko's inventory write-down, Defendants' cited authority is inapposite. *See* MTD at 13 (citing *Paddock v. Dreamworks Animation SKG, Inc.* 2015 WL 12711653, at *5-6 (C.D. Cal. Apr. 1, 2015) (plaintiffs failed to allege facts establishing GAAP violations); *Osher v. JNI Corp.,* 308 F. Supp. 2d 1168, 1193 (S.D. Cal. 2004) (plaintiffs failed to show write down was untimely) *aff'd in part, vacated in part,* 183 F. App'x 604 (9th Cir. 2006).

11

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT    Case No. 2:20-cv-02319-VAP-PJWx

These statements were false and misleading when made for the reasons set forth *supra.* While this Court previously held "Plaintiffs have not alleged particularized facts to show Defendants knew their FY2019 guidance was impossible to meet," *Funko*, 2021 WL 880400, at *21-24, Plaintiffs now do just that in the SAC. The SAC alleges, *inter alia*, that (i) even if the Company sold every unit of its new products for the fourth quarter, Funko would still fall short of the guidance it provided to the market; (ii) based on a review of customer orders, it was ***clear*** that customer demand for Funko's new fourth quarter products was ***insufficient to generate the revenue needed to meet the Company's stated guidance***; and (iii) ***Funko could not close the gap*** with older excess inventory because it would have needed product stored at a location without fulfillment capabilities. ¶¶ 131, 134. Defendants' argument that Plaintiffs' allegations about impossibility are "conclusory" is erroneous. MTD at 9. The SAC explains why the guidance was impossible to meet and when this information was communicated to Defendants. ¶¶ 131, 134.

Forecasts that contradict internal company data are misleading. *See In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 972-73 (N.D. Cal. 2009) (by alleging examples of internal issues including declining demand, plaintiffs established that the defendants were aware of undisclosed facts undermining their financial guidance); *Zaghian v. Farrell*, 675 F. App'x 718, 720 (9th Cir. 2017) (forecasts built for "desired but unachievable…outcome" in the face of reliable information conflicting with the desired forecasts are misleading).

This is true even in light of *Tesla.* In *Tesla*, the Ninth Circuit agreed with a lower court that plaintiffs had not shown falsity when witnesses who left Tesla one year prior to the class period and suppliers who had not been hired yet told Elon Musk his timeline guidance was impossible. *Tesla*, 985 F.3d at 1193. In the SAC, CW1 provides much more compelling evidence based on Funko's own

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT          Case No. 2:20-cv-02319-VAP-PJWx

internal forecasts and customer orders. Far from the Court's holding in *Tesla* that the plaintiffs had presented no evidence that Musk "shared [anyone else's] gloomy view," here the SAC alleges that Defendant Jung, the Company's CFO, was not only aware of the shortfall between the internal forecast and the Company's sales guidance but "always agreed" with the facts presented to her. ¶¶ 131, 134. Defendants try to imply that evergreen products could have made up the shortfall because they are not explicitly mentioned in the sections of the SAC about what was discussed at the Weekly Sales meetings. MTD at 10. However, the SAC sufficiently alleges that the discussions at the meetings indicated the shortfall could not be fixed.[9]

### 1.     Funko's Cautionary Language Was Not Meaningful

The safe harbor does not protect the Company's FY2019 guidance, because the cautionary language accompanying these statements was not meaningful and Defendants knew their statements were misleading. To be "meaningful," cautionary language must "discredit the alleged misrepresentations to such an extent that the real risk of deception drops to nil." *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1033 (S.D. Cal. 2005). Dismissal under the safe harbor requires a "stringent showing", meaning "[t]here must be sufficient cautionary language or risk disclosure such that reasonable minds could not differ

---

[9] The cases Defendants cite have no application to the case at hand. MTD at 10-11. In *In re Downey Sec. Litig.*, 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009), the confidential witness allegations did not allege that the witnesses were consistently informing defendants about their contrary belief or that the defendants were reviewing contrary data. *Id.* at *11. Therefore, the court found their allegations were mere "second-guessing of management decisions." *Id.* Here, Plaintiffs allege much more than mere "second-guessing." CW1 reported how the shortfall was known to the Defendants via various forms of information. ¶¶ 108-117. *Ronconi v. Larkin*, 253 F.3d 423, 430 n.12 (9th Cir. 2001) stands for the general proposition that an honest opinion is not rendered misleading by turning out to be false. That is not what is being alleged here – this is not fraud by hindsight. Plaintiffs allege contemporaneous information that made these statements misleading.

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT          Case No. 2:20-cv-02319-VAP-PJWx

that the challenged statement was not misleading." *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 3d 1043, 1071 n.179 (C.D. Cal. 2012).

Funko's cautionary language was not meaningful. *First*, the risk language related to the risk that sales could underperform because the Company develops products tied to content releases before they know what the demand will be for the underlying content.[10] However, that risk language did not speak to CW1's allegations that Funko did not develop enough products to generate the projected fourth quarter sales. ¶¶ 100-104. None of Funko's warnings speak to this risk. *See Zaghian*, 675 F. App'x at 720 (finding that defendants' cautionary language that a product could fail to achieve sales expectations was insufficient because it did not address plaintiff's allegations that defendants received feedback warning that the product would likely fail because it would not appeal to their customers); *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 882 (N.D. Cal. 2004) (to be meaningful "the cautionary warning ought to be precise and relate directly to the forward-looking statements at issue"); *see also In re STEC Inc. Sec. Litig.*, 2011 WL 2669217, at *10 (C.D. Cal. June 17, 2011) (generic warnings about predicting customer demand were inadequate for safe harbor protection). Accordingly, Defendants' cautionary language did not address the harm alleged and was not meaningful.[11]

Even if Funko's cautionary language could be read to warn of the risks that transpired, it is nonetheless not meaningful because the SAC now alleges facts

---

[10] *See* MTD at 8-9 (setting forth Funko's cautionary language).

[11] Defendants' disclosures are not comparable to those in *Wozniak v. Align Technology Inc.*, 2011 WL 2269418, at *7 (N.D. Cal. June 8, 2011). *See* MTD at 9. In *Wozniak,* cautionary language identifying the effects a settlement would have on sales, including the possibility of losing customers, was specifically tailored to the risks of the settlement. *Id.* Here, Defendants' risk language about the inability to predict customer demand was inadequate because it did not alert investors that there may not be enough product tied to the fourth quarter releases in the Company's pipeline to meet the guidance.

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT          Case No. 2:20-cv-02319-VAP-PJWx

showing that Company's projections were impossible to achieve – remedying a deficiency identified by the Court in its prior holding. *See* ¶¶ 105-110; *Funko*, 2021 WL 880400, at \*21 (citing *Tesla*, 985 F.3d at 1193-94). CW1, who was responsible for developing Company-wide sales forecasts and determining how much product to order to meet demand, stated that Funko could have sold every unit of its new fourth quarter products and it would not have generated enough revenue to meet its projections. ¶ 105. As discussed *supra*, Plaintiffs' allegations are distinguishable from *Tesla*. *First*, unlike the CWs in *Tesla*, the SAC's allegations are based on the first-hand knowledge of CW1, who was employed at Funko during the Class Period and personally advised Defendants that it was impossible to fix the sales shortfall. ¶ 110. *Second*, Plaintiffs have pled facts showing Defendant Jung accepted CW1's analysis that the shortfall could not be bridged. *Id.*; *see Tesla*, 985 F.3d at 1194.

Defendants' cautionary language was also not meaningful because it merely warned of risks that had already materialized. *See Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer L.P.*, 2021 WL 1264027, at \*7 (E.D. Pa. Apr. 6, 2021) (holding the safe harbor did not apply when "Defendants' unrealistic, and ultimately impossible, timeline statements were knowingly false when made"); *In re Countrywide Fin. Corp. Sec. Litig.,* 588 F. Supp. 2d 1132, 1178 n.62 (C.D. Cal. 2008) ("[C]autionary words about future risk cannot insulate from liability the failure to disclose that the risk has transpired."). Defendants cite to risk disclosures warning of their inability to predict demand for products based on new content. *See* MTD at 8-9. However, by September 2019 Funko's internal sales data indicated that customer demand for products to be sold in the fourth quarter was insufficient to meet the guidance. ¶¶ 131, 134. Thus, the risk that

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT          Case No. 2:20-cv-02319-VAP-PJWx

Funko would underperform had already materialized when the guidance was issued.[12]

Accordingly, Defendants' cautionary warnings were not meaningful and the safe harbor does not protect Defendants' FY2019 guidance because Defendants had actual knowledge that the guidance was impossible to achieve at the time the statements were made. *See infra* at § III.A; 15 U.S.C. § 78u-5(c)(1).

### 2.    Defendants' Forward-Looking Statements are Not Protected Opinions

Defendants' FY2019 guidance statements are not protected opinions under *Omnicare, Inc., v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185, 189-190 (2015), and its progeny. MTD at 11-12.

*First*, Defendant Jung's statement regarding Funko's FY2019 guidance was not an opinion at all. *See* ¶ 133. Defendant Jung did not say she "believed" or "thought" Funko would have net sales of $840 million to $850 million, she said "we are maintaining our guidance ranges laid out on the second quarter conference call, which are: net sale of $840 million to $850 million." ¶ 133. The difference is significant. *See Omnicare*, 575 U.S. at 185-87 (investors "recognize[] the import of words like 'I think' or 'I believe,' and grasps that they convey some lack of certainty as to the statement's content").

*Second*, even if Defendants' guidance statements were deemed opinions, they are still actionable because *Omnicare* does not insulate Defendants from knowing misstatements. Plaintiffs have alleged that the Defendants' guidance statements were not honestly held because they knew the guidance was

---

[12] Defendants' other alleged cautionary language was not meaningful because it consisted of boilerplate warnings. Defendants' warnings that the Company could be impacted by the "popularity" of content and the "seasonality" of Funko's business (MTD at 9-10) are all too generic to be considered meaningful. *See Yanek v. Starr Surgical Co.*, 388 F. Supp. 2d 1110, 1123 (C.D. Cal. 2005) (rejecting safe harbor where cautionary language reflected "factors that are so broad that they apply to any business that sells products to consumers.").

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT          Case No. 2:20-cv-02319-VAP-PJWx

impossible to meet based on the Company's underlying sales data. ¶¶ 108-112. Actual knowledge that an opinion is false is sufficient to show a speaker's state of mind. *See Omnicare*, 575 U.S. at 184.

There are three prongs to the test laid out in *Omnicare,* and an opinion can be false, and therefore lead to liability, if it fulfills any of the prongs. Under the third prong, an opinion can be false if "it omits material facts about [a defendant's] inquiry into, or knowledge concerning, a statement of opinion, and if those facts conflict with what a reasonable investor, reading the statement fairly and in context, would take from the statement itself." *Omnicare*, 575 U.S. at 176. That is just what Plaintiffs allege here.

Plaintiffs plead particularized allegations that these "opinions" were given in the face of contrary data. ¶¶ 108-112. This information was omitted from investors and made Defendants' projections misleading to a reasonable investor. Defendants had this knowledge – it was provided in weekly meetings and emails. ¶¶ 108-111. CW1 had direct conversations with Mariotti about the amount of product Funko could actually sell—and how there was no demand for additional supply. ¶ 112.

"Plaintiffs here have plausibly alleged that Defendants could not have possibly believed the projections[.]" *ODS Capital LLC v. JA Solar Holdings Co. Ltd.*, 2020 WL 7028639, at *11 (S.D.N.Y. Nov. 30, 2020) (denying a motion to dismiss when plaintiffs "alleged that the projections for the fourth quarter were vastly different than what was provided"). In a recent case, Judge Gerald A. McHugh of the Eastern District of Pennsylvania addressed opinion statements regarding a projected timeline of pipeline construction. *See Allegheny Cnty.*, 2021 WL 1264027, at *6-8. Plaintiffs alleged facts showing that it was clear that the pipelines, troubled from the start, could not be built in the stated timeline. The Court held:

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT          Case No. 2:20-cv-02319-VAP-PJWx

> Plaintiffs have plausibly alleged that the statements did not fairly align with the information in the issuer's possession at the time. Plaintiffs are not, as Defendants argue, merely alleging that the speakers offered opinions which later turned out to be wrong. They present numerous facts on the ground that directly contradicted the statements— facts they contend were known to the speakers and could not be reconciled with the assurances offered to investors.

*Id.* at *7 (internal quotations and citations omitted); *see also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017).[13] That is exactly the case here – Defendants failed to disclose known facts about the Company's internal sales and customer data that could not be reconciled with the FY2019 projections to investors. *See* ¶¶ 108-111.

## III. THE SAC RAISES A STRONG INFERENCE OF SCIENTER

The PSLRA requires that a complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). In the Ninth Circuit, the "required state of mind" is "a mental state that not only covers "'intent to deceive, manipulate, or defraud,' but also 'deliberate recklessness.'" *Schueneman v. Arena Pharm.*, 840 F.3d 698, 705 (9th Cir. 2016). When analyzing scienter, the court must determine whether the facts collectively give rise to a strong inference of scienter, "not whether any

---

[13] *See also In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 802 (9th Cir. 2017) (opinion that the defendant believed that FDA clearance risk had been "achieved" was misleading when defendant knew that the FDA had expressed concerns); *Todd v. STARR Surgical Co.*, 2016 WL 6699284, at *10 (C.D. Cal. Apr. 12, 2016) (opinion that the defendant substantially complied with FDA regulations was misleading without disclosure of FDA observations to the contrary); *Vignola v. FAT Brands, Inc.*, 2019 WL 6888051, at *10 (C.D. Cal. Dec. 17, 2019) (opinion that management had the track record to achieve future growth misleading without disclosure that the same team had previously overseen the delisting of the company it ran into bankruptcy); *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *8 (N.D. Cal. Aug. 7, 2020) (opinion that Uber "expect[ed] … growth to continue" misleading without disclosing that the company had sustained its largest losses to date and was planning layoffs and restructuring).

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT          Case No. 2:20-cv-02319-VAP-PJWx

individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 310; *see S. Ferry LP, # 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

As shown below, Plaintiffs have cured the deficiencies previously identified by the Court by pleading additional facts showing that Defendants acted with a strong inference of scienter. The SAC pleads facts based on first-hand knowledge and circumstantial evidence that Defendants knew or recklessly disregarded that Funko's inventory risk language was false and misleading and that Defendants knew that the Company's FY2019 guidance was impossible to achieve.[14]

### A. Scienter is Sufficiently Pled For Each of Defendants' Misrepresentations

For each of the alleged misrepresentations, Plaintiffs have pled that Defendants had access to and/or actual knowledge of undisclosed facts undermining the accuracy of the statements. *See supra* at §§ II.A.1.a; II.A.2. This is sufficient for scienter. *Weiss v. Mentor Graphics Corp.*, 1999 WL 985141, at *16-19 (D. Or. Oct. 6, 1999) (actual knowledge alleged where defendants made predictions knowing facts which seriously undermined those predictions); *In re Immune*, 375 F. Supp. 2d at 1022 ("that the defendants published statements when they knew facts suggesting the statements were inaccurate . . . is classic evidence of scienter").

Defendants Nickel, Jung and Perlmutter were aware of the Company's inventory issues since at least July 2019 because it was discussed during Weekly Sales meetings that they attended with CW1. ¶ 77. The SAC includes allegations showing that Defendants Jung and Perlmutter knew that Funko's obsolete inventory would not be sold, including:

---

[14] It is well-settled that plaintiffs can plead a strong inference of scienter through circumstantial evidence. *See, e.g.*, *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1146 (9th Cir. 2017).

19

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT          Case No. 2:20-cv-02319-VAP-PJWx

- Starting in August 2019, Defendants Jung and Perlmutter began receiving weekly Aged Inventory Reports that quantified the amount of inventory Funko had that was over 90 days old. ¶¶ 80-81.

- The Aged Inventory Report was used to inform the discussion during each Weekly Sales meeting about how much inventory Funko would need to write off. *Id.*

- Starting in September 2019, CW1 created an Open to Buy tool to track inventory that was reviewed by Defendants Jung and Perlmutter during each Weekly Sales meeting. ¶ 81.

- Defendants Jung and Perlmutter were told in August 2019 that Funko had acquired a warehouse in Puyallup, Washington solely to store products marked for destruction. ¶ 79.

- Everyone who attended the Weekly Sales meetings, including Defendants Jung and Perlmutter, agreed that Funko had obsolete inventory that could not be sold. ¶ 83.

CW1 also reported that Defendant Mariotti received emails summarizing each Weekly Sales meeting discussing Funko's obsolete inventory (¶¶ 83, 111), and the inventory issues "were not a secret at the Company." ¶ 76.[15]

Multiple CWs corroborate CW1's first-hand account that Defendants were aware that the risk Funko could have a material amount of obsolete inventory that would not be sold had materialized. CW2 reported that Funko's excess inventory condition was so serious that it was discussed at Funko's quarterly Board of Directors meetings. ¶ 85. CW2 specifically noted that Defendants Mariotti, Nickel, Perlmutter, Brotman, Dellomo and Kriger were present during a Board meeting in late-June or early-July 2019 where the need consolidate Funko's

---

[15] CW1 alleges far more than Defendants' "general awareness of the day-to-day workings" of Funko and vague statements about inventory. *See* MTD at 17 citing *Prodanova v. H.C. Wainwright & Co., LLC*, 2021 WL 1307882, at *6 (9th Cir. Apr. 8, 2021) (finding that the CEO being a "primary contact" for employees insufficient to support scienter where plaintiffs could not show CEO had contemporaneous knowledge of the report at issue); *In re Rackable Sys.*, 2010 WL 199703, at *6 (CW provided vague description that defendants "appeared to have a lot of excess inventory").

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT          Case No. 2:20-cv-02319-VAP-PJWx

obsolete inventory was discussed. *Id.* Similarly, CW4 corroborated CW1's account Funko had acquired the Puyallup warehouse to store obsolete inventory. ¶ 87.[16]

Similarly, the SAC pleads additional facts that support the inference that Defendants knew that it was impossible to meet the Company's FY2019 guidance. CW1's additional allegations, which all involve personal interaction with the Individual Defendants, are even more compelling:

- Between July 2019 and October 2019, Defendant Mariotti met with the planning team, which CW1 was a part of, on at least six occasions to request that more units of a particular product be ordered. On each occasion Defendant Mariotti accepted CW1's analysis that ordering more units would not increase sales, and withdrew his request. ¶ 112.

- According to CW1, by early-September 2019, everyone who attended the Weekly Sales meetings, including Defendant Jung, agreed that a shortfall existed and concluded that the new products Funko was offering for the fourth quarter would not deliver the revenue that the Company was projecting. ¶¶ 109, 110.[17]

- During a September 2019 Weekly Sales meeting, CW1 personally told Defendant Jung that it was impossible to fix the shortfall, and Jung agreed with the analysis. ¶ 110.[18]

---

[16] It is irrelevant that Puyallup did not open until "in or around October 2019." *See* MTD 17 n.8. Plaintiffs allege a strong inference of scienter through allegations that in August 2019 Defendants knew that the Company had excessive obsolete inventory and acquired a facility to store inventory it planned to destroy. ¶ 79. CW4's allegation that Puyallup opened in or around October 2019 confirms that plan was put into action.

[17] Contrary to Defendants' argument, Plaintiffs plainly allege the consensus opinion from the Weekly Sales meeting in September was that new fourth quarter products would not deliver enough revenue to meet the Company's guidance (¶ 109) and Defendant Jung agreed that the shortfall could not be made up, through "evergreen" sales or otherwise (¶ 110). *See* MTD at 19. Plaintiffs also allege that Defendants were reckless in providing a misleading forecast, thus meeting the exception (*see* MTD at 19); *Ronconi*, 253 F.3d at 437 ("[c]alling executives bad managers, or bad forecasters, does not plead fraud except where it can be shown that they knew or were deliberately reckless in disregarding the misleading nature of their forecasts").

[18] CW1's allegations that Defendant Jung agreed with CW1's analysis that the shortfall could not be fixed distinguishes this case from those involving an employee's "disagreement" with

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT          Case No. 2:20-cv-02319-VAP-PJWx

These new allegations bolster CW1's prior allegations, creating the compelling inference of scienter that Defendants knew or recklessly disregarded that Funko could not support its FY2019 guidance. CW1's allegations are detailed, well-founded and at least as strong as any non-culpable inference. *Tellabs*, 551 U.S. at 310. The inference of scienter is even stronger because CW1's allegations are corroborated by CW5 (reporting that Funko senior management ignored the sales forecasts that were based on customer demand) (¶ 115) and CW2 (Defendants were constantly monitoring sales data) (¶¶ 59-60).

Courts have repeatedly found that first-hand knowledge, regular reports or regular meetings provide a strong inference of scienter. *See, e.g., Quality Sys.*, 865 F.3d at 1145 (CW statements that "established the existence of 'funnel reports' and sales forecasts" that were available to executives raised a strong inference of scienter); *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230–32 (9th Cir. 2004) ("contemporaneous reports or data, available to the party, which contradict the statement" can demonstrate scienter); *Roberts v. Zuora, Inc.,* 2020 WL 2042244, at \*10-11 (N.D. Cal. Apr. 28, 2020) (finding scienter with respect to company integration problems where defendants had "access to minutes, documents, and emails evidencing negative customer feedback"); *In re Intuitive Surgical Sec. Litig.*, 2014 WL 7146215, at \*3-4 (N.D. Cal. Dec. 15, 2014) (strong inference of scienter pled where CW interacted with the defendants and attended meetings with them where adverse events were discussed).[19] Indeed, courts have repeatedly found reports more tenuously

---

management. MTD at 19 citing *In re Downey Sec. Litig.*, 2009 WL 2767670, at \*11 (C.D. Cal. Aug. 21, 2009) (rejecting CW's account that management wrongly approved the use of third-party brokers as "second-guessing" when the criteria for approval of brokers was not alleged).

[19] *See In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, 694 F. Supp. 2d 1192, 1216 (W.D. Wash. 2009) (CW accounts that the CFO was aware of problems based on attendance at monthly meetings where the issues were discussed raised a strong inference of scienter); *In re Coinstar Inc. Sec. Litig.*, 2011 WL 4712206, at \*9 (W.D. Wash. Oct. 6, 2011) (CWs testimony

---

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT        Case No. 2:20-cv-02319-VAP-PJWx

connected to defendants and less detailed than those alleged by Plaintiffs to support an inference of scienter. *See Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 485 (9th Cir. 2019) (finding scienter where CW stated his superior provided reports to defendants undermining their statements); *Robb v. Fitbit, Inc.,* 2017 WL 219673, at *6 (Jan. 19, 2017) (finding scienter where CW prepared a report that was presented to defendants by his superior). Accordingly, the SAC's allegations concerning Defendants' knowledge that their inventory risk statements and FY2019 projections were false and misleading supports a strong inference of scienter.

As detailed fully in the ACON Opposition, filed contemporaneously herewith, Defendants' suspicious Class Period stock sales strengthen the inference of scienter.

## B.    Plaintiffs' Allegations are Based on Reliable Sources

The Court already found that CW1 was reliable and has personal knowledge that could support a strong inference of scienter. *See Funko*, 2021 WL 880400, at *28. Defendants incorrectly argue that because CW2 and CW6 left Funko prior to the start of the Class Period, their allegations cannot support an inference of scienter. MTD at 15 (citing *Funko*, 2021 WL 880400, at *27). But the Ninth Circuit has held that courts should consider witnesses employed before a class period because "[i]nformation from before the class period is relevant because it can 'confirm what a defendant should have known during the class period.'" *Webb v. Solarcity Corp.*, 884 F.3d 844, 851 n.1 (9th Cir. 2018) (quoting *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001)); *see also Quality Sys.,* 865 F.3d at 1145 (crediting statements from witness who was not at the company during the class period but who "had personal knowledge of

of defendants' awareness of sales data and attendance at monthly meetings supported a strong inference of scienter).

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT          Case No. 2:20-cv-02319-VAP-PJWx

executive-level management's" access to information because such information tends to shed light on what a defendant should have known during the class period.) Here, CW2 has personal knowledge of the Individual Defendants' knowledge and access to information concerning Funko's glut of obsolete inventory. ¶ 85. Similarly, CW6 has personal knowledge that in March 2019, Funko already had multiple warehouses storing "dead" product and that the Company was periodically destroying trailers full of inventory. ¶¶ 92-93. These accounts are consistent with CW1's account of Funko's obsolete inventory situation during the Class Period, enhancing their reliability. *See In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1058-59 (C.D. Cal. 2008) (finding a strong inference of scienter where, as here, confidential witness accounts span different levels of the Company hierarchy, remain consistent across different time periods and "tell what is essentially the same story" … "from markedly different angles").

Defendants' attempt to completely discredit CW3, CW4 and CW5 solely because none had direct contact with the Individual Defendants also fails. The Ninth Circuit has held that confidential witnesses need not have been in a position to know facts "first-hand" as long as they are described with "sufficient particularity to support the probability" the witnesses were "in a position to infer" or "could reasonably deduce" the facts attributed to them. *Berson v. Applied Signal Tech., Inc.,* 527 F.3d 982, 985 (9th Cir. 2008); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 997 n.4 (9th Cir. 2009) ("the fact that a confidential witness reports hearsay does not automatically disqualify his statement from consideration in the scienter calculus"). Here, CW3, CW4 and CW5 were each in a position to know the information they provided.[20] ¶¶ 64, 69,

---

[20] CW3's, CW4's and CW5's knowledge of Funko's sales forecasting and inventory practices were well within their job descriptions, distinguishing them from the sources found unreliable

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT          Case No. 2:20-cv-02319-VAP-PJWx

71-72, 87. This credibility is enhanced because each of the CWs corroborate each other and the accounts of CWs that did personally interact with the Individual Defendants. *See supra*, § III.A.

### C. Holistically, Plaintiffs' Allegations Demonstrate that the Inference of Scienter is at Least As Compelling as the Innocent Inference

The SAC pleads detailed allegations, including new information from CW1, that Defendants knew that Funko had obsolete inventory that would not be sold, and that Defendants knew, and even agreed, that it was impossible to meet the Company's FY2019 guidance. CW1's allegations of Defendants' knowledge are corroborated by five other CWs across different time periods and levels of the Company, and all describe similar problems with Funko's inventory and sales forecasting practices. "The Supreme Court has emphasized that courts 'must review all the allegations holistically' when determining whether scienter has been sufficiently pled." *Matrixx Initiatives Inc. v. Siracusano*, 563 U.S. 27, 48-9 (2011). When analyzed in the aggregate, Plaintiffs' scienter allegations meet or exceed any competing innocent inference.

### CONCLUSION[21]

For the foregoing reasons, the Court should deny the Motion to Dismiss in their entirety. If the Court dismisses any portion of the SAC, Plaintiffs respectfully request leave to replead.

---

in *Waterford Twp. Police v. Mattel, Inc.* 321 F. Supp. 3d 1133, 1154 (C.D. Cal. 2018) (holding former employee's allegations regarding "Defendants' access to sales and inventory data, and knowledge of the financial state of the company lack credibility since these issues appear to be well outside [of his] job description"), *aff'd sub nom. Castro v. Mattel, Inc.* F. App'x 669 (9th Cir. 2020). *See also* MTD 16.

[21] The adequacy of the SAC's allegations with respect to Plaintiffs' Section 20(a) and 20A claims is discussed in the ACON Opposition.

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT          Case No. 2:20-cv-02319-VAP-PJWx

DATED: June 11, 2021                    Respectfully submitted,

**POMERANTZ LLP**

By:*/s/Cara David*
Jeremy A. Lieberman
(admitted *pro hac vice*)
Cara David
(admitted *pro hac vice*)
600 Third Ave., 20th Fl.
New York, NY 10016
(212) 661-1100
jalieberman@pomlaw.com
cdavid@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

*Co-Lead Counsel for Lead Plaintiffs*

**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein
 (*pro hac vice* forthcoming)
Stephanie Beige
(admitted *pro hac vice*)
Laurence J. Hasson
(*pro hac vice* forthcoming)
Peter J. Harrington
(*pro hac vice* forthcoming)
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
bernstein@bernlieb.com
beige@bernlieb.com
lhasson@bernlieb.com

26

pharrington@bernlieb.com

*Co-Lead Counsel for Lead Plaintiffs*

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
peretz@bgandg.com

*Additional Counsel for Lead Plaintiffs*

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE
CONSOLIDATED SECOND AMENDED COMPLAINT          Case No. 2:20-cv-02319-VAP-PJWx

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Cara David*

Cara David

MEMORANDUM OF LAW IN OPPOSITION TO FUNKO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT         Case No. 2:20-cv-02319-VAP-PJWx