**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Co-Lead Counsel for Lead*
*Plaintiffs*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO FERREIRA, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:20-cv-02319-VAP-PJW |
| Plaintiff, | **LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO ACON DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |
| v. | |
| FUNKO, INC., BRIAN MARIOTTI, RUSSELL NICKEL, ANDREW PERLMUTTER, JENNIFER FALL JUNG, KEN BROTMAN, GINO DELLOMO, ADAM KRIGER, ACON INVESTMENTS, L.L.C., ACON FUNKO MANAGER, L.L.C., ACON FUNKO INVESTORS, L.L.C., ACON FUNKO INVESTORS HOLDINGS 1, L.L.C., ACON FUNKO INVESTORS HOLDLINGS 2, L.L.C., ACON FUNKO INVESTORS HOLDINGS 3, L.L.C., and ACON EQUITY GENPAR, L.L.C., | Hearing Date:  September 20, 2021 Time:  2:00 p.m. Courtroom:  8A Judge:  Hon. Virginia A. Phillips |
| Defendants. | |

1
MEMORANDUM OF LAW IN OPPOSITION TO ACON DEFENDANTS' MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT Case No. 2:20-cv-02319-VAP-PJW

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ...............................................................................1

    I.     STATEMENT OF FACTS .....................................................................2

          A.     The Stock Sale Was Suspicious in Timing and Amount..............5

          B.     The Individual Defendants and the ACON Defendants Are Control Persons of Funko ..............................................................9

          C.     The Complaint Sufficiently Alleges 20A Claims.......................12

CONCLUSION.....................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Adecco S.A.*,
    434 F. Supp. 2d 815 (S.D. Cal. 2006), *aff'd sub nom. In re Adecco
    S.A. Sec. Litig.*, 256 F. App'x 74 (9th Cir. 2007) ...................................................9

*Azar v. Yelp*,
    2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) ...............................................5, 7, 9

*Basile v. Valeant Pharm. Int'l, Inc.*,
    2016 WL 5922716 (C.D. Cal. Aug. 5, 2016) ....................................................... 12

*Batwin v. Occam Networks, Inc.*,
    2008 WL 2676364 (C.D. Cal. July 1, 2008) ........................................................ 8, 9

*Buttonwood Tree Value Partners, LP v. Sweeney*,
    2012 WL 13026910 (C.D. Cal. Dec. 10, 2012) ......................................................9

*Ferreira v. Funko, Inc.*,
    2021 WL 880400 (C.D. Cal. Feb. 25, 2021) ................................................. 1, 5, 13

*Golub v. Gigamon Inc.*,
    372 F. Supp. 3d 1033, 1053 (N.D. Cal. 2019), aff'd, 994 F.3d 1102
    (9th Cir. 2021), and aff'd, 847 F. App'x 368 (9th Cir. 2021) ............................. 10

*Howard v. Everex Sys., Inc.*,
    228 F.3d 1057 (9th Cir.) ......................................................................................9, 10

*In re Alstom SA*,
    406 F. Supp. 2d 433 (S.D.N.Y. 2005) ................................................................... 11

*In re Am. Apparel, Inc. S'holder Litig.*,
    2013 WL 10914316 (C.D. Cal. Aug. 8, 2013) ...................................................... 11

*In re ChinaCast Educ. Corp. Sec. Litig. (Costa Brava P'ship III LP v.
    ChinaCast Educ. Corp.)*,
    809 F.3d 471 (9th Cir. 2015) ...................................................................................9

*In re Galena Biopharma, Inc. Sec. Litig.*,
    117 F. Supp. 3d 1145 (D. Or. 2015) ...................................................................... 11

*In re Intuitive Surgical Sec. Litg.*,
    65 F. Supp. 3d 821 (N.D. Cal. 2014)......................................................................7

*In re Questcor Sec. Litig.*,
    2013 WL 5486762 (C.D. Cal. Oct. 1, 2013) .........................................................9

*In re Refco, Inc. Sec. Litig.*,
    503 F. Supp. 2d 611 (S.D.N.Y. 2007) ................................................................12

*In re SeeBeyond Tech. Corp. Sec. Litig.*,
    266 F. Supp. 2d 1150 (C.D. Cal. 2003) ................................................................8

*Middlesex Ret. Sys. v. Quest Software, Inc.*,
    527 F. Supp. 2d 1164 (C.D. Cal. 2007)................................................................5

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003) ...........................................................................7, 10

*Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*,
    380 F.3d 1226 (9th Cir. 2004) ...........................................................................7, 8

*Oregon Public Employees Retirement Fund v. Apollo Group Inc.*,
    774 F.3d 598 (9th Cir. 2014) ..............................................................................13

*Paracor Finance, Inc. v. General Electric Capital Corporation*,
    96 F.3d 1151 (9th Cir. 1996) ..............................................................................11

*Pirani v. Slack Techs., Inc.*,
    445 F. Supp. 3d 367 (N.D. Cal. 2020).................................................................10

*Short v. Dondanville*,
    2012 WL 12888360, (C.D. Cal. Oct. 5, 2012), *on reconsideration in part*,
    2013 WL 12131544 (C.D. Cal. June 25, 2013)....................................................11

*Thomas v. MagnaChip Semiconductor Corp.*,
    167 F. Supp. 3d 1029 (N.D. Cal. 2016).....................................................10, 12, 14

**Statutes**

15 U.S.C. §78t.......................................................................................................5, 12

**Rules**

Fed. R. Civ. P. 8........................................................................................................10

MEMORANDUM OF LAW IN OPPOSITION TO ACON DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT Case No. 2:20-cv-02319-VAP-PJW

Lead Plaintiffs Abdul Baker, Zhibin Zhang, and Huaiyu Zheng submit this memorandum of law in support of their opposition to the ACON Defendants' motion to dismiss the Consolidated Second Amended Compliant ("SAC").[1]

## PRELIMINARY STATEMENT

The Court previously dismissed Plaintiffs' Section 20(a) and 20A claims against Defendants because of its holding that no predicate violation was alleged. *See Ferreira v. Funko, Inc.*, 2021 WL 880400, *30-31 (C.D. Cal. Feb. 25, 2021). As additionally detailed in the Opposition to the Funko Defendants' Motion to Dismiss ("Funko Opposition"), the SAC remedies the Court's issues with the prior complaint. Therefore, a predicate act is now pled.

An examination of the remaining 20(a) and 20A requirements leads to the inevitable conclusion that the SAC has pled those claims as well. The ACON Defendants – who owned Funko outright prior to it hitting the market publicly – retained, in Funko's own words, "significant influence" over Funko. Their founder, Defendant Ken Brotman, was Chairman of the Funko Board of Directors at all relevant times. They also had two other appointees to the Board. The SAC pleads sufficient allegations of control such that this claim should survive.

The ACON Defendants also cashed out while they were in possession of material non-public information in violation of 20A. Defendants Mariotti, Perlmutter and the ACON Defendants took full advantage Funko's peak trading price during the Class Period, selling nearly $105 million in Funko stock. Mariotti and the ACON Defendants sold over $101 million in one fell swoop – a sale made after Funko shares had climbed over 25% in the prior month and shortly after Defendants learned the Company's guidance was impossible to meet and the extent

---

[1] The Second Amended Complaint is referred to as the "SAC." The Consolidated Amended Complaint is referred to as the "CAC." Unless otherwise noted, all paragraph references are to the SAC. All otherwise undefined terms have definitions set forth in the SAC. The ACON Defendants' Motion to Dismiss is referred to as "ACON MTD" and the Funko Defendants' Motion to Dismiss is referred to as "MTD."

of the Company's inventory troubles. Defendants Class Period sales were out of line with their prior practices: before the Class Period, the ACON Defendants had never even sold shares and Mariotti's sales were all made pursuant to a trading plan. That all changed when Defendants were armed with the troubling truth about Funko's business realities.

Plaintiffs sufficiently allege in the SAC that the ACON Defendants traded while in possession of material, non-public information. Therefore, the 20A claim against them should also survive.

For these reasons, and those discussed below and in the Funko Opposition, Defendants' motions should be denied in their entirety.

## I.    STATEMENT OF FACTS

Plaintiffs incorporate the statement of facts set forth in the Funko Opposition and state here only the facts pertaining to the ACON Defendants (as defined below) and the sale of Funko Class A stock the ACON Defendants and Brian Mariotti made pursuant to a Secondary Offering (the "Offering").

ACON Investments, L.L.C., part of a network of entities (the "ACON Defendants") that form an international private equity investment firm, announced that it was acquiring Funko in 2015. ¶ 47. ACON founder Defendant Ken Brotman said in a news release at the time that he viewed ACON as a "partner" to "Brian [Mariotti] and the entire Funko team." ¶ 47. Shortly before Funko's Initial Public Offering (the "IPO")—a fact absent from the ACON MTD—ACON Funko Investors, L.L.C. ("ACON Funko Investors") owned 100% of Funko Class A common stock. ¶ 32. After the IPO, the ACON held approximately 55% of the Class A shares of Funko. ¶ 124. The ACON Defendants therefore had significant control over Funko. ¶ 124.

Funko is a "controlled company" within the meaning of the listing rules of NASDAQ, as Defendant ACON, Defendant Brian Mariotti and Fundamental

MEMORANDUM OF LAW IN OPPOSITION TO ACON DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT Case No. 2:20-cv-02319-VAP-PJW

Capital, L.L.C have more than 50% of the voting power for the election of directors to the Funko Board of Directors (the "Board"). ¶ 24. In the Prospectus associated with the Offering, Funko stated: "ACON has, and will continue to have following this offering, significant influence over us, including over decisions that require the approval of stockholders, and its interests. . . may conflict with yours." ¶ 33.

The ACON Defendants highlight that the SAC only discusses Class A shares, not the ACON Defendants' "overall stock ownership." ACON MTD at 4. It is unclear what point the ACON Defendants are trying to make, as they also beneficially owned a majority of Class B common stock -- over 60% of Class B shares both before and after the Offering.[2] *See* Ex. 1.[3]

ACON's influence over Funko is evident through its control over the Board. ACON has the power to designate the Chairman of the Board. ¶ 36. ACON Investments founder and managing partner Defendant Ken Brotman has been Chairman since the Board's inception. ¶ 36. ACON also has appointed two other Board members, Defendants Gino Dellomo and Adam Kriger. ¶¶ 32, 37-38. Additionally, Brotman, Dellomo and Kriger were the only directors on the Nominating and Corporate Governance Committee of Funko, with Brotman serving as its chair. ¶ 40. In various company filings, Funko affirmed that the Board, including Brotman, Dellomo and Kriger, was: "apprised of particular risk management matters in connection with its general oversight role[.]" ¶ 39. They also had "complete access to Company management" and were bound by Funko's Code of Conduct. ¶¶ 39, 42.

---

[2] And while the ACON Defendants point to the SAC's lack of accusations regarding voting power (ACON MTD at 4), they neglect to mention that the entity had more voting power than any other. And, indeed, it was the only entity singled out to have "significant influence over" Funko. Additionally, the dual class voting structure helped ACON by allowing it, and investor Fundamental Capital, to maintain voting control even with diminished economic interest in the Company. ¶ 32.

[3] Citations to "Ex. _" refer to the exhibits attached to the Declaration of Stephanie M. Beige.

As detailed in the SAC and the Funko Opposition, CW2 reported that excess inventory was a repeated topic at Funko's quarterly Board meetings, including those attended by Brotman, Dellomo and Kriger. ¶¶ 85, 128, 162. Throughout 2018, the discussions at the quarterly Board meetings centered on what to do with the excess inventory and always resulted in the Company getting more and more warehouses. ¶ 85. At the last meeting CW2 attended in late-June or early July 2019, the discussion changed to the need to clear out the warehouses by consolidating the obsolete inventory. ¶ 85. Those in attendance at that meeting included Brotman, Dellomo and Kriger. ¶ 85.

A couple of months later, armed with this information and other financial metrics regarding the Company because of their positions on the Board, the ACON Defendants and Mariotti sought to cash in on a shelf registration they had filed months earlier. ¶ 120. After the close of trading on September 16, 2019, Funko announced to the public that there would be a secondary offering of Funko stock. ¶ 121. On that day, according to Company SEC filings, Funko entered into an underwriting agreement pursuant to which Brian Mariotti and the ACON Defendants would sell an aggregate of 4,000,000 shares to J.P. Morgan Securities LLC at a price of $25.42 per share. ¶ 122. That price was very close to the peak 2019 Funko stock price. ¶ 122.

The ACON Defendants netted a whopping $91,512,000 from the sale, and Mariotti sold for a significant $10,168,00. ¶ 123. This was the first public sale of stock by the ACON Defendants. ¶ 123. Funko received none of the proceeds from the Offering. ¶ 125. In fact, it cost the Company, not simply because the market reacted poorly to the news that two big stockholders were selling large quantities of shares (and it did), but because Funko agreed to pay approximately $700,000 of expenses related to the Offering. ¶ 125.

MEMORANDUM OF LAW IN OPPOSITION TO ACON DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT Case No. 2:20-cv-02319-VAP-PJW

Plaintiffs Zheng and Baker made purchases contemporaneous with these sales. ¶ 208.

The Court previously dismissed the 20(a) and 20A claims against the ACON Defendants because the Court found that no primary violation had been alleged. *See Funko, Inc.*, 2021 WL 880400, at \*30-31. It did not otherwise address the claims.

### A.    The Stock Sale Was Suspicious in Timing and Amount

Scienter is not required for the Section 20(a) claim against the ACON Defendants, but, if it were, the stock sales by the Defendants in this case support an inference of scienter.

The Ninth Circuit has identified three factors relevant in determining whether insider sales are probative of scienter – the amount of shares sold, the timing of the sales, and whether the sales were consistent with prior trading. *Azar v. Yelp*, 2018 WL 6182756, at \*18 (N.D. Cal. Nov. 27, 2018). No one factor is dispositive. *Middlesex Ret. Sys. v. Quest Software, Inc.*, 527 F. Supp. 2d 1164, 1180 (C.D. Cal. 2007). Here, Defendant Mariotti sold over $12 million of Funko stock during the Class Period, and the ACON Defendants sold over $90 million of stock during the Class Period (despite never selling previously). While this Court previously found that CAC's allegations regarding Defendants' insider sales were insufficient to demonstrate scienter, the SAC pleads new facts showing the timing and circumstances of Defendants' sales were suspicious. *Funko*, 2021 WL 880400, at \*29.

The SAC adds new details surrounding the Offering. The SAC alleges that Funko filed a shelf registration in April 2019, but, Defendant Jung accelerated the effective date of the registration statement in mid-September 2019 so Funko could conduct the Offering just days later. ¶¶ 119-120. The timing of this decision is suspicious as it occurred (1) after Funko shares had climbed over 25% in the prior month and were trading near their peak and (2) shortly after Defendants learned in

MEMORANDUM OF LAW IN OPPOSITION TO ACON DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT Case No. 2:20-cv-02319-VAP-PJW

August 2019 that Funko's fourth quarter sales did not support the Company's guidance and the Company had so much obsolete inventory they needed to get new warehouses to store it before destruction. ¶¶ 79-83, 108-111, 120, 122.

Additionally, despite Defendants' attempts to minimize the significance of the Offering, the sale was quite significant. Mariotti held 8,665 of Class A common stock outright at the time of the Offering. *See* Ex. 1. He sold 400,000 Class A shares during the Offering and another 100,000 Class A shares at other points in the Class Period, by converting Common Units of Funko Acquisition Holdings, L.L.C. ("FAH, LLC," the Funko holding company), which are similar to options, but with absolutely no expiration date, into Funko Class A shares. *Id.*; ¶¶ 164, 204. In other words, during the Class Period, Mariotti actually sold over 5800%, or more than 57 times, the 8,665 Class A shares he owned outright prior to the Class Period.[4] The Offering was not a 1.4% reduction in his holdings – it was a 1.4% reduction in his stake in the Company including all his options, rights to purchase Common Units and *options not yet vested*. *See* Ex. 1. Even including all of these categories, which the Prospectus includes as part of his holdings, the sale still represented approximately 11% of his holdings at the time of the Offering. And, as stated, the sale was more than simply a sale of stock he already had in his position.

In the seven months before the Class Period, Defendant Mariotti sold 150,000 shares for $3.3 million. ¶ 164. In contrast, during the approximately seven-month Class Period, he sold 500,000 shares for $12 million in proceeds – ***over three times***

---

[4] While the Prospectus associated with the Offering, and the SAC, states that his holdings were only diminished from 10% to 8.6%, that is because the cumulative holding figure include vested options, soon-to-vest options and "Common Units" (which are similar to options but have no expiration date and a set par valid of $0.0001 per share). Those options and Common Units could be converted at any time but were not part of his Class A stock holdings before the Offering. They are considered however to be "beneficially owned" and therefore the number is included in his total holdings in the Prospectus. The Offering was executed by selling Class A shares that were offered to Mariotti and the ACON Defendants in exchange for a corresponding number of common units of FAH, LLC and the cancellation of a corresponding number of shares of his Class B common stock. *See* Ex. 1.

MEMORANDUM OF LAW IN OPPOSITION TO ACON DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT Case No. 2:20-cv-02319-VAP-PJW

*as much stock for almost four times as much money*. *Id*. The Offering was his first sale not pursuant to a trading plan. Other than one sale of 50,000 shares, each of the sales took place when Funko stock was over $20 per share, approximately three times what it was at the end of the Class Period. ¶ 166.[5] The ACON Defendants did not sell *any shares prior to the Class Period* and then sold approximately 28% of the Class A shares they held outright prior to the Offering.[6]

Courts have found similar sales probative of scienter. *See, e.g., Yelp*, 2018 WL 6182756, at *18, *20 ("sales of 250,000 shares at below $40 per share did not align with…pattern of selling allotments of 13,000 shares when prices were above $40"; "one…sale of 263,000 shares less than six months before the class period began" dwarfed by "750,000 total shares" sold during class period); *see also In re Intuitive Surgical Sec. Litg.*, 65 F. Supp. 3d 821, 838-39 (N.D. Cal. 2014) (sales of $124 million that were out of line with pre-class period sales probative of scienter); *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1228–29 (9th Cir. 2004) (reversing dismissal when plaintiffs alleged facts including, *inter alia*, that an executive sold a large number of shares, many of which were options that were exercised and immediately sold at a peak price). It is also telling that the sales were near the peak price of the stock. *See No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 939 (9th Cir. 2003) (finding insider sales occurring in succession over a three-month period near the peak stock price are suspicious).

---

[5] These sales were not typical for Mariotti, as the SAC explicitly alleges by alleging that the Offering represented Mariotti's largest sale and his first one not associated with a trading plan. ¶ 123. While the sales made pursuant to his trading plan (and only those sales) were consistent with pre-Class Period behavior, it is unclear when Defendant Mariotti established his trading plan, and if or when he amended it. Such information is necessary to determine whether the plan can undercut the inference from any stock sale. *See, e.g., Yelp*, 2018 WL 6182756, at *18 ("Defendants assert that the trading plan was "executed prior to the alleged fraud [] but nothing before the Court establishes when precisely the trading plan was adopted").

[6] Even including Common Units, which the Prospectus counts as part of their total holdings, they sold 15.37% of their holdings.

MEMORANDUM OF LAW IN OPPOSITION TO ACON DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT Case No. 2:20-cv-02319-VAP-PJW

Additionally, when defendants receive a "truly astronomical figure" from their sales, "less weight should be given to the fact that they may represent a small portion of the defendant's holdings. *Oracle Corp.*, 380 F.3d at 1232; *In re SeeBeyond Tech. Corp. Sec. Litig*., 266 F. Supp. 2d 1150, 1169 (C.D. Cal. 2003) ("While [defendant] may not have sold a large percentage of his shares . . . the amount of income he generated through his sales, $18 million, is significant."). Here, Defendant Mariotti and the ACON Defendants made over $100 million from their stock sales in the Offering alone.

Likewise, Plaintiffs allege in the SAC that Defendants sold after learning that the Company would not meet its guidance and its inventory situation was completely out of control.[7] That they did not announce this to the market right away is not dispositive. *Batwin v. Occam Networks, Inc*., 2008 WL 2676364 (C.D. Cal. July 1, 2008) is instructive. There, a defendant sold only a small percentage of his holdings, but that sale occurred a few months before the company "first projected flat revenues" and the court found that "[t]his projection was allegedly part of an effort to 'condition the market' to the restatement, the issuance of which, according to plaintiff, triggered the steep decline of [defendant company's] stock." *Id.* at *15. Here, it is telling that all the sales took place shortly before Funko announced to the market on October 31, 2019 that it was maintaining its 2019 full-year guidance. ¶ 126. The maintenance of that guidance itself was a misrepresentation because Defendants knew the guidance was impossible to achieve.[8] But Defendants also

---

[7] The Defendants who sold include Defendant Perlmutter, who sold 56,250 shares at $20.61 on October 1, 2019. ¶ 211. Defendant Perlmutter had first-hand knowledge about Funko's sales forecasting practices and excess inventory, as he was present at weekly meetings where Funko's inventory and sales shortfall were routinely discussed, and he received numerous inventory tracking reports that set forth the amount of Funko's obsolete inventory that was slated to be destroyed. ¶ 59, 60, 66, 77, 80-85.

[8] Defendants' argument that Plaintiffs' claim is less plausible because Defendant Mariotti and the ACON Defendants' stock sales occurred prior to Funko issuing false fourth quarter guidance is erroneous. MTD at 20. Plaintiffs alleged that the market reacted negatively to Funko maintaining its guidance on October 31, 2019, expecting a raise. ¶ 133. Accordingly, Defendant Mariotti and

8

knew the market would react negatively to its failure to increase the guidance, even though the full truth (and inevitable price decline) was still withheld from the market. *Id; see also In re Questcor Sec. Litig.,* 2013 WL 5486762, at \*17 (C.D. Cal. Oct. 1, 2013) (finding that the inference of scienter was not negated by defendants insider sales occurring 10 months prior to the end of the Class Period, where they were made following jumps in the stock price).[9]

### B. The Individual Defendants and the ACON Defendants Are Control Persons of Funko

None of the Individual Defendants contest their control person status. Instead, they wrongly claim that Plaintiffs have not pled a predicate violation. MTD at 21. Because Plaintiffs have pled a predicate violation, the 20(a) claim against the Individual Defendants should necessarily stand.

The ACON Defendants argue that they were not control persons – an argument that fails.[10] To establish a *prima facie* case of control person liability, a plaintiff must plead a predicate violation and that the defendant directly or indirectly controlled the person or entity committing the primary violation. *See, e.g., Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir.). A control person claim does not

the ACON Defendants were motivated to sell when the stock was near its peak and ahead the Company's guidance announcement, which hurt the Company's stock price.

[9] The fact that other Funko officers could have benefitted by selling stock is of no moment. *See Yelp*, 2018 WL 6182756, at \*18 (finding scienter for individual defendants where others did not sell); *Buttonwood Tree Value Partners, LP v. Sweeney*, 2012 WL 13026910, at \*2 (C.D. Cal. Dec. 10, 2012) ("the Court again rejects the proposition that a strong inference of scienter is negated by the fact that the Individual Defendants purchased and/or retained FRB stock during the class period"). *Alaska Elec. Pension Fund v. Adecco S.A.*, 434 F. Supp. 2d 815, 834 (S.D. Cal. 2006), *aff'd sub nom. In re Adecco S.A. Sec. Litig.*, 256 F. App'x 74 (9th Cir. 2007) is not on point as the plaintiffs did not allege that the selling defendant reaped any personal gain from the sale.

[10] In the first instance, this argument fails because the knowledge and power of the Individual Defendants that were appointed by the ACON Defendants is imputed to ACON, as entities can only act through their agents. *In re ChinaCast Educ. Corp. Sec. Litig. (Costa Brava P'ship III LP v. ChinaCast Educ. Corp.)*, 809 F.3d 471, 475 (9th Cir. 2015). As the Individual Defendants do not dispute their control person status, it naturally follows that the ACON Defendants are also control persons.

MEMORANDUM OF LAW IN OPPOSITION TO ACON DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT Case No. 2:20-cv-02319-VAP-PJW

need to meet the heightened pleading standard of a 10(b) claim, but rather the more lenient standard of Fed. R. Civ. P. 8. *See, e.g., Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 392–93 (N.D. Cal. 2020). Plaintiffs need not prove the individual defendant's scienter or "culpable participation" in the alleged wrongdoing. *Howard*, 228 F.3d at 1065. (quoting *Arthur Children's Trust v. Keim*, 994 F.2d 1390, 1396 (9th Cir. 1993)). Control person liability, however, is "an intensely factual question." *Id.*

In the Code of Federal Regulations, control is defined as meaning "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405. Here, the ACON Defendants went from owning 100% of the Company before the IPO to owning a majority of Class A shares of Funko. ¶¶ 32, 124. They had power to appoint multiple board members, including the Chairman of the Board. ¶¶ 32, 36-38. The Prospectus stated that ACON would have "significant influence over [Funko], including over decisions that require the approval of stockholders[.]" ¶ 33. *See also No. 84 Employer-Teamster Jt. Council Pension Trust Fund*, 320 F.3d at 936-37 (reversing a lower court when a defendant had all the "traditional indicia of control," such as a prior relationship, owning stock and having a seat on the board); *Thomas v. MagnaChip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1048 (N.D. Cal. 2016) (allowing a 20(a) claim to proceed when the company stated the investor had "significant influence" over it and the investor was majority shareholder at the start of the class period, and placed people on the board of directors). Thus, this case is distinguishable from Defendants' cited authority. ACON MTD 4; *see Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1053 (N.D. Cal. 2019), aff'd, 994 F.3d 1102 (9th Cir. 2021), and aff'd, 847 F. App'x 368 (9th Cir. 2021) (stating in dicta that a

MEMORANDUM OF LAW IN OPPOSITION TO ACON DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT Case No. 2:20-cv-02319-VAP-PJW

20(a) claim would fail when defendants owned 15.3% of a company); *In re Alstom SA*, 406 F. Supp. 2d 433, 492 (S.D.N.Y. 2005) (discussion of a 24% shareholder).

The ACON Defendants held the majority of Class A shares and were by far Funko's single largest shareholder.[11] The ACON Defendants' founder, Defendant Brotman, was Chairman of the Board – a Board that was kept well abreast of the Company's financial circumstances. *See, e.g.,* ¶¶ 36, 85, 128, 162. Defendant Brotman also stated that he viewed the ACON Defendants as a "partner" to Funko, and Defendant Mariotti made similar comments. ¶ 45.

The ACON Defendants' reliance on *Paracor Finance, Inc. v. General Electric Capital Corporation*, 96 F.3d 1151, 1162 (9th Cir. 1996), for the assertion that control person liability in the Ninth Circuit is based on a "scrutiny of the defendant's participation in the day-to-day affairs of the corporation," is misplaced. ACON MTD at 3. *Paracor* addressed control person liability at summary judgement after discovery, not what is required at the pleading stage. *Id.* at 1156.[12]

The allegations in the SAC, viewed holistically and in a light most favorable to Plaintiffs, establish a prima facie case that the Individual Defendants and ACON Defendants were control persons of Funko. *See In re Am. Apparel, Inc. S'holder*

---

[11] The ACON Defendants argue that they were a minority shareholder because cumulatively their Class A shares and Class B shares was 48%, just under 50%. ACON MTD at 4. However, the ACON Defendants held 55% of Class A shares. ¶ 30. They were also by far the Company's most significant shareholder. The ACON Defendants cite no case where a court addressed an investor with nearly as much of an investment in a company as the ACON Defendants had in Funko.

[12] Likewise, while the ACON Defendants' other cases speak about day-to-day control in the motion to dismiss context, they lack the additional indicia of control accusations that are contained in the SAC, specifically that the ACON Defendants were majority shareholders that were "partner[s]" with company leadership and appointed the Board chair. ¶¶ 36, 47. *See Short v. Dondanville*, 2012 WL 12888360, at *14 (C.D. Cal. Oct. 5, 2012), on reconsideration in part, 2013 WL 12131544 (C.D. Cal. June 25, 2013) (where certain directors were dismissed when the only accusations against them were that they had "day-to-day" control because of their board membership and the court found these "conclusory"); *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1200 (D. Or. 2015) (dismissing 20(a) against certain defendants where the accusations against those director defendants amounted to nothing more than a statement that all defendants had "direct and supervisory involvement in the day-to-day operations of Galena and/or DreamTeam[.]").

11

*Litig.*, 2013 WL 10914316, at \*34 (C.D. Cal. Aug. 8, 2013) (claims allowed to proceed when defendant held 20% ownership stake and designated two Board members who were aware of disclosures).

### C.   The Complaint Sufficiently Alleges 20A Claims

The Individual Defendants again rely on their argument that Plaintiffs have failed to plead a predicate act. MTD at 21. Thus it must follow that if this Court allows the 10(b) claim to progress, it too should allow the 20A claim to progress against the Individual Defendants.

With regard to the ACON Defendants, they first argue that the 20A claim must be dismissed as to them because no 10(b) claim is pled against them. (ACON MTD at 5.) First, there is no requirement in the statute itself that 10(b) be the underlying "provision of this chapter or the rules or regulations thereunder" that a defendant must violate in order to be subject to 20A liability. 15 U.S. Code § 78t-1. Here, there is a 20(a) claim pled against the ACON Defendants. ¶¶ 196-199. *See In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611 (S.D.N.Y. 2007) (finding that a violation of 20(a) could serve as the predicate act for a 20A violation); *Basile v. Valeant Pharm. Int'l, Inc.*, 2016 WL 5922716, at \*8 (C.D. Cal. Aug. 5, 2016) (adopting *In re Refco* and explaining that a pled 10(b) against the 20A defendants is unnecessary).

"Section 20A requires only that a party know the inside information while making the trade, not that she actually use that information." *Magnachip Semiconductor Corp.*, 167 F. Supp. 3d at 1050. The ACON Defendants assert that they were not in possession of material non-public information at the time of their sale. ACON MTD at 6-7. However, ACON's founder and managing partner serves as Chairman of the Board of Funko, and his knowledge is certainly imputed to ACON. *See ¶* 36. The ACON Defendants also have two additional ACON board members/partners on the Funko Board, and their knowledge can be imputed to the

ACON Defendants as well. The SAC clearly alleges that the Board was kept abreast of all financial information about Funko, including, specifically, inventory and sales figures. ¶¶ 85, 128, 162. Specifically, the ACON Defendants knew about the tremendous amount of excess, obsolete inventory Funko was sitting on – so much so that a new warehouse was needed to store inventory that would need to be destroyed. ¶¶ 85, 128, 162. The market did not know about this problem but the ACON Defendants did and, as detailed in the Funko Opposition at 6-10, the SAC pleads this inside information with particularity. ¶¶ 85, 128, 162.

The ACON Defendants' reliance on *Oregon Public Employees Retirement Fund v. Apollo Group Inc.*, 774 F.3d 598, 6010 (9th Cir. 2014) (ACON MTD at 7) is therefore misplaced. That case stands for the proposition that if the alleged material, non-public information is found not to be actionable as part of a 10(b), then it cannot form the basis of a 20A claim. Here, Plaintiffs believe that the Court will find the information the ACON Defendants possessed to be material, non-public information – and the Court already held that the statements the Funko Defendants made about the Company's inventory were actionable. *Funko*, 2021 WL 880400, at *18, *25. The SAC pleads even more details about the Company's inventory situation, which the ACON Defendants were aware of via their Board appointees, as the SAC makes explicitly clear. ¶¶ 52-93. This information, which formed the basis of some of the alleged misstatements, was certainly material and non-public, as supported by the Court's prior holding.

The ACON Defendants' argument about the timing of the Offering cites no relevant 20A law. ACON MTD at 8. That is because all 20A requires is a sale while in "possession of material, nonpublic information" – it does not require that a defendant act immediately upon such information. In fact, as stated *supra*, a plaintiff need not plead a defendant used the information for the trade, simply that the defendant was in possession of the information. *See, e.g., Magnachip*

MEMORANDUM OF LAW IN OPPOSITION TO ACON DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT Case No. 2:20-cv-02319-VAP-PJW

*Semiconductor Corp.*, 167 F. Supp. 3d 1029 at 1050. Here, Plaintiffs have pled with particularly the material, non-public information the ACON Defendants held at the time of the trade. ¶¶ 85, 128, 162. When they obtained that information is irrelevant to the 20A claim.

Accordingly, the SAC states a 20A claim against Defendants Mariotti, Perlmutter and the ACON Defendants.

## CONCLUSION

For the foregoing reasons, and the reasons enumerated in the Funko Opposition, the Court should deny the ACON Motion to Dismiss in its entirety.

DATED: June 11, 2021                    Respectfully submitted,


**POMERANTZ LLP**


By:*/s/ Cara David*
Jeremy A. Lieberman
(admitted *pro hac vice*)
Cara David
(admitted *pro hac vice*)
600 Third Ave., 20th Fl.
New York, NY 10016
(212) 661-1100
jalieberman@pomlaw.com
cdavid@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

*Co-Lead Counsel for Lead Plaintiffs*

**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein

14

(*pro hac vice* forthcoming)
Stephanie Beige
(admitted *pro hac vice*)
Laurence J. Hasson
(*pro hac vice* forthcoming)
Peter J. Harrington
(*pro hac vice* forthcoming)
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
Email: bernstein@bernlieb.com
beige@bernlieb.com
lhasson@bernlieb.com
pharrington@bernlieb.com

*Co-Lead Counsel for Lead Plaintiffs*

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Email: peretz@bgandg.com

*Additional Counsel for Lead Plaintiffs*

MEMORANDUM OF LAW IN OPPOSITION TO ACON DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT Case No. 2:20-cv-02319-VAP-PJW