ESKOVITZ LAW
Sean Eskovitz (State Bar No. 241877)
seane@eskovitz.com
1217 Wilshire Blvd, # 3683
Santa Monica, CA 90403
Tel: 323.821.5836

AEGIS LAW GROUP LLP
Michael K. Ross (*pro hac vice*)
mross@aegislawgroup.com
Sean M. Roberts (*pro hac vice*)
sroberts@aegislawgroup.com
Market Square West, Suite 740
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: 202.737.3500

Counsel for the ACON Defendants

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

GILBERTO FERREIRA,
Individually and On Behalf of All
Others Similarly Situated,

     Plaintiff,

     v.

FUNKO, INC., BRIAN MARIOTTI,
RUSSELL NICKEL, ANDREW
PERLMUTTER, JENNIFER FALL
JUNG, KEN BROTMAN, GINO
DELLOMO, ADAM KRIGER, ACON
INVESTMENTS, L.L.C., ACON
FUNKO MANAGER, L.L.C., ACON
FUNKO INVESTORS, L.L.C., ACON
FUNKO INVESTORS HOLDINGS 1,
L.L.C., ACON FUNKO INVESTORS
HOLDINGS 2, L.L.C., ACON FUNKO
INVESTORS HOLDINGS 3, L.L.C.,
and ACON EQUITY GENPAR, L.L.C.

     Defendants.

Case No. 2:20−cv−02319−VAP−PJW

**REPLY IN SUPPORT OF ACON DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT**

Hearing
Date: September 20, 2021
Time: 2:00 PM
Courtroom: 8A
Judge: Hon. Virginia A. Phillips

**<u>TABLE OF CONTENTS</u>**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ........................................................................................................ 1

I.     PLAINTIFFS FAIL TO STATE A SECTION 20(a) CLAIM AGAINST THE ACON DEFENDANTS FOR CONTROL PERSON LIABILITY .............................................................. 1

II.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE ACON DEFENDANTS FOR INSIDER TRADING UNDER SECTION 20A ............................................................... 6

       A.    Plaintiffs Fail to Plead a Predicate Violation of the Exchange Act ............................................................ 6

       B.    Plaintiffs Fail to Sufficiently Allege that the ACON Defendants Possessed Material, Nonpublic Information When They Sold Stock ........................................ 9

III.   THE ACON DEFENDANTS' STOCK SALES DO NOT SUPPORT A STRONG INFERENCE OF SCIENTER ........................... 11

IV.    MINUTE ORDER RE NEW CIRCUIT AUTHORITY ............................ 15

CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Arthur Children's Tr. v. Keim*,
994 F.2d 1390 (9th Cir. 1993) .................................................................. 5

*Batwin v. Occam Networks, Inc.*,
2008 WL 2676364 (C.D. Cal. July 1, 2008) ................................. 8, 9

*Brasher v. Broadwind Energy, Inc.*,
2012 WL 1357699 (N.D. Ill. Apr. 19, 2012) ...................................... 2

*Curry v. Yelp Inc.*,
2015 WL 1849037 (N.D. Cal. Apr. 21, 2015) ................................... 14

*Durgin v. Sharer*,
2017 WL 2214618 (C.D. Cal. Jan. 10, 2017)...................................... 3

*Gerritsen v. Warner Bros. Ent. Inc.*,
112 F. Supp. 3d 1011 (C.D. Cal. 2015) .............................................. 3

*In re Alphabet, Inc. Sec. Litig.*,
No. 20-15638, 2021 WL 2448223 (9th Cir. June 16, 2021) .......................... 15

*In re Am. Apparel, Inc. S'holder Litig.*,
2013 WL 10914316 (C.D. Cal. Aug. 8, 2013) ................................... 2

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) .............................................. 7

*In re Galena Biopharma, Inc. Sec. Litig.*,
117 F. Supp. 3d 1145 (D. Or. 2015) ............................................. 4, 7

*In re Netflix, Inc., Sec. Litig.*,
923 F. Supp. 2d 1214 (N.D. Cal. 2013) .............................................. 7

*In re Refco, Inc. Sec. Litig.*,
503 F. Supp. 2d 611 (S.D.N.Y. 2007) ................................................ 8

*In re Silicon Graphics Inc.*,
183 F.3d 970 (9th Cir.1999) ............................................................ 13

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
160 F. Supp. 2d 1059 (N.D. Cal. 2001) ............................................ 12

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002) ........................................................ 12

*In re VeriFone Holdings, Inc. Sec. Litig.*,
704 F.3d 694 (9th Cir. 2012) ............................................................ 7

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
258 F. Supp. 3d 1037 (N.D. Cal. 2017) .......................................................... 5

*Johnson v. Aljian*,
490 F.3d 778 (9th Cir. 2007) ................................................................... 7, 8

*Kroeger v. Vertex Aerospace LLC*,
2020 WL 3546086 (C.D. Cal. June 30, 2020)................................................. 6

*Kuhns v. Ledger*,
202 F. Supp. 3d 433 (S.D.N.Y. 2016) .......................................................... 2

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) ................................................................. 11

*Lu v. Align Tech., Inc.*,
417 F. Supp. 3d 1266 (N.D. Cal. 2019) ...................................................... 13

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) .............................................................. 12, 14

*Myers v. Rio Linda/Elverta Cmty. Water Dist.*,
2012 WL 1356973 (E.D. Cal. Apr. 18, 2012) ................................................. 6

*No. 84 Employer-Teamster v. America West Holding*,
320 F. 3d 920 (9th Cir. 2003) ................................................................... 2

*Nordberg v. Trilegiant Corp.*,
445 F. Supp. 2d 1082, 1090 (N.D. Cal. 2006) ............................................... 6

*Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*,
50 F. Supp. 3d 1328 (C.D. Cal. 2014) ..................................................... 3, 13

*Rich v. Shrader*,
2014 WL 12670492 (S.D. Cal. Feb. 25, 2014) ............................................... 6

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) ............................................................ 12, 13, 14

*S.E.C. v. Stringer*,
2003 WL 23538011 (D. Or. Sept. 3, 2003) ................................................... 8

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) .............................................................. 12, 14

**Statutes and Regulations**

15 U.S.C. § 78j ................................................................................................................ 8

15 U.S.C. § 78k ................................................................................................................ 8

15 U.S.C. § 78l ................................................................................................................. 8

15 U.S.C. § 78t ................................................................................................................. 7

15 U.S.C. § 78u-4 .......................................................................................................... 11

17 C.F.R. § 240.13d-3 ................................................................................................ 3, 4

Defendants ACON Investments, L.L.C.; ACON Funko Manager, L.L.C.; ACON Funko Investors, L.L.C.; ACON Funko Investors Holdings 1, L.L.C.; ACON Funko Investors Holdings 2, L.L.C.; ACON Funko Investors Holdings 3, L.L.C.; and ACON Equity GenPar, L.L.C. (collectively, the "ACON Defendants") respectfully submit this reply brief in further support of their motion to dismiss the Consolidated Second Amended Complaint ("SAC").

## PRELIMINARY STATEMENT

As explained in the ACON Defendants opening brief, Plaintiffs' claims against the ACON Defendants suffer from several fatal defects. These defects range from the most basic—failure to allege any Section 10(b) violations by the ACON Defendants, an essential element of Plaintiffs' Section 20A claim—to more overarching problems, including sparse, generic, and conclusory allegations that fail to meet the stringent pleading requirements of the Private Securities Litigation Reform Act ("PSLRA").

In their Opposition to the ACON Defendants' Motion to Dismiss ("Opposition" or "Opp."), Plaintiffs respond by asserting new and misguided legal theories, embellishing the allegations in SAC, and asserting facts not pled in the SAC. In doing so, Plaintiffs confirm what is clear from the SAC itself: Plaintiffs do not state any claims against the ACON Defendants.

## ARGUMENT

**I.  PLAINTIFFS FAIL TO STATE A SECTION 20(a) CLAIM AGAINST THE ACON DEFENDANTS FOR CONTROL PERSON LIABILITY**

Plaintiffs' Section 20(a) claim fails for two independent reasons: (1) Plaintiffs fail to plead a primary violation by Funko,[1] and (2) Plaintiffs do not adequately allege that the ACON Defendants controlled Funko with respect to any of the alleged

---

[1] The ACON Defendants join and incorporate by reference the Funko Defendants' Reply in Support of their Motion to Dismiss.

primary violations.[2]

Plaintiffs' control allegations rely predominantly on the ACON Defendant's stock ownership. However, Plaintiffs do not allege—because they cannot—that the ACON Defendants held an overall majority of Funko's stock or otherwise maintained majority voting power, the obvious data point for control. Minority stock ownership, even if substantial, is not itself sufficient to plead control. *See Brasher v. Broadwind Energy, Inc.*, 2012 WL 1357699, at *12 (N.D. Ill. Apr. 19, 2012) (47.7 percent stock ownership and "general statements contained in the 2008 Form 10–K that Tontine 'influences [Broadwind's] affairs significantly'" were insufficient to plead control); *Kuhns v. Ledger*, 202 F. Supp. 3d 433, 440 (S.D.N.Y. 2016) (47% stock ownership alone insufficient to plead control). The cases cited by Plaintiffs are inapposite.[3]

In the SAC, Plaintiffs attempt to obfuscate this fact by alleging that Funko "held the majority of [Funko's] Class A shares," an irrelevant point in light of Funko's dual classes of voting stock. *See* SAC ¶ 8. And now, in a misguided effort to cure this pleading deficiency, Plaintiffs ask the Court to take judicial notice of an excerpt from the Prospectus and assert in their Opposition that the ACON Defendants also "beneficially owned a majority of [Funko's] Class B common stock." *See* Opp. 3. Plaintiffs' attempt to effectively amend the SAC is highly

---

[2] Plaintiffs argue that because "the Individual Defendants [that were appointed by the ACON Defendants] do not dispute their control person status, it naturally follows that the ACON Defendants are also control persons." Opp. 9 n.10. But regardless of whether the Individual Defendants chose to contest control in their Motion to Dismiss, the ACON Defendants did in fact contest control on this basis. *See* ACON Mot. 4-5.

[3] *See No. 84 Employer-Teamster v. America West Holding*, 320 F. 3d 920, 945-46 (9th Cir. 2003) (control defendants, who allegedly joined forces, together held approximately 57.4% of the total voting power and the ability to appoint a majority of the board of directors); *In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 10914316, at *36 (C.D. Cal. Aug. 8, 2013) (defendant's board designees signed the allegedly misleading report at issue).

improper.[4]  Moreover, the Prospectus itself demonstrates that the ACON Defendants were minority shareholders prior to the Offering.

The Prospectus indicates that the ACON Defendants *beneficially owned* 54.5% of Funko's Class A shares, not that they actually held 54.5% of Funko's Class A shares.  *See* Exhibit 1 to the Declaration of Stephanie M. Beige ("Beige Ex. 1") at S-62.[5]  The number of Class A shares "beneficially owned" by the ACON Defendants includes common units which may be exchanged for Class A shares. *See id.* at S-62 n.1 ("In these tables, beneficial ownership of common units has been reflected as beneficial ownership of shares of our Class A common stock for which such common unit may be exchanged.").[6]  However, for the purposes of calculating the percentage of outstanding shares beneficially owned by the ACON Defendants, the total number of shares outstanding does not include shares which may be

---

[4] *See Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1350 (C.D. Cal. 2014) ("Although plaintiffs assert that they relied on the documents in pleading certain of their allegations, they did not include other facts that are referenced in their opposition to the motion to dismiss. Plaintiffs cannot utilize the documents to amend the complaint and defeat defendants' motions to dismiss."); *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) (rejecting plaintiffs' attempt to rely on "the facts contained in the various documents that are the subject of her judicial notice request to supplement the allegations in her complaint"); *Durgin v. Sharer*, 2017 WL 2214618, at *4 (C.D. Cal. Jan. 10, 2017) ("Even documents properly subject to judicial notice, such as SEC filings, cannot be used to amend the Complaint.").

[5] In other parts of their Opposition, Plaintiffs themselves make much of the difference between shares beneficially owned and shares held outright.  *See* Opp. 6-7 & n.4.  Yet when it comes to alleging that the ACON Defendants controlled Funko, Plaintiffs conveniently ignore this difference.  *Compare* Opp. 11 n.11 ("[T]he ACON Defendants held 55% of Class A shares."); *with* Opp. 6 n.4 ("[Defendant Mariotti's] options and Common Units could be converted at any time but were *not part of his Class A stock holdings* before the Offering." (emphasis added)).

[6] *See also* 17 C.F.R. § 240.13d-3(d)(1)(i) ("A person shall be deemed to be the beneficial owner of a security . . . if that person has the right to acquire beneficial ownership of such security . . . within sixty days, including but not limited to any right to acquire: (A) Through the exercise of any option, warrant or right; (B) through the conversion of a security; (C) pursuant to the power to revoke a trust, discretionary account, or similar arrangement; or (D) pursuant to the automatic termination of a trust, discretionary account or similar arrangement . . . .").

obtained by other persons through options or common units.[7] Finally, the Prospectus makes clear that "[w]hen a common unit is exchanged by a Continuing Equity Owner who holds shares of our Class B common stock, a corresponding share of Class B common stock will be cancelled." *Id.* at S-62 n.1.

Altogether, this means that prior to the Secondary Offering, the ACON Defendants would have collectively held 54.5% of Funko's Class A shares *only if* they exchanged all of their common units for Class A Funko shares, cancelled all of their Class B Funko shares, and—critically—no other shareholder exchanged their common units for Class A Funko shares. Of course, in this scenario, the shareholders that did not exchange their common units would together hold millions of Class B shares, while the ACON Defendants would hold none. The ACON Defendants' holdings did not actually add up to majority ownership of Funko's stock.

Aside from stock ownership, Plaintiffs point to a generic statement in the Prospectus that the ACON Defendants would have "significant influence over [Funko], including over decisions that require approval of stockholders[.]" *See* Opp. 11 (quoting SAC ¶ 33). But the primary violations alleged in the SAC concern Funko's inventory accounting and sales forecasts, not matters that require the approval of stockholders.

Plaintiffs also point to the ACON Defendants' power to appoint three of the eight members of Funko's board. *See* Opp. 34. For the same reason minority stock ownership alone does not entail control, however, neither does the ability to appoint a minority of the board. Critically, the SAC does not plead facts demonstrating that the ACON Defendants' three board designees had any control over Funko's inventory disclosures and sales forecasting. *See In re Galena Biopharma, Inc. Sec.*

---

[7] *See* 17 CFR § 240.13d-3(d)(1)(i) (". . . . Any securities not outstanding which are subject to such options, warrants, rights or conversion privileges shall be deemed to be outstanding for the purpose of computing the percentage of outstanding securities of the class owned by such person *but shall not be deemed to be outstanding for the purpose of computing the percentage of the class by any other person*." (emphasis added)).

*Litig.*, 117 F. Supp. 3d 1145, 1202 (D. Or. 2015) (dismissing § 20(a) claim where plaintiffs did "not sufficiently allege that Galena or its personnel had control over DreamTeam's day-to-day operations, management, policies, or decisions with respect to the promotional scheme").

Plaintiffs assert that the "ACON Defendants' founder, Defendant Brotman, was Chairman of the Board – a Board that was kept well abreast of the Company's financial circumstances." *See* Opp. 11 (citing SAC ¶¶ 36, 85, 128, 162). Plaintiffs overstate the allegations in the SAC; none of the paragraphs cited by Plaintiffs indicate that that the board was "kept well abreast of the Company's financial circumstances." *See* SAC ¶¶ 36, 85, 128, 162. Moreover, mere status as chairman of the board does not establish control, particularly in the absence of any allegations that the chairman was involved in day-to-day affairs. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 258 F. Supp. 3d 1037, 1048 (N.D. Cal. 2017) (dismissing Section 20(a) claim against chairman of management board where there were no allegations supporting that the chairman was active in the day-to-day affairs of the corporation); *see also See Arthur Children's Tr. v. Keim,* 994 F.2d 1390, 1396 (9th Cir. 1993) ("A director is not automatically liable as a controlling person.").

Finally, Plaintiffs allege that in 2015, Defendant Brotman stated that he viewed the ACON Defendants as a partner to Funko. *See* Opp. 11 (citing SAC ¶ 45[sic][8]). But this innocuous alleged statement from *four years before the class period* does not support the inference that the ACON Defendants controlled Funko at the time of the alleged Section 10(b) violations.

Accordingly, Count II should be dismissed with respect to the ACON Defendants.

---

[8] Plaintiffs appear to have mistakenly cited Paragraph 45, rather than Paragraph 47.

## II.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE ACON DEFENDANTS FOR INSIDER TRADING UNDER SECTION 20A

Plaintiffs' 20A claim against the ACON Defendants fails for two reasons, each of which is independently fatal.  *First*, Plaintiffs fail to plead a predicate violation of the Exchange Act.  *Second*, Plaintiffs do not adequately allege that the ACON Defendants possessed material, nonpublic information.

### A.   Plaintiffs Fail to Plead a Predicate Violation of the Exchange Act

The SAC indicates that the ACON Defendants "committed an underlying violation by violating Section 10(b) and Rule 10b-5."  SAC ¶ 201.  However, as explained in the ACON Defendants' opening brief, Plaintiffs do not actually plead any Section 10(b) or Rule 10b-5 violations by the ACON Defendants.  Plaintiffs do not rebut this contention in their Opposition, thus conceding that they do not plead any Section 10(b) and Rule 10b-5 violations by the ACON Defendants.  *See* Dismissal Order, ECF No. 141, at 32, 35 n.3 (treating non-opposition to contention as conceding the matter); *Kroeger v. Vertex Aerospace LLC*, 2020 WL 3546086, at *8 (C.D. Cal. June 30, 2020) (collecting cases).  For this reason alone, Plaintiffs' Section 20A claim against the ACON Defendants necessary fails.

Nonetheless, Plaintiffs shift gears and argue that their Section 20(a) control person claim against the ACON Defendants serves as the predicate violation for their Section 20A insider trading claim.  This argument fails, for several reasons.

*First*, the SAC identifies Section 10(b) as the predicate violation.  *See* SAC ¶ 201.  Plaintiffs cannot circumvent the pleading process by raising a different theory of liability in their Opposition.  *See Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1090 (N.D. Cal. 2006) (declining to consider new theory raised in opposition to motion to dismiss); *Myers v. Rio Linda/Elverta Cmty. Water Dist.*, 2012 WL 1356973, at *3 n.1 (E.D. Cal. Apr. 18, 2012) (same); *Rich v. Shrader*, 2014 WL 12670492, at *5 (S.D. Cal. Feb. 25, 2014) ("[R]aising a completely new theory of liability in a brief in opposition to a motion to dismiss does not give Defendants fair notice of Plaintiff's claims or the grounds upon which it rests. To allow Plaintiff to

do so would circumvent the very purposes Federal Rule of Civil Procedure 8 was designed to accomplish." (internal citation omitted)).

*Second*, notwithstanding Plaintiffs' arguments the contrary, Plaintiffs must plead a predicate violation of Section 10(b) or Rule 10b-5 by the ACON Defendants in order to plead a Section 20A claim against the ACON Defendants. *See In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 711 (9th Cir. 2012) ("To prevail on its claims for violations of § 20A, National Elevator must first sufficiently allege a violation of § 10(b) or Rule 10b–5."); *Galena*, 117 F. Supp. 3d at 1203 ("To allege a violation of Section 20A, a plaintiff must allege an underlying 'insider trading' violation of Section 10(b) or Rule 10b–5."); *In re Netflix, Inc., Sec. Litig.*, 923 F. Supp. 2d 1214, 1226 (N.D. Cal. 2013) ("[T]here can be no insider trading liability under Section 20A without an underlying violation of Section 10(b)."); *see also In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1202 (C.D. Cal. 2008) ("[T]he predicate violation must be an act of insider trading, not just trading while simultaneously committing a free-floating '34 Act violation.").

*Third*, Section 20(a) cannot, in fact, serve as a predicate violation. Section 20A states, in relevant part, that "[a]ny person who *violates* any provision of this chapter or the rules or regulations thereunder *by purchasing or selling a security while in possession of material, nonpublic information* shall be liable . . . ." 15 U.S.C. § 78t(a) (emphasis added). Thus, Plaintiffs must demonstrate both that (1) the ACON Defendants themselves violated a provision of the Exchange Act, and (2) the aforementioned violation was committed by purchasing or selling a security while in possession of material nonpublic information. Plaintiffs' Section 20(a) claim satisfies neither requirement.

As an initial matter, one does not "violate" Section 20(a). The verb "violates" means breaking or disregarding the law. *See Johnson v. Aljian*, 490 F.3d 778, 781 (9th Cir. 2007) (citing Webster's Third New Int'l Dictionary 2554 (3d ed. 1986)). Thus, to violate a provision of the Exchange Act, one must satisfy the essential

elements of the act proscribed by said provision. *See id*. at 781–82 ("We believe that the term 'violates' ordinarily is understood to mean that a person has satisfied the essential elements of the proscribed act . . . ."). Section 20(a) does not proscribe any unlawful acts; it merely extends joint and several liability to control persons of those that violate the Exchange Act. Indeed, "[t]he gravamen of a Section 20(a) action is not that the controlling person committed the violation, but that the controlling person . . . controlled the person . . . who committed a violation." *See S.E.C. v. Stringer*, 2003 WL 23538011, at *9 (D. Or. Sept. 3, 2003). This is in contrast to several other provisions of the Exchange Act—including Section 10(b)—that do proscribe unlawful conduct, often prefaced by the words "It shall be unlawful for . . . ." *See*, *e.g.*, 15 U.S.C. §§ 78j(b), 78l(a), 78k(a). Moreover, even if one could be said to "violate" Section 20(a), one certainly does not violate Section 20(a) "by purchasing or selling a security while in possession of material, nonpublic information." Rather, one "violates" Section 20(a), if at all, by controlling a primary violator.

Even *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611 (S.D.N.Y. 2007)—which Plaintiffs cite for the proposition that "a violation of 20(a) could serve as the predicate act for a 20A violation" (Opp. 12)—is of no help to Plaintiffs. There, the court determined that Section 20A extends to "those who *control acts of insider trading*," not just "the primary violators who directly engage in them." *In re Refco*, 503 F. Supp. 2d at 665 (emphasis added). If a Section 20(a) claim can ever serve as a predicate violation for the purposes of Section 20A—a doubtful proposition in and of itself—it is only when the primary violation underlying the Section 20(a) claim is an act of insider trading. *See Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at *27 (C.D. Cal. July 1, 2008) (citing *In re Refco* and noting that "although at least one court has held that a claim for control person liability under § 20(a) may serve as a predicate violation for the purposes of § 20A, this is so only where the claim for control person liability relates to insider trading").

Here, Plaintiffs allege that the ACON Defendants controlled Funko, and that Funko violated Section 10(b) by making certain alleged misrepresentations and omissions in SEC filings, earnings calls, and press releases.  Plaintiffs do not allege that Funko itself engaged in insider trading.  Thus, even under *In re Refco*, Plaintiffs do not plead a predicate violation by the ACON Defendants.  *Cf. Batwin*, 2008 WL 2676364, at *27 (dismissing § 20A claims against VC defendants where "plaintiff's § 20(a) claims against the VC defendants relate to the conduct of Occam, Krausz, and Abbott, and none of these defendants are alleged to have engaged in insider trading").

**B.    Plaintiffs Fail to Sufficiently Allege that the ACON Defendants Possessed Material, Nonpublic Information When They Sold Stock**

The SAC principally relies on the allegation that CW2, the ACON Defendants' designees on the Funko board, and others attended quarterly board meetings at which "excess inventory" was a repeated topic, including a board meeting in "late-June or early July 2019" (the last meeting CW2 attended) in which the board discussed the "need to clear out these warehouses" and "consolidate the inventory."  *See* SAC ¶ 85.  As already explained in the ACON Defendants opening brief, this vague allegation falls far short of supporting a strong inference that the ACON Defendants possessed material, nonpublic information at the time they sold stock.

In their Opposition, Plaintiffs attempt to dress up this lone allegation, even going so far as to misrepresent the contents of their own complaint.  Citing Paragraphs 85, 128, and 162 of the SAC, Plaintiffs assert that that "[t]he SAC clearly alleges that the Board was kept abreast of all financial information about Funko, including, specifically, inventory and sales figures."  *See* Opp. 13.  But the SAC says

no such thing.[9]  Paragraph 85 consists of CW2's statement, referenced above, that "excess inventory" was a repeated topic at quarterly board meetings, while Paragraphs 128 and 162 simply recount Paragraph 85.

Likewise, citing those same paragraphs, Plaintiffs assert that "[s]pecifically, the ACON Defendants knew about the tremendous amount of excess, obsolete inventory Funko was sitting on – so much so that a new warehouse was needed to store inventory that would need to be destroyed."  *See* Opp. 13 (citing SAC ¶¶ 85, 128, 162).  Again, Plaintiffs overstate the allegations in the SAC.  Paragraph 85 provides scant detail about the board discussions.  And indeed, Paragraph 85 says nothing about destroying inventory, much less procuring a warehouse for this purpose.

Finally, according to Plaintiffs, the "SAC pleads even more details about the Company's inventory situation, which the ACON Defendants were aware of via their Board appointees, as the SAC makes explicitly clear."  *See* Opp. 13 (citing SAC ¶¶ 52-93).  What are these additional details of which the ACON Defendants were ostensibly aware?  And what factual support is there that the ACON Defendants or their board appointees in fact knew these unspecified details?  Plaintiffs make no effort to articulate an answer, instead block citing to over forty paragraphs of the SAC.  One need only review the paragraphs cited by Plaintiffs to see why: the only paragraph that so much as references the ACON Defendants or their board designees is, once again, Paragraph 85.

And that is the crux of the problem.  Plaintiffs must "state with particularity facts giving rise to a strong inference that the" ACON Defendants—not "Defendants" generally, but the ACON Defendants—possessed material, nonpublic

---

[9] Notably, Plaintiffs took the exact same tact during briefing on the Consolidated Amended Complaint ("CAC").  *See* Plaintiffs' Corrected Omnibus Opposition, ECF No. 131, at 48 (citing CAC ¶¶ 81, 197).  It is telling that, despite having the opportunity to amend, Plaintiffs did not add allegations supporting the assertions they continue to make in their memoranda.

information at the time they sold stock.  *See* 15 U.S.C. § 78u-4(b)(2)(A).  Other than the one vague allegation above, Plaintiffs merely lump the ACON Defendants in with Defendants generally, all but asking the Court to assume—without particularized factual support—knowledge as to the ACON Defendants and their board designees.  This effort falls far short of satisfying the PSLRA's stringent pleading requirements.

Accordingly, Count III should be dismissed as to the ACON Defendants.

### III.   THE ACON DEFENDANTS' STOCK SALES DO NOT SUPPORT A STRONG INFERENCE OF SCIENTER

In their Opposition to the ACON Defendants' Motion to Dismiss, Plaintiffs devote several pages to arguing that stock sales by the ACON Defendants and other Defendants support a strong inference of scienter.

At the outset, it is not clear that Plaintiffs actually mean to direct this argument at the ACON Defendants, given that (1) Plaintiffs do not plead any Section 10(b) claims against the ACON Defendants, and (2) for that reason, the ACON Defendants did not address scienter in their Motion to Dismiss.[10]  Instead, Plaintiffs appear to have included this section in their Opposition to the ACON Defendants' Motion to Dismiss to circumvent the page limits for their Opposition to the Funko Defendants' Motion to Dismiss ("Funko Opp.").[11]  *See* Funko Opp. 23 (incorporating argument by reference).  Regardless, the ACON Defendants' stock sales do not support a strong inference of scienter.

---

[10] To be sure, Plaintiffs must plead scienter to state a Section 20A claim against the ACON Defendants; scienter is an element of a Section 10(b) claim, which in turn is required to plead a Section 20A claim.  *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002).  However, as Plaintiffs do not plead any Section 10(b) violations by the ACON Defendants in the first place, Plaintiffs' Section 20A claim fails without getting to the question scienter.

[11] This suspicion is underscored by Plaintiffs' clearly pretextual explanation for addressing scienter.  *See* Opp. 5 ("Scienter is not required for the Section 20(a) claim against the ACON Defendants, but, if it were, the stock sales by the Defendants in this case support an inference of scienter.").

REPLY IN SUPPORT OF MOTION TO DISMISS SAC
Case No. 2:20-cv-02319-VAP-PJW

Although suspicious stock sales by a corporate insider can be probative of scienter, "[i]nsider stock sales are not inherently suspicious." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1092 (9th Cir. 2002). Rather, a stock sale is suspicious "only when it is dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1005 (9th Cir. 2009) (internal quotation marks omitted). Relevant factors include "(1) the amount and percentage of shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's prior trading history." *Id.* at 986. And, even when suspicious, stock sales are rarely, if ever, sufficient alone to create the required inference of scienter. *See In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1081 (N.D. Cal. 2001) ("Although viable circumstantial evidence of scienter, stock sales alone cannot create a strong inference of scienter." (internal quotation marks omitted)).

*First*, the ACON Defendants' stock sales were not suspicious in amount. Defendants allege that the ACON Defendants collectively sold approximately 8.8 percent of their Funko Class A shares (*see* SAC ¶ 124), far less than what courts in this Circuit typically deem suspicious. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008) ("We typically require larger sales amounts [than 37%] — and corroborative sales by other defendants — to allow insider trading to support scienter."); *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001) (sales of "10 percent and 17 percent" of defendants' respective holdings were not suspicious in amount).

Plaintiffs try to aggrandize the SAC, asserting in their Opposition that the ACON Defendants "sold approximately 28% of the Class A shares they held outright

prior to the Offering." Opp. 11.[12] This allegation is nowhere to be found in the SAC, and Plaintiffs' attempt to effectively amend the SAC is plainly improper. *See Oklahoma Firefighters*, 50 F. Supp. 3d at 1366–67 (rejecting plaintiffs' attempt to rely on corrected percentage of shares sold in opposition brief).  Moreover, Ninth Circuit precedent makes clear that other holdings (such as exercisable stock options) should be included in calculating the percentage of shares sold, not just shares "held outright."  As the Ninth Circuit has explained:

> When evaluating stock sales, we have held that the proportion of shares actually sold by an insider to the volume of shares he could have sold is probative of whether the sale was unusual or suspicious. In this case, we see no reason to distinguish vested stock options from shares because vested stock options can be converted easily to shares and sold immediately.  Actual stock shares plus exercisable stock options represent the owner's trading potential more accurately than the stock shares alone.

*In re Silicon Graphics Inc.*, 183 F.3d 970, 986-87 (9th Cir.1999) (internal citations omitted); *see Ronconi*, 253 F.3d at 435 n. 25 ("Stock options should be considered in calculating the percentage of shares sold unless the insider could not have exercised them.").  The same logic applies to convertible securities like the common units.  Indeed, almost half of the shares the ACON Defendants sold consisted of common units exchanged for Class A shares immediately before sale.[13]

   *Second*, the timing of the ACON Defendants' stock sales was not suspicious. As the Court recognized in its previous order, the ACON Defendants sold their shares in September 2019, "several months before Funko's corrective disclosures and the drop in Funko's stock price." Dismissal Order at 37; *cf Lu v. Align Tech.,*

---

[12] Plaintiffs also assert that the ACON Defendants sold 15.37% of their total holdings.  Setting aside the procedural impropriety of alleging new facts in an opposition memorandum, 15.37% is not a suspicious amount, as explained above.

[13] *See* Beige Ex. 1 at S-62 n.4 ("In this offering, ACON Funko Investors, L.L.C. is offering 1,613,567 shares of Class A common stock (which shares of Class A common stock will be issued to ACON Funko Investors, L.L.C. in exchange for a corresponding number of common units of FAH, LLC and the cancellation of a corresponding number of shares of its Class B common stock)[.]").

*Inc.*, 417 F. Supp. 3d 1266, 1281 (N.D. Cal. 2019) (steep drop in price at least two months after corporate insiders' and individual defendants' stock sales did not weigh in favor of scienter).

*Third*, the ACON Defendants' stock sales were not out of line with their prior trading practices. Plaintiffs allege that this was the "first public sale of stock by the ACON Defendants." *See* SAC ¶ 123. But given Funko's recent IPO (less than two years before the class period), this allegation does not support an inference of scienter. *See* SAC ¶¶ 48, 206; *Curry v. Yelp Inc.*, 2015 WL 1849037, at *13 (N.D. Cal. Apr. 21, 2015) (lack of trading history due to recency of IPO – 19 months before class period – foreclosed finding that sales were out of line with prior trading practices); *see also Zucco Partners*, 552 F.3d at 1005 ("Even if the defendant's trading history is simply not available, for reasons beyond a plaintiff's control, the plaintiff is not excused from pleading the relevant history."). In fact, the IPO itself cuts against an inference of scienter. Plaintiffs themselves allege that the ACON Defendants gave up much more equity as part of the IPO (45 percent of Class A shares) than the Secondary Offering (8.8 percent of Class A shares). *See* SAC ¶¶ 32, 124. The Secondary Offering thus paled in comparison to the IPO.

*Fourth*, Plaintiffs do not allege that five of the seven Individual Defendants (including Funko's chief financial officer) sold stock, which weighs heavily against the inference of scienter. *See* Dismissal Order at 38 (agreeing that "the absence of any allegations of sales by five of the seven Individual Defendants weighs heavily against an inference of scienter" (alterations omitted)); *Ronconi*, 253 F.3d at 436 ("One insider's well timed sales do not support a 'strong inference' required by the statute where the rest of the equally knowledgeable insiders act in a way inconsistent with the inference that the favorable characterizations of the company's affairs were known to be false when made."); *Metzler*, 540 F.3d at 1067 (noting that one of the defendants "sold nothing at all, suggesting that there was no insider information from which to benefit").

Thus, the ACON Defendants' stock sales do not support a strong inference of scienter.

### IV. MINUTE ORDER RE NEW CIRCUIT AUTHORITY

Pursuant to the Court's June 16, 2021 Minute Order (ECF No. 156), the ACON Defendants briefly address the impact of the Ninth Circuit's recent decision in *In re Alphabet, Inc. Sec. Litig.*, No. 20-15638, 2021 WL 2448223 (9th Cir. June 16, 2021).

The *Alphabet* decision addressed the pleading standards for a Section 10(b) and Rule 10b-5 claim. Plaintiffs do not plead any Section 10(b) or Rule 10b-5 claims against the ACON Defendants. However, Plaintiffs assert control person liability against the ACON Defendants for alleged Section 10(b) and Rule 10b-5 violations by Funko. Thus, as indicated above, the ACON Defendants join and incorporate by reference the Funko Defendants' Reply.

### CONCLUSION

For the reasons set forth above, as well as in their opening brief, the ACON Defendants respectfully request that the Consolidated Second Amended Complaint be dismissed with prejudice as to the ACON Defendants.

Dated:  July 2, 2021

Respectfully submitted,

AEGIS LAW GROUP LLP

By:  */s/ Michael K. Ross*
    Michael K. Ross
    (*pro hac vice*)
    Sean M. Roberts
    (*pro hac vice*)
    Market Square West, Suite 740
    801 Pennsylvania Avenue, N.W.
    Washington, D.C. 20004
    Tel:  +1.202.737.3500
    E-mail:  mross@aegislawgroup.com
    E-mail:  sroberts@aegislawgroup.com


ESKOVITZ LAW

    Sean Eskovitz
    (State Bar No. 241877)
    1217 Wilshire Blvd # 3683
    Santa Monica, CA 90403
    Tel: +1.323.821.5836
    E-mail:  seane@eskovitz.com

*Counsel for ACON Investments, L.L.C., ACON Funko Manager, L.L.C., ACON Funko Investors, L.L.C., ACON Funko Investors Holdings 1, L.L.C., ACON Funko Investors Holdings 2, L.L.C., ACON Funko Investors Holdings 3, L.L.C., and ACON Equity GenPar, L.L.C.*