LATHAM & WATKINS LLP
  Benjamin A. Naftalis (*pro hac vice*)
  *benjamin.naftalis@lw.com*
  Kevin M. McDonough (*pro hac vice*)
  *kevin.mcdonough@lw.com*
1271 Avenue of the Americas
New York, New York  10020
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864

LATHAM & WATKINS LLP
  Meryn C. N. Grant (State Bar No. 291315)
  *meryn.grant@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, California  90071-1560
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

Attorneys for the Funko Defendants

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO FERREIRA, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FUNKO, INC., BRIAN MARIOTTI, RUSSELL NICKEL, ANDREW PERLMUTTER, JENNIFER FALL JUNG, KEN BROTMAN, GINO DELLOMO, ADAM KRIGER, ACON INVESTMENTS, L.L.C., ACON FUNKO MANAGER, L.L.C., ACON FUNKO INVESTORS, L.L.C., ACON FUNKO INVESTORS HOLDINGS 1, L.L.C., ACON INVESTORS HOLDINGS 2, L.L.C., ACON INVESTORS HOLDINGS 3, L.L.C., and ACON EQUITY GENPAR, L.L.C., <br><br> Defendants. | Case No. 2:20−cv−02319−VAP−PJW <br><br> **FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT** <br><br><br> Hearing <br> Date: September 20, 2021 <br> Time: 2:00 PM <br> Courtroom: 8A <br> Judge: Hon. Virginia A. Phillips |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT...................................................................................1

II.   ARGUMENT .............................................................................................................2

    A.   PLAINTIFFS DO NOT ALLEGE ANY MATERIALLY FALSE OR MISLEADING STATEMENT OR OMISSION .................................................................................2

        1.   The PSLRA Safe Harbor Protects Funko's October 31, 2019 Guidance Statements ..................................................2

            a.   The October 31, 2019 Guidance Statements Were Accompanied By Meaningful Cautionary Language .......................................................3

            b.   Plaintiffs Do Not Allege Actual Knowledge Of Falsity...........................................................5

            c.   The Guidance Statements Are Inactionable Opinions .............................................................8

        2.   The PSLRA Safe Harbor Applies To Funko's Inventory Risk Disclosures......................................................10

    B.   PLAINTIFFS' SCIENTER ARGUMENTS FAIL ...........................12

        1.   The SAC Does Not Allege Deliberate Recklessness ......................................................................12

            a.   The SAC Fails To Establish Deliberate Recklessness With Respect To The Guidance Statements ......................................................12

            b.   The SAC Fails To Establish Deliberate Recklessness With Respect To The Inventory Risk Disclosures ...........................................16

        2.   None Of The Remaining CWs Support A Strong Inference Of Scienter.................................................18

        3.   The Class Period Stock Sales And Alleged Acceleration Of The Registration Statement's Effective Date Do Not Establish Scienter ..............................19

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

CASE NO. 2:20-cv-02319-VAP-PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

4.    Viewing The Allegations Holistically, The Most Compelling Inference Is Non-Fraudulent................................21

III.    CONCLUSION .................................................................22

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

ii

CASE NO. 2:20–cv–02319–VAP–PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alaska Elec. Pension Fund v. Adecco S.A.*,
434 F. Supp. 2d 815 (S.D. Cal. 2006) *aff'd*, 256 F. App'x 74
(9th Cir. 2007) ...........................................................................................................20

*Allegheny Cty. Emps.' Ret. Sys. v. Energy Transfer L.P.*,
2021 WL 1264027 (E.D. Pa. Apr. 6, 2021) .................................................... 4, 5, 9

*In re Apple Comput., Inc., Sec. Litig.*,
243 F. Supp. 2d 1012 (N.D. Cal. 2002) ...................................................... 15, 16

*In re Atossa Genetics Inc. Sec. Litig.*,
868 F. 3d 784 (9th Cir. 2017) ........................................................................... 9

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
2020 WL 4569846 (N.D. Cal. Aug. 7, 2020)................................................... 10

*City of Monroe Emps' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011) ................................................. 8

*In re Coinstar Inc. Sec. Litig.*,
2011 WL 4712206 (W.D. Wash. Oct. 6, 2011) ............................................... 15

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008)............................................................ 5

*Curry v. Yelp Inc.*,
875 F. 3d 1219 (9th Cir. 2017)......................................................................... 21

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010)........................................................................... 4

*In re Downey Sec. Litig.*,
2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ................................................ 16

*In re Dynavax Sec. Litig.*,
2018 WL 2554472 (N.D. Cal. June 4, 2018) .................................................... 9

*Eckert v. PayPal Holdings, Inc.*,
2020 WL 7399009 (9th Cir. Dec. 17, 2020) .................................................... 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

*In re Facebook, Inc. Sec. Litig.*,
477 F. Supp. 3d 980 (N.D. Cal. 2020)....................................................................11

*Ferreira v. Funko, Inc.*,
2021 WL 880400 (C.D. Cal. Feb. 25, 2021)................................................*passim*

*In re Finjan Holdings, Inc. Sec. Litig.*,
2021 WL 1391539 (N.D. Cal. Apr. 13, 2021) .......................................................8

*Graham v. Barringer*,
699 F. Supp. 2d 612 (S.D.N.Y. 2009)..................................................................17

*Holbrook v. Trivago N.V.*,
2019 WL 948809 (S.D.N.Y. Feb. 26, 2019) .........................................................17

*In re Immune Response Sec. Litig.*,
375 F. Supp. 2d 983 (S.D. Cal. 2005) ..................................................................14

*In re Int'l. Rectifier Corp. Sec. Litig.*,
2008 WL 4555794 (9th Cir. 2008) .......................................................................16

*In re Intuitive Surgical Sec. Litig.*,
2014 WL 7146215 (N.D. Cal. Dec. 15, 2014) .....................................................15

*Kaplan v. Charlier*,
426 F. App'x 547 (9th Cir. 2011)...........................................................................7

*Limantour v. Cray*,
432 F. Supp. 2d 1129 (W.D. Wash. 2006) ...........................................................19

*Markette v. XOMA Corp.*,
2017 WL 4310759 (N.D. Cal. Sept. 28, 2017)......................................................8

*Miller v. PCM, Inc.*,
2018 WL 5099722 (C.D. Cal. Jan 3, 2018)..........................................................21

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
380 F.3d 1226 (9th Cir. 2004)..............................................................................15

*ODS Capital LLC v. JA Solar Holdings Co. Ltd.*,
2020 WL 7028639 (S.D.N.Y. Nov. 30, 2020) .......................................................9

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,
780 F. App'x 480 (9th Cir. 2019)..........................................................................14

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

iv

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

*Omnicare, Inc. v. Laborers Dist. Council. Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015) ...................................................................................... 8, 9

*Paddock v. Dreamworks Animation SKG, Inc.*,
    2015 WL 12711653 (C.D. Cal. Apr. 1, 2015) ..................................................... 11

*In re Pivotal Sec. Litig.*,
    2020 WL 4193384 (N.D. Cal., July 21, 2020) ..................................................... 8

*In re Quality Sys. Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017) ........................................................................... 15

*In re Rackable Sys., Inc. Secs. Litig.*,
    2010 WL 3447857 (N.D. Cal. Aug. 27, 2010) .................................................... 9

*Robb v. Fitbit Inc.*,
    2017 WL 219673 (N.D. Cal. Jan. 19, 2017) ....................................................... 15

*Roberts v. Zuora, Inc.*,
    2020 WL 2042244 (N.D. Cal. Apr. 28, 2020) ..................................................... 15

*Shreiber v. Synacor, Inc.*,
    832 F. App'x 54 (2d Cir. 2020) ......................................................................... 8

*State of Rhode Island v. Alphabet Inc. (In re Alphabet, Inc. Sec. Litig.)*,
    2021 WL 2448223 (9th Cir. June 16, 2021) .................................... 2, 11, 12, 18

*Todd v. STAAR Surgical Co.*,
    2016 WL 6699284 (C.D. Cal. Apr. 12, 2016) ..................................................... 9

*In re UTStarcom, Inc. Sec. Litig.*,
    617 F Supp. 2d 964 (N.D. Cal. 2009) ................................................................ 7

*In re Vantive Corp. Sec. Litig.*,
    283 F.3d 1079 (9th Cir. 2002) ........................................................................... 19

*Vignola v. FAT Brands, Inc.*,
    2019 WL 6888051 (C.D. Cal. Dec. 17, 2019) ..................................................... 10

*Weiss v. Mentor Graphics Corp.*,
    1999 WL 985141 (D. Or. Oct. 6, 1999) ............................................................. 14

*Williams v. Globus Medical Inc.*,
    869 F.3d 235 (3d Cir. 2017) ............................................................................. 11

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

v

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

*Wochos v. Tesla, Inc.*,
  2021 WL 246210 (9th Cir. 2021) ................................................................ 3, 6, 7

*Zaghian v. Farrell*,
  675 F. App'x 718 (9th Cir. 2017) ...................................................................... 7

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 ......................................................................................... 18, 19

**STATUTES**

15 U.S.C.
  § 78u-5(c)(1)(A) ........................................................................................... 4
  § 78u-5(c)(1)(B) ........................................................................................... 4

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

vi

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

## I.   PRELIMINARY STATEMENT[1]

The Opposition ("Opp.") confirms that the theory of fraud Plaintiffs advance in the SAC is even less coherent than the theory set forth in their dismissed Consolidated Amended Complaint ("CAC").  Indeed, Plaintiffs do not dispute the following points, which undermine any notion that Defendants committed securities fraud:

- When Funko reaffirmed its full year sales projections on October 31, 2019, it was in the midst of a nine-quarter streak of greater than 20% sales growth, Mot. 4 (citing CAC ¶ 47); *see also* SAC ¶ 98;

- Funko accurately reported its inventory balance during the Class Period, and was not required to take a write-down prior to the end of 2019, Mot. 13-14; Ex. 6 at 9, Ex. 9 at 8; Opp. 11 & n.8;

- The Company did not conceal the fourth quarter sales miss, but instead accelerated its usual financial reporting timeline to inform investors of the disappointing news, Mot. 21; SAC ¶ 138;

- Only two of the seven Individual Defendants sold any stock during the Class Period, and both retained very large quantities of Funko stock through the end of the period, Mot. 19-21 (citing SAC ¶¶ 123-24, 164-65); ACON Opp. 6;

- The only individual alleged to have made a material misstatement sold no stock during the Class Period, SAC ¶¶ 164-66; and

- *All* of the Class Period stock sales occurred before four of the five alleged misstatements, and *no* sales occurred in the period leading up to Funko's disclosure of its sales miss and inventory write-down, *id.*; Opp. 22-23.

Moreover, the Opposition provides no basis upon which to conclude that the allegations in the SAC (most of which are not new) cure the many fatal flaws that led to dismissal of the CAC.  *Ferreira v. Funko, Inc.*, 2021 WL 880400 (C.D. Cal.

---

[1] Unless otherwise stated, capitalized terms have the meanings set forth in Defendants' motion ("Mot.") to dismiss the SAC (cited as "SAC ¶"), quotation marks are omitted, and emphasis is added.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

Feb. 25, 2021). As before, Plaintiffs' allegations are largely based on the opinions of a single mid-level employee who was new to Funko and disagreed with management's sales projections. *Id.* at \*28. And the Ninth Circuit's recent decision in *State of Rhode Island v. Alphabet Inc. (In re Alphabet, Inc. Sec. Litig.)*, 2021 WL 2448223 (9th Cir. June 16, 2021), provides no lifeline for Plaintiffs' deficient claims. *Alphabet* involved a massive data privacy breach on the Google platform, which the company's senior management allegedly decided to conceal from investors and others "to avoid or delay the impacts disclosure could have on regulatory scrutiny, public criticism, and loss of consumer confidence," *Alphabet*, 2021 WL 2448223 at \*13, at a time when Google and other major technology companies were under intense congressional, regulatory and media scrutiny, *see id.* at \*1, 3-6, 10. The intentionally concealed breach came to light only after it was revealed through reporting by investigative journalists at the *Wall Street Journal*. *Id.* at \*5. No such cover-up is or could be alleged here. To the contrary, Funko disclosed its disappointing sales numbers and inventory write-down, and did so ahead of its normal financial reporting schedule. Furthermore, unlike in *Alphabet*, Plaintiffs identify no logical motive for making the five alleged false statements, which are not actionable in any event.

For the reasons stated here and in Defendants' Opening Brief, the SAC should be dismissed in its entirety with prejudice.

## II.   ARGUMENT

### A.   PLAINTIFFS DO NOT ALLEGE ANY MATERIALLY FALSE OR MISLEADING STATEMENT OR OMISSION

#### 1.   The PSLRA Safe Harbor Protects Funko's October 31, 2019 Guidance Statements

The Court previously held that Funko's and Jung's statements reiterating the Company's net sales projection for 2019, as well as Jung's statement that "even with our current guidance, Q4 will be our biggest quarter ever as a company," are inactionable under the PSLRA safe harbor for forward-looking statements. *Funko*,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

2021 WL 880400, at *11, *22-24.  Plaintiffs argue that the SAC overcomes the safe harbor because it alleges facts showing that Defendants *knew* the FY2019 guidance was "impossible to meet."  Opp. 12; SAC ¶¶ 131, 134.  Plaintiffs are wrong.  The PSLRA safe harbor applies to the guidance statements for two independent reasons: the statements were accompanied by meaningful cautionary language and the SAC falls well short of alleging that Defendants had actual knowledge that the guidance statements were false.  Mot. 9; *Funko*, 2021 WL 880400, at *20 (citing *Wochos v. Tesla, Inc.*, 2021 WL 246210, at *5 (9th Cir. 2021) (recognizing the disjunctive nature of the safe harbor test).

### a.   The October 31, 2019 Guidance Statements Were Accompanied By Meaningful Cautionary Language

As the Court previously held, the October 31, 2019 guidance statements were accompanied by meaningful cautionary language sufficient to warrant application of the PSLRA safe harbor.  *Funko*, 2021 WL 880400, at *22-23.  Plaintiffs advance three arguments in an attempt to overcome the Court's prior holding, and all three fail.

*First*, Plaintiffs argue that Funko's risk language "did not speak to CW1's allegations" that Funko failed to develop sufficient products to generate enough sales to achieve its projections.  Opp. 14.  But this ignores the Court's prior decision, which held that Funko was not "required to disclose CW1's concerns as a risk factor in order for the cautionary language to be meaningful."  *Funko*, 2021 WL 880400, at *21.  Indeed, companies are not required to tailor their risk language to reflect every subjective concern or contingency raised by individual employees, *see id.*, and Plaintiffs point to no authority that suggests they must, *see generally* Opp.  In any event, Funko *did* warn of the *exact* risks Plaintiffs identify—that customer demand tied to new product releases could prove lacking, which in turn could harm Funko's performance.  *See Funko*, 2021 WL 880400, at *22 (listing Funko's risk factors by heading); Ex. 7, Q3 2019 Form 10-Q at 25, 27 ("An inability to develop and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

introduce products in a timely and cost-effective manner may damage our business"; "[o]ur operating results may fluctuate from quarter to quarter and year to year due to the seasonality of our business, as well as due to the timing of new product releases"). Accordingly, Plaintiffs' reliance on CW1's subjective allegations as an attack on Funko's cautionary language fares no better the second time around.

*Second*, Plaintiffs recycle their earlier argument that Defendants had actual knowledge that the sales projections were false or misleading—once again improperly blurring the distinction between 15 U.S.C. § 78u-5(c)(1)(A) and 15 U.S.C. § 78u-5(c)(1)(B). *Compare* ECF No. 123 at 14-16, 17-19 *with* Opp. 11-13. The Court has already rejected that attempted distortion of the safe harbor test. *See Funko*, 2021 WL 880400, at *20 (holding liability for a forward-looking statement accompanied by meaningful cautionary statements does not arise "merely by alleging, for example, that the company knew the announced forward-looking objective was unlikely to be achieved"). Because Defendants' knowledge has no bearing on whether its cautionary language was meaningful, this argument again fails. *Id.* at *20-21; *see also In re Cutera Sec. Litig.*, 610 F.3d 1103, 1113 (9th Cir. 2010) (holding the safe harbor for forward-looking statements should be read in the disjunctive). And at any rate, for the reasons explained in Section II.A.1.b below, Plaintiffs have not demonstrated that Defendants had actual knowledge that their forward-looking sales projections were false.

*Third*, Plaintiffs attempt to reargue their theory that Funko's cautionary language was not meaningful because it purportedly warned of risks that had already materialized, which is yet another misplaced argument that the safe harbor can be overcome solely based on allegations of actual knowledge of falsity; Plaintiffs' own out-of-circuit authority confirms as much. Opp. 15 (citing *Allegheny Cty. Emps.' Ret. Sys. v. Energy Transfer L.P.*, 2021 WL 1264027, at *7 (E.D. Pa. Apr. 6, 2021)). Indeed, *Energy Transfer* expressly rejected the same tactic Plaintiffs attempt here— invoking knowledge of falsity arguments as a basis for claiming the cautionary

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

CASE NO. 2:20-cv-02319-VAP-PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

language was not meaningful. 2021 WL 1264027 at *5 (explaining that the "'disjunctive statutory test provides two distinct entrances to the safe harbor,' and meaningful cautionary language itself suffices").[2] Moreover, Plaintiffs' entire argument is based upon the unsupported premise that the risk that fourth quarter sales would disappoint somehow materialized by October 31, *i.e.*, only one month into the fourth quarter. But they do not state particularized allegations to support that inherently speculative theory, and it is contradicted by allegations in the SAC indicating that Funko's senior management believed the Company could make up any alleged shortfall by the end of the fourth quarter and meet or exceed the projected sales (as it had done in the prior nine quarters). *See*, *e.g.*, SAC ¶ 110 (alleging Jung "directed the sales team to 'figure it out' and 'make up the difference'").

Accordingly, none of Plaintiffs' challenges to Funko's robust cautionary language does anything to disrupt the Court's finding that it was sufficiently meaningful to trigger application of the safe harbor.

### b.     Plaintiffs Do Not Allege Actual Knowledge Of Falsity

The PSLRA safe harbor applies to Funko's and Jung's October 2019 guidance statements for the independent reason that Plaintiffs do not plausibly allege that these statements were made with "actual knowledge" of falsity.

Plaintiffs argue that the SAC contains sufficient facts to show that Funko's sales guidance was "impossible" to meet. Opp. 12. Not so. At best, Plaintiffs have alleged that CW1 believed Funko's sales of *new* content could not deliver sufficient numbers to meet the Company's overall sales projections. *See*, *e.g.*, SAC ¶ 131(b) (alleging even if the Company "sold every unit of its *new products*" it could not meet the guidance); *id*. ¶ 131(e) (alleging the Company would have needed to sell "6 million units of its excess inventory at full price to close the gap"). But new products

---

[2] Plaintiffs' reliance on *In re Countrywide Financial Corporation Securities Litigation*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008) is also misplaced; that case has nothing to do with the PSLRA safe harbor at all and instead addresses falsity in the context of a Section 11 claim subject to a notice pleading standard.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

are not the only products that Funko offers, and Plaintiffs' focus on "new" products conveniently ignores Funko's ability to sell a mix of new product, excess inventory, and "evergreen" product to reach its sales guidance[3]—even though Plaintiffs themselves have alleged that nearly *half* of Funko's sales are traditionally derived from evergreen products.[4] *Funko*, 2021 WL 880400, at *2 (quoting CAC ¶¶ 49-50); Opp. 21 n.17; *see also* Mot. 8-10.  In any event, Plaintiffs' reliance on the personal views of CW1 cannot substitute for the particularized allegations necessary to infer that Funko's sales guidance was, in fact, "impossible to achieve." *See Funko*, 2021 WL 880400, at *21.

Moreover, even if Funko's sales projections were impossible to achieve (they were not), Plaintiffs have not alleged facts showing that Defendants had "actual knowledge" of the alleged falsity of the projections—that is, that Defendants "shared CW1's 'pessimism' or 'gloomy view.'" *Funko*, 2021 880400, at *21 (citing *Tesla, Inc.*, 2021 WL 246210 at *9).  In fact, Plaintiffs' actual allegations support the opposite inference, notwithstanding Plaintiffs' embellishments in the Opposition. For instance, the Opposition claims that "Defendant Jung accepted CW1's analysis that the shortfall could not be bridged," Opp. 15, and that Jung "always agreed" with the facts presented to her, Opp. 13.  But the SAC tells a different story:  although the SAC alleges that CW1 informed Jung of the shortfall and she accepted that a shortfall of some amount existed at a point in time, SAC ¶ 110, there is no allegation anywhere in the SAC that Jung agreed the sales projections were *impossible to meet*. To the contrary, Jung "directed the sales team to try and 'figure it out' and 'make up

[3] Recognizing their failure to plead any particularized facts excluding the possibility that evergreen products *could* have made up the guidance shortfall, Plaintiffs coyly admit that the SAC does not "explicitly mention[]" this possibility—because Plaintiffs removed the allegation in an attempt at "artful" pleading.  Plaintiffs' only rebuttal on this point is their conclusory allegation that "the shortfall could not be fixed," full stop.  Mot at 13 & n.9.  This does not amount to an allegation of particularized fact.

[4] Despite Plaintiffs' effort to remove this allegation from the SAC, they do not challenge this figure anywhere in the Opposition, nor does the SAC contain any contradictory sales figures.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

the difference.'" SAC ¶ 110.[5]  To be sure, the purported existence of an intra-quarter sales shortfall (which Plaintiffs do not quantify as of October 31) does not *ipso facto* render a sales projection impossible to achieve.[6]  And when Jung reaffirmed the sales projections, Funko was only one month into the fourth quarter, with the holidays yet to come.  The fact that Jung was not clairvoyant regarding Funko's future sales performance does not amount to a federal securities fraud violation, *see Kaplan v. Charlier*, 426 F. App'x 547, 549 (9th Cir. 2011) ("corporate officials need not be clairvoyant"), and in any event, Plaintiffs' allegations fall well short of the demanding standard to plead actual knowledge of falsity, *see Tesla, Inc.*, 2021 WL 246210 at *11 (holding that statement made "about anticipated gross margins for the third quarter of 2017, which still had nearly two months left to go" was a projection protected by the PSLRA safe harbor).[7]

At bottom, nothing in the SAC changes the fact that the October 31, 2019 forward-looking statements are protected under both prongs of the PSLRA safe harbor because Funko's cautionary language was "detailed and meaningful," *Funko*, 2021 WL 880400, at *22, and Plaintiffs have not, and cannot, plead with particularized facts that Defendants had "actual knowledge" of the falsity of their

---

[5] Further, Plaintiffs alleged in the CAC that attendees at the Weekly Sales Meetings "would discuss how to make up any shortfalls between the internal forecast and the Company's sales target that was represented to the market[,]" CAC ¶ 98, indicating that at least some of the attendees at that meeting believed the shortfall could be bridged.

[6] Plaintiffs allege that, based on the fourth quarter orders to date, Funko was "$30-40 million short" of sales guidance "by early-September 2019." ¶ 104.  But Plaintiffs tellingly do not allege the amount of the shortfall at the time Jung spoke on October 31; whether the supposed gap was growing or shrinking; or whether it was at all unusual for Funko to have an alleged sales gap in the September time period.

[7] Plaintiffs' sweeping statement that "[f]orecasts that contradict internal company data are misleading" is not supported by their authorities, both of which are easily distinguished on their facts.  *See In re UTStarcom, Inc. Sec. Litig.*, 617 F Supp. 2d 964, 972-73 (N.D. Cal. 2009) (company was plagued with "operational difficulties, problems with new product development, and increased costs associated with backlogged sales"); *Zaghian v. Farrell*, 675 F. App'x 718, 720 (9th Cir. 2017) (defendants were aware that their key product, a video game, was a demographic mismatch for the owners of the gaming consoles).  Unlike in those cases, Plaintiffs present no particularized allegations of internal data demonstrating Funko's sales projections were impossible to achieve.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

sales guidance.

### c.   The Guidance Statements Are Inactionable Opinions

The October 31 statements reaffirming Funko's guidance statements are not actionable for the separate reason that the SAC fails to satisfy the test for opinion liability. *See Shreiber v. Synacor, Inc.*, 832 F. App'x 54, 57 (2d Cir. 2020); Mot. 11-12. Plaintiffs argue in passing that the sales projections are not opinions because the statements did not contain Plaintiffs' magic words, "I think" or "I believe." Opp. 16. But no such magic language is required for statements to qualify as opinions in the context of the federal securities laws. *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *14 (N.D. Cal., July 21, 2020) (finding statements protected as opinions that were not prefaced with any statements to signal subjective belief); *Markette v. XOMA Corp.*, 2017 WL 4310759, at *4-5 (N.D. Cal. Sept. 28, 2017). And statements (like the projections) that convey a company's subjective views regarding future events are, indeed, opinions. *See, e.g., City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 2011 WL 4357368, at *19 n.54 (S.D.N.Y. Sept. 19, 2011) (holding projections are statements of opinion); *In re Finjan Holdings, Inc. Sec. Litig.,* 2021 WL 1391539, at *11 (N.D. Cal. Apr. 13, 2021) (noting the parties' agreement that projections were opinions).

Plaintiffs next argue that the projections were materially false opinions under the omission prong of the *Omnicare* test, Opp. 17, which the Supreme Court has cautioned is "no small task" for investors. *Omnicare, Inc. v. Laborers Dist. Council. Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015). In particular, Plaintiffs assert that Defendants' alleged omission of "contrary data" rendered the sales projections materially false. This argument fails for the same reason that Plaintiffs cannot overcome the safe harbor for forward-looking statements—because the facts alleged in the SAC do not support the inference that the sales guidance was, in fact, "impossible" to meet, or that the alleged "shortfall" on which Plaintiffs place so much weight could not have been remedied through increased advertisement,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

promotional activities, or a host of other measures. *See also supra* Section II.A.1.b; Mot. 11-12.

Moreover, an opinion statement is not necessarily misleading just because an issuer knows "but fails to disclose, some fact cutting the other way. Reasonable investors understand that opinions sometimes rest on a weighing of competing facts . . . [and a] reasonable investor does not expect that every fact known to an issuer supports its opinion statement." *Omnicare*, 575 U.S. at 189-90 (emphasis in original). To hold otherwise would impose a requirement that companies provide scores of information underpinning a company's sale projections, including intra-quarter financial data. *See* Opp. 16-18. *Omnicare* expressly rejects that theory. *See* 575 U.S. at 194; *see also In re Dynavax Sec. Litig.*, 2018 WL 2554472, at *8-9 (N.D. Cal. June 4, 2018) (dismissing without leave to amend 10(b) claim and holding omission of data was insufficient to render statement false or misleading).

Plaintiffs' citation to *ODS Capital LLC v. JA Solar Holdings Co. Ltd.*, Opp. 17, offers no support for their position. 2020 WL 7028639, at *11 (S.D.N.Y. Nov. 30, 2020). There, plaintiffs alleged that defendants misrepresented three quarters' worth of actual results that were used for the projections underlying the fairness statement prepared in connection with a merger. *Id.* at *11. There is no allegation here that Jung misrepresented Funko's actual results; her statements related to future results for a quarter that had been underway for only five weeks. *See In re Rackable Sys., Inc. Secs. Litig.*, 2010 WL 3447857 at *5 (N.D. Cal. Aug. 27, 2010) (failure of defendants' strategy to meet projections "[did] not mean that, at the time the strategy was made, [the company] had no reason to believe that it could be effective").[8]

---

[8] Unlike in *Energy Transfer*, Plaintiffs here have not alleged any facts that were known to the speakers that "could not be reconciled" with "the assurances offered to investors." 2021 WL 1264027, at *7. Indeed, Funko made no assurances about its future performance. Plaintiffs' other opinion cases are inapposite because, unlike here, they involved concealment of past events. *See* Opp. 17, n.13 (citing cases). *See, e.g., In re Atossa Genetics Inc. Sec. Litig.*, 868 F. 3d 784, 802 (9th Cir. 2017) (FDA had provided warning about the lack of clearance before company said had "clearance risk" been "achieved"); *Todd v. STAAR Surgical Co.*, 2016 WL 6699284, at *10 (C.D. Cal. Apr. 12, 2016) (Defendant had already received warning letter that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

## 2.    The PSLRA Safe Harbor Applies To Funko's Inventory Risk Disclosures

Plaintiffs contend that to establish Defendants' actual knowledge that the inventory risk factor disclosure was false, they "must only plead facts showing that Defendants knew that Funko was storing a material amount of *obsolete* inventory that would require one or more of the adverse actions set forth in their risk warnings." Opp. 11. Yet the SAC fails to meet Plaintiffs' own watered down test for actual knowledge of falsity (an issue the Court did not reach in its prior decision).

Plaintiffs argue that Defendants had actual knowledge that the risks identified in their inventory disclosures had materialized because Defendants allegedly "knew that Funko had accumulated millions of units of excess, obsolete inventory that would not be sold, and would need to be written off or discarded." Opp. 10. But Plaintiffs' allegations, summarized at page 10 of the Opposition, consist only of (1) the existence of certain reports that were circulated to Jung and Perlmutter regarding Funko's inventory, and discussions regarding those reports, SAC ¶¶ 80-81, 83, 111; (2) Funko's lease of a new warehouse that in the future would store products the Company may destroy, *id*. ¶ 79; and (3) the fact that inventory was discussed at Board meetings, *id*. ¶ 85. Those allegations do not state at all (let alone with particularity) that Defendants had actual knowledge that Funko held a material quantity of obsolete inventory at the time the inventory risk disclosures were made. *See Funko*, 2021 WL 880400, at *13 (rejecting a similar theory because of Plaintiffs failure to allege "an objectively-verifiable amount, percentage, or value of the excess or obsolete inventory"). Nor do Plaintiffs dispute or grapple with the fact that inventory obsolescence turns on subjective accounting judgments about which there

was certain to delay final approval); *Vignola v. FAT Brands, Inc.*, 2019 WL 6888051, at *10 (C.D. Cal. Dec. 17, 2019) (leadership team the company touted had already been involved in bankruptcies and failed to obtain financing in connection with acquisition spree); *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *8 (N.D. Cal. Aug. 7, 2020) (Uber knew that it had sustained its biggest losses to date in Q1 2019 despite stating in its registration statement in Q2 that they "expect[ed] . . . growth to continue").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

10    CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

can be reasonable disagreements among personnel within the same company. *See* Ex. 3, ASC 330-10-35 (establishing the process and subjective judgments involved in measuring inventory); *Paddock v. Dreamworks Animation SKG, Inc.*, 2015 WL 12711653, at \*6 (C.D. Cal. Apr. 1, 2015) (acknowledging [GAAP] allows for management to choose from a range of reasonable treatments and finding plaintiff's calculations amounted to his opinion of how those calculations could have or should have been made). In that regard, Plaintiffs' failure to plead that any Defendant believed that Funko held a material amount of obsolete inventory when the relevant disclosures were made further underscores the inadequacy of their actual knowledge of falsity allegations. Simply put, the allegations in the SAC do not establish that Defendants had actual knowledge that the warned-of risks had materialized, or that Funko's inventory risk disclosures were materially false.

Further, Plaintiffs do not and cannot reconcile their position on actual knowledge of falsity with their concession that Funko was not required to record a write-down any earlier than the Company did. *See generally* Opp. If Funko held a material amount of obsolete inventory as early as August and senior management actually knew that, it follows that an inventory write-down would be required at that time. But Plaintiffs do not dispute that Funko's write-down was timely taken and disclosed, *see id.*, which further undercuts their failed attempt to plead actual knowledge of falsity.[9]

The Ninth Circuit's recent decision in *Alphabet*, 2021 WL 2448223, provides no support for Plaintiffs' position on actual knowledge of falsity. The challenged disclosures in *Alphabet* were not forward-looking statements, as the disclosures here

---

[9] *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980 (N.D. Cal. 2020) does not support Plaintiffs' position that the amount of accumulated inventory to date itself constituted a materialization of the risk. There, the court, citing *Williams v. Globus Medical Inc.*, 869 F.3d 235 (3d Cir. 2017), explained that where a risk factor warned that a distributor ceasing to do business with the company could impact the company's sales, "[t]he risk at issue thus only materialized *if* sales were adversely affected at the time the risk disclosures were made." *Facebook, Inc.*, 477 F. Supp. 3d at 1018 (emphasis in original). And *Facebook* does not even assess actual knowledge of falsity.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

concededly are.  Accordingly, the court did not analyze whether the PSLRA safe harbor applied, and in any event, the plaintiffs in *Alphabet* alleged with particularity that the defendants were aware of a massive data privacy breach and "intentionally did not disclose" it after senior management carefully analyzed, in writing, the risks and benefits of such disclosure.  *Alphabet*, 2021 WL 2448223 at \*13.  No such allegations are present here.

## B.   PLAINTIFFS' SCIENTER ARGUMENTS FAIL

The Opposition offers substantially the same scienter arguments that the Court previously rejected, *Funko*, 2021 WL 880400, at \*28-30, and Plaintiffs once again have failed to present allegations that give rise to a "cogent and compelling inference" of scienter, *Eckert v. PayPal Holdings, Inc.*, 2020 WL 7399009, at \*1 (9th Cir. Dec. 17, 2020); *Funko*, 2021 WL 880400, at \*26-30.

### 1.   The SAC Does Not Allege Deliberate Recklessness

Plaintiffs argue that the allegations in the SAC support an inference that Mariotti and Jung "knew that it was impossible to meet the Company's FY 2019 guidance," Opp. 21, and that "Nickel, Jung and Perlmutter were aware of the Company's inventory issues since at least July 2019," *id.* at 19.  But Plaintiffs' actual allegations (which they take great pains to embellish in the Opposition) fall well short of pleading that Defendants knew their sales projections and inventory risk disclosures were materially false or that Defendants acted with deliberate recklessness in that regard.

#### a.   The SAC Fails To Establish Deliberate Recklessness With Respect To The Guidance Statements

As to the October 31 sales projections, Plaintiffs rely on three supposedly new allegations from CW1: (i) Mariotti allegedly withdrew his request for more units of a "particular product" after CW1 told him doing so would not increase sales; (ii) Jung and others who attended weekly sales meetings understood that a shortfall existed, and some attendees agreed that sales of "new" products would not be enough

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

to close the alleged gap; and (iii) CW1 told Jung in September 2019 that Funko could not fix the shortfall.  Opp. 21 (citing SAC ¶¶ 109, 110, 112).  These arguments, which stray far from what the SAC actually alleges, do not support a strong inference of scienter.

*First*, Plaintiffs do not (and cannot) plead any connection between Mariotti's decision not to place orders of "certain products (usually exclusive items)" and the material truth or falsity of Funko's forward-looking sales projections.  SAC ¶ 112.  For example, Plaintiffs do not allege that additional sales of the products Mariotti inquired about were built into Funko's October 31 sales projections, let alone whether the existence or absence of sales of those products would have a material impact on Funko's performance relative to the sales projections.  *Id.*  Moreover, by Plaintiffs' own vague allegation, some if not most of the alleged discussions between Mariotti and CW1 regarding "particular products" occurred in the third quarter of 2019, when Funko's sales admittedly exceeded expectations.  *Id.* (alleging discussions with Mariotti "between July and October 2019").

*Second*, Plaintiffs' allegation that Jung agreed that a sales shortfall existed at a point in time falls well short of supporting an inference that Jung thought Funko's full year 2019 sales projections were impossible to achieve.  SAC ¶ 109.  Plaintiffs tellingly do not allege that any shortfall was material at the time that Jung reaffirmed Funko's sales projections on October 31.  They instead artfully plead that some who attended the weekly sales meetings "concluded that the new products Funko was offering for the fourth quarter would not deliver the revenue that the Company was projecting."  *Id.*  That allegation is facially deficient for multiple reasons:  Plaintiffs do not say (i) when, relative to October 31, certain Funko employees formed this view; (ii) whether any projected shortfall related specifically to "new" products was material; or (iii) that Jung or anyone else in senior management believed the shortfall could not be closed, through the sales of Funko's evergreen products, additional advertising and promotion or through other means available to Funko and its sales

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS'  REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

staff. *Id.* Furthermore, Plaintiffs do not allege that it was unusual for Funko to experience intra-period shortfalls during its nine-quarter streak of greater than 20% sales growth, which is a topic CW1 does not and cannot speak to because he was brand new to the Company.

*Third*, Plaintiffs' vague assertion that Jung "always agreed with *the analysis*," Opp. 21; SAC ¶ 110, similarly fails to plead scienter. Plaintiffs stop short of explaining what "analysis" Jung agreed with, and they come nowhere close to alleging that Jung, who possessed no alleged motive to mislead investors, believed there was a material sales shortfall that was impossible to fix, at the same time that she reaffirmed Funko's sales projections on October 31. At bottom, the SAC presents fundamentally the same allegations and theory the Court already rejected: that "CW1 allegedly raised 'red flags' with several Defendants and other members of Funko's management," but that they did not share his "gloomy view." *Funko*, 2021 WL 880400 at *28; *see also* Section I, *supra*.[10]

Unable to muster particularized allegations demonstrating fraudulent intent, Plaintiffs offer the sweeping assertion that "first-hand knowledge, regular reports or regular meetings provide a strong inference of scienter." Opp. 22. That is incorrect. As Plaintiffs' authorities make clear, such allegations are sufficient only where the first-hand knowledge or information the defendants acquired through internal documents or meetings contradicted their challenged statements. *Okla. Police*

---

[10] Plaintiffs rely on the non-controlling, summary judgment decision in *Weiss v. Mentor Graphics Corp.*, 1999 WL 985141, at *16-19 (D. Or. Oct. 6, 1999), to support their argument that mere access to undisclosed facts undermining the accuracy of statements is sufficient to establish actual knowledge. Opp. 19. But *Weiss* held that "actual knowledge" can arise where there is evidence that defendants knew facts that seriously undermined their predictions or knew there was no reasonable basis for their predictions. Plaintiffs have made no such showing here. *See, e.g.*, Section II.A.1.b, *supra*. Plaintiffs' reliance on *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1022 (S.D. Cal. 2005) fares no better. There, Plaintiffs alleged that Defendants repeatedly made public representations based on "incomplete" and "statistically flawed" studies. 375 F. Supp. 2d. at 1020. No similar facts are alleged here, where Defendants' belief in their sales projections was supported by nine straight quarters of growth and expectations of strong sales tied to two highly anticipated holiday-season movies from blockbuster franchises.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

CASE NO. 2:20-cv-02319-VAP-PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

*Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 483, 484 (9th Cir. 2019) (allegations of scienter sufficient where defendants "repeatedly touted the 'real-time' nature of its identity theft alerts" but knew that "stale" alerts "were a widespread problem affecting one of LifeLock's most important business lines") (internal quotation marked in original); *Roberts v. Zuora, Inc.*, 2020 WL 2042244, at *11 (N.D. Cal. Apr. 28, 2020) (finding that "complaint . . . alleges with particularity that defendants were in possession of contemporaneous, contradictory information" including that defendants knew that a key project "had failed"); *Robb v. Fitbit Inc.*, 2017 WL 219673, at *5 (N.D. Cal. Jan. 19, 2017) ("CW1 personally generated the reports *documenting failures with the devices* and presented the reports to [the] COO").[11]

That critical link is missing from the SAC; Plaintiffs do not identify knowledge or internal data—to which the Defendants had access—that *actually contradicted* the challenged statements, let alone to a degree that demonstrates "deliberate recklessness." *See Funko*, 2021 WL 880400, at *25; *See In re Apple Comput., Inc., Sec. Litig.*, 243 F. Supp. 2d 1012, 1027-28 (N.D. Cal. 2002) (access to contradictory information was insufficient to show scienter where plaintiffs could not show that speaker knew his statement to be false at the time he made it). Therefore, Plaintiffs' reliance on case law involving "first-hand knowledge, regular reports, or meetings" is entirely misplaced. Opp. 22-23. As such, Plaintiffs have

---

[11] Plaintiffs' citation to *Quality Systems* is inapt as there, the CWs at issue were officer or Board-level defendants. *In re Quality Sys. Inc. Sec. Litig.*, 865 F.3d 1130, 1138-39, 1144 (9th Cir. 2017). And in *In re Coinstar Inc. Securities Litigation,* 2011 WL 4712206, at *9 (W.D. Wash. Oct. 6, 2011), the company internally re-forecasted projections *downwards*—an allegation that not even CW1 has advanced. *See* Opp. 22, n.19. The remainder of Plaintiffs' authorities on this point—which the Court has already considered—are unavailing because, unlike here, those cases contained detailed allegations of internal documents that directly contradicted the defendants' public statements or conveyed knowledge of undisclosed risks, or internal projections that differed from those disclosed to investors. *Id.* 22 (citing *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230-32 (9th Cir. 2004) and *In re Intuitive Surgical Sec. Litig.*, 2014 WL 7146215, at *3-4 (N.D. Cal. Dec. 15, 2014)).

done nothing in the SAC to alter the Court's conclusion that "CW1's allegations seem more reasonably interpreted as his disagreement with Funko's management about their sales projections for FY2019, especially for the fourth quarter of 2019, based on CW1"s own reading and interpretation of Funko's sales data." *Id.*; *see also In re Downey Sec. Litig.*, 2009 WL 2767670, at \*11 (C.D. Cal. Aug. 21, 2009) ("[T]he second-guessing of management decisions by confidential witnesses does not provide a basis for securities fraud.") (citation omitted).

### b.    The SAC Fails To Establish Deliberate Recklessness With Respect To The Inventory Risk Disclosures

As to Funko's inventory risk factor disclosures, Plaintiffs point to allegations that (i) Jung and Perlmutter received Aged Inventory Reports that quantified the amount of Funko's inventory that was more than 90 days old and led to discussions (at some point) about potential write-offs, Opp. 20 (citing SAC ¶ 80-81); (ii) CW1 created an "Open to Buy" tool that Jung and Perlmutter reviewed during weekly sales meetings, *id.*; (iii) Jung and Perlmutter were told in August 2019 that Funko leased a warehouse to store products marked for destruction, *id.* (citing SAC ¶ 79); and (iv) attendees of the weekly sales meetings agreed that Funko "had obsolete inventory that could not be sold," *id.* (citing SAC ¶ 83).  As an initial matter, the inventory allegations upon which Plaintiffs rely relate primarily to Jung and Perlmutter, and Perlmutter is not alleged to have made *any* false statements—about inventory or anything else.  In any event, Plaintiffs' inventory allegations are devoid of the particularized content needed to satisfy the scienter requirement.

The mere fact that Jung and Perlmutter received inventory reports and discussed older inventory and the potential for write-offs does not demonstrate fraudulent intent with respect to Funko's inventory risk factor disclosures.  *See In re Int'l. Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at \*14-15 (9th Cir. 2008) ("[M]ere access to data is insufficient to support a securities claim under the PSLRA." (quoting *In re Apple Comput., Inc., Sec. Litig.*, 243 F. Supp. 2d at 1023).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

16    CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

And furthermore, the SAC does not allege that Jung or Perlmutter was aware of or agreed that Funko had a material amount of obsolete inventory when the inventory risk disclosures were published. Plaintiffs' already weak scienter theory is also undermined by the fact that they do not challenge Funko's accounting and financial reporting regarding its inventory, or the timing of Funko's inventory write-down. The "Open to Buy" and Puyallup warehouse allegations fail for similar reasons. *See* SAC ¶¶ 81, 128, 134, 137, 162. Indeed, the mere use of a tool to track inventory says nothing of whether Funko's inventory disclosures were fraudulent. And putting aside the dubious assertion that Funko would lease a warehouse to store inventory that it had already decided to destroy (instead of just destroying it), there is again no allegation (i) that the amount of inventory was material as of the period in question, (ii) that Jung or Perlmutter or any other executive agreed that inventory allegedly earmarked for the Puyallup warehouse would be destroyed, or (iii) that Funko actually *did* destroy it. SAC ¶ 79.

Furthermore, Funko's frequent disclosures to investors that its inventory levels had been steadily increasing undermines an inference of scienter. *See*, *e.g.*, *Graham v. Barringer*, 699 F. Supp. 2d 612, 632 (S.D.N.Y. 2009) ("Such disclosures of risk are inconsistent with a state of mind going toward" scienter); *Holbrook v. Trivago N.V.*, 2019 WL 948809, at *21 (S.D.N.Y. Feb. 26, 2019). Funko routinely disclosed its inventory balance before and throughout the Class Period. Mot. 4-5. Plaintiffs do not dispute the accuracy of these disclosures, relying instead on their decision not to include them in the SAC. Opp. 8-9 (arguing that disclosures were "outside the four corners of the complaint"). Although Plaintiffs argue that Funko should have disclosed the exact ratio of old versus new inventory that Funko had accumulated, they cite to no legal authority in support of this proposition. Opp. 8. And, as the Court noted, Russell Nickel's statement to analysts that Funko had increased its reserves "for slower-moving inventory" drew investors' attention to "the very excess or obsolete inventory Plaintiffs contend Funko tried to hide from

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES

17

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

investors." *Funko*, 2021 WL 880400, at *13 ("If anything, it appears Nickel's statement *highlighted Funko's problem* of maintaining a high volume of inventory[.]").

Lastly, the SAC does not remotely approach the allegations that the Ninth Circuit deemed sufficient to establish a strong inference of scienter in *Alphabet*, 2021 WL 2448223, at *12-14. In that case, the plaintiff alleged that a deliberate plan existed, approved by senior management, to conceal a data breach to avoid negative publicity and the risk that one of the defendants would be forced to testify before Congress about the breach. *Id.* at *10. Here, Plaintiffs have alleged only that CW1 believed that Funko could not meet its forecasts, that he informed some in management of his belief, and that the Company chose not to revise their sales guidance downward due to CW1's pessimism. This simple disagreement between management and a new, mid-level employee is a far cry from the allegations in *Alphabet*.

### 2. None Of The Remaining CWs Support A Strong Inference Of Scienter

As to the remaining CWs, Plaintiffs' Opposition adds nothing that would change the Court's conclusions that their lack of "personal knowledge of the levels of Funko's inventory at the time of the alleged false or misleading statements" (CW2, CW6), *Funko*, 2021 WL 880400 at *27, or "direct contact with any of the Defendants" (CW3, CW4, and CW5), *id.*, were insufficient to support a finding of scienter. *See also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996-999 ("These generalized claims about corporate knowledge are not sufficient to create a strong inference of scienter, since they fail to establish that the witness reporting them has reliable personal knowledge of the defendants' mental state."). The only new argument in Plaintiffs' Opposition is their unsupported assertion that the CWs' "credibility is enhanced" because their allegations "corroborate each other," Opp. 25. But corroboration does not substitute for the knowledge required to make the

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

18

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

CWs' allegations credible—knowledge that they are not alleged to have. *See Limantour v. Cray*, 432 F. Supp. 2d 1129, 1144 (W.D. Wash. 2006) (finding that although CWs' allegations corroborated each other, they did not establish defendants' awareness of facts at issue).

### 3.    The Class Period Stock Sales And Alleged Acceleration Of The Registration Statement's Effective Date Do Not Establish Scienter

Plaintiffs' argument that the inference of scienter is "strengthened" by the Class Period stock sales by two of the seven Individual Defendants and an alleged acceleration of the effective date of the registration statement for Funko's secondary offering fails on multiple grounds.[12]

*First*, the Court has already held that Plaintiffs' allegations of Class Period stock sales by Mariotti did not support a strong inference of scienter—including his participation in the Offering—because the allegations did not suggest that the sales were suspicious or unusual. *Funko*, 2021 WL 880400, at *29-30; *see also Zucco*, 552 F.3d at 1005; *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1092 (9th Cir. 2002) ("Insider stock sales are not inherently suspicious."). There is nothing in the SAC to disturb that holding; to the contrary, Plaintiffs repeat nearly verbatim the Marioitti stock sale allegations from their prior pleading. *Compare* CAC ¶¶112, 164-65 *with* SAC ¶¶ 124, 164-65. Nonetheless, Plaintiffs resort to mathematical gymnastics in the ACON Opposition, arguing that Mariotti sold "over 5800%" of the Class A shares he owned prior to the Class Period, because most of his sales involved the conversion of vested options and similar equity instruments. ACON Opp. 6. But it remains an undisputed fact that Mariotti's Class Period sales of Funko stock reduced "*his stake in the Company*" by only 1.4%. *Id.* at 6. This "minimal[]"

---

[12] Plaintiffs curiously addressed the Individual Defendants' stock sales in their Opposition to the ACON Defendants' Motion to Dismiss the Second Amended Complaint ("ACON Opp."), presumably to evade their page limit. Opp. 23. The Funko Defendants respond to those arguments here.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES

19    CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

reduction of Mariotti's equity ownership does not come close to establishing an inference of scienter, let alone a strong one. *Funko*, 2021 WL 880400, at *29.

Similarly, Plaintiffs' recycling of their allegations regarding the shares Mariotti sold outside of the Offering runs headlong into the Court's holding that those sales were "somewhat consistent" with his pre-Class Period stock sales, *Funko*, 2021 WL 880400 at *29, and Plaintiffs' own concession that those sales "were consistent with pre-Class Period behavior," ACON Opp. 7, n.5.  *Compare* CAC ¶ 164 *with* SAC ¶ 164 (repeating allegations verbatim).[13]  Lastly, as the Court already held, the gross proceeds that Mariotti received from his Class Period sales of Funko stock "are not determinative" where, as is the case with the SAC, there is a paucity of allegations on the remaining *Zucco Partners, LLC* factors. *Funko*, 2021 WL 880400, at *30.

*Second*, as to Perlmutter, Plaintiffs again neglect to offer any allegations regarding the amount and percentage of shares he sold or his trading history.  SAC ¶ 211 (alleging Perlmutter sold 56,250 shares at $20.61 per share on October 1, 2019).  Accordingly, their passing, footnote argument that Perlmutter's stock sales were suspicious, ACON Opp. 8, n.7, fails for the very same reasons the Court previously articulated. *Funko*, 2021 WL 880400, at *30.

*Third*, as before, the conspicuous absence of any allegations of sales by the remaining five Individual Defendants "weighs heavily against an inference of scienter." *Funko*, 2021 WL 880400, at *30; *Alaska Elec. Pension Fund v. Adecco S.A.*, 434 F. Supp. 2d 815, 834 (S.D. Cal. 2006) *aff'd*, 256 F. App'x 74 (9th Cir. 2007) (finding "significant" the "absence of any allegations that the other Defendants engaged in insider sales during the Class Period").  This is even more so the case with the SAC, given that the two Individual Defendants with Class Period

_____

[13] Plaintiffs claim that "it is unclear when Defendant Mariotti established his trading plan," ACON Opp. 7 n.5, as if it were not their burden to plead scienter.  Regardless, Plaintiffs' concession that the trades were consistent with his pre-Class Period trading renders this point immaterial. *Id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

20

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

stock sales (Mariotti and Perlmutter) are not alleged to have made any materially misleading statements, and Jung, who is the only Individual Defendant alleged to have made a materially misleading statement, had no Class Period sales.

*Fourth*, Plaintiffs point to only one set of "new" allegations in the SAC: that the *timing* of Funko's request that the SEC declare the registration statement effective for purposes of its secondary offering is suspicious because it (1) occurred after an increase in Funko's stock price; and (2) was made "shortly after" Funko allegedly learned in August that its fourth quarter sales were trailing guidance, and that the Company had allegedly built up enough obsolete inventory that it required new warehouses. ACON Opp. 5-6. The inference Plaintiffs seek to draw is flatly contradicted by the fact that the shelf registration statement had been on file for five months by the time Funko chose to move forward with the secondary offering. ¶ 119. But regardless, other than the word "accelerate," this is not a new allegation—the Court was already aware that Mariotti participated in a secondary offering in September 2019, "several months before Funko's corrective disclosures and accompanying drop in stock price," *Funko*, 2021 WL 880400 at *29, and found that the secondary offering was not suspicious or sufficient give rise to a strong inference of scienter. The Court's conclusion is reinforced by the fact that many Funko insiders who could have sold shares in the secondary offering are not alleged to have done so. Mot. at 20 n.9; ¶¶ 119, 122.

### 4. Viewing The Allegations Holistically, The Most Compelling Inference Is Non-Fraudulent

A complaint will survive "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draft from the facts alleged." *Curry v. Yelp Inc.*, 875 F. 3d 1219, 1226 (9th Cir. 2017); *Miller v. PCM, Inc.*, 2018 WL 5099722, at *5 (C.D. Cal. Jan 3, 2018). The most—and indeed only—compelling inference here is the non-fraudulent one. Plaintiffs do not even dispute in the Opposition that their theory of fraud is even less

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

21

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS

coherent than it was in the CAC.  The story of the SAC is that Funko made a routine risk disclosure in August 2019; two of the seven Individual Defendants sold small portions of their Funko stock at various points after that disclosure; Funko and Jung reaffirmed the Company's net sales projections at the end of October 2019, and Funko again published its inventory risk disclosure; no Defendant sold any stock after the October statements; Funko's fourth quarter performance fell short of expectations, and Funko promptly disclosed that disappointing news and announced its decision to take a write-down to inventory; and no Defendant made any stock sales in the run-up to those disclosures.  Simply put, that is not securities fraud, and Plaintiffs' attempt to manufacture a fraud claim from the subjective viewpoints of CW1 falls well short of clearing the high bar set by the PSLRA.  The case should be dismissed.

### III.    CONCLUSION

For these reasons, the Second Amended Complaint should be dismissed with prejudice.

Dated:  July 2, 2021

Respectfully submitted,

**LATHAM & WATKINS LLP**

By:  /s/ Kevin M. McDonough
Kevin M. McDonough

*Attorneys for the Funko Defendants*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

22

CASE NO. 2:20−cv−02319−VAP−PJW
FUNKO DEFENDANTS'  REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS