1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**POMERANTZ LLP**
Jennifer Pafiti (SBN 292790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Co-Lead Counsel for Lead
Plaintiffs*

(*Additional counsel on signature page*)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO FERREIRA, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>FUNKO, INC., et al.,<br><br>    Defendants. | Case No. 2:20-cv-02319-VAP-(MAAx)<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL TO PROVIDE NOTICE TO THE CLASS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br><u>Hearing</u><br>Date: July 11, 2022<br>Time: 2:00 PM<br>Courtroom: 8A<br>Judge: Hon. Virginia A. Phillips |

Case No. 2:20-cv-02319-VAP-MAAx
Lead Plaintiffs' Notice of Motion and Unopposed Motion
for Preliminary Approval of Settlement, Preliminary
Certification of Settlement Class, and Approval
to Provide Notice to Settlement Class

## NOTICE OF UNOPPOSED MOTION

PLEASE TAKE NOTICE that on July 11, 2022 at 2:00 p.m., in Courtroom 8A in the above-entitled court, located at the 350 West 1st Street, 6th Floor, Los Angeles, California 90012, Lead Plaintiffs Abdul Baker, Zhibin Zhang, and Huaiyu Zheng, on behalf of themselves and all others similarly situated, will move for an order, pursuant to Rule 23 of the Federal Rules of Civil Procedure: (i) preliminarily approving the proposed Settlement set forth in the Stipulation and Agreement of Settlement dated June 3, 2022; (ii) preliminarily certifying the proposed Settlement Class; (iii) holding that the manner and forms of notice satisfy due process and provide the best notice practicable under the circumstances, and ordering that Notice be provided to the Settlement Class; (iv) appointing Strategic Claims Services as Claims Administrator; (v) setting a date for the Settlement Fairness Hearing at least 100 days after the Court grants the relief sought in this motion at which the Court will consider (a) final approval of the Settlement and entry of the proposed Final Judgment Approving Class Action Settlement; (b) the Plan of Allocation of settlement proceeds; and (c) Lead Counsel's application for an award of attorneys' fees and Litigation Expenses and awards of costs to Lead Plaintiffs relating to their representation of the Class; and (vi) granting such other and further relief as may be required.

**Compliance with Local Rule 7-3.** Defendants do not oppose this motion.

Dated: June 3, 2022

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Michael J. Wernke*
Jeremy A. Lieberman (*pro hac vice*)
Michael J. Wernke (*pro hac vice*)

600 Third Ave., 20th Fl.
New York, NY 10016
Tel: (212) 661-1100
jalieberman@pomlaw.com
mjwernke@pomlaw.com
**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Tel: (310) 405-7190
Email: jpafiti@pomlaw.com

*Co-Lead Counsel for Lead Plaintiffs*

**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein
(*pro hac vice* forthcoming)
Stephanie Beige (*pro hac vice*)
10 East 40th Street
New York, NY 10016
Tel: (212) 779-1414
bernstein@bernlieb.com
beige@bernlieb.com

*Co-Lead Counsel for Lead Plaintiffs*

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Tel: (212) 697-6484
peretz@bgandg.com

*Additional Counsel for Lead Plaintiffs*

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................... 1

II.   Factual and Procedural Background ........................................................ 3

    A.  Procedural History ............................................................................. 3

    B.  Negotiation and the Terms of the Proposed Settlement ...................... 5

III.  ARGUMENT ........................................................................................... 6

    A.  Standards For Preliminary Approval of the Settlement......................... 6

    B.  The Proposed Settlement Warrants Preliminary Approval because it is Fair, Reasonable, and Adequate ......................................................... 8

        1.  Lead Plaintiffs and Lead Counsel Have Adequately Represented the Class ............................................................................................ 8

        2.  The Settlement Was Negotiated at Arm's Length ......................... 9

        3.  The Settlement is an Excellent Result for the Class...................... 9

            (a)  The Settlement is Well-Within the Range of Reasonableness ............. 10

            (b)  The Costs, Risks, and Delay of Continued Litigation ........................... 12

            (c)  Effective Process for Distributing Relief ............................................. 14

            (d)  The Anticipated Fees and Expenses are Reasonable ........................... 16

            (e)  Disclosure and Other Agreements........................................................ 16

        4.  Class Members are Treated Equitably Relative to One Another ................. 16

    C.  Certification of the Settlement Class for Settlement Purposes is Appropriate.... 17

        1.  The Settlement Class Meets the Requirements of Rule 23(a)....................... 17

            (a)  Rule 23(a): Numerosity is Satisfied .................................................... 17

            (b)  Rule 23(a)(2): Questions of Law or Fact Are Common....................... 18

            (c)  Rule 23(a)(3): Lead Plaintiffs' Claims Are Typical............................. 18

            (d)  Rule 23(a)(4): Lead Plaintiffs and Lead Counsel Are Adequate .......... 19

i

Case No. 2:20-cv-02319-VAP-MAAx
LEAD PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT, PRELIMINARY
CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL
TO PROVIDE NOTICE TO SETTLEMENT CLASS

2. The Settlement Class Meets the Predominance and Superiority Requirements of Rule 23(b)(3) .......................................................20

   (a) Common Legal and Factual Questions Predominate ...........................20

   (b) Class Action is Superior to Other Methods of Adjudication ...............21

3. The Court Should Appoint Lead Counsel as Counsel for the Settlement Class.......................................................................................................21

D. Notice Program Satisfies Rule 23, Due Process, and the PSLRA Requirements ...................................................................................................22

E. Proposed Settlement Schedule.........................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972) ....................................................................21

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ....................................................................17

*Basic v. Levinson*,
485 U.S. 224 (1988) ....................................................................21

*Brown v. China Integrated Energy Inc.*,
2015 WL 12720322 (C.D. Cal. Feb. 17, 2015) ..........................18

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ...............................7

*Chupa v. Armstrong Flooring, Inc.*,
No. 2:19-CV-09840-CAS (MRWx) (C.D. Cal. Feb. 22, 2021) ...............................15, 23

*Churchill Vill., L.L.C. v. Gen Elec.*,
361 F.3d 566 (9th Cir. 2004) ....................................................7, 8

*Ciuffitelli v. Deloitte & Touche LLP*,
2019 WL 1441634 (D. Or. Mar. 19, 2019) .................................17

*Dachev v. Funko, Inc.*,
No. 2:20-cv-00544 (W.D. Wash.) .................................................3

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ....................................................................23

*Elliott v. Rolling Frito-Lay Sales, LP*,
2014 WL 2761316 (C.D. Cal. June 12, 2014) ...............................6

Case No. 2:20-cv-02319-VAP-MAAx
Lead Plaintiffs' Notice of Motion and Unopposed Motion
for Preliminary Approval of Settlement, Preliminary
Certification of Settlement Class, and Approval
to Provide Notice to Settlement Class

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011) ..................................................................................20

*Garcia v. Harkins Admin. Servs., Inc.*,
   2021 WL 2792321 (C.D. Cal. Jan. 4, 2021)...............................................8

*Graham v. Capital One Bank (USA), N.A.*,
   2014 WL 12579809 (C.D. Cal. July 29, 2014) ..........................................23

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)............................................................17, 18

*Harris v. Vector Mktg. Corp.*,
   2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .............................................7

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom.*
   *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ..............................8, 10

*Hill v. Canidae Corp.*,
   2021 WL 4988032 (C.D. Cal. Apr. 2, 2021) ...............................................9

*In re Alphabet, Inc. Sec. Litig.*,
   1 F.4th 687 (9th Cir. 2021), *cert denied sub nom.*
   *Alphabet Inc. v. Rhode Island*,
   142 S. Ct. 1227 (2022) ................................................................................4

*In re Banc of Cal Sec. Litig.*,
   326 F.R.D. 640 (C.D. Cal. 2018) .......................................................17, 18

*In re Banc of California Sec. Litig.*,
   2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) ..........................................9, 24

*In re Biolase, Inc. Sec. Litig.*,
   2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) .........................................10

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
   2016 WL 4474366 (N.D. Cal. Aug. 25, 2016), *amended in part*
   2016 WL 6091521 (N.D. Cal. Oct. 19, 2016)...........................................16

iv

*In re Comput. Memories Sec. Litig.*,
111 F.R.D. 675 (N.D. Cal. 1986) ................................................................. 18

*In re Cooper Cos. Inc. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) .................................................................. 20

*In re Goldman Sachs Grp. Sec. Litig.*,
21-3105 (2d. Cir. Mar. 9, 2022) ................................................................... 14

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................................... 6

*In re LDK Solar Sec. Litig.*,
255 F.R.D. 519 (N.D. Cal. 2009) .................................................................. 20

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ........................................................................ 19

*In re MGM Mirage Sec. Litig.*,
708 F. App'x 894 (9th Cir. 2017) ................................................................. 23

*In re MicroStrategy, Inc. Sec. Litig.*,
115 F. Supp. 2d 620 (E.D. Va. 2000) ........................................................... 11

*In re NetSol Techs., Inc. Sec. Litig.*,
2016 WL 7496724 (C.D. Cal. July 1, 2016) ................................................. 18

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................ 10

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 1991529 (N.D. Cal. June 30, 2007) ................................................ 9

*In re Regulus Therapeutics Inc. Sec. Litig.*,
2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ............................................... 24

*In re Silver Wheaton Corp. Sec. Litig.*,
No. 2:15-cv-05146-CAS(PJWx) (C.D. Cal. Mar. 9, 2020) ........................... 15

*In re Snap Inc. Sec. Litig.*,
   2021 WL 667590 (C.D. Cal. Feb. 18, 2021) ................................................................10

*In re Syncor ERISA Litig.*,
   227 F.R.D. 338 (C.D. Cal. 2005) ................................................................................19

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012).......................................................................................22

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998)......................................................................................6

*Lo v. Oxnard European Motors, LLC*,
   2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) ............................................................14

*McCurley v. Royal Seas Cruises, Inc.*,
   2019 WL 3817970 (S.D. Cal. Aug. 14, 2019) ............................................................23

*McPhail v. First Command Fin. Planning, Inc.*,
   247 F.R.D. 598 (S.D. Cal. 2007)................................................................................21

*McPhail v. First Command Fin. Planning, Inc.*,
   2009 WL 839841 (S.D. Cal. Mar. 30, 2009)..............................................................10

*Milbeck v. TrueCar, Inc.*,
   2019 WL 2353010 (C.D. Cal. May 24, 2019) ............................................................17

*Nahas v. Funko*,
   No. 2:20-cv-03130 (C.D. Cal.).....................................................................................3

*Newby v. Enron Corp.*,
   188 F. Supp. 2d 684 (S.D. Tex. 2002) ......................................................................11

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,
   730 F.3d 1111 (9th Cir. 2013).....................................................................................12

*Pederson v. Airport Terminal Servs.*,
   2018 WL 2138457 (C.D. Cal. Apr. 5, 2018)................................................................7

*Rodriguez v. W. Publ'g Corp.*,
563 F3d 948 (9th Cir. 2009) ..................................................................22

*Schechter v. Smith*,
2011 WL 13174954 (C.D. Cal. Dec. 6, 2011) .........................................12

*Schleicher v. Wendt*,
618 F.3d 679 (7th Cir. 2010) ..................................................................20

*Todd v. STAAR Surgical Co.*,
2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ............................................9

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) ....................................................................6

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ................................................................16

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ..................................................................4

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ..................................................................13

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(v) ..................................................................20

15 U.S.C. § 78u-4(a)(7)(A)-(F) ................................................................24

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................*passim*

Fed. R. Civ. P. 23(a)(1) ..........................................................................17

Fed. R. Civ. P. 23(a)(2) ..........................................................................18

Fed. R. Civ. P. 23(a)(3) ....................................................................18, 19

Fed. R. Civ. P. 23(a)(4) ..........................................................................19

Fed. R. Civ. P. 23(b)(3) ................................................................17, 20, 21

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................22, 24

Fed. R. Civ. P. 23(e) ......................................................................*passim*

Fed. R. Civ. P. 23(e)(1) ...........................................................................6

Fed. R. Civ. P. 23(e)(1)(A) ......................................................................6

Fed. R. Civ. P. 23(e)(1)(B) ......................................................................7

Fed. R. Civ. P. 23(e)(2) .......................................................................6, 7

Fed. R. Civ. P. 23(e)(2)(A) ......................................................................8

Fed. R. Civ. P. 23(e)(2)(B) ......................................................................9

Fed. R. Civ. P. 23(e)(2)(C) ......................................................................9

Fed. R. Civ. P. 23(e)(2)(D) ....................................................................17

Fed. R. Civ. P. 23(e)(3) ............................................................................7

Fed. R. Civ. P. 23(g) ..........................................................................20, 22

Fed. R. Civ. P. 23(g)(1)(A) ....................................................................22

**Other Authorities**

Laarni T. Bulan and Laura E. Simmons,
   *Securities Class Action Settlements – 2021 Review and Analysis*,
   Cornerstone Research ................................................................10, 12

Lead Plaintiffs Abdul Baker, Zhibin Zhang, and Huaiyu Zheng (collectively, "Lead Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully submit this memorandum in support of their unopposed motion seeking: (i) preliminary approval of the proposed Settlement[1]; (ii) certification of the proposed Settlement Class; (iii) approval of the form and manner of giving notice of the proposed Settlement to the Settlement Class Members; and (iv) the scheduling of a Settlement Fairness Hearing.

## I.   PRELIMINARY STATEMENT

Lead Plaintiffs and Lead Counsel are pleased to report that, after nearly two years of hard-fought litigation, they have negotiated an agreement with Defendants Funko, Inc. ("Funko" or the "Company"), Brian Mariotti, Jennifer Fall Jung, Andrew Perlmutter, Ken Brotman, Gino Dellomo, Adam Kriger (the "Settling Defendants") to settle this class action in full in exchange for a payment of $7 million in cash for the benefit of the Settlement Class, subject to the Court's approval.[2]

Lead Plaintiffs respectfully submit that the proposed Settlement is an excellent resolution of this Action. By the time the Settlement was reached, Lead Plaintiffs and Lead Counsel were well informed of the strengths and weaknesses of the claims and Defendants' defenses. Prior to reaching the Settlement, Lead Counsel: (i) conducted a comprehensive investigation into the allegedly wrongful acts; (ii) consulted with a damages experts; (iii) drafted the First Consolidated Amended Class Action Complaint ("FAC") based on the investigation; (iv) opposed Defendants' motions to dismiss the FAC; (v) drafted the Consolidated Second Amended Complaint Class Action Complaint ("SAC"); (vi) successfully opposed Defendants' motions to dismiss the SAC, in part; (vii)

---

[1] All capitalized terms not otherwise defined herein have the same meaning as those in the Stipulation and Agreement of Settlement, dated June 3, 2022 (the "Stipulation"), filed herewith as Exhibit 1 to the Declaration of Stephanie M. Beige; ("Beige Decl."). All exhibits referenced herein are attached to the Beige Declaration.

[2] The Settlement resolves all claims asserted against the Settling Defendants and the ACON Defendants (referred to collectively as "Defendants").

served and responded to various demands for the production of documents and interrogatories and engaged in a meet and confer with respect to discovery requests; (viii) engaged in a mediation and negotiations regarding the terms of the proposed Settlement; and (ix) reviewed hundreds of pages of confirmatory discovery produced by Funko in furtherance of settlement negotiations.

Entry of the proposed Preliminary Approval Order (attached as Exhibit A to the Stipulation and as Exhibit 2 to the Beige Decl.) will begin the process of considering final approval by, among other things: (i) preliminarily approving the Settlement as fair, reasonable and adequate to the Settlement Class, pending a Settlement Fairness Hearing; (ii) authorizing notice of the Settlement be given to the Settlement Class in the form and method set forth herein; (iii) establishing procedures and deadlines for Settlement Class Members to exclude themselves from the Settlement, submit Claim Forms for payments from the Net Settlement Fund, and object to the Settlement, Plan of Allocation, and/or requested fees and expenses; and (iv) scheduling a Settlement Fairness Hearing to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation, and Lead Counsel's requested attorneys' fees and Litigation Expenses.

The Settlement is the result of vigorous arm's-length negotiations by experienced counsel overseen by a well-respected mediator, represents a favorable recovery for the Settlement Class, and is very likely to meet all approval factors required by Fed. R. Civ. P. 23(e). Accordingly, Lead Plaintiffs respectfully submit that the proposed Settlement warrants preliminary approval and ultimately should be approved by the Court.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Procedural History

Beginning on March 10, 2020, three similar actions were filed asserting violations of the federal securities laws against Defendants on behalf of investors who are now the Settlement Class: (1) the above-captioned action (the "*Ferreira* Action"); (2) *Nahas v. Funko, Inc.*, No. 2:20-cv-03130 (C.D. Cal.) (the "*Nahas* Action"); and (3) *Dachev v. Funko, Inc.*, No. 2:20-cv-00544 (W.D. Wash.) (the "*Dachev* Action"). Pursuant to the procedures of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), by Order dated June 11, 2020, the Court consolidated the *Nahas* Action and the *Ferreira* Action and appointed Abdul Baker, Zhibin Zhang, and Huaiyu Zheng as Lead Plaintiffs and Bernstein Liebhard LLP and Pomerantz LLP as Co-Lead Counsel.[3]

On July 31, 2020, Lead Plaintiffs filed the FAC, alleging violations of Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder, against Defendants on behalf of all persons and entities that purchased or otherwise acquired Funko securities between August 8, 2019 and March 5, 2020 (the "Class Period"). The FAC alleged, among other things, that Funko's earnings and sales guidance for the fiscal year 2019 and its inventory risk warnings issued during the Class Period were false and misleading. Lead Plaintiffs also alleged that Mariotti, Perlmutter, and three directors who had been designated by ACON sold Funko stock while in possession of material, nonpublic information in violation of Section 20A. *See* FAC ¶¶ 199-212.

On October 2, 2020, the Funko Defendants and the ACON Defendants filed separate motions to dismiss the FAC. On December 1, 2020, Lead Plaintiffs filed an omnibus memorandum in opposition to the motions to dismiss. On December 30, 2020, the Funko Defendants and the ACON Defendants filed separate reply briefs in support of

---

[3] The *Dachev* Action was voluntarily dismissed on June 24, 2020.

their respective motions to dismiss. On January 26, 2021, the Court directed the parties to submit supplemental briefing addressing the impact of the Ninth Circuit's decision, *Wochos v. Tesla, Inc*., 985 F.3d 1180 (9th Cir. 2021), on Defendants' pending motions to dismiss. On January 29, 2021, the parties filed their supplemental briefing. On February 25, 2021, the Court granted Defendants' motions to dismiss in full and granted Lead Plaintiffs leave to amend.

On March 29, 2021, Lead Plaintiffs filed the operative, SAC. Specifically, the SAC pleaded additional facts supporting Lead Plaintiffs' allegations that Defendants misrepresented (i) Funko's financial condition during the Class Period by issuing false and misleading statements related to the Company's projected net sales guidance for 2019; and (ii) the state of Funko's inventory condition in the Company's risk disclosures. On May 7, 2021, Defendants filed two motions to dismiss the SAC. On June 11, 2021, Lead Plaintiffs filed oppositions to both motions. On June 16, 2021, the Court issued an Order directing Defendants to address the impact of *In re Alphabet, Inc. Sec. Litig*., 1 F.4th 687 (9th Cir. 2021), *cert. denied sub nom. Alphabet Inc. v. Rhode Island*, 142 S. Ct. 1227 (2022) ("*Alphabet*") on the pending motions to dismiss in their respective reply briefs. The Court also granted Lead Plaintiffs leave to file a sur-reply addressing *Alphabet*. On July 2, 2021, Defendants filed two reply memoranda in support of their respective motions to dismiss the SAC. On July 16, 2021, Lead Plaintiffs filed a sur-reply.

On October 22, 2021, after hearing oral argument, the Court granted in part and denied in part the motions to dismiss the SAC (the "October 22 Order"). (ECF No. 165). The claims in this Action were significantly narrowed by the October 22 Order. Specifically, the Court dismissed with prejudice Lead Plaintiffs' Section 10(b) claims based on statements related to Funko's projected net sales guidance as protected by the safe harbor provision of the PSLRA. The Court denied the motion to dismiss with respect to Funko's inventory risk disclosures issued on October 31, 2019 but granted the motion with respect to the same warnings issued on August 8, 2019 for failure to plead scienter.

The Court denied Defendant Mariotti's motion to dismiss Plaintiffs' Section 20A claim based on his sales of Funko shares in Funko's Secondary Offering but dismissed Lead Plaintiffs' 20A claims against Defendant Perlmutter and the ACON Defendants for lack of a predicate violation. The Court also denied Defendants' motions to dismiss Lead Plaintiffs' Section 20(a) control person claims against Defendants Mariotti, Jung, Brotman, Dellomo, Kriger, and the ACON Defendants. Thus, as a result of the October 22 Order, Lead Plaintiffs' remaining 10(b) and 20(a) claims are based entirely on one statement: Funko's October 31, 2019 inventory risk disclosure[4] and their 20A claim remains only as to Defendant Mariotti.

Thereafter, between December 2021 and March 2022, the parties engaged in preliminary discovery. Specifically, the parties served and responded to various demands for the production of documents and interrogatories and began the meet and confer process with respect to Lead Plaintiffs' Objections and Responses to Requests for Production of Documents and Interrogatories. On January 6, 2022, the parties filed their Joint Rule 26(f) Report. On January 11, 2022, the parties served their Rule 26(a)(1) Initial Disclosures. On February 15, 2022 and March 4, 2022, the parties filed a Stipulated Protective Order, and entered into a Stipulated Discovery Order Governing the Production of Documents and Discovery of Electronically Stored Information, respectively.

### B.   Negotiation and the Terms of the Proposed Settlement

In late 2021, Lead Plaintiffs and the Settling Defendants engaged Michelle Yoshida, of Phillips ADR, a well-respected and highly experienced mediator, to assist in a potential resolution of the claims. The Parties agreed that holding a mediation session prior to briefing class certification could be beneficial to all parties. The Parties exchanged mediation statements and on April 27, 2022, a full day mediation session was held before

---

[4] This effectively narrows the 10(b) and 20(a) class period to October 31, 2019 through March 5, 2020.

Ms. Yoshida, during which a settlement in principle was reached to resolve the Action. A Memorandum of Understanding was executed on April 29, 2022.

The parties subsequently negotiated the terms of the Stipulation, which sets forth the final terms and conditions of the Settlement, including, among other things, a release of all claims asserted against Defendants in the Action, and related claims ("Released Claims"), in return for a cash payment by the Settling Defendants of $7,000,000 (the "Settlement Amount") for the benefit of the Settlement Class.

## III.   ARGUMENT

### A.   Standards For Preliminary Approval of the Settlement

The Ninth Circuit has a strong judicial policy favoring the settlement of class actions. *See, e.g., Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) ("There is an overriding public interest in settling and quieting litigation, and this is particularly true in class action suits.") (quoting *Van Bronkorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Settlements of complex cases greatly contribute to the efficient utilization of scarce judicial resources. *See Elliott v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316, at *3 (C.D. Cal. June 12, 2014) ("judicial policy favors settlement in class actions … where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation").

A class action settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Preliminary approval is merely the prerequisite for disseminating notice to class members so that they may decide whether to approve or reject the settlement. *See* Fed. R. Civ. P. 23(e)(1)(A).

The approval of a class action settlement involves a well-established, two-step process. *First*, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the members

of the class. *See* Fed. R. Civ. P. 23(e)(1). *Second*, following distribution of the notice and after a hearing, the Court determines whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2); *see also Cheng Jiangchen v. Rentech, Inc*., 2019 WL 5173771, at *3 (C.D. Cal. Oct. 10, 2019). The Federal Rules of Civil Procedure instruct that a court should grant preliminary approval to authorize notice of a settlement upon a finding that it "will likely be able" to finally approve the settlement under Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(1)(B). This standard codifies prior case law providing that courts should grant preliminary approval after considering whether the settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Pederson v. Airport Terminal Servs.*, 2018 WL 2138457, at *7 (C.D. Cal. Apr. 5, 2018) (quoting *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011).

In determining final approval of the Settlement, Rule 23(e)(2) sets forth the following factors for the Court to consider:

> (A) have the class representatives and class counsel adequately represented the class; (B) was the proposal negotiated at arm's length; (C) is the relief provided for the class adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) does the proposal treat class members equitable relative to each other.

Fed. R. Civ. P. 23(e)(2). The Court also considers the factors identified by the Ninth Circuit, many of which overlap with the Rule 23(e)(2) factors. *See Churchill Vill., L.L.C.*

*v. Gen Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Garcia v. Harkins Admin. Servs., Inc*., 2021 WL 2792321, at *1-2 (C.D. Cal. Jan. 4, 2021).[5]

### B.      The Proposed Settlement Warrants Preliminary Approval because it is Fair, Reasonable, and Adequate

#### 1.      Lead Plaintiffs and Lead Counsel Have Adequately Represented the Class

Lead Plaintiffs and Lead Counsel have adequately represented the interests of the Class. Fed. R. Civ. P. 23(e)(2)(A). Lead Plaintiffs and Lead Counsel have vigorously pursued this litigation for over two years, including by: (1) completing an extensive pre-suit and ongoing investigation of the claims at issue, including interviews of several former Funko employees; (2) preparing and filing the FAC; (3) opposing Defendants' motions to dismiss the FAC; (4) preparing and drafting the SAC, which resurrected the case after it had been dismissed in its entirety; (5) successfully opposing, in part, Defendants' motions to dismiss the SAC; (6) serving and responding to discovery requests; and (7) preparing for and engaging in an all-day mediation, ultimately culminating in the Settlement for the benefit of the Class. As a result of these efforts, Lead Plaintiffs and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the claims when the Settlement was reached. *See Hefler v. Wells Fargo & Co*., 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) (finding, in finally approving settlement, that "Class Counsel had vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation"), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

Moreover, the Settlement Class benefited from knowledgeable counsel well-versed in shareholder class action litigation and securities fraud cases. Bernstein Liebhard LLP

---

[5] These factors are "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Vill*, 361 F.3d at 575.

and Pomerantz LLP are among the most experienced and skilled firms in the securities litigation field and have long and successful track records in such cases. *See* Exhibits 3-4 to the Beige Decl. (firm resumes).

### 2.     The Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Courts have long recognized that there is a presumption that a settlement is fair and reasonable when it is the "product of arms-length negotiations." *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007). Here, the parties engaged a highly respected mediator, Michelle Yoshida, and a settlement was only reached after she presented, and the parties accepted, a mediator's recommendation of $7 million. The use of an experienced mediator is an "important factor" supporting a finding that the negotiations were arm's-length. *See In re Banc of California Sec. Litig.*, 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019); *Hill v. Canidae Corp.*, 2021 WL 4988032, at *8 (C.D. Cal. Apr. 2, 2021) ("The use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive."); *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) (approving settlement that was "the outcome of an arms-length negotiation conducted with the help of experienced mediator Michelle Yoshida of Phillips ADR").

### 3.     The Settlement is an Excellent Result for the Class

When evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must consider whether "the relief provided for the class is adequate, taking into account … the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). Here, Rule 23(e)(2)(C) and the Ninth Circuit's factors concerning the "strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation"; and "the amount offered in settlement," are satisfied because the $7,000,000 cash recovery provides a significant and an immediate benefit to

the Class, especially in light of the costs, risks, and delay posed by continued litigation. *Hefler*, 2018 WL 6619983, at *3.

### (a)   The Settlement is Well-Within the Range of Reasonableness

The $7 million Settlement Amount provides a favorable recovery as a proportion of estimated damages for this Action. The Settlement recovers approximately 8.7% of the approximately $80 million in maximum estimated aggregate damages.[6] This percentage is well above the median settlement amount as reported by Cornerstone Research, which tracks and aggregates court-approved securities class action settlements. According to Cornerstone Research, the median settlement in recent comparable 10(b) cases is approximately 5% of damages for cases settled after a ruling on a motion to dismiss and before filing of class certification. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2021 Review and Analysis*, Cornerstone Research (the "Cornerstone Report") at 14, attached as Exhibit 5 to the Beige Decl. Indeed, courts in the Ninth Circuit have approved settlements that recovered smaller percentages of maximum damages than here.[7]

The Settlement when viewed as a percentage of maximum damages is likely even more favorable to the Settlement Class because Lead Plaintiffs' $80 million estimate would be subject to formidable challenges at trial. Proving loss causation and damages

---

[6] Lead Plaintiffs' $80 million damages estimate includes approximately $11 million in damages relating to Lead Plaintiffs' 20A claim and approximately $69 million relating to Lead Plaintiffs' 10(b) claims.

[7] *See, e.g., McPhail v. First Command Fin. Planning, Inc.*, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a 7% recovery of estimated damages was fair and adequate); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (settlement yielding 6% of potential damages was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *In re Snap Sec. Litig.*, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) (approving settlement representing "approximately 7.8% of the class's maximum potential aggregate damages, which is similar to the percent recovered in other court-approved securities settlements"); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (approving securities class action settlement representing "8% of the maximum recoverable damages").

posed serious risks to recovery for the Settlement Class. For example, Defendants would likely have contended that Lead Plaintiffs could not establish a causal connection between the alleged misrepresentation relating to Funko's inventory write-down and any loss allegedly suffered by investors. Indeed, Defendants likely would have argued that damages are zero because the stock price decline as a result of Funko's February 5, 2020 disclosures was not caused by Funko's announcement that it was taking a write-down of inventory, but instead was caused by the Company's announcement that it had missed its fourth quarter 2019 and 2019 fiscal year earnings guidance by over 25%. Lead Plaintiffs' damages expert calculated $80 million in maximum aggregate damages by assuming *100%* of the stock price decline was attributable to Funko's announcement of the write down. At the very least, Defendants would argue that Lead Plaintiffs would be required to "distinguish the impact" of the fraud (*i.e.*, damages relating to Funko's inventory write-down) and that of "non-fraud related news and events" (*e.g.*, damages relating to Funko's missed 4Q2019 and FY2019 projections), an argument which – if accepted by the Court – would reduce Lead Plaintiffs' damages estimate significantly. For example, if a jury were to attribute 50% of the stock price decline to Funko's inventory write down, estimated Class-wide damages would be reduced from approximately $80 million to approximately $46 million.[8]

Defendants would have also challenged Lead Plaintiffs' calculation of 20A damages, as there are differing calculations available, each having been accepted by different district courts. *See, e.g.*, *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 664–65 (E.D. Va. 2000) (measure of Section 20A damages is limited to "the difference between the price the insider realizes and the market price of the securities after the news is released"); *Newby v. Enron Corp.,* 188 F. Supp. 2d 684, 700-01 (S.D. Tex.

---

[8] Under this scenario, the $7 million Settlement represents more than 15% of the estimated recoverable damages.

2002) ("A number of cases also affirm the enforcement of section 10(b) liability through disgorgement…"). While Lead Plaintiffs would have argued in favor of a "disgorgement" of profits calculation, amounting to approximately $11 million in damages, Defendants likely would have argued that 20A damages are limited to the aggregate loss Defendant Mariotti avoided by selling prior to a corrective disclosure. Because Mariotti's sales occurred in September 2019—more than a month before the alleged misstatement—Defendants would likely argue that Mariotti did not avoid any losses because he was not able to take advantage of any artificial price inflation.

In short, if any, or all, of these defenses were accepted, the maximum damages would be substantially lower or even zero. *See Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1123 (9th Cir. 2013) (citation omitted*); see also Schechter v. Smith*, 2011 WL 13174954, at *24 (C.D. Cal. Dec. 6, 2011) (finding that "[o]ther contributing forces to an investment's decline in value would play a role in determining damages").

Accordingly, the proposed $7 million Settlement represents an excellent recovery when viewed as a percentage of maximum recoverable damages (8.75% compared to the median recovery of 5.3%) and when compared to the median settlement amounts of similar securities class action settlements reached after a ruling on a motion to dismiss but before the filing of a motion for class certification ($4.8 million). *See* Cornerstone Report (Exhibit 5 to the Beige Decl. at 14).

### (b)    The Costs, Risks, and Delay of Continued Litigation

The Settlement is also reasonable because it provides the Settlement Class with a prompt and substantial tangible recovery, without the considerable risk, expense, and delay of litigating to completion. Although Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants are meritorious, they recognize that continued litigation posed real risks that substantially less or no recovery at all might be achieved.

Indeed, the Court had already dismissed the case in its entirety, and only after Lead Plaintiffs' continued investigation, amended pleading, briefing, and supplemental submissions related to the SAC, did the Court sustain a narrow portion of the case. While Lead Plaintiffs are confident they would have prevailed at trial, success is never assured.

For example, in addition to the risks Lead Plaintiffs face with respect to establishing loss causation and damages, Defendants also strongly contest falsity and scienter. With respect to falsity, Lead Plaintiffs allege that Funko misleadingly portrayed that the risks associated with the accumulation of excess inventory as merely hypothetical ("[i]f demand or future sales do not reach forecasted levels, we *could* have excess inventory that we *may* need to hold for a long period of time, write down, sell at prices lower than expected or discard") when those risks had already transpired. On summary judgment and at trial, Defendants would likely argue (as they did in their motions to dismiss) that (i) investors were not misled by the risk warnings because Defendants accurately disclosed Funko's inventory balances and changes to that balance during the Class Period; and (ii) the question of whether Funko had accumulated excess inventory that should have been written down earlier is a matter of subjective accounting judgment, not fraud.

With respect to scienter, Defendants would continue to argue that because Lead Plaintiffs' claims are based on an omission theory they must prove that the omission was either made with the intention to deceive investors or was "highly unreasonable . . . involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care . . . ." *Zucco Partners, LLC v. Digimarc Corp*., 552 F.3d 981, 991 (9th Cir. 2009). Specifically, Defendants would likely argue on summary judgment and at trial that Lead Plaintiffs could not establish Defendants' intent to defraud investors through the risk warnings, especially when considered in context with Defendants' inventory disclosures during the Class Period.

Lead Plaintiffs also faced risks in connection with their upcoming motion for class certification. The class certification stage in securities class actions is notoriously

protracted, frequently involving years of additional litigation and requiring substantial resources and this Action would be no different. *See, e.g., In re Goldman Sachs Grp. Sec. Litig.*, 21-3105 (2d. Cir. Mar. 9, 2022) (Dkt. 102) (Class originally certified in 2015 and "after a prolonged interlocutory appeals saga that has prompted three decisions from the Second Circuit, one from the Supreme Court, and untold pages of cumulative briefing," the Second Circuit again granted Defendants' motion for interlocutory appeal after district court certified a class for the third time). Thus, in addition to the usual uncertainties and risks, discovery in this Action would have been lengthy, trial would inevitably be long and complex, and even a favorable verdict would undoubtedly spur a lengthy post-trial and appellate process. While Lead Plaintiffs believe they have the better of the arguments, there are no guarantees. And, if Defendants were to prevail on any one of their arguments, the amount of recoverable damages would potentially be reduced to zero. Even if Lead Plaintiffs overcame each of these significant risks and prevailed at trial, such a victory would not guarantee the Settlement Class a recovery larger than the $7 million Settlement. *See Lo v. Oxnard European Motors, LLC*, 2011 WL 6300050, at *5 (S.D. Cal. Dec. 15, 2011) (granting preliminary approval and stating that "[c]onsidering the potential risks and expenses . . . the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation, the Court finds that, on balance, the proposed settlement is fair, reasonable, and adequate.").

In sum, the Parties disagreed on numerous complex issues of fact and law. While Lead Plaintiffs and Lead Counsel believe that this case has merit, it is nevertheless true that Defendants had non-frivolous defenses. In the context of these risks, Lead Plaintiffs and Lead Counsel believe that $7,000,000 is an excellent result of the Settlement Class.

### (c)     Effective Process for Distributing Relief

The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing

claims and efficiently distributing the Net Settlement Fund. The Claims Administrator selected by Lead Counsel (subject to Court approval), Strategic Claims Services, is an experienced claims administrator that will process claims under the guidance of Lead Counsel. Potential class members will submit the Claim Form through the Settlement website or by hardcopy, if necessary. Based upon the trading information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate and calculate their respective "Recognized Claim" based on the Court-approved Plan of Allocation. Lead Plaintiffs' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest rejection and cure deficiencies. Any claim disputes that cannot be resolved will be presented to the Court for determination. This claims process is similar to that typically used in securities class action settlements. *See, e.g., Chupa v. Armstrong Flooring, Inc.*, No. 2:19-CV-09840-CAS (MRWx) (C.D. Cal. Feb. 22, 2021) (Dkt. 99); *In re Silver Wheaton Corp. Sec. Litig.*, No. 2:15-cv-05146-CAS (PJWx) (C.D. Cal. Mar. 9, 2020) (Dkt. 487).

After the Settlement reaches its Effective Date (*see* Stipulation ¶ 34) and all applicable deadlines have passed, Authorized Claimants will be issued checks. After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, the Claims Administrator shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion. Once it is no longer feasible or economical to make further distributions, any balance that still remains in the Net Settlement Fund after re-distribution(s) and after payment of outstanding Notice and Administration Expenses,

Taxes, and attorneys' fees and expenses, if any, shall be contributed to the Legal Aid Foundation of Los Angeles or any not-for-profit successor of it. *See* Stipulation ¶ 32.

### (d)    The Anticipated Fees and Expenses are Reasonable

As set forth in the Notice, Lead Counsel intends to request attorneys' fees of no more than 25% of the Settlement Fund and litigation expenses of no more than $275,000 which will include an application for reimbursement for Lead Plaintiffs pursuant to the PSLRA of up to $18,000 each. A fee request of 25% is the "benchmark" within the Ninth Circuit and is consistent with approved securities class action settlements. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir. 2002). The basis of Lead Counsel's fee and expense request will be detailed in the upcoming motion requesting fees and expenses.

### (e)    Disclosure and Other Agreements

The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased a specific number of shares of Funko common stock request exclusion (or "opt out") from the Settlement. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See, e.g., In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (noting that "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack the settlement in his or her own self-interest"), *amended in part* 2016 WL 6091521 (N.D. Cal. Oct. 19, 2016).

### 4.    Class Members are Treated Equitably Relative to One Another

The Plan of Allocation, drafted with the assistance of Lead Plaintiffs' damages expert, is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible claimants and treats all Settlement Class Members equitably as required by Rule 23(e)(2)(D). Each Authorized Claimant, including Lead Plaintiffs, will receive a distribution pursuant to the Plan, and Lead Plaintiffs will be subject to the

same formula for distribution of the Settlement as other Settlement Class Members. *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *18 (D. Or. Mar. 19, 2019) (finding "[t]he Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the class" where "the proposed Plan of Allocation compensates all Class Members and Class Representatives equally in that they will receive a pro rata distribution based [sic] of the Settlement Fund based on their net losses").

## C. Certification of the Settlement Class for Settlement Purposes is Appropriate

As part of the Settlement, Lead Plaintiffs respectfully request that the Court preliminarily certify the proposed Settlement Class as defined in ¶ 1 (rr) of the Stipulation. The Ninth Circuit has long recognized that courts may certify class actions "for settlement purposes only." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1018- 19 (9th Cir. 1998). A settlement class, like other certified classes, must satisfy the requirements of Rules 23(a) and (b), although Rule 23(b)(3)'s manageability concerns are not at issue. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997). Here, the Court "will likely be able to" certify the Settlement Class at final approval because the proposed Settlement Class satisfies the requirements of Rule 23(a) and Rule 23(b)(3).

### 1. The Settlement Class Meets the Requirements of Rule 23(a)

#### (a) Rule 23(a): Numerosity is Satisfied

Numerosity is satisfied here. The "numerosity" requirement is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is presumed "when a proposed class has at least forty members," *In re Banc of Cal Sec. Litig.*, 326 F.R.D. 640, 646 (C.D. Cal. 2018), and for "securities fraud suits involving nationally traded stocks." *Milbeck v. TrueCar, Inc.*, 2019 WL 2353010, at *1 (C.D. Cal. May 24, 2019). Here, throughout the Class Period, Funko common stock traded actively on the New York Stock Exchange ("NYSE"). These shares were purchased by thousands of investors, making joinder impracticable. *See In re NetSol Techs., Inc. Sec.*

*Litig.*, 2016 WL 7496724, at *3 (C.D. Cal. July 1, 2016) ("Courts in the Central District have inferred that classes in securities cases include more than forty members based on trade volume.").

### (b)  Rule 23(a)(2): Questions of Law or Fact Are Common

Commonality is satisfied here. Commonality is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) is "construed permissively" and "[a]ll questions of fact and law need not be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Banc of Cal*., 326 F.R.D. at 646. Plaintiffs in securities fraud litigation generally satisfy this prerequisite "very easily." *Brown v. China Integrated Energy Inc.*, 2015 WL 12720322, at *14 (C.D. Cal. Feb. 17, 2015). Here, there are numerous common questions of law and fact, including: (i) whether Defendants omitted or misrepresented material facts; (ii) whether Defendants acted with scienter; (iii) whether the price of Funko's common stock was artificially inflated or maintained during the Class Period; and (iv) whether Defendants' misrepresentations and omissions caused class members to suffer economic losses.

### (c)  Rule 23(a)(3): Lead Plaintiffs' Claims Are Typical

Typicality is satisfied here. Rule 23(a)(3) requires that the claims of the class representative be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). Typicality is established where the claims of the proposed class representatives arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based on the same legal theory. *See In re Comput. Memories Sec. Litig.*, 111 F.R.D. 675, 680 (N.D. Cal. 1986). Rule 23(a)(3) does not require plaintiffs to show that their claims are identical on every issue to those of the class, but merely that significant common questions exist. *See In re Syncor ERISA Litig*., 227 F.R.D. 338, 344 (C.D. Cal. 2005). Here, Lead Plaintiffs' claims are typical of those of the Settlement Class. Like

other Settlement Class Members, Lead Plaintiffs purchased publicly traded Funko common stock during the Class Period and have suffered damages based on the alleged misrepresentations and omissions that Defendants made to the investing public, making Lead Plaintiffs' 10(b) claims typical of the 10(b) claims of the class. Additionally, two of the Lead Plaintiffs (Abdul Baker and Huaiyu Zheng) purchased Funko common stock contemporaneously with Defendant Mariotti, making Lead Plaintiffs' 20A claims typical of the 20A claims of the Settlement Class. Thus, Lead Plaintiffs' claims are typical.

### (d) Rule 23(a)(4): Lead Plaintiffs and Lead Counsel Are Adequate

Adequacy is satisfied here. Rule 23(a)(4) is established if "the representative Parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). Here, there is no antagonism or conflict of interest between Lead Plaintiffs or Lead Counsel, and the Settlement Class. Lead Plaintiffs and Settlement Class Members purchased Funko common stock during the Class Period and were injured by the same alleged false statements and omissions. Thus, Lead Plaintiffs and the Settlement Class's interests are aligned as they share the common objective of maximizing their recovery from Defendants. Additionally, Lead Plaintiffs and Lead Counsel will continue to prosecute this action vigorously on behalf of the Settlement Class. Lead Counsel has extensive experience in complex securities litigation, is well qualified and able to conduct the Action, and have effectively represented Lead Plaintiffs and the proposed Settlement Class throughout the Action.[9] Accordingly, the adequacy requirement is met.

---

[9] Accordingly, Lead Counsel satisfies the requirements of Rule 23(g) and has already been approved by the Court to represent the class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). *See* ECF No. 58 at 18 ("[Lead Plaintiffs'] selection of experienced counsel also suggests it will adequately represent the class.").

### 2.    The Settlement Class Meets the Predominance and Superiority Requirements of Rule 23(b)(3)

Predominance is satisfied here. Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods of adjudication. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

### (a)    Common Legal and Factual Questions Predominate

Common questions of law and fact predominate here. These questions predominate over individual questions because Defendants' alleged misconduct affected all Settlement Class Members in the same manner. *See, e.g., In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 632 (C.D. Cal. 2009) ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages."). Indeed, issues relating to Defendants' liability are common to all Settlement Class Members. *See id.* Additionally, falsity, materiality, scienter, and loss causation are issues that "affect investors alike," and whose proof "can be made on a class-wide basis" because they "affect[] investors in common." *Schleicher v. Wendt*, 618 F.3d 679, 685-7 (7th Cir. 2010). Likewise, here, the alleged misstatements and omissions affected all Settlement Class Members alike and proof of falsity, materiality, and causation will "be made on a class-wide basis." *Id.*

Moreover, class-wide reliance is established in this Action either through the application of *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 151 (1972), because the claims are predicated upon omissions of material fact which there was a duty to disclose, or alternatively based on the "fraud-on-the-market" presumption of reliance in *Basic v. Levinson*, 485 U.S. 224, 241-42 (1988). Applying either presumption dispenses with the requirement that each Settlement Class Member prove individual reliance on the alleged misstatements or omissions. *See id.* Here, where Funko common stock was traded on the NYSE, a national securities exchange, and was followed by numerous securities

analysts and traded at regular substantial volumes, there is sufficient evidence of market efficiency. As a result, common questions of law and fact predominate.

**(b)     Class Action is Superior to Other Methods of Adjudication**

Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method if litigation: "(A) the class members' interests in individually controlling the prosecution … of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by … class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P 23(b)(3). Here, there is no evidence that putative class members' desire to bring separate individual actions, and the Parties are unaware of any individual securities fraud litigation involving the same issues. Further, resolution of this case through a class action is far superior to litigating (and settling) thousands of individual cases where the expense for a single investor would likely exceed its losses. *See McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 615 (S.D. Cal. 2007) ("class action is the superior method for fair and efficient adjudication" because individual suits would "'clog [ ] the federal courts with innumerable individual suits litigating the same issues repeatedly'"). As such, the predominance requirement is satisfied.

**3.     The Court Should Appoint Lead Counsel as Counsel for the Settlement Class**

A court that certifies a class must also appoint class counsel pursuant to Fed. R. Civ. P. 23(g). Rule 23(g) directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigations, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Here, Lead Counsel has done considerable work identifying and investigating potential claims in this matter, as evidenced by the First and Second Amended Complaints. Lead Counsel has also devoted substantial time, effort, and resources to the prosecution of this Action, as evidenced by two rounds of dispositive motion briefing, each with supplemental submissions. For these reasons, among others, Lead Plaintiffs respectfully requests that the Court appoint Lead Counsel to serve as Class Counsel.

### D. Notice Program Satisfies Rule 23, Due Process, and the PSLRA Requirements

Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Notice of a class action settlement must be directed "in a reasonable manner to all class members who would be bound by the" proposed settlement. The settlement notice "must 'generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (*citing Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). Here, the proposed Notice program satisfies these standards.

Lead Counsel proposes to provide Settlement Class Members notice by (i) mailing a copy of the Postcard Notice to all potential Settlement Class Members who can reasonably be identified and located using information provided by Funko's transfer agent, as well as information provided by third party banks, brokers, and other nominees about their customers who may have eligible purchases; (ii) publication of the Summary Notice in *Investor's Business Daily*; (iii) dissemination of the Summary Notice on the internet using PR Newswire; and (iv) posting the Internet Notice on both the Settlement website www.strategicclaims.net/Funko/ and Lead Counsel's websites. Sending the Postcard Notice by first-class mail, combined with the publication of the Summary Notice in a major publication and posting the Internet Notice on the Claims Administrator's website is typical of the notice provided in other class actions and satisfies the

requirements of Rule 23 and due process. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 896 (9th Cir. 2017); *Chupa v. Armstrong Flooring, Inc.*, No. 2:19-CV-09840-CAS (MRWx), slip op. at 5 (C.D. Cal. Feb. 22, 2021) (Dkt. 99); *Graham v. Capital One Bank (USA), N.A.*, 2014 WL 12579809, at *8 (C.D. Cal. July 29, 2014) (approving postcard notice*); McCurley v. Royal Seas Cruises, Inc.*, 2019 WL 3817970, at *4 (S.D. Cal. Aug. 14, 2019) (same).

In addition to the proposed methods of providing notice, the form and substance of the notice program are also sufficient. The proposed forms of notice describe the terms of the Settlement; the considerations that caused Lead Plaintiffs and Lead Counsel to conclude that the Settlement is fair, adequate, and reasonable; the maximum attorneys' fees and litigation expenses that may be sought; the procedure for requesting exclusion from the Settlement Class, objecting and submitting claims; the proposed Plan of Allocation; and the date and place of the Settlement Fairness Hearing.

The Internet Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the amount of damages that would be recoverable even if Lead Plaintiffs prevailed on each of their claims; (iii) that Lead Counsel intends to make an application for an award of attorneys' fees and expenses (including the amount of such fees and expenses determined on an average per share basis); (iv) the name, telephone number, and address of a representative of Lead Counsel who will be available to answer questions; (v) the reasons why the Parties are proposing the Settlement; and (vi) other information as may be required by the Court. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).[10]

---

[10] Lead Plaintiffs also request that the Court appoint Strategic Claims Services as the Claims Administrator to provide all notices approved by the Court to the Settlement Class Members, to process Claims Forms, and to administer the Settlement.

Thus, the proposed Notice provides the information required under the PSLRA. Indeed, courts have found that substantially similar notices constitute the "best notice practicable under the circumstances," satisfying the requirements of Rule 23(c)(2)(B); *see also In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *4 (S.D. Cal. Oct. 30, 2020) (approving similar notice plan); *Banc of Cal.*, 2019 WL 6605884, at *3 (same).

Lead Counsel has carefully drafted the notice provision of the Settlement to provide the best notice practicable to the Settlement Class. Accordingly, Lead Counsel respectfully submits that the Internet Notice, Postcard Notice, Summary Notice, and Claim Form (Exhibits 1 - 4 to the proposed Preliminary Approval Order), are adequate.

### E.    Proposed Settlement Schedule

The Proposed Preliminary Approval Order sets a schedule for issuing notice, submitting claims, objecting to the Settlement, and opting out of the Settlement. Lead Plaintiffs propose the following schedule for disseminating notice, final approval hearing, and related dates:

| Event | Proposed Timing |
| --- | --- |
| Mailing of the Postcard Notice to Settlement Class Members (Preliminary Approval Order, ¶ 7(b) and (c)) and the posting of Internet Notice and Proof of Claim Form on a website dedicated to the Settlement | Within 20 business days after entry of the order preliminarily approving the Settlement (the "Notice Date") |
| Summary Notice published (Preliminary Approval Order, ¶ 7(d)) | Within 10 business days after the Notice Date |
| Settlement Fairness Hearing (Preliminary Approval Order, ¶ 5) | To be determined by the Court, a date not less than 100 calendar days from the entry of the order preliminarily approving the Settlement |
| Deadline to request exclusion from the Settlement Class (Preliminary Approval Order, ¶ 14) | 15 business days prior to the Settlement Fairness Hearing |
| Deadline to submit Claim Forms (Preliminary Approval Order, ¶ 11) | 90 calendar days after the Notice Date |

| | |
|---|---|
| Deadline for Lead Plaintiffs to file papers in support of final approval and application of Lead Counsel for attorneys' fees, reimbursement of expenses, and an award to Lead Plaintiffs, and application for approval of the Plan of Allocation (Preliminary Approval Order, ¶ 28) | 35 calendar days prior to Settlement Fairness Hearing |
| Deadline for Objections to the Settlement, Plan of Allocation, Attorneys' Fees and Lead Plaintiffs' Award (Preliminary Approval Order, ¶ 17) | 21 calendar days prior to the Settlement Fairness Hearing |
| Deadline for Lead Plaintiffs to file reply papers in support of final approval and application of Lead Counsel for attorneys' fees, reimbursement of expenses, and an award to Lead Plaintiffs, and application for approval of the Plan of Allocation (Preliminary Approval Order, ¶ 28) | 7 calendar days prior to the Settlement Fairness Hearing |

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court issue an order substantially in the form of the proposed Preliminary Approval Order: (i) preliminarily approving the Settlement; (ii) holding that the manner and forms of notice satisfy due process and provide the best notice practicable under the circumstances, and ordering that the Notice be provided to the Settlement Class; (iii) setting a date for the Settlement Fairness Hearing; (iv) appointing Strategic Claims Services as Claims Administrator; (v) preliminarily certifying the Settlement Class and appointing Lead Counsel as Class Counsel; (vi) granting such other and further relief as may be required.


Dated: June 3, 2022                              Respectfully submitted,

                                                 **POMERANTZ LLP**
                                                 _/s/ Michael J. Wernke_
                                                 Michael J. Wernke (pro hac vice)
                                                 Jeremy A. Lieberman (pro hac vice)
                                                 600 Third Ave., 20th Fl.
                                                 New York, NY 10016

Tel: (212) 661-1100
Email: mjwernke@pomlaw.com
Email: jalieberman@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

*Co-Lead Counsel for Lead Plaintiffs*

**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein (pro hac forthcoming)
Stephanie M. Beige (pro hac vice)
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Email: bernstein@bernlieb.com
Email: beige@bernlieb.com

*Co-Lead Counsel for Lead Plaintiffs*

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York, 10165
Telephone: (212) 697-6486
Email: peretz@bgandg.com
*Additional Counsel for Lead Plaintiffs*