United States District Court
Central District of California

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Gilberto Ferreira,
Plaintiffs,
v.
Funko, Inc. et al.,
Defendants.

Case No. 2:20-cv-02319-VAP-(MAAx)

**Order GRANTING Motion for Preliminary Approval of Class Action Settlement (Doc. No. 185)**

Plaintiffs Abdul Baker, Zhibin Zhang, and Huaiyu Zheng ("Plaintiffs") filed a Motion for Preliminary Approval of Class Action Settlement ("Motion") on June 3, 2022. (Doc. No. 185.) Defendants Funko, Inc. et al. ("Defendants") filed no opposition. Having considered the papers filed in support of the Motion, the Court deems this matter appropriate for resolution without oral argument of counsel pursuant to Local Rule 7-15 and **GRANTS** the Motion.

## I. BACKGROUND

### A. Facts and Procedural History

Plaintiff Gilberto Ferreira filed a Class Action Complaint against Defendants on March 10, 2020. (Doc. No. 1.) Plaintiffs Mohamed Nahas ("Nahas") and Blahovest Y. Dachev ("Dachev") filed similar actions against Defendants. *See Nahas v. Funko, Inc.*, No. 2-20-cv-03130 (C.D. Cal.) (the "*Nahas* Action"); *Dachev v. Funko, Inc.*, No. 2-20-cv-00544 (W.D. Wash.)

(the "*Dachev* Action"). On June 11, 2020, the Court consolidated the *Ferreira* Action and the *Nahas* Action. (Doc. No. 58.) Plaintiff Dachev voluntarily dismissed the *Dachev* Action on June 24, 2020. (Motion at 3 n.3.) The Court appointed Abdul Baker, Zhibin Zhang, and Huaiyu Zheng as Lead Plaintiffs in this action. (*Id.* at 3.)

Plaintiffs filed a First Consolidated Amended Complaint on July 31, 2020, (Doc. No. 74), and a Second Consolidated Amended Complaint ("SAC") on March 29, 2021. (Doc. No. 142.) The SAC alleges that between August 8, 2019, and March 5, 2020 (the "Class Period"), Defendants issued false and misleading statements and omitted material adverse information about Funko Inc.'s ("Funko") excess inventory and projected earnings for the 2019 fiscal year. (SAC ¶¶ 3, 7, 170.) According to Plaintiffs, Defendants knew Funko would not achieve its projections, but they publicly made misleading statements and omissions to the contrary. (*Id.* ¶ 7.) Additionally, Plaintiffs allege that Defendants misrepresented the state of Funko's excess inventory to investors. (*Id.* ¶ 6.) Defendants' misleading statements and omissions artificially inflated Funko's stock price during the Class Period, and Defendants sold shares of Funko stock for personal benefit. (*Id.* ¶¶ 8, 171.) When Funko's 2019 earnings and the state of its excess inventory were publicly disclosed on February 5, 2020, Funko's stock price fell by 40 percent. (*Id.* ¶¶ 9-10.) According to Plaintiffs, the drop in Funko's stock price caused Funko investors, including Plaintiffs and Class members, to lose hundreds of millions of dollars. (*Id.* ¶ 16.) Plaintiffs allege these actions violated Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder. (*Id.* ¶¶ 185-213.)

United States District Court
Central District of California

United States District Court
Central District of California

Defendants filed motions to dismiss the SAC on May 7, 2021, and on October 22, 2021, the Court dismissed: (1) Plaintiffs' Section 10(b) claims based on statements related to Funko's projected sales; (2) Plaintiffs' claims relating to inventory risk disclosures issued on August 8, 2019; and (3) Plaintiffs' 20A claims against Defendant Perlmutter and the ACON Defendants. (Doc. No. 165.)

The parties engaged in preliminary discovery and participated in one full-day mediation session before Michelle Yoshida, of Phillips ADR, on April 27, 2022, where the parties reached a settlement in principle. (Motion at 5-6.) Over the course of several weeks thereafter, the parties drafted the Settlement Agreement ("Settlement Agreement" or "SA") currently before the Court. (*Id.* at 6; SA, Doc. No. 186-1.)

**B. Settlement Class**

The proposed Settlement Class is defined as:

> [A]ll persons and entities who or which purchased or otherwise acquired shares of Funko publicly traded common stock during the period from August 8, 2019 through March 5, 2020, inclusive, and who were damaged thereby. The Settlement Class includes all persons or entities who purchased Funko common stock contemporaneously with sales of Funko common stock made by Defendant Mariotti during the Class Period..

(SA ¶ 1(rr).) The proposed class consists of thousands of investors who purchased Funko common stock during the Class Period. (Motion at 17.)

**C. Settlement Terms**

The Settlement Agreement establishes a $7,000,000 gross settlement fund. (SA ¶ 1(qq).) Strategic Claims Services will serve as the Claims Administrator. (*Id.* ¶ 1(g).) Class members are to submit the Claim Form through the Settlement website or by hardcopy. (*Id.* ¶ 27(a).) The Claims Administrator will determine each claimant's eligibility and calculate their respective claim. (*Id.* ¶ 23.) Claimants will be notified of any ineligibility and will have an opportunity to remedy deficiencies. (*Id.* ¶ 27(d).) The Claims Administrator will distribute payments to Authorized Claimants after the Settlement Agreement reaches its Effective Date. (*Id.* ¶¶ 29, 34.)

The Effective Date is the date when all of the following conditions occur:

- the Court approves the Settlement Agreement
- the Court approves the Preliminary Approval Order
- the Settlement Amount is deposited into the Escrow Account
- Neither Plaintiffs nor Defendants terminate the Settlement Agreement
- the Court enters final Judgment

(*Id.* ¶ 34.)

United States District Court
Central District of California

United States District Court
Central District of California

If a balance remains in the Net Settlement Fund after at least six months from the date of the initial distribution, any remaining funds will be re-distributed to Authorized Claimants who have cashed their checks and would receive at least $10.00. (*Id.* ¶ 32.) If a balance remains in the Net Settlement Fund six months after the re-distribution, the remaining funds will be contributed to the Legal Aid Foundation of Los Angeles. (*Id.*)

Lead Counsel seeks up to 25 percent of the Settlement Fund for attorneys' fees. (*Id.* ¶ 17; Ex. A1 ¶ 5, SA.) Lead Counsel also seeks reimbursement of litigation expenses of up to $275,000, which includes an application for reimbursement of expenses for Plaintiffs of up to $18,000, to be paid from the Settlement Fund. (SA ¶ 17; Ex. A1 ¶ 5, SA )

Finally, Plaintiffs and Settlement Class Members release any future related claims against Defendants. (SA ¶ 5.)

**D. Notice Procedures**

Within ten days of preliminary approval of the Settlement Agreement (the "Notice Date"), Defendants will provide the Claims Administrator the Settlement Class Member List. (*Id.* ¶ 21.) Within ten days of the Notice Date, the Claims Administrator will publish the Summary Notice (Ex. A3, SA) in *Investor's Business Daily* and transmit the Summary Notice once over the PR Newswire. (Motion at 24.) Within twenty days of the Notice Date, the Claims Administrator will mail or email the Postcard Notice (Ex. A4, SA) to all potential Settlement Class Members. (Motion at 24.)

The Claims Administrator also will establish the Settlement Website. (Ex. A1, SA.) Within twenty days of the Notice Date, the Claims Administrator will post the Internet Notice (Ex. A1, SA) and Claim Form (Ex. A2, SA) on the Settlement Website. (Motion at 24.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." "[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig*., 516 F.3d 1095, 1100 (9th Cir. 2008). The Court's review of the settlement is meant to be "extremely limited" and should consider the settlement as a whole. *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998).

At the preliminary approval stage, the Court need only consider whether the proposed settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Harris v. Vector Mktg. Corp*., No. 08-05198, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011); *see also Moppin v. Los Robles Reg'l Med. Ctr*., No. 15-01551, 2016 WL 7479380, at *8 (C.D. Cal. Sept. 12, 2016) ("At the

United States District Court
Central District of California

Preliminary Approval phase, the Court need only decide whether the settlement is potentially fair."); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. Apr. 12, 2007) (citing Federal Judicial Center, Manual for Complex Litigation § 30.44 (2d ed. 1985)).

## III. DISCUSSION

### A. Class Certification

Under Rule 23(e)(1), as amended December 1, 2018, the Court must direct notice to the class of a class action settlement upon determining that notice is justified because the Court concludes it will likely be able to approve the settlement and certify the class for purposes of judgment on the settlement. When a plaintiff seeks conditional class certification for purposes of settlement, the court must ensure that the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952-53 (9th Cir. 2003).

Under Rule 23(a), the plaintiff must show that the class is: sufficiently numerous; that there are questions of law or fact common to the class; that the claims or defenses of the representative parties are typical of those of the class; and that the representative parties will fairly and adequately protect the class's interests. Under Rule 23(b), the plaintiff must show that the action falls within one of the three "types" of classes.

Here, Plaintiffs seek certification pursuant to Rule 23(b)(3). Rule 23(b)(3) allows certification where: (1) questions of law or fact common to

United States District Court
Central District of California

the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. (Motion at 20-21.)

**1. Rule 23(a) Requirements**

i. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." "No exact numerical cut-off is required; rather, the specific facts of each case must be considered." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. Jan. 5, 2009) (citing *Gen. Tel. Co. of Nw., Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)). "As a general matter, courts have found that numerosity is satisfied when [the] class size exceeds 40 members." *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602-03 (C.D. Cal. Nov. 16, 2015); *see Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473-74 (C.D. Cal. Dec. 20, 2012). Additionally, it is not necessary to state the exact number of class members when the plaintiff's allegations "plainly suffice" to satisfy the numerosity requirement. *In re Cooper*, 254 F.R.D. at 634.

Here, Plaintiffs' allegations satisfy the standard for numerosity. The settlement class consists of thousands of persons. (Motion at 17.) Althgouh the number of class members are unknown, the Court certainly may infer that more than 40 persons invested in Funko common stock during the Class Period. (*Id.*); *see also In re Cooper*, 254 F.R.D. at 634. Moreover, Funko does not dispute that the proposed class is numerous. Accordingly,

United States District Court
Central District of California

as requiring the joinder of thousands of plaintiffs would be impracticable, the Court finds the Class satisfies the numerosity requirement.

ii. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." The plaintiff must "demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Rather, the plaintiff's claim must depend on a "common contention" that is capable of class wide resolution. *Id.* This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

The issues in this litigation present common question of law and fact that can be determined on a class wide basis: whether Defendants omitted or misrepresented material facts; whether Defendants acted with scienter; whether Funko artificially inflated the price of its common stock during the Class Period; and whether Defendants' misrepresentations and omissions caused class members to suffer economic losses. (Motion at 18.) Accordingly, the Court finds the Class satisfies the commonality requirement.

iii. Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."



United States District Court
Central District of California

Representative claims are "typical" if they are "reasonably coextensive with those of the absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs' 10(b) claims are typical of the class members' 10(b) claims because every member of the class, including Plaintiffs, asserts damages based on Funko's alleged misrepresentations and omissions made to the investing public. (Motion at 18-19.) Plaintiffs' 20A claims also are typical of the class members' 20A claims because two of the Plaintiffs purchased Funko common stock at the same time as Defendant Brian Mariotti. (*Id.* at 19.) Accordingly, Plaintiffs' claims are "reasonably coextensive" with those of the class. *See Hanlon*, 150 F.3d at 1020; *see also Reyes v. Experian Info. Sols., Inc.*, No. 16-00563, 2019 WL 4854849, at *6 (C.D. Cal. Oct. 1, 2019) ("Because Plaintiff only seeks to represent a class of consumers whose credit reports contained this exact same 'inaccuracy,' the unnamed class members share an identical injury. Further, Plaintiff's claim is based on the same course of conduct by Defendant as the claims of the unnamed class members" satisfying the typicality requirement).

iv. <u>Adequacy of Representation</u>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This factor requires: (1) a lack of conflicts of interest between the proposed class and the proposed class representative, and (2) representation by qualified and competent counsel that will prosecute the action vigorously. *Staton*, 327 F.3d at 957. The



United States District Court
Central District of California

concern in the context of a class action settlement is that there is no collusion between the defendant, class counsel, and the class representatives to pursue their own interests at the expense of the interests of the class. *Id.* at 958 n.12.

There is no evidence of a conflict of interest between Plaintiffs and the class. Plaintiffs' claims are identical to those of the class, and Plaintiffs have every incentive to pursue those claims vigorously. (Motion at 19.) Nor is there any evidence that Plaintiffs' counsel will not adequately represent or protect the interests of the class. Plaintiffs' counsel, Michael Wernke, Jeremy Liberman, and Jennifer Pafiti of Pomerantz, LLP and Stanley Bernstein, Stephanie Beige, and Peretz Bronstein of Bronstein, Gewirtz, and Grossman, LLC, have extensive experience litigating complex securities class actions and have relied on their experience litigating the instant action. (*See* Exs. 3-4, Beige Decl.) Counsel vigorously prosecuted this action and satisfy all the criteria to be appointed as interim class counsel pursuant to Rule 23(g)(3). *See, e.g., Reyes*, 2019 WL 4854849, at *7 ("As for Plaintiff's and counsel's willingness to vigorously prosecute this action on behalf of the class, the Court has no doubt. The Court knows only too well how actively this case has been litigated on both sides from its inception in 2016."). There is also no evidence of conflicts of interest between Plaintiffs and Defendants or Plaintiffs' counsel and Defendants.

As Plaintiffs satisfy all of the Rule 23(a) criteria, the Court turns to the Rule 23(b) requirements.

United States District Court
Central District of California

United States District Court
Central District of California

**2. Rule 23(b)(3) Requirements**

Plaintiffs seek preliminary class certification under Rule 23(b)(3). Rule 23(b)(3) applies where the court finds: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See In re Wells Fargo Home Mortg. Overtime Pay Litig*., 571 F.3d 953, 957 (9th Cir. 2009).

i. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022. "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Id.* "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.*

As discussed above, Plaintiffs demonstrated commonality amongst proposed class members as the central issue in this case is whether Defendants omitted or misrepresented material facts and caused Class members to suffer economic losses. (Motion at 20.) The only individual determinations, then, are the quantification of damages for each Settlement Class member—and such individual determinations do not defeat class

certification. Plaintiffs thus demonstrate that a common issue predominates over individualized concerns.

ii. Superiority

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification. *Id.*

A class action appears to be superior to other available methods for adjudicating this matter fairly and efficiently. The potential monetary relief for each Settlement Class Member (approximately $0.244 per allegedly damaged share) is dwarfed by the cost of litigating on an individual basis. (Ex. A1 ¶ 2, SA.) Without class certification, it is unlikely that these claims would be litigated at all. Accordingly, Plaintiffs satisfy Rule 23(b)(3).

**B. Fairness, Adequacy, and Reasonableness of the Settlement**

Plaintiffs seek preliminary approval of the Settlement Agreement. Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, reasonable, and accurate." *Staton*, 327 F.3d at 959 (quoting *Hanlon*, 150 F.3d at 1026). To determine whether this standard is met, courts consider factors including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the

United States District Court
Central District of California

amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement." *Id*. (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)).

At the preliminary approval stage, a full "fairness hearing" is not required. *In re Tableware Antitrust Litig*., 484 F. Supp. 2d at 1079. Rather, the inquiry is whether the settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id*.

1. <u>Product of Serious, Informed, and Non-Collusive Negotiations</u>

To approve the Settlement Agreement at this stage, the Court must find first it is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Hanlon*, 150 F.3d at 1027. Three factors may raise concerns of collusion: (1) "when counsel receive[s] a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotation marks and citations omitted).

United States District Court
Central District of California

United States District Court
Central District of California

The Court finds that "sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently." *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (internal quotation marks omitted). This case was filed on March 10, 2020, (Doc. No. 1), and since then the Parties: conducted a comprehensive investigation into the allegedly wrongful acts; consulted with a damages experts; litigated Defendants' motions to dismiss the FAC; served and responded to various demands for the production of documents and interrogatories and engaged in a meet and confer with respect to discovery requests; engaged in a mediation and negotiations regarding the terms of the proposed Settlement; reviewed hundreds of pages of confirmatory discovery produced by Funko in furtherance of settlement negotiations; and reached a settlement after a full-day mediation with Michelle Yoshida of Phillips ADR. (Motion at 1, 5-6.) Moreover, none of the three *Bluetooth* factors that raise concerns of collusion are present here. This factor thus weighs in favor of preliminary approval.

2. <u>Obvious Deficiencies</u>

The Court finds that the Settlement Agreement on its face does not have obvious deficiencies, and thus finds that this factor weighs in favor of preliminary approval.

//

//

//

3. Preferential Treatment to Class Representatives or Segments of Class

The Court finds that the proposed Settlement Agreement does not improperly grant preferential treatment to class representatives, and thus finds that this factor weighs in favor of preliminary approval.

4. Range of Possible Approval

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. Nov. 17, 2009).

Moreover, to evaluate whether a settlement is fundamentally fair, adequate, and reasonable, the Court considers the factors that ultimately inform final approval: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *Harris*, 2011 WL 1627973, at *7 (citing *Hanlon*, 150 F.3d at 1026).

//

//

United States District Court
Central District of California

i. Strength of Plaintiff's Case and Future Risk

Plaintiffs' claims allege Violation of Section 10(b) of the Exchange Act and Rule 10b-5, Violation of Section 20(a) of the Exchange Act, and Violation of Section 20A of the Exchange Act Against. (SAC ¶ 185-213.) Class Counsel argues that because they held "arms-length negotiations" there is a presumption in favor of the Settlement Agreement being fair and reasonable. (Motion at 9.) Moreover, although the Court granted, in part, Defendants' motions to dismiss on October 22, 2021, (Doc. No. 165), Defendants demonstrated their commitment to litigate this action to its conclusion. (Ex. 1, Beige Decl.) Accordingly, Plaintiffs and Class Members would face further litigation if the case were not settled. (Motion at 8-9.)

As it stands, the Settlement Agreement provides distributions to Class Members on a pro rata basis from the Settlement Fund. (Motion at 16-17.) Given the relative strength of Plaintiffs' claims, and the risks and costs associated with future complex litigation, the Settlement Agreement's terms appear to be reasonable. These factors thus favor preliminary approval.

ii. Extent of Discovery Completed and Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellullar Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

As noted above, the parties litigated diligently since March 10, 2020, including briefing motions to dismiss, conducting discovery, hiring for the production and review of documents, hiring experts, and engaging in a full-



United States District Court
Central District of California

day mediation, *supra*. Accordingly, the Court finds this factor weighs in favor of preliminary approval. *See Linney*, 151 F.3d at 1239.

iii. Experience and Views of Counsel

As stated above, Class Counsel has ample experience litigating class actions similar to this case and thus have demonstrated the ability to prosecute vigorously on behalf of the class members. (Exs. 3-4, Beige Decl.) Accordingly, the Court finds this factor weighs in favor of preliminary approval.

iv. Presence of a Governmental Participant and Reaction of the Class Members to the Proposed Settlement

As there is no governmental participant in this action, and the parties have not yet provided notice to the class members, these factors are inapposite for the purposes of preliminary approval.

v. The Amount Offered in the Settlement

For a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton*, 327 F.3d at 963.

The $7,000,000 gross settlement fund here is approximately 8.7 percent of the approximately $80 million in potential recovery and thus is reasonable. Although Plaintiffs do not provide specific recovery amounts for class members, courts in this circuit have approved settlements that recovered similar percentages. *See, e.g., In re Omnivision Techs., Inc.*, 559

United States District Court
Central District of California

United States District Court
Central District of California

F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (finding settlement yielding 6 percent of potential damages was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *In re Snap Sec. Litig.*, No. 17-03679, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) (approving settlement representing "approximately 7.8% of the class's maximum potential aggregate damages, which is similar to the percent recovered in other court-approved securities settlements"); *In re Biolase, Inc. Sec. Litig.*, No. 13-1300, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (approving securities class action settlement representing "8% of the maximum recoverable damages").

a. Attorneys' Fees

When evaluating attorneys' fees, the Ninth Circuit holds "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295-96 (9th Cir.1994)).

When using the percentage-of-the-fund method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award and justify any increase or decrease from this amount based on circumstances in the record." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. May 14, 2013); *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). The percentage may be adjusted upward or downward based on: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the

United States District Court
Central District of California

burdens carried by the class counsel; and (6) the awards made in similar cases. *Monterrubio*, 291 F.R.D. at 455 (citing *Vizcaino*, 290 F.3d at 1048–50).

Class Counsel here intend to seek an award of attorneys' fees of no more than 25 percent of the settlement fund, which is within the Ninth Circuit's 25 percent "benchmark award for attorney[s'] fees." *Hanlon*, 150 F.3d at 1029. Given the claims, stage of the action at the time of resolution, results achieved, and other information presented in Plaintiffs' Motion, the Court is likely to determine that 25 percent in attorneys' fees is warranted and reasonable at the final settlement approval.

b. Costs

Class Counsel also intend to seek litigation costs of "no more than $275,000 which will include an application for reimbursement for Lead Plaintiffs pursuant to the PSLRA of up to $18,000 each." (Motion at 16.) Class Counsel, however, has not attached any accounting of past costs or expenses. Thus, the Court will revisit the costs request at the time the parties seek final approval of the settlement.

c. Incentive Award

As there is no incentive award proposed in the Settlement Agreement, this factor is inapposite for the purposes of preliminary approval.

//

//

d. Settlement Administrator Costs

The Court has concerns with the parties' proposed Settlement Administrator costs as they are currently framed. Critically, the parties do not specify a number, but only propose to transfer "up to $200,000" of the Settlement Fund as an advance of administrative costs. (SA ¶ 16.) The Court is unlikely to approve such costs where there is no definite portion or limit that will be awarded to the Settlement Administrator. The Court will revisit the Administrative Costs request at the time the parties seek final approval of the settlement.

e. Conclusion Based on Review of *Hanlon* Factors

As most of the *Hanlon* factors weigh in favor of preliminary approval, the Court finds that the proposed settlement is "within the range of possible approval" and that notice should be sent to class members. *Vasquez*, 670 F. Supp. 2d at 1125.

Nevertheless, the Court stresses that it is unlikely to approve the Plaintiffs' expenses and administrative costs in their current form at the final approval stage.

### C. Notice Procedure[1]

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed

[1] The Court notes that Defendants timely sent notice of the proposed settlement to the appropriate federal and state officials under the Class Action Fairness Act. (*See* Doc. No. 188.)



United States District Court
Central District of California

settlement. Fed. R. Civ. P. 23(e)(1). Plaintiffs must provide notice that is "timely, accurate, and informative." *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).

1. Notice Form

The Court accepts the proposed notice forms. The Postcard Notice, Summary Notice, and Internet Notice explain: (1) the terms of the Settlement; (2) the conclusions that led Plaintiffs and Lead Counsel to conclude that the Settlement is fair; (3) the maximum attorneys' fees and litigation expenses that may be sought; (4) the procedure for requesting exclusion from the Settlement Class; (5) the procedure for objecting and submitting claims; (6) the proposed Plan of Allocation; and (7) the date and place of the Settlement Fairness Hearing. (Motion at 23; Exs. A1, A3-A4, SA.)

The Internet Notice also satisfies the disclosures required by the Private Securities Litigation Reform Act of 1995. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F). The Internet Notice states: (1) the aggregate Settlement amount and the average Settlement amount per share; (2) the Parties disagree on the amount of recoverable damages even if Plaintiffs prevailed on each of their claims; (3) Lead Counsel intends to make an application for an award of attorney's fees and expenses; (4) the name, telephone number, and address of a representative of Lead Counsel who will be available to answer questions; (5) the reasons why the Parties are proposing the Settlement; and (6) other information as required by the Court. (Motion at 23; Ex. A1, SA.)

United States District Court
Central District of California

2. Claims Administration

The Claims Administrator will provide notice to Class Members, accept or reject claims, and issue appropriate payments. (SA ¶¶ 21, 23, 26.) Within ten days of preliminary approval of the Settlement Agreement (the "Notice Date"), Defendants will provide the Claims Administrator the Settlement Class Member List. (*Id.* ¶ 21.) Within ten days of the Notice Date, the Claims Administrator will publish the Summary Notice in *Investor's Business Daily* and disseminate the Summary Notice over the PR Newswire. (Motion at 24.) Within twenty days of the Notice Date, the Claims Administrator will mail or email the Postcard Notice to potential Settlement Class Members and will post the Internet Notice and Claim Form on the Settlement Website. (Motion at 24.) Class members shall submit Claim Forms within 90 days of the Notice Date. (Motion at 24.)

The Court finds that the notice forms and proposed administration process are adequate.

**D. *Cy Pres* Recipient**

The parties agree that "[i]f any funds shall remain in the Net Settlement Fund six months after [a] re-distribution, then the balance shall be contributed to the Legal Aid Foundation of Los Angeles or any non-profit successor of it."[2] (SA ¶ 32.)

[2] The Court construes the residual funds as a *cy pres* award.

United States District Court
Central District of California

United States District Court
Central District of California

"Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) (citing *Van Gemert v. Boeing Co.*, 739 F.2d 730, 737 (2d Cir.1984)). *Cy pres* distribution is "to put the unclaimed fund to the next best compensation use, *e.g.*, for the aggregate, indirect, prospective benefit of the class." *Masters v. Wilhemina Model Agency, Inc.*, 472 F.3d 423, 436 (2d Cir. 2007) (citations omitted). Under the *cy pres* doctrine, the donors' or parties' intent must be followed "as nearly as possible." *In re Wells Fargo Secs. Litig.*, 991 F. Supp. 1193, 1195 (N.D. Cal. Jan. 20, 1998) (citations omitted). "The use of *cy pres* ... to distribute unclaimed funds may be considered only after a valid judgment for damages has been rendered against the defendant." *Six (6) Mexican Workers*, 904 F.2d at 1307.

"While the law generally favors distributing unclaimed funds for a purpose as near as possible to the legitimate objectives underlying the lawsuit, a direct nexus between the injured plaintiffs and the *cy pres* recipients is neither always feasible nor required." *Hopson v. Hanesbrands, Inc.*, No. 08-0844, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009) (comparing *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 680 (8th Cir. 2002) (holding that the trial court had abused its discretion with respect to *cy pres* distribution because there was no nexus between the injured class and the local organizations receiving unclaimed funds) (citing *Powell v. Georgia-Pacific Corp*,, 119 F.3d 703, 706-07 (8th Cir. 1997) (approving the district court's order that nearly $1 million in remainder settlement funds be distributed as scholarships to African-American high

school students because the scholarship program carried out the plaintiffs' desire and addressed the subject matter of the lawsuit: employment opportunities available to African Americans in the region)), with *Superior Beverage Co. v. Owens-Ill., Inc.*, 827 F. Supp. 477, 479 (N.D. Ill. 1993) (holding that unclaimed funds remaining after settlement of an antitrust case may be distributed to other public interests not closely related to the origins of the case)).

The court's decision regarding *cy pres* recipients "should be guided by the objectives of the underlying statute and the interests of the silent class members" and cannot benefit a group "too remote from the plaintiff class." *Six (6) Mexican Workers*, 904 F.2d at 1307-08. A *cy pres* distribution fails to meet this standard if it "does not account for the broad geographic distribution of the class." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1040 (9th Cir. 2011) (holding a *cy pres* distribution to the Legal Aid Foundation of Los Angeles, the Boys and Girls Clubs of Santa Monica and Los Angeles, and the Federal Judicial Center Foundation failed to meet the *Six Mexican Workers* standard because it did not account for the national distribution of the plaintiff class).

The mission of the Legal Aid Foundation of Los Angeles here is unrelated to both the injuries Plaintiffs suffered and the objectives of the underlying statutes on which Plaintiffs base their claims. Moreover, the Legal Aid Foundation of Los Angeles is a local charity, but class members exist throughout the United States. The Court thus finds the Legal Aid Foundation of Los Angeles does not have a sufficient nexus to the class

here and does not account for the national distribution of the class and thus does not approve the *cy pres* designation.

**E. Class Representative and Lead Counsel**

As explained above, the Court finds that Plaintiffs will fairly and adequately protect the interests of the class and that proposed Lead Counsel, Michael Wernke, Jeremy Liberman, and Jennifer Pafiti of Pomerantz, LLP and Stanley Bernstein, Stephanie Beige, and Peretz Bronstein of Bronstein, Gewirtz, and Grossman, LLC, are well equipped to represent the class.

Accordingly, the Court designates named Plaintiffs as Class Representatives for the Settlement Class and appoints Michael Wernke, Jeremy Liberman, and Jennifer Pafiti of Pomerantz, LLP and Stanley Bernstein, Stephanie Beige, and Peretz Bronstein of Bronstein, Gewirtz, and Grossman, LLC as Lead Counsel.

## IV. CONCLUSION

For the reasons stated above, most of the factors considered by the Court favor settlement. Although the Court declines to approve Plaintiffs' expenses, administrative costs, and the *cy pres* recipient, the proposed settlement is within the range of possible final approval. The Court thus **GRANTS** Plaintiffs' Motion for preliminary approval of class action settlement in part, and conditionally certifies the class for settlement.

United States District Court
Central District of California

Within ten (10) business days of this Order, Defendants shall provide the Claims Administrator the Settlement Class Member List. Within ten (10) business days of this Order, the Claims Administrator shall publish and disseminate the Summary Notice using the template portrayed in Exhibit A3 of the Settlement Agreement. Within twenty (20) business days of this Order, the Claims Administrator shall disseminate notice using the templates portrayed in Exhibits A1, A2, and A4 of the Settlement Agreement.

Class members shall have ninety (90) calendar days from the date of this Order to submit claims and may submit objections up to twenty-one (21) calendar days before the Settlement Fairness Hearing.

The final approval hearing will be conducted within one hundred (100) calendar days from the date of this Order, or at such other time as the Court may order.

**IT IS SO ORDERED.**

Dated: 7/19/22

Virginia A. Phillips
United States District Judge

United States District Court
Central District of California