**POMERANTZ LLP**
Jennifer Pafiti (SBN 292790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Co-Lead Counsel for Lead Plaintiffs*

(*Additional counsel on signature page*)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO FERREIRA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FUNKO, INC., et al.,<br><br>Defendants. | Case No. 2:20-cv-02319-VAP-(MAAx)<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND ENTRY OF JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing<br>Date: November 7, 2022<br>Time: 2:00 PM<br>Courtroom: 8A<br>Judge: Hon. Virginia A. Phillips |

## NOTICE OF UNOPPOSED MOTION

PLEASE TAKE NOTICE that on November 7, 2022 at 2:00 p.m., in Courtroom 8A in the above-entitled court, located at the 350 West 1st Street, 6th Floor, Los Angeles, California 90012, pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiffs Abdul Baker, Zhibin Zhang, and Huaiyu Zheng, will move this Court for (i) final approval of settlement; (ii) certification of the Settlement Class; and (iii) entry of judgment.

**Compliance with Local Rule 7-3.** Defendants do not oppose this motion.

Dated: October 3, 2022                  Respectfully submitted,

**POMERANTZ LLP**

By: /s/ Michael J. Wernke
    Michael J. Wernke (pro hac vice)
    Jeremy A. Lieberman (pro hac vice)
    600 Third Ave., 20th Fl.
    New York, NY 10016
    Tel: (212) 661-1100
    jalieberman@pomlaw.com
    mjwernke@pomlaw.com
    **POMERANTZ LLP**
    Jennifer Pafiti (SBN 282790)
    1100 Glendon Avenue, 15th Floor
    Los Angeles, CA 90024
    Tel: (310) 405-7190
    Email: jpafiti@pomlaw.com

    *Co-Lead Counsel for Lead Plaintiffs*

    **BERNSTEIN LIEBHARD LLP**
    Stanley D. Bernstein

2

Case No. 2:20-cv-02319-VAP-MAAx
LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND ETNRY OF JUDGMENT
AND MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT

(*pro hac vice* forthcoming)
Stephanie Beige (*pro hac vice*)
10 East 40th Street
New York, NY 10016
Tel: (212) 779-1414
bernstein@bernlieb.com
beige@bernlieb.com

*Co-Lead Counsel for Lead Plaintiffs*

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Tel: (212) 697-6484
peretz@bgandg.com

*Additional Counsel for Lead Plaintiffs*

Case No. 2:20-cv-02319-VAP-MAAx
LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND ETNRY OF JUDGMENT
AND MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT

# TABLE OF CONTENTS

**Page(s)**

I.   PRELIMINARY STATEMENT ..................................................................1

II.  Factual and Procedural Background ........................................................2

   A. Procedural History ............................................................................2

   B. Negotiation and the Terms of the Proposed Settlement ....................5

   C. Preliminary Approval and Notice to the Settlement Class ................5

III. ARGUMENT ..........................................................................................6

   A. Standards For Final Approval of the Settlement ...............................6

   B. The Settlement is Fair, Reasonable, and Adequate Pursuant to Rule 23(e)(2) .....8

     1.  Lead Plaintiffs and Lead Counsel Adequately Represented the Class ...........8

     2.  The Settlement Was at Arm's Length ...........................................9

     3.  The Relief Provided By the Settlement is Adequate .....................10

        (a)  The Settlement is Well-Within the Range of Reasonableness .............10

        (b)  The Costs, Risks, and Delay of Continued Litigation ...........................13

        (c)  The Effective Process for Distributing Relief .......................................15

        (d)  Lead Counsel's Request for Fees is Reasonable ..................................17

        (e)  Disclosure and Other Agreements ........................................................18

     4.  The Settlement Ensures Class Members are Treated Equitably Relative to One Another ........................................................19

   C. Certification of the Settlement Class is Appropriate .........................19

        (a)  Rule 23(a): Numerosity is Satisfied ....................................................20

        (b)  Rule 23(a)(2): Questions of Law or Fact Are Common.......................20

        (c)  Rule 23(a)(3): Lead Plaintiffs' Claims Are Typical.............................21

        (d)  Rule 23(a)(4): Lead Plaintiffs and Lead Counsel Are Adequate .........21

2.   The Settlement Class Meets the Predominance and Superiority Requirements of Rule 23(b)(3) ................................................................................. 22

(a)   Common Legal and Factual Questions Predominate ............................ 22

(b)   Class Action is Superior to Other Methods of Adjudication ................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
 406 U.S. 128 (1972)....................................................................23

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997)....................................................................19

*Basic v. Levinson*,
 485 U.S. 224 (1988)....................................................................23

*Brown v. China Integrated Energy Inc.*,
 2015 WL 12720322 (C.D. Cal. Feb. 17, 2015)............................20

*Cheng Jiangchen v. Rentech, Inc.*,
 No. 17-cv-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. 10, 2019) ......15

*Chupa v. Armstrong Flooring, Inc.*,
 No. 2:19-CV-09840-CAS (MRWx) (C.D. Cal. Feb. 22, 2021)....................15

*Ciuffitelli v. Deloitte & Touche LLP*,
 2019 WL 1441634 (D. Or. Mar. 19, 2019) ...............................19

*Class Plaintiffs v. City of Seattle*,
 955 F.2d 1268 (9th Cir. 1992).......................................................7

*Elliott v. Rolling Frito-Lay Sales, LP*,
 2014 WL 2761316 (C.D. Cal. June 12, 2014) ...............................6

*Erica P. John Fund, Inc. v. Halliburton Co.*,
 563 U.S. 804 (2011)....................................................................22

*Fleming v. Impax Labs. Inc.*,
 2022 WL 2789496 (N.D. Cal. July 15, 2022) ...............................17

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998)..............................................19, 20

iii

Case No. 2:20-cv-02319-VAP-MAAx
LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND ETNRY OF JUDGMENT
AND MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT

*Hefler v. Wells Fargo & Co.*,
 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom.*
 *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) .............................................9, 10, 17

*In re Alphabet, Inc. Sec. Litig.*,
 1 F.4th 687 (9th Cir. 2021) *cert. denied sub nom.*
 *Alphabet Inc. v. Rhode Island*, 142 S. Ct. 1227 (2022) ....................................3, 4

*In re Aqua Metals, Inc. Sec. Litig.*,
 2022 WL 612804 (N.D. Cal. Mar. 2, 2022)...................................................18

*In re Banc of Cal Sec. Litig.*,
 326 F.R.D. 640 (C.D. Cal. 2018) ............................................................20

*In re Banc of California Sec. Litig.*,
 2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) ................................................9

*In re Biolase, Inc. Sec. Litig.*,
 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)...............................................11

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ..............................................18

*In re Comput. Memories Sec. Litig.*,
 111 F.R.D. 675 (N.D. Cal. 1986)............................................................21

*In re Cooper Cos. Inc. Sec. Litig.*,
 254 F.R.D. 628 (C.D. Cal. 2009) ...........................................................22

*In re Finisar Corporation Securities Litigation*,
 No. 5:11-cv-01252 (N.D. Cal. Feb. 15, 2021) ..............................................18

*In re Goldman Sachs Grp. Litig.*,
 21-3105 (2d Cir. Mar. 9, 2022)..............................................................14

*In re Heritage Bond Litig.*,
 2005 WL 1594403 (C.D. Cal. June 10, 2005) ...............................................6

iv

Case No. 2:20-cv-02319-VAP-MAAx
LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND ENTRY OF JUDGMENT
AND MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)...................................................................... 7, 22

*In re MicroStrategy, Inc. Sec. Litig.*,
115 F. Supp. 2d 620 (E.D. Va. 2000) ...............................................................12

*In re NetSol Techs., Inc. Sec. Litig.*,
2016 WL 7496724 (C.D. Cal. July 1, 2016)......................................................20

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................11

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 1991529 (N.D. Cal. June 30, 2007) .....................................................9

*In re Portland Gen. Elec. Co. Sec. Litig.*,
2022 WL 844077 (D. Or. Mar. 22, 2022)..........................................................18

*In re Portland General Electric Sec. Litig.*,
No. 20-cv-1583-SI (D. Or. Mar. 22, 2022 .........................................................17

*In re Silver Wheaton Corp. Sec. Litig.*,
No. 2:15-cv-05146-CAS (PJWx) (C.D. Cal. Mar. 9, 2020) ...............................15

*In re Snap Sec. Litig.*,
2021 WL 667590 (C.D. Cal. Feb. 18, 2021).......................................................11

*In re Syncor ERISA Litig.*,
227 F.R.D. 338 (C.D. Cal. 2005) .....................................................................21

*Kendall v. Odonate Therapeutics, Inc.*,
2022 WL 188364 (S.D. Cal. Jan. 18, 2022)........................................................9

*Kendall v. Odonate Therapeutics, Inc.*,
2022 WL 1997530 (S.D. Cal. June 6, 2022).......................................................11

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998).........................................................................6, 7

*Lo v. Oxnard European Motors, LLC*,
2011 WL 6300050 (S.D. Cal. Dec. 15, 2011)................................................13

*McPhail v. First Command Fin. Planning, Inc.*,
2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ...............................................11

*Milbeck v. TrueCar, Inc.*,
2019 WL 2353010 (C.D. Cal. May 24, 2019) .............................................20

*Newby v. Enron Corp.*,
188 F. Supp. 2d 684 (S.D. Tex. 2002) .........................................................12

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,
730 F.3d 1111 (9th Cir. 2013)......................................................................12

*Officers for Justice v. Civ. Serv. Comm'n of City & Cty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982)...........................................................................7

*Schechter v. Smith*,
2011 WL 13174954 (C.D. Cal. Dec. 6, 2011) .............................................12

*Schleicher v. Wendt*,
618 F.3d 679 (7th Cir. 2010).......................................................................23

*Scott v. ZST Digit. Nets., Inc.*,
2013 WL 12126744 (C.D. Cal. Aug. 5, 2013)..............................................13

*Todd v. STAAR Surgical Co.*,
2017 WL 4877417 (C.D. Cal. Oct. 24, 2017)................................................9

*Van Bronkorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976)..........................................................................6

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002).....................................................................18

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021).......................................................................3

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) .............................................................. 14

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(v) ............................................................ 22

**Rules**

Fed. R. Civ. P. 23(a) ...................................................................*passim*

Fed. R. Civ. P. 23(a)(1) ................................................................. 20

Fed. R. Civ. P. 23(a)(2) ................................................................. 20

Fed. R. Civ. P. 23(a)(3) ................................................................. 21

Fed. R. Civ. P. 23(a)(4) ................................................................. 21

Fed. R. Civ. P. 23(b)(3) ..............................................................*passim*

Fed. R. Civ. P. 23(e)(1) ............................................................... 1, 5

Fed. R. Civ. P. 23(e)(1)(B) ........................................................... 1, 6

Fed. R. Civ. P. 23(e)(2) .............................................................. 6, 7, 8

Fed. R. Civ. P. 23(e)(2)(C) ............................................................. 10

Fed. R. Civ. P. 23(e)(3) .................................................................. 7

Fed. R. Civ. P. 23(g) .................................................................... 22

**Other Authorities**

*Laarni T. Bulan and Laura E. Simmons,*
  *Securities Class Action Settlements - 2021 Review and Analysis,*
  Cornerstone Research ............................................................... 10, 13

Lead Plaintiffs Abdul Baker, Zhibin Zhang, and Huaiyu Zheng (collectively, "Lead Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully submit this memorandum in support of their motion seeking: (i) final approval of the proposed Settlement[1]; (ii) certification of the Settlement Class; and (iii) entry of judgment.

## I.   PRELIMINARY STATEMENT

The Settlement provides a significant recovery of $7 million in cash to resolve all claims in this Action.   Lead Plaintiffs respectfully submit that the Settlement is an excellent result for the Settlement Class and should be approved by the Court.[2]

The Settlement was achieved after arm's-length negotiations between the Parties before an experienced mediator and is the product of Lead Plaintiffs' extensive investigation concerning the claims asserted in the Action and vigorous prosecution of the litigation on behalf of the Settlement Class.   Over the course of this Action, Lead Counsel and Lead Plaintiffs have come to appreciate the strengths and weaknesses of the claims asserted against Defendants, and strongly believe that the Settlement represents the best possible result for the Settlement Class.

On July 19, 2022, the Court preliminary approved the Settlement pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure[3] and authorized Notice of the Settlement to the Settlement Class. In accordance with Rule 23(e)(1), this decision was based on a showing that the Settlement, "will likely earn final approval after notice and an opportunity to object" and that the Settlement Class can be certified. *See* Rule 23(e)(1)(B) and 2018 Advisory Notes Rule 23(e)(1); *see also* ECF No. 193 ("…the Court concludes

---

[1] All capitalized terms not otherwise defined herein have the same meaning as those in the Stipulation and Agreement of Settlement, dated June 3, 2022 (the "Stipulation"). All exhibits referenced herein are attached to the Declaration of Stephanie M. Beige in Support of Final Approval of Settlement and Payment of Attorneys' Fees and Expenses (the "Beige Decl."), filed concurrently with this motion.

[2] The Settlement resolves all claims asserted against the Settling Defendants and the ACON Defendants (referred to collectively as "Defendants").

[3] The Federal Rules of Civil Procedure are referred to herein as "Rule."

it will likely be able to approve the settlement and certify the class for purposes of judgment on the settlement.").

Lead Plaintiffs and the Claims Administrator provided Notice to the Settlement Class pursuant to the Preliminary Order. To date, the Claims Administrator reports that in addition to timely publishing notice in *Investor's Business Daily* and on the Internet, approximately 30,176 notices were disseminated by mail and email. These notices informed Settlement Class members of their right to object to the Settlement and how to participate in the Settlement. Currently, no Settlement Class members have objected, and only one Settlement Class Member has requested to be excluded from the Settlement. Accordingly, Lead Plaintiffs respectfully requests that the Court grant final approval of the Settlement.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Procedural History

Beginning on March 10, 2020, three similar actions were filed asserting violations of the federal securities laws against Defendants on behalf of investors who are now the Settlement Class: (1) the above-captioned action (the "*Ferreira* Action"); (2) *Nahas v. Funko, Inc.*, No. 2:20-cv-03130 (C.D. Cal.) (the "*Nahas* Action"); and (3*) Dachev v. Funko, Inc.*, No. 2:20-cv-00544 (W.D. Wash.) (the "*Dachev* Action"). Pursuant to the procedures of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), by Order dated June 11, 2020, the Court consolidated the *Nahas* Action and the *Ferreira* Action and appointed Abdul Baker, Zhibin Zhang, and Huaiyu Zheng as Lead Plaintiffs and Bernstein Liebhard LLP and Pomerantz LLP as Co-Lead Counsel.[4]

On July 31, 2020, Lead Plaintiffs filed the First Amended Complaint ("FAC"), alleging violations of Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder, against Defendants on

---

[4] The *Dachev* Action was voluntarily dismissed on June 24, 2020.

behalf of all persons and entities that purchased or otherwise acquired Funko securities between August 8, 2019 and March 5, 2020 (the "Class Period"). The FAC alleged, among other things, that Funko's earnings and sales guidance for the fiscal year 2019 and its inventory risk warnings issued during the Class Period were false and misleading. Lead Plaintiffs also alleged that Mariotti, Perlmutter, and three directors who had been designated by ACON sold Funko stock while in possession of material, nonpublic information in violation of Section 20A. *See* FAC ¶¶ 199-212.

On October 2, 2020, the Funko Defendants and the ACON Defendants filed separate motions to dismiss the FAC. On December 1, 2020, Lead Plaintiffs filed an omnibus memorandum in opposition to the motions to dismiss. On December 30, 2020, the Funko Defendants and the ACON Defendants filed separate reply briefs in support of their respective motions to dismiss. On January 26, 2021, the Court directed the parties to submit supplemental briefing addressing the impact of the Ninth Circuit's decision, *Wochos v. Tesla, Inc*., 985 F.3d 1180 (9th Cir. 2021), on Defendants' pending motions to dismiss. On January 29, 2021, the parties filed their supplemental briefing. On February 25, 2021, the Court granted Defendants' motions to dismiss in full and granted Lead Plaintiffs leave to amend.

On March 29, 2021, Lead Plaintiffs filed the operative, Second Amended Complaint ("SAC"). Specifically, the SAC pleaded additional facts supporting Lead Plaintiffs' allegations that Defendants misrepresented (i) Funko's financial condition during the Class Period by issuing false and misleading statements related to the Company's projected net sales guidance for 2019; and (ii) the state of Funko's inventory condition in the Company's risk disclosures. On May 7, 2021, Defendants filed two motions to dismiss the SAC. On June 11, 2021, Lead Plaintiffs filed oppositions to both motions. On June 16, 2021, the Court issued an Order directing Defendants to address the impact of *In re Alphabet, Inc. Sec. Litig*., 1 F.4th 687 (9th Cir. 2021), *cert. denied sub nom. Alphabet Inc. v. Rhode Island*, 142 S. Ct. 1227 (2022) ("*Alphabet*") on the pending

motions to dismiss in their respective reply briefs. The Court also granted Lead Plaintiffs leave to file a sur-reply addressing *Alphabet*. On July 2, 2021, Defendants filed two reply memoranda in support of their respective motions to dismiss the SAC.  On July 16, 2021, Lead Plaintiffs filed a sur-reply.

On October 22, 2021, after hearing oral argument, the Court granted in part and denied in part the motions to dismiss the SAC (the "October 22 Order", ECF No. 165). The claims in this Action were significantly narrowed by the October 22 Order. Specifically, the Court dismissed with prejudice Lead Plaintiffs' Section 10(b) claims based on statements related to Funko's projected net sales guidance as protected by the safe harbor provision of the PSLRA. The Court denied the motion to dismiss with respect to Funko's inventory risk disclosures issued on October 31, 2019 but granted the motion with respect to the same warnings issued on August 8, 2019 for failure to plead scienter. The Court denied Defendant Mariotti's motion to dismiss Plaintiffs' Section 20A claim based on his sales of Funko shares in Funko's Secondary Offering but dismissed Lead Plaintiffs' 20A claims against Defendant Perlmutter and the ACON Defendants for lack of a predicate violation. The Court also denied Defendants' motions to dismiss Lead Plaintiffs' Section 20(a) control person claims against Defendants Mariotti, Jung, Brotman, Dellomo, Kriger, and the ACON Defendants. Thus, as a result of the October 22 Order, Lead Plaintiffs' remaining 10(b) and 20(a) claims are based entirely on one statement: Funko's October 31, 2019 inventory risk disclosure[5] and their 20A claim remains only as to Defendant Mariotti.

Thereafter, between December 2021 and March 2022, the parties engaged in preliminary discovery.  Specifically, the parties served and responded to various demands for the production of documents and interrogatories and began the meet and confer process with respect to Lead Plaintiffs' Objections and Responses to Requests for

---

[5] This effectively narrowed the 10(b) and 20(a) class period to October 31, 2019 through March 5, 2020.

Case No. 2:20-cv-02319-VAP-MAAx
MEMORANDUM OF POINTS AND AUTHORITIES

Production of Documents and Interrogatories. On January 6, 2022, the parties filed their Joint Rule 26(f) Report. On January 11, 2022, the parties served their Rule 26(a)(1) Initial Disclosures. On February 15, 2022 and March 4, 2022, the parties filed a Stipulated Protective Order, and entered into a Stipulated Discovery Order Governing the Production of Documents and Discovery of Electronically Stored Information, respectively.

### B.    Negotiation and the Terms of the Proposed Settlement

In late 2021, Lead Plaintiffs and the Settling Defendants engaged Michelle Yoshida, of Phillips ADR, a well-respected and highly experienced mediator, to assist in a potential resolution of the claims. The Parties agreed that holding a mediation session prior to briefing class certification could be beneficial to all parties. The Parties exchanged mediation statements, and on April 27, 2022, a full day mediation session was held before Ms. Yoshida, during which a settlement in principle was reached to resolve the Action. A Memorandum of Understanding was executed on April 29, 2022.

The parties subsequently negotiated the terms of the Stipulation, which sets forth the final terms and conditions of the Settlement, including, among other things, a release of all claims asserted against Defendants in the Action, and related claims ("Released Claims"), in return for a cash payment by the Settling Defendants of $7,000,000 (the "Settlement Amount") for the benefit of the Settlement Class.

### C.    Preliminary Approval and Notice to the Settlement Class

On July 19, 2022, the Court preliminary approved the Settlement pursuant to Rule 23(e)(1) and authorized notice of the Settlement to the Settlement Class. Since that time, the Claims Administrator has implemented the notice program to notify the Settlement Class of their rights.  As more fully set forth by the Claims Administrator in the Declaration of Josephine Bravata Concerning (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusions, notice

has been given to the Settlement Class as required by the Preliminary Approval Order. *See* Beige Decl., Ex. 4 at ¶ 9.  To date, there have been no objections to the Settlement and only one request for exclusion. *See id.* at ¶¶12-13.

## III.   ARGUMENT

### A.   Standards For Final Approval of the Settlement

The Ninth Circuit has a strong judicial policy favoring the settlement of class actions. *See, e.g., Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) ("There is an overriding public interest in settling and quieting litigation, and this is particularly true in class action suits.") (quoting *Van Bronkorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Settlements of complex cases greatly contribute to the efficient utilization of scarce judicial resources. *See Elliott v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316, at *3 (C.D. Cal. June 12, 2014) ("judicial policy favors settlement in class actions … where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation").

Rule 23(e) requires court approval for any class action settlement after assessing whether the proposed Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Under the Federal Rules, a court reviews a settlement using four factors. *Id*. These are whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

i.   the costs, risks, and delay of trial and appeal;

ii.     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

iii.    the terms of any proposed award of attorneys' fees, including timing of payment; and

iv.     any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

The determination of whether a settlement is fair, reasonable, and adequate is committed to the Court's sound discretion. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) ("Review of the district court's decision to approve a class action settlement is extremely limited.") (citing *Linney*, 151 F.3d at 1238). The Court need not reach conclusions about the merits of the case, in part because the Court will be called upon to decide the merits if the action proceeds. *See Officers for Justice v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. . . . [I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."). The Court's discretion in assessing the fairness of the settlement is also circumscribed by "the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney*, 151 F.3d at 1238 (quoting *Officers for Justice*, 688 F.2d at 626); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (same).

For the reasons discussed herein, in the Motion for Preliminary Approval of the Settlement, in the Order Granting Preliminary Approval of the Settlement, and in Lead Counsel's Fee and Expense Application, filed herewith, the proposed Settlement is "fair, reasonable, and adequate," and meets all of the requirements imposed by Rule 23(e)(2).

**B.     The Settlement is Fair, Reasonable, and Adequate Pursuant to Rule 23(e)(2)**

**1.     Lead Plaintiffs and Lead Counsel Adequately Represented the Class**

Lead Plaintiffs and Lead Counsel have adequately represented the interests of the Class. Abdul Baker, Zhibin Zhang, and Huaiyu Zheng were appointed Lead Plaintiffs after a finding that their "selection of experienced counsel in this Action, among other things, renders them the "most adequate plaintiffs" to represent the Settlement Class. *See* ECF No. 58. Lead Plaintiffs are individual investors who actively contributed to the litigation by communicating with Lead Counsel, overseeing the litigation, reviewing drafts of the pleadings and motions, and participating in settlement discussions with Lead Counsel. *See* Beige Decl., Exs. 1-3.

In addition, throughout the Action, Lead Plaintiffs benefited from the advice of knowledgeable counsel well-versed in shareholder class action and securities fraud litigation.  Bernstein Liebhard LLP and Pomerantz LLP are among the most experienced and skilled firms in the securities litigation field and have long and successful track records, serving as lead counsel in many high profile and influential cases. *See* Beige Decl., Exs. 6-7 (firm resumes).

Lead Plaintiffs and Lead Counsel have vigorously pursued this litigation for over two and half years, including by: (1) completing an extensive pre-suit and ongoing investigation of the claims at issue, including interviews of several former Funko employees; (2) preparing and filing the FAC; (3) opposing Defendants' motions to dismiss the FAC; (4) preparing and drafting the SAC, which resurrected the case after it had been dismissed in its entirety; (5) successfully opposing, in part, Defendants' motions to dismiss the SAC; (6) serving and responding to discovery requests; (7) engaging and consulting with experts concerning damages and loss causation; (8) analyzing Funko's

mediation statement and exhibits; and (9) analyzing documents produced by Funko to confirm the fairness and reasonableness of the Settlement.

As a result of these efforts, Lead Plaintiffs and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the claims when the Settlement was reached. *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) (finding, in finally approving settlement, that "Class Counsel had vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation"), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). Throughout the litigation, Lead Counsel explored the strengths and weaknesses of the claims and defenses and developed a thorough understanding of the merits of the claims. Accordingly, both Lead Plaintiffs and Lead Counsel adequately represented the Settlement Class.

### 2.     The Settlement Was at Arm's Length

Courts have long recognized that a proposed settlement is fair and reasonable when it is the "product of arms-length negotiations." *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007). The use of an experienced mediator is an "important factor" supporting a finding that this requirement is satisfied. *See In re Banc of California Sec. Litig.*, 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019); *see also Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) (approving settlement that was "the outcome of an arms-length negotiation conducted with the help of experienced mediator Michelle Yoshida of Phillips ADR"); *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 188364, at *6 (S.D. Cal. Jan. 18, 2022) (same).

Here, the Parties engaged a highly respected mediator, Michelle Yoshida. Ms. Yoshida has been a mediator for over 15 years and has been involved in the mediation of over 500 disputes. *See* http://www.phillipsadr.com/bios/michelle-yoshida/. The

Settlement was only reached after she presented, and the Parties accepted, a mediator's recommendation of $7 million.

### 3.     The Relief Provided By the Settlement is Adequate

When evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must consider whether "the relief provided for the class is adequate, taking into account … the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). Here, Rule 23(e)(2)(C) and the Ninth Circuit's factors concerning the "strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation"; and "the amount offered in settlement," are satisfied because the $7,000,000 cash recovery provides a significant and an immediate benefit to the Settlement Class, especially in light of the costs, risks, and delay posed by continued litigation. *Hefler*, 2018 WL 6619983, at *3.

### (a)     The Settlement is Well Within the Range of Reasonableness

The $7 million Settlement Amount provides a favorable recovery as a proportion of estimated damages for this Action. The Settlement recovers approximately 8.7% of the approximately $80 million in maximum estimated aggregate damages.[6] This percentage is well above the median settlement amount as reported by Cornerstone Research, which tracks and aggregates court-approved securities class action settlements. According to Cornerstone Research, the median settlement in recent comparable 10(b) cases is approximately 5% of damages for cases settled after a ruling on a motion to dismiss and before filing of class certification. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2021 Review and Analysis*, Cornerstone Research (the "Cornerstone Report") at 14, Ex. 5 to the Beige Decl.  Indeed, courts in the

---

[6] Lead Plaintiffs' $80 million damages estimate includes approximately $11 million in damages relating to Lead Plaintiffs' 20A claim and approximately $69 million relating to Lead Plaintiffs'10(b) claims.

Ninth Circuit have approved settlements that recovered similar, or smaller, percentages of maximum damages.[7]

The Settlement when viewed as a percentage of maximum damages is likely even more favorable to the Settlement Class because Lead Plaintiffs' $80 million estimate would be subject to formidable challenges at trial. Proving loss causation and damages posed serious risks to recovery for the Settlement Class. For example, Defendants would likely have contended that Lead Plaintiffs could not establish a causal connection between the alleged misrepresentation relating to Funko's inventory write-down and any loss allegedly suffered by investors. Indeed, Defendants likely would have argued that damages are zero because the stock price decline as a result of Funko's February 5, 2020 disclosures was not caused by Funko's announcement that it was taking a write-down of inventory, but instead was caused by the Company's announcement that it had missed its fourth quarter 2019 and 2019 fiscal year earnings guidance by over 25%. Lead Plaintiffs' damages expert calculated $80 million in maximum aggregate damages by assuming **100%** of the stock price decline was attributable to Funko's announcement of the write down. At the very least, Defendants would argue that Lead Plaintiffs would be required to "distinguish the impact" of the fraud (*i.e.*, damages relating to Funko's inventory write-down) and that of "non-fraud related news and events" (*e.g.*, damages relating to Funko's missed 4Q2019 and FY2019 projections), an argument which – if accepted by the Court – would reduce Lead Plaintiffs' damages estimate significantly. For example, if a jury

---

[7] *See, e.g., Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *6 (S.D. Cal. June 6, 2022) (granting final approval where proposed settlement represented "approximately 3.49% of the maximum estimate damages"); *McPhail v. First Command Fin. Planning, Inc.*, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a 7% recovery of estimated damages was fair and adequate); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (settlement yielding 6% of potential damages was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *In re Snap Sec. Litig.*, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) (approving settlement representing "approximately 7.8% of the class's maximum potential aggregate damages, which is similar to the percent recovered in other court-approved securities settlements"); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (approving securities class action settlement representing "8% of the maximum recoverable damages").

were to attribute 50% of the stock price decline to Funko's inventory write down, estimated Class-wide damages would be reduced from approximately $80 million to approximately $46 million.[8]

Defendants would have also challenged Lead Plaintiffs' calculation of 20A damages, as there are differing calculations available, each having been accepted by different district courts. *See, e.g.*, *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 664–65 (E.D. Va. 2000) (measure of Section 20A damages is limited to "the difference between the price the insider realizes and the market price of the securities after the news is released"); *Newby v. Enron Corp.,* 188 F. Supp. 2d 684, 700-01 (S.D. Tex. 2002) ("A number of cases also affirm the enforcement of section 10(b) liability through disgorgement…"). While Lead Plaintiffs would have argued in favor of a "disgorgement" of profits calculation, amounting to approximately $11 million in damages, Defendants likely would have argued that 20A damages are limited to the aggregate loss Defendant Mariotti avoided by selling prior to a corrective disclosure. Because Mariotti's sales occurred in September 2019—more than a month before the alleged misstatement—Defendants would likely argue that Mariotti did not avoid any losses because he was not able to take advantage of any artificial price inflation.

In short, if any, or all, of these defenses were accepted, the maximum damages would be substantially lower or even zero. *See Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1123 (9th Cir. 2013) (citation omitted*); see also Schechter v. Smith*, 2011 WL 13174954, at *24 (C.D. Cal. Dec. 6, 2011) (finding that "[o]ther contributing forces to an investment's decline in value would play a role in determining damages").

---

[8] Under this scenario, the $7 million Settlement represents more than 15% of the estimated recoverable damages.

Accordingly, the proposed $7 million Settlement represents an excellent recovery when viewed as a percentage of maximum recoverable damages (8.75% compared to the median recovery of 5.3%) and when compared to the median settlement amounts of similar securities class action settlements reached after a ruling on a motion to dismiss but before the filing of a motion for class certification ($4.8 million). *See* Cornerstone Report at 14.

**(b)     The Costs, Risks, and Delay of Continued Litigation**

The Settlement is also reasonable because it provides the Settlement Class with a prompt and substantial tangible recovery, without the considerable risk, expense, and delay of litigating to completion. Although Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants are meritorious, they recognize that continued litigation posed real risks that substantially less or no recovery at all might be achieved. *See, e.g.*, *Scott v. ZST Digit. Nets., Inc.*, 2013 WL 12126744, at *3, 6 (C.D. Cal. Aug. 5, 2013) (noting that claims brought under pursuant to the PSLRA "involve a 'heightened level of risk' because PSLRA 'makes it more difficult for investors to successfully prosecute securities class actions.'"); *Lo v. Oxnard European Motors, LLC*, 2011 WL 6300050, at *5 (S.D. Cal. Dec. 15, 2011) (addressing preliminary approval and stating that "'[c]onsidering the potential risks and expenses associated with continued prosecution . . . the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation,' the Court finds that, on balance, the proposed settlement is fair, reasonable, and adequate").

Indeed, the Court had already dismissed the case in its entirety, and only after Lead Plaintiffs' continued investigation, amended pleading, briefing, and supplemental submissions related to the SAC, did the Court sustain a narrow portion of the case. While Lead Plaintiffs are confident they would have prevailed at trial, success is never assured.

For example, in addition to the risks Lead Plaintiffs face with respect to establishing loss causation and damages, Defendants also strongly contest falsity and scienter. With respect to falsity, Lead Plaintiffs allege that Funko misleadingly portrayed that the risks associated with the accumulation of excess inventory as merely hypothetical ("[i]f demand or future sales do not reach forecasted levels, we *could* have excess inventory that we *may* need to hold for a long period of time, write down, sell at prices lower than expected or discard") when those risks had already transpired. On summary judgment and at trial, Defendants would likely argue (as they did in their motions to dismiss) that (i) investors were not misled by the risk warnings because Defendants accurately disclosed Funko's inventory balances and changes to that balance during the Class Period; and (ii) the question of whether Funko had accumulated excess inventory that should have been written down earlier is a matter of subjective accounting judgment, not fraud.

With respect to scienter, Defendants would continue to argue that because Lead Plaintiffs' claims are based on an omission theory they must prove that the omission was either made with the intention to deceive investors or was "highly unreasonable . . . involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care . . . ." *Zucco Partners, LLC v. Digimarc Corp*., 552 F.3d 981, 991(9th Cir. 2009). Specifically, Defendants would likely argue on summary judgment and at trial that Lead Plaintiffs could not establish Defendants' intent to defraud investors through the risk warnings, especially when considered in context with Defendants' inventory disclosures during the Class Period.

Lead Plaintiffs also faced risks in connection with their upcoming motion for class certification. The class certification stage in securities class actions is notoriously protracted, frequently involving years of additional litigation and requiring substantial resources and this Action would be no different. *See, e.g., In re Goldman Sachs Grp. Sec. Litig.*, 21-3105 (2d. Cir. Mar. 9, 2022) (Dkt. 102) (Class originally certified in 2015 and

"after a prolonged interlocutory appeals saga that has prompted three decisions from the Second Circuit, one from the Supreme Court, and untold pages of cumulative briefing," the Second Circuit again granted Defendants' motion for interlocutory appeal after district court certified a class for the third time). Thus, in addition to the usual uncertainties and risks, discovery in this Action would have been lengthy, trial would inevitably be long and complex, and even a favorable verdict would undoubtedly spur a lengthy post-trial and appellate process. While Lead Plaintiffs believe they have the better of the arguments, there are no guarantees. And, if Defendants were to prevail on any one of their arguments, the amount of recoverable damages would potentially be reduced to zero. Even if Lead Plaintiffs overcame each of these significant risks and prevailed at trial, such a victory would not guarantee the Settlement Class a recovery larger than the $7 million Settlement. In the context of these risks, Lead Plaintiffs and Lead Counsel believe that $7,000,000 is an excellent result of the Settlement Class.

### (c)     The Effective Process for Distributing Relief

The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Strategic Claims Services is an experienced claims administrator and is processing claims under the guidance of Lead Counsel by employing the same protocol for the processing of claims that is typically used in securities fraud class action settlements and routinely approved by courts in this district. *See, e.g., Chupa v. Armstrong Flooring, Inc.*, No. 2:19-CV-09840-CAS (MRWx) (C.D. Cal. Feb. 22, 2021) (Dkt. 99); *In re Silver Wheaton Corp. Sec. Litig.*, No. 2:15-cv-05146-CAS (PJWx) (C.D. Cal. Mar. 9, 2020) (Dkt. 487); *Cheng Jiangchen v. Rentech, Inc.*, No.17-cv-1490-GW(FFMX), 2019 WL 5173771, at *8 (C.D. Cal. Oct. 10, 2019) (finding a similar process "fair, reasonable and adequate"); *Hashem v. NMC Health Plc*

*et al,* 2:20-cv-02303, slip op. at 8 (C.D. Cal. Aug. 16, 2022) (Dkt. 145) (finding a similar plan of allocation "a fair and reasonable method"). *See* Beige Decl., ¶¶ 63-65.

Settlement Class members will submit the Claim Form through the Settlement website or hardcopy if necessary. Based upon the trading information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate and calculate their respective "Recognized Claim" based on the Plan of Allocation. *See id*. Lead Plaintiffs' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and given the chance to contest rejection and cure deficiencies. Any claim disputes that cannot be resolved will be presented to the Court for determination.

After the Settlement reaches its Effective Date (*see* Stipulation ¶ 34) and all applicable deadlines have passed, Authorized Claimants will be issued checks. After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, the Claims Administrator shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion.

Once it is no longer feasible or economical to make further distributions, any balance that still remains in the Net Settlement Fund after re-distribution(s) and after payment of outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, shall be contributed to the Investor Protection Trust.[9] Investor

---

[9] In its Preliminary Approval Order, the Court declined to approve of the Legal Aid Foundation of Los Angeles as a recipient of remaining funds because its mission is "unrelated to both the injuries Plaintiffs suffered and the objectives of the underlying statutes on which Plaintiffs base their claims." Preliminary Approval Order at 25. The Preliminary Approval Order further explained that, "the Legal Aid Foundation of Los Angeles is a local charity, but class members exist throughout the United States." *Id*.

Protection Trust is a nonprofit organization devoted to independent and unbiased investor education, research, and support of investor protection efforts. Since 1993, the Investor Protection Trust has worked at the state and national level to provide independent and objective investor education to enable the public to make informed investment decisions. This is related to both the injuries Lead Plaintiffs suffered and the objectives of the underlying statutes on which Lead Plaintiffs base their claims. Moreover, Investor Protection Trust functions under the direction of a Board of Trustees which is composed of various State Securities Regulators.  Additionally, several district courts in the Ninth Circuit have approved of Investor Protection Trust as a cy pres recipient in securities fraud class actions, such as this. *See, e.g., Fleming v. Impax Labs. Inc.*, 2022 WL 2789496, at *2 (N.D. Cal. July 15, 2022) (granting final approval and stating, "The Court preliminarily found a sufficient nexus between the Class and the Investor Protection Trust, which shares the Class Members' interests in protecting investors and preventing fraud…The Court continues to find a sufficient nexus."); *Hefler*, 2018 WL 6619983, at *11 (approving settlement over objection of class member and stating that, "the Court concludes that the Investor Protection Trust's mission of educating investors makes it an appropriate cy pres beneficiary.")*; In re Portland General Electric Sec. Litig*, No. 20-cv-1583-SI (D. Or. Mar. 22, 2022) (approving Investor Protection Trust as cy pres recipient).

### (d)    Lead Counsel's Request for Fees is Reasonable

Consistent with the Notice, and as discussed in Lead Counsel's memorandum of law in support of the motion for an award of attorneys' fees and expenses and reimbursement awards to Lead Plaintiffs, filed concurrently herewith (the "Fee Brief"), Lead Counsel is seeking attorneys' fees of 25% of the Settlement Fund, litigation expenses of $141,142.47, and reimbursements of $14,100 for Lead Plaintiff Zhibin

---

According, Lead Counsel respectfully submit that Investor Protection Trust is an appropriate cy pres recipient, in that it is a national organization devoted to investor education and protection efforts across the country.

Zhang, and $18,000 each for Lead Plaintiffs Huaiyu Zheng and Abdul Baker pursuant to the PSLRA. Beige Decl., Exs. 1-3, 6-7.

The fee request of 25% is the "benchmark" within the Ninth Circuit, and is smaller than or consistent with other settlements approved in the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (fee of 28% awarded); *In re Portland Gen. Elec. Co. Sec. Litig.*, 2022 WL 844077, at *7-8 (D. Or. Mar. 22, 2022) (awarding 25% of a $6.75 million settlement fund); *In re Aqua Metals, Inc. Sec. Litig.*, 2022 WL 612804, at *8-9 (N.D. Cal. Mar. 2, 2022) (awarding 25% of a $7 million securities settlement); *In re Finisar Corporation Securities Litigation*, 5:11-cv-01252, slip op. at 2 (N.D. Cal. Feb. 16, 2021) (Dkt. 214) (granting 25% fee request of $6.8 million settlement); *Steamfitters Local 449 Pension Plan v. Molina Healthcare, Inc.*, 2:18-cv-03579, slip op. at 2 (C.D. Cal. Oct. 26, 2020) (Dkt. 100) (granting 25% fee of $7.5 million settlement). Lead Counsels' fee request is reasonable, and Lead Plaintiffs have ensured that the Settlement Class is fully apprised of the terms of the proposed award of attorneys' fees, including the timing of such payments. The basis of Lead Counsels' fee and expense request is detailed in the Fee Brief.

### (e)     Disclosure and Other Agreements

As described in the motion for Preliminary Approval, the Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased a specific number of shares of Funko common stock request exclusion (or "opt out") from the Settlement. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See, e.g., In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (noting that "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack the settlement in his or her own self-interest"), *amended in*

*part* 2016 WL 6091521 (N.D. Cal. Oct. 19, 2016). To date, only one Settlement Class member has requested exclusion from the Settlement Class. *See* Beige Decl., Ex. 4 at ¶ 9. Thus, the condition under which Defendants have the right terminate the Settlement has not been triggered.

### 4. The Settlement Ensures Class Members are Treated Equitably Relative to One Another

The Plan of Allocation, drafted with the assistance of Lead Plaintiffs' damages expert, is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible claimants and treats all Settlement Class members equitably as required by Rule 23(e)(2)(D). Each Authorized Claimant, including Lead Plaintiffs, will receive a distribution pursuant to the Plan, and Lead Plaintiffs will be subject to the same formula for distribution of the Settlement as other Settlement Class members. *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *18 (D. Or. Mar. 19, 2019) (finding "[t]he Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the class" where "the proposed Plan of Allocation compensates all Class Members and Class Representatives equally in that they will receive a pro rata distribution based [sic] of the Settlement Fund based on their net losses").

### C. Certification of the Settlement Class is Appropriate

As part of the Settlement, Lead Plaintiffs respectfully request that the Court certify the Settlement Class as defined in ¶ 1 (rr) of the Stipulation. The Ninth Circuit has long recognized that courts may certify class actions "for settlement purposes only." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1018- 19 (9th Cir. 1998). A settlement class, like other certified classes, must satisfy the requirements of Rules 23(a) and (b), although Rule 23(b)(3)'s manageability concerns are not at issue. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997).  In the Preliminary Approval Order, the Court addressed the requirements for class certification as set forth in Rules 23(a) and 23(b)(3)

and determined that it "will likely be able to … certify the class for purposes of judgment on the settlement." ECF No. 193 at 7. Specifically, the Court found that "Plaintiffs satisfy all of the Rule 23(a) [and Rule 23(b)(3)] criteria." *Id.* at 11, 13. Nothing has changed since the entry of the Preliminary Order to alter the propriety of the Court's preliminary certification of the Settlement Class.

### (a)    Rule 23(a): Numerosity is Satisfied

Numerosity is satisfied here. The "numerosity" requirement is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is presumed "when a proposed class has at least forty members," *In re Banc of Cal Sec. Litig.*, 326 F.R.D. 640, 646 (C.D. Cal. 2018), and for "securities fraud suits involving nationally traded stocks." *Milbeck v. TrueCar, Inc.*, 2019 WL 2353010, at *1 (C.D. Cal. May 24, 2019). Here, throughout the Class Period, Funko common stock traded actively on the New York Stock Exchange ("NYSE"). These shares were purchased by thousands of investors, making joinder impracticable. *See In re NetSol Techs., Inc. Sec. Litig.*, 2016 WL 7496724, at *3 (C.D. Cal. July 1, 2016) ("Courts in the Central District have inferred that classes in securities cases include more than forty members based on trade volume.").

### (b)    Rule 23(a)(2): Questions of Law or Fact Are Common

Commonality is satisfied here. Commonality is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) is "construed permissively" and "[a]ll questions of fact and law need not be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Banc of Cal.*, 326 F.R.D. at 646. Plaintiffs in securities fraud litigation generally satisfy this prerequisite "very easily." *Brown v. China Integrated Energy Inc.*, 2015 WL 12720322, at *14 (C.D. Cal. Feb. 17, 2015). Here, the central questions of law and fact, such as whether

Defendants: (i) omitted or misrepresented material facts; (ii) acted with scienter; and (iii) caused class members to suffer economic losses, are the same for all members of the Settlement Class. Thus, the commonality requirement is satisfied.

### (c)    Rule 23(a)(3): Lead Plaintiffs' Claims Are Typical

Typicality is satisfied here. Rule 23(a)(3) requires that the claims of the class representative be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). Typicality is established where the claims of the proposed class representatives arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based on the same legal theory. *See In re Comput. Memories Sec. Litig.*, 111 F.R.D. 675, 680 (N.D. Cal. 1986). Rule 23(a)(3) does not require plaintiffs to show that their claims are identical on every issue to those of the class, but merely that significant common questions exist. *See In re Syncor ERISA Litig.*, 227 F.R.D. 338, 344 (C.D. Cal. 2005). Here, Lead Plaintiffs' claims are typical of those of the Settlement Class. Like other Settlement Class members, Lead Plaintiffs purchased publicly traded Funko common stock during the Class Period and have suffered damages based on the alleged misrepresentations and omissions that Defendants made to the investing public, making Lead Plaintiffs' 10(b) claims typical of the 10(b) claims of the class. Additionally, one of the Lead Plaintiffs (Abdul Baker) purchased Funko common stock contemporaneously with Defendant Mariotti, making Lead Plaintiffs' 20A claims typical of the 20A claims of the Settlement Class. Thus, Lead Plaintiffs' claims are typical.

### (d)    Rule 23(a)(4): Lead Plaintiffs and Lead Counsel Are Adequate

Adequacy is satisfied here. Rule 23(a)(4) is established if "the representative Parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class

members, and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). Here, there is no antagonism or conflict of interest between Lead Plaintiffs or Lead Counsel, and the Settlement Class. Lead Plaintiffs and Settlement Class members purchased Funko common stock during the Class Period and were injured by the same alleged false statements and omissions. Thus, Lead Plaintiffs and the Settlement Class's interests are aligned as they share the common objective of maximizing their recovery from Defendants. Additionally, Lead Plaintiffs and Lead Counsel will continue to represent the interests of the Settlement Class fairly and adequately. Lead Counsel has extensive experience in complex securities litigation, is well qualified and able to conduct the Action, and have effectively represented Lead Plaintiffs and the proposed Settlement Class throughout the Action.[10]   Accordingly, the adequacy requirement is met.

### 2.   The Settlement Class Meets the Predominance and Superiority Requirements of Rule 23(b)(3)

Predominance is satisfied here. Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods of adjudication. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

### (a)   Common Legal and Factual Questions Predominate

Common questions of law and fact predominate here. These questions predominate over individual questions because Defendants' alleged misconduct affected all Settlement Class Members in the same manner. *See, e.g., In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 632 (C.D. Cal. 2009) ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter

---

[10] Accordingly, Lead Counsel satisfies the requirements of Rule 23(g) and has already been approved by the Court to represent the class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). *See* ECF No. 58 at 18 ("[Lead Plaintiffs'] selection of experienced counsel also suggests it will adequately represent the class.").

predominate over any individual questions of reliance and damages."). Indeed, issues relating to Defendants' liability are common to all Settlement Class Members. *See id*. Additionally, falsity, materiality, scienter, and loss causation are issues that "affect investors alike," and whose proof "can be made on a class-wide basis" because they "affect[] investors in common." *Schleicher v. Wendt*, 618 F.3d 679, 685-7 (7th Cir. 2010). Likewise, here, the alleged misstatements and omissions affected all Settlement Class Members alike and proof of falsity, materiality, and causation will "be made on a class-wide basis." *Id*.

Moreover, class-wide reliance is established in this Action either through the application of *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 151 (1972), because the claims are predicated upon omissions of material fact which there was a duty to disclose, or alternatively based on the "fraud-on-the-market" presumption of reliance in *Basic v. Levinson*, 485 U.S. 224, 241-42 (1988). Applying either presumption dispenses with the requirement that each Settlement Class Member prove individual reliance on the alleged misstatements or omissions. *See id*. Here, where Funko common stock was traded on the NYSE, a national securities exchange, and was followed by numerous securities analysts and traded at regular substantial volumes, there is sufficient evidence of market efficiency. As a result, common questions of law and fact predominate.

### (b)   Class Action is Superior to Other Methods of Adjudication

Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method if litigation: "(A) the class members' interests in individually controlling the prosecution … of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by … class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See*

Fed. R. Civ. P 23(b)(3). Here, there is no evidence that putative class members' desire to bring separate individual actions, and the Parties are unaware of any individual securities fraud litigation involving the same issues. Further, resolution of this case through a class action is far superior to litigating (and settling) thousands of individual cases where the expense for a single investor would likely exceed its losses. *See* Preliminary Approval Order, ECF No. 193 at 13 ("The potential monetary relief for each Settlement Class Member … is dwarfed by the cost of litigating on an individual basis. … Without class certification, it is unlikely that these claims would be litigated at all."). As such, the predominance requirement is satisfied.

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court issue an order substantially in the form of the proposed Final Approval Order[11]: (i) finally approving the Settlement; (ii) certifying the Settlement Class; (iii) entering judgment; and (iv) granting such other and further relief as may be required.

Dated: October 3, 2022                    Respectfully submitted,

                                          **POMERANTZ LLP**
                                          /s/ Michael J. Wernke
                                          Michael J. Wernke (pro hac vice)
                                          Jeremy A. Lieberman (pro hac vice)
                                          600 Third Ave., 20th Fl.
                                          New York, NY 10016
                                          Tel: (212) 661-1100
                                          Email: mjwernke@pomlaw.com
                                          Email: jalieberman@pomlaw.com

                                          **POMERANTZ LLP**
                                          Jennifer Pafiti (SBN 282790)
                                          100 Glendon Avenue, 15th Floor
                                          Los Angeles, CA 90024

---

[11] The Proposed Final Approval Order will be submitted with Lead Counsels' reply papers, after all deadlines for objecting to, or opting out of, the Settlement have past.

Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

*Co-Lead Counsel for Lead Plaintiffs*

/s/ Stephanie M. Beige
Stephanie M. Beige
**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein (pro hac forthcoming)
Stephanie M. Beige (pro hac vice)
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Email: bernstein@bernlieb.com
Email: beige@bernlieb.com

*Co-Lead Counsel for Lead Plaintiffs*

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York, 10165
Telephone: (212) 697-6486
Email: peretz@bgandg.com
*Additional Counsel for Lead Plaintiffs*