1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**POMERANTZ LLP**
Jennifer Pafiti (SBN 292790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Co-Lead Counsel for Lead
Plaintiffs*

(*Additional counsel on signature page*)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO FERREIRA, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>     v.<br><br>FUNKO, INC., et al.,<br><br>     Defendants. | Case No. 2:20-cv-02319-VAP-(MAAx)<br><br>**NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND REIMBURSEMENT TO LEAD PLAINTIFFS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br><u>Hearing</u><br>Date: November 7, 2022<br>Time: 2:00 PM<br>Courtroom: 8A<br>Judge: Hon. Virginia A. Phillips |

## NOTICE OF UNOPPOSED MOTION

PLEASE TAKE NOTICE that on November 7, 2022 at 2:00 p.m., in Courtroom 8A in the above-entitled court, located at the 350 West 1st Street, 6th Floor, Los Angeles, California 90012, pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Counsel will move this Court for payment of attorneys' fees, expenses, and reimbursement of to Lead Plaintiffs.

**Compliance with Local Rule 7-3.** Defendants do not oppose this motion.

Dated: October 3, 2022                           Respectfully submitted,

**POMERANTZ LLP**

By: */s/* Michael J. Wernke
Michael J. Wernke (*pro hac vice*)
Jeremy A. Lieberman (*pro hac vice*)
600 Third Ave., 20th Fl.
New York, NY 10016
Tel: (212) 661-1100
jalieberman@pomlaw.com
mjwernke@pomlaw.com
**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Tel: (310) 405-7190
Email: jpafiti@pomlaw.com

*Co-Lead Counsel for Lead Plaintiffs*

**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein

2

Case No. 2:20-cv-02319-VAP-MAAx
NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES,
AND REIMBURSEMENT TO LEAD PLAINTIFFS AND
MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT

(*pro hac vice* forthcoming)
Stephanie Beige (*pro hac vice*)
10 East 40th Street
New York, NY 10016
Tel: (212) 779-1414
bernstein@bernlieb.com
beige@bernlieb.com

*Co-Lead Counsel for Lead Plaintiffs*

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Tel: (212) 697-6484
peretz@bgandg.com

*Additional Counsel for Lead Plaintiffs*

# TABLE OF CONTENTS

**Page(s)**

I.  PRELIMINARY STATEMENT ................................................................1

II.  ARGUMENT ...........................................................................................2

    A.  Awarding Attorneys' Fees Calculated as a Reasonable Percentage of the Common Fund Recovered is Appropriate ..........................2

    B.  Analysis Under the Percentage Method Justifies a 25% Contingency Fee Award ............................................................................................3

        1.  Lead Counsel Obtained an Excellent Result for the Settlement Class............4

        2.  The Risks Faced and the Risks of Continued Litigation Weigh in Favor of the Fee Request.........................................................................7

        3.  The Specialized Skill Required and High Quality of Work Support a 25% Attorney Fee .........................................................................9

        4.  The Contingent Nature of the Case and High Financial Burden Carried by Lead Counsel Support the Fee Request.........................................12

    C.  A 25% Fee Award is at or Below Awards in Similar Cases ...............14

    D.  The Fee Requested is Reasonable Under the Lodestar "Cross-Check" ..............15

    E.  Lead Counsels' Expenses Were Reasonably Incurred and Necessary to the Prosecution of this Action.....................................................18

    F.  Lead Plaintiffs Are Entitled to Reasonable Awards Under 15 U.S.C. §78u-4(a)(4)..............................................................................18

III.  CONCLUSION ........................................................................................21

i        Case No. 2:20-cv-02319-VAP-MAAx

NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND REIMBURSEMENT TO LEAD PLAINTIFFS AND MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Anixter v. Home Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996)..........................................................................13

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .........................................................................................2

*Chupa v. Armstrong Flooring, Inc.*,
   No. 2:19-cv-09840-CAS-MRW, (C.D. Cal. July 19, 2021)……………………16

*Cilluffo v. Cent. Refrigerated Servs., Inc.*,
   2018 WL 11374960 (C.D. Cal. Apr. 3, 2018)..................................................20

*Covillo v. Specialtys,
Café*, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ...........................................16

*Deaver v. Compass Bank*,
   2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) .................................................14

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016)..........................................9, 12, 18

*Fitzpatrick v. Berryhill*,
   No. 1:15-cv-1865-WTL-MJD (S.D. Ind. Oct. 30, 2017)……………………17

*Flo & Eddie Inc. v. Sirius XM Inc. Radio*,
   2017 WL 4685536 (C.D. Cal. May 8, 2017) ...................................................14

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) (reversing ........................................................13

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994).................................................................................18

ii

Case No. 2:20-cv-02319-VAP-MAAx
NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES,
AND REIMBURSEMENT TO LEAD PLAINTIFFS AND
MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT

*Hashem v. NMC Health PLC,*
2022 WL 3573145 (C.D. Cal. Apr. 8, 2022)......................................16, 17, 20

*In re Amgen Inc. Sec. Litig.,*
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)......................................17, 20

*In re Amkor Tech., Inc. Sec. Litig.,*
2009 WL 10708030 (D. Ariz. Nov. 19, 2009).............................................3

*In re Aqua Metals, Inc. Sec. Litig.,*
2022 WL 612804 (N.D. Cal. Mar. 2, 2022)...............................................14

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.,*
772 F.3d 125 (2d Cir. 2014)...............................................................20

*In re BankAtlantic Bancorp, Inc. Sec. Litig.,*
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ............................................13

*In re Biolase, Inc. Sec. Litig.,*
2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)...........................................4

*In re Broadcom Corp. Class Action Litig.,*
No. CV-06-5036-R (CWx) (C.D. Cal. Dec. 4, 2012)…………………………20

*In re Centurylink Sales Practices & Sec. Litig.,*
2021 WL 3080960 (D. Minn. July 21, 2021)..............................................20

*In re Coordinated Pretrial Proceedings In Petroleum Prods. Antitrust Litig.,*
109 F.3d 602 (9th Cir. 1997)...............................................................15

*In re CV Therapeutics, Inc. Sec. Litig.,*
2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) .............................................14

*In re Equity Funding Corp. Sec. Litig.,*
438 F. Supp. 1303 (C.D. Cal. 1977).......................................................10

*In re ESS Tech., Inc. Sec. Litig.,*
2007 WL 3231729 (N.D. Cal. Oct. 30, 2007).............................................19

*In re Finisar Corporation Securities Litigation,*

iii

No. 5:11-cv-01252(N.D. Cal. Feb. 16, 2021)…………………………………………14

*In re FLAG Telecom Holdings, ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................................................20

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
579 F. Supp. 3d 520 (S.D.N.Y. 2021)......................................................8

*In re Goldman Sachs Group Securities Litigation*,
No. 21-3105 (2d. Cir. Mar. 9, 2022)………………………………………………8

*In re Heritage Bond Litig.*,
2005 WL 1594389 (C.D. Cal. June 10, 2005) ....................................9, 10, 18

*In re HP Securities Litigation*,
No. 3:12-cv-05980-CRB,(N.D. Cal. Nov. 16, 2015)…………………………..20

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...................................................20

*In re Intuitive Surgical Securities Litigation*,
No. 5:13-cv-01920 EJD (HRL (N.D. Cal. Dec. 20, 2018)…………………………..20

*In re JDS Uniphase Securities Litigation*,
No. C-02-1486 CW (EDL) (N.D. Cal. Nov. 27, 2007)………………………......12

*In re Korean Air Lines Co., Antitrust Litig.*,
2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) ...........................................3

*In re MicroStrategy, Inc. Sec. Litig.*,
115 F. Supp. 2d 620 (E.D. Va. 2000)......................................................5

*In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*,
768 F. App'x 651 (9th Cir. 2019) .........................................................2

*In re Omnivision Tech., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................3, 4, 9, 12

*In re Oracle Corp. Sec. Litig.*,
 2009 WL 1709050 (N.D. Cal. June 19, 2009) 627 F.3d 376 (9th Cir. 2010) ................ 12

*In re Portland Gen. Elec. Co. Sec. Litig.*,
 2022 WL 844077 (D. Or. Mar. 22, 2022) ....................................................... 14

*In re Rite Aid Corp. Sec. Litig.*,
 396 F.3d 294 (3d Cir. 2005) ................................................................ 3, 11

*In re Snap Sec. Litig.*,
 2021 WL 667590 (C.D. Cal. Feb. 18, 2021) ...................................................... 4

*In re Stellantis N.V. Securities Litigation*,
 No. 1:19-cv-06770,(E.D.N.Y. Feb. 23, 2022)…………………………………………16

*In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*,
 2022 WL 525807 (D.N.J. Feb. 22, 2022) ...................................................... 15

*In re Veeco Instruments Inc. Sec. Litig.*,
 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ................................................... 19

*Kendall v. Odonate Therapeutics, Inc.*,
 2022 WL 1997530 (S.D. Cal., 2022) ............................................................ 4

*Klein v. Altria Group, Inc.*,
 No. 3:20-cv-00075(E.D. Va. Mar. 31, 2022)…………………………………………17

*Mary Ann F. v. Commissioner, Soc. Sec. Admin.*,
 2022 WL 2305258 (D. Md. June 27, 2022) .................................................... 17

*McPhail v. First Command Fin. Planning, Inc.*,
 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) .................................................... 4

*Monterrubio v. Best Buy Stores, L.P.*,
 291 F.R.D. 443 (E.D. Cal. May 14, 2013) ....................................................... 3

*Newby v. Enron Corp.*,
 188 F. Supp. 2d 684 (S.D. Tex. 2002) ......................................................... 6

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda,*
Cal., 730 F.3d 1111 ........................................................................................ 6

*Ontiveros v. Zamora,*
303 F.R.D. 356 (E.D. Cal. 2014) .................................................................. 18

*Parkinson v. Hyundai Motor Am.,*
796 F. Supp. 2d 1160 (C.D. Cal. 2010) ....................................................... 15

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.,*
2021 WL 2981970 (D. Colo. July 15, 2021) ................................................ 17

*Robbins v. Koger Props., Inc.,*
116 F.3d 1441 (11th Cir. 1997) .................................................................... 13

*Schechter v. Smith,*
2011 WL 13174954 (C.D. Cal. Dec. 6, 2011) ............................................... 6

*Schuchardt v. Law Office of Rory W. Clark,*
314 F.R.D. 673 (N.D. Cal. 2016) .................................................................. 16

*Scott v. ZST Digit. Nets., Inc.,*
2013 WL 12126744 (C.D. Cal. Aug. 5, 2013) ............................................... 7

*Stanger v. China Elec. Motor, Inc.,*
812 F.3d 734 (9th Cir. 2016) .......................................................................... 2

*Steinberg v. Opko Health, Inc.,*
No. 1:18-cv-23786 (S.D. Fl. Apr. 29, 2021) ................................................ 20

*Steiner v. Am. Broad. Co.,*
248 F. App'x 780 (9th Cir. 2007) ................................................................. 15

*Taylor v. Shutterfly, Inc.,*
2021 WL 5810294 (N.D. Cal. Dec. 7, 2021) ............................................... 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007) ........................................................................................ 2

*Vincent v. Hughes Air West, Inc.*,
  557 F.2d 759 (9th Cir. 1977) .......................................................................... 2

*Vitiello v. Bed Bath & Beyond, Inc.*,
  No. 2:20-CV-04240-MCA-MAH,(D.N.J. June 3, 2022) ……………………………16

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .............................................................passim

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) .......................................................................... 8

*Zwick Partners, LP v. Quorum Health Corp.*,
  No. 3:16-cv-02475(M.D. Tenn. Nov. 30, 2020) ……………………………………17

**Statutes**

15 U.S.C. §78u-4(a)(4) ......................................................... 1, 18, 19

15 U.S.C. §78u-4(a)(6) ...................................................................3

Case No. 2:20-cv-02319-VAP-MAAx
Notice of Motion and Motion for Award of Attorneys' Fees, Expenses,
and Reimbursement to Lead Plaintiffs and
Memorandum of Points and Authorites in Support

## I.   PRELIMINARY STATEMENT

Lead Counsel respectfully submit this memorandum of points and authorities in support of their application for: (i) an award of attorneys' fees of 25% of the Settlement Fund; (ii) payment of litigation expenses in the amount of $141,142.47; and (iii) reimbursement in the amount of $14,100 for Lead Plaintiff Zhibin Zhang, and $18,000 each for Lead Plaintiffs Huaiyu Zheng and Abdul Baker in connection with their representation of the Settlement Class, pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4).[1]

The Settlement provides a significant recovery of $7 million in cash to resolve all claims in this Action.[2]  This recovery is a very favorable result for the Settlement Class and avoids the substantial risks and expenses of continued litigation, including the risk of recovering less, or nothing at all.[3]  Lead Counsel litigated this Action on a contingency basis and have not received any compensation for their prosecution of this case during more than two and a half years of litigation. As discussed herein, as well as in the Beige Declaration, it is respectfully submitted that the "benchmark" 25% fee is fair, reasonable, and appropriate under the circumstances of this case. Based on Lead Counsels' lodestar, the requested fee award represents a negative lodestar multiplier (or discount factor) of 0.69, and is within the range of attorney fee awards routinely granted by courts in this Circuit.

The litigation expenses requested are also reasonable and were necessarily incurred

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation and Agreement of Settlement filed with the Court on June 3, 2022 (the "Stipulation") (ECF No. 186-1).

[2] The Settlement resolves all claims asserted against the Settling Defendants and the ACON Defendants (referred to collectively as "Defendants").

[3] A detailed description of the procedural history, settlement negotiations, and the considerations leading to the Settlement is set forth in the Declaration of Stephanie M. Beige in Support of Final Approval of the Settlement and Payment of Attorneys' Fees and Expenses dated October 3, 2022 (the "Beige Decl.") and in Lead Plaintiffs' Motion in Support of Final Approval of Class Action Settlement, Plan of Allocation, and Certification of Settlement Class ("Final Approval Brief") filed concurrently herewith and incorporated by reference herein.

for the successful prosecution of the Action. Finally, Lead Plaintiffs' PSLRA reimbursement requests are justified given the time Lead Plaintiffs spent litigating on behalf of the Settlement Class.

Accordingly, Lead Counsel respectfully request approval of this motion for attorneys' fees and payment of expenses.

## II.   ARGUMENT

### A.   Awarding Attorneys' Fees Calculated as a Reasonable Percentage of the Common Fund Recovered is Appropriate

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Similarly, the Ninth Circuit has held that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *accord*, *In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019). Courts recognize that awards of fair attorneys' fees from a common fund are important to incentivizing attorneys to represent class clients, who might otherwise be denied access to counsel, particularly on a contingency basis. *See Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016); *see also* Preliminary Approval Order, ECF No. 193 at 13 ("The potential monetary relief for each Settlement Class Member … is dwarfed by the cost of litigating on an individual basis. … Without class certification, it is unlikely that these claims would be litigated at all."). In securities class actions, an award of fair attorneys' fees serves the public interest, as private securities actions are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the U.S. Securities Exchange Commission. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

Although courts have discretion to employ either the percentage of recovery or lodestar method, "[t]he use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Korean Air Lines Co., Antitrust Litig.*, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013); *see also In re Amkor Tech., Inc. Sec. Litig.*, 2009 WL 10708030, at *1 (D. Ariz. Nov. 19, 2009) (percentage-of-recovery method most appropriate to award attorneys' fees in securities class action); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("use of the percentage method in common fund cases appears to be dominant"). Thus, the Ninth Circuit has consistently approved the use of the percentage method in common fund cases.[4]

## B.    Analysis Under the Percentage Method Justifies a 25% Contingency Fee Award

In awarding attorneys' fees from a common fund, the Court must determine whether the requested fee is reasonable. The Ninth Circuit has stated that a 25% fee is the benchmark percentage of recovery for class actions, which may be adjusted depending on the circumstances of each case. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002); *see also Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. May 14, 2013) ("courts typically set a benchmark of 25% of the fund as a reasonable fee award"). The reasonableness of a 25% fee here is strongly supported by the relevant factors considered by courts within the Ninth Circuit, including: (a) the results achieved; (b) the risks of litigation; (c) the skill required and the quality of work; (d) the contingent nature of the fee; (e) the burdens carried by the class counsel; and (f) the awards made in

---

[4] The PSLRA likewise contemplates that fees be awarded on a percentage basis, authorizing attorneys' fees and expenses to counsel that do not exceed "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("[T]he percentage-of-recovery method was incorporated in the [PSLRA].").

similar cases. *See Omnivision*, 559 F. Supp. 2d at 1046 (citing *Vizcaino*, 290 F.3d at 1048-50).

### 1. Lead Counsel Obtained an Excellent Result for the Settlement Class

The $7 million Settlement Amount provides a favorable recovery as a proportion of estimated damages for the Action.  The Settlement recovers approximately 8.7% of the approximately $80 million in maximum estimated aggregate damages.[5] This percentage is well above the median settlement amount as reported by Cornerstone Research, which tracks and aggregates court-approved securities class action settlements. According to Cornerstone Research, the median settlement in recent comparable 10(b) cases is approximately 5% of damages for cases settled after a ruling on a motion to dismiss and before filing of class certification. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2021 Review and Analysis*, Cornerstone Research (the "Cornerstone Report") at 14, attached as Exhibit 5 to the Beige Decl. Indeed, courts in the Ninth Circuit have approved settlements that recovered similar, or smaller, percentages of maximum damages.[6]

The Settlement when viewed as a percentage of maximum damages is likely even more favorable to the Settlement Class because Lead Plaintiffs' $80 million estimate

---

[5] Lead Plaintiffs' $80 million damages estimate includes approximately $11 million in damages relating to Lead Plaintiffs' 20A claim and approximately $69 million relating to Lead Plaintiffs' 10(b) claims.

[6] *See, e.g., Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *6 (S.D. Cal., 2022) (granting final approval where proposed settlement represented "approximately 3.49% of the maximum estimate damages"); *McPhail v. First Command Fin. Planning, Inc.*, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a 7% recovery of estimated damages was fair and adequate); *Omnivision*, 559 F. Supp. 2d at 1042 (settlement yielding 6% of potential damages was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *In re Snap Sec. Litig.*, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) (approving settlement representing "approximately 7.8% of the class's maximum potential aggregate damages, which is similar to the percent recovered in other court-approved securities settlements"); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (approving securities class action settlement representing "8% of the maximum recoverable damages").

would be subject to formidable challenges at trial. Proving loss causation and damages posed serious risks to recovery for the Settlement Class. For example, Defendants would likely have contended that Lead Plaintiffs could not establish a causal connection between the alleged misrepresentation relating to Funko's inventory write-down and any loss allegedly suffered by investors. Indeed, Defendants likely would have argued that damages are zero because the stock price decline as a result of Funko's February 5, 2020 disclosures was not caused by Funko's announcement that it was taking a write-down of inventory, but instead was caused by the Company's announcement that it had missed its fourth quarter 2019 and 2019 fiscal year earnings guidance by over 25%. Lead Plaintiffs' damages expert calculated $80 million in maximum aggregate damages by assuming **100%** of the stock price decline was attributable to Funko's announcement of the write down. At the very least, Defendants would argue that Lead Plaintiffs would be required to "distinguish the impact" of the fraud (*i.e.*, damages relating to Funko's inventory write-down) and that of "non-fraud related news and events" (*e.g.*, damages relating to Funko's missed 4Q2019 and FY2019 projections), an argument which – if accepted by the Court – would reduce Lead Plaintiffs' damages estimate significantly. For example, if a jury were to attribute 50% of the stock price decline to Funko's inventory write down, estimated Class-wide damages would be reduced from approximately $80 million to approximately $46 million.[7]

Defendants would have also challenged Lead Plaintiffs' calculation of 20A damages, as there are differing calculations available, each having been accepted by different district courts. *See, e.g.*, *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 664–65 (E.D. Va. 2000) (measure of Section 20A damages is limited to "the difference between the price the insider realizes and the market price of the securities

---

[7] Under this scenario, the $7 million Settlement represents more than 15% of the estimated recoverable damages.

after the news is released"); *Newby v. Enron Corp.,* 188 F. Supp. 2d 684, 700-01 (S.D. Tex. 2002) ("A number of cases also affirm the enforcement of section 10(b) liability through disgorgement…"). While Lead Plaintiffs would have argued in favor of a "disgorgement" of profits calculation, amounting to approximately $11 million in damages, Defendants likely would have argued that 20A damages are limited to the aggregate loss Defendant Mariotti avoided by selling prior to a corrective disclosure. Because Mariotti's sales occurred in September 2019—more than a month before the alleged misstatement—Defendants would likely argue that Mariotti did not avoid any losses because he was not able to take advantage of any artificial price inflation.

In short, if just one of these defenses was accepted, the maximum damages would be substantially lower, and the $7 million settlement would thus represent a far greater recovery when viewed as a percentage of maximum damages. Indeed, if after multiple years of litigation, ***any*** of these defenses were accepted by the court or a jury, the maximum damages could potentially be single digit millions or zero. *See Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1123 (9th Cir. 2013) (citation omitted*); see also Schechter v. Smith*, 2011 WL 13174954, at *24 (C.D. Cal. Dec. 6, 2011) (finding that "[o]ther contributing forces to an investment's decline in value would play a role in determining damages").

Accordingly, the proposed $7 million Settlement represents an excellent result of the Settlement Class, particularly when viewed as a percentage of maximum recoverable damages (8.75% compared to the median recovery of 5.3%) and when compared to the median settlement amount of similar securities class action settlements reached after a ruling on a motion to dismiss but before the filing of a motion for class certification ($4.8 million). *See* Cornerstone Report at 14.  Thus, this factor weighs in favor of approving the requested fee.

### 2.   The Risks Faced and the Risks of Continued Litigation Weigh in Favor of the Fee Request

The requested fee is reasonable in light of the risks faced litigating this case to date and the risks and uncertainty of continued litigation.   The Settlement provides the Settlement Class with a prompt and substantial tangible recovery, without the considerable risk, expense, and delay of litigating to completion. Although Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants are meritorious, they recognize that continued litigation posed real risks that substantially less or no recovery at all might be achieved. *See, e.g.*, *Scott v. ZST Digit. Nets., Inc.*, 2013 WL 12126744, at *3, 6 (C.D. Cal. Aug. 5, 2013) (noting that claims brought under pursuant to the PSLRA "involve a 'heightened level of risk' because PSLRA 'makes it more difficult for investors to successfully prosecute securities class actions.'").

Indeed, the high degree of risk faced in this Action is illustrated by the fact that the Court already dismissed the case in its entirety.   It was only after Lead Plaintiffs' continued investigation, amended pleading, briefing, and supplemental submissions related to the SAC, that the Action was resurrected, and the Court sustained a narrow portion of the case. While Lead Plaintiffs are confident they would have prevailed at trial, success is never assured.

For example, in addition to the risks Lead Plaintiffs face with respect to establishing loss causation and damages (*see supra* Section II.B.1), Defendants also strongly contested falsity and scienter at the motion to dismiss stage and would continue to do so at summary judgment and trial. With respect to falsity, Lead Plaintiffs allege that Funko misleadingly portrayed that the risks associated with the accumulation of excess inventory as merely hypothetical ("[i]f demand or future sales do not reach forecasted levels, we *could* have excess inventory that we *may* need to hold for a long period of time, write down, sell at prices lower than expected or discard") when those risks had already transpired. On summary judgment and at trial, Defendants would likely argue (as they

did in their motions to dismiss) that (i) investors were not misled by the risk warnings because Defendants accurately disclosed Funko's inventory balances and changes to that balance during the Class Period; and (ii) the question of whether Funko had accumulated excess inventory that should have been written down earlier is a matter of subjective accounting judgment, not fraud.

With respect to scienter, Defendants would continue to argue that because Lead Plaintiffs' claims are based on an omission theory they must prove that the omission was either made with the intention to deceive investors or was "highly unreasonable . . . involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care . . . ." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). Specifically, Defendants would likely argue on summary judgment and at trial that Lead Plaintiffs could not establish Defendants' intent to defraud investors through the risk warnings, especially when considered in context with Defendants' inventory disclosures during the Class Period.

Lead Plaintiffs also faced risks in connection with their upcoming motion for class certification. The class certification stage in securities class actions is notoriously protracted, frequently involving years of additional litigation and requiring substantial resources and this Action would be no different. *See, e.g., In re Goldman Sachs Group Securities Litigation*, No. 21-3105 (2d. Cir. Mar. 9, 2022) (Dkt. 102) (Class originally certified in 2015 and "after a prolonged interlocutory appeals saga that has prompted three decisions from the Second Circuit, one from the Supreme Court, and untold pages of cumulative briefing," the Second Circuit again granted Defendants' motion for interlocutory appeal after district court certified a class for the third time); *see also In re Goldman Sachs Grp., Inc. Sec. Litig.*, 579 F. Supp. 3d 520, 522 (S.D.N.Y. 2021); Cornerstone Report at 14 ("Once a motion for class certification was filed, the median interval to the settlement hearing date for 2021 settlements was around 1.5 years."). Thus, in addition to the uncertainties and risks, discovery, class certification, and summary

judgment in this Action would have been lengthy, trial would inevitably be long and complex, and even a favorable verdict would undoubtedly spur a lengthy post-trial and appellate process. While Lead Plaintiffs believe they have the better of the arguments, there are no guarantees. And, if Defendants were to prevail on any one of their arguments, the amount of recoverable damages would potentially be reduced to zero. Even if Lead Plaintiffs overcame each of these significant risks and prevailed at trial, such a victory would not guarantee the Settlement Class a recovery larger than the $7 million Settlement.

In sum, while Lead Plaintiffs and Lead Counsel believe that this case has merit, it is nevertheless true that there was a high degree of risk faced in this Action and these risks were not going away. Defendants had several non-frivolous defenses—best illustrated by the fact that the Defendants originally prevailed on some defenses in their initial motions to dismiss. The Settlement Amount is statistically significant and even more impressive in light of the high degree of risk to any recovery from the outset. Accordingly, the risks Lead Counsel faced for the Settlement Class merit a 25% contingency fee award.

### 3. The Specialized Skill Required and High Quality of Work Support a 25% Attorney Fee

Courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities." *In re Heritage Bond Litig.*, 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005); *see also Vizcaino*, 290 F.3d at 1048. "This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) (quoting *Omnivision*, 559 F. Supp. 2d at 1047).

Here, in addition to the complexities of this being a securities case, the case centered on Defendants' alleged false and misleading statements and omissions

concerning Funko's excess inventory and the Company's treatment of that inventory for accounting purposes. Lead Counsel vigorously pursued this litigation for over two and half years, by: (1) conducting an extensive pre-suit and ongoing investigation of the claims at issue, including interviews of several former Funko employees; (2) preparing and filing the First Amended Complaint (the "FAC"); (3) opposing Defendants' motions to dismiss the FAC; (4) preparing and drafting the Second Amended Complaint (the "SAC"), which resurrected the case after it had been dismissed in its entirety; (5) successfully opposing, in part, Defendants' motions to dismiss the SAC; (6) serving and responding to discovery requests; (7) consulting damage experts and analyzing various damages' scenarios; (8) conducting confirmatory discovery to confirm the fairness of the Settlement; and (9) preparing for and engaging in an all-day mediation, ultimately culminating in the Settlement for the benefit of the Class.

Lead Counsel used their extensive and significant experience in the highly specialized field of securities class action litigation for the benefit of the Settlement Class. Lead Counsel have not only used their knowledge and skill from prior cases, but also developed specific expertise in the accounting issues presented here to overcome the obstacles presented by Defendants. The favorable Settlement is attributable in large part to the diligence, determination, hard work, and skill of Lead Counsel, who developed, litigated, and successfully settled the Action.

The quality of opposing counsel is also important in evaluating the quality of the work done by Lead Counsel. *See, e.g., Heritage Bond*, 2005 WL 1594389, at \*12, 20; *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977). Lead Counsel was opposed in this Action by very skilled and highly respected lawyers with well-deserved reputations for vigorous advocacy in the defense of complex civil cases such as this. Here, Defendants were represented by the law firms of Latham & Watkins LLP and Aegis Law Group LLP, both of which presented very skilled defenses and spared no effort in representing their clients. Beige Decl., ¶ 74. Notwithstanding this

formidable opposition, Lead Counsels' ability to present a strong case and to demonstrate their willingness to continue to aggressively litigate this Action through trial and inevitable appeals, enabled Lead Counsel to achieve the Settlement for the benefit of the Settlement Class.

Moreover, the positive reaction by Settlement Class members confirms the high quality of Lead Counsels' representation. To date, the Claims Administrator has mailed 21,316 postcard notices to potential Settlement Class Members, posted the Internet Notice and Proof of Claim form on the Claims Administrator's website along with a link for online claim filing and a list of important deadlines, and published the Summary Notice over PR Newswire and in *Investor's Business Daily*. *See* Beige Decl., Ex. 4 (Declaration of Josephine Bravata Concerning (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusions), at ¶¶ 6-8. Additionally, the Claims Administrator emailed 8,860 Class Members directly to notify them of this Settlement and provide a direct link to the Postcard Notice on the settlement webpage. *See id.* In total, the Claims Administrator notified 30,176 potential Settlement Class Members either by mailing Postcard Notice or emailing a direct link to the Postcard Notice.[8] *Id.* These notices informed Settlement Class members that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund, plus expenses not to exceed $275,000. The Claims Administrator has been monitoring all mail delivered for this case. *Id.* To date, not a single objection to the fee and expense amounts set forth in the Notice has been received. *See* Beige Decl., ¶ 12. Similarly, to date, only one exclusion request was received. *See id.* Such a "low level of objection is a 'rare phenomenon.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005). The fact that no objections have been received to date,

---

[8] The Claims Administrator will include a request for reimbursement of fees and expenses incurred to date as a result of the settlement administration process in its supplemental declaration to be filed on October 31, 2022.

and only one of over 30,000—or 0.003%—of the Settlement Class members requested to be excluded, exemplifies the skill and high-quality work done to achieve a favorable settlement, which in turn supports the fee request.

### 4. The Contingent Nature of the Case and High Financial Burden Carried by Lead Counsel Support the Fee Request

It has long been recognized that attorneys are entitled to a larger fee when their compensation is contingent in nature. *See Vizcaino*, 290 F.3d at 1048-50; *Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."); *see also Zynga*, 2016 WL 537946, at *18 (noting that "when counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award"). Indeed, there have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expended hundreds of thousands of hours and millions of dollars yet received no remuneration whatsoever despite their diligence and expertise. For example, counsel in *In re JDS Uniphase Securities Litigation*, No. C-02-1486 CW (EDL) (N.D. Cal. Nov. 27, 2007) (Dkt. 1883), tried the case through to a disappointing verdict in favor of the defendants, receiving no compensation and expending millions of dollars in time and expenses. *See also In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050, at *34 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants after eight years of litigation, and after plaintiff's counsel worked over 100,000 hours, representing a lodestar of approximately $48 million, and incurred over $6 million in expenses), *aff'd*, 627 F.3d 376 (9th Cir. 2010). Lead Counsel is aware of many other hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts

by members of the plaintiffs' bar produced no fee for counsel. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice); *Anixter v. Home Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation). Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See, e.g., In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *37-38 (S.D. Fla. Apr. 25, 2011) (after plaintiffs' 2010 jury verdict, court granted defendants' motion for judgment as a matter of law on loss causation grounds), *aff'd. sub. nom Hubbard v. BankAtlantic Bancorp. Inc.*, 688 F.3d 713, 730 (11th Cir. 2012) (defendants entitled to judgment as matter of law on lack of loss causation); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 433 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction).

Lead Counsel undertook this litigation on a wholly contingent-fee basis, investing substantial time and money to prosecute a risky action with no guarantee of compensation for the investment of time and money the case would require, or even the recovery of expenses. Beige Decl. ¶¶ 51-61. Lead Counsel has not been compensated for any time or expenses since being appointed by the Court over two years ago in June 2020 and would have received no compensation or payment of its expenses had this case not been resolved successfully. *Id.*, ¶¶ 66-74. Nevertheless, Lead Counsel ensured from the outset that sufficient resources were dedicated to the Action and that funds were available to compensate staff and cover any necessary expenses. With an average time of several years for a case like this to conclude, the financial burden on Lead Counsel was greater than on firms that are paid on an ongoing basis.

Because Lead Counsels' fee was entirely contingent, the only certainty was that there would be no fee without a successful result and that such result would only be realized after significant amounts of time, effort, and expense had been expended. Unlike

counsel for Defendants, who were paid and reimbursed for their expenses on a current basis, Lead Counsel have received no compensation for their efforts during the course of the Action. Lead Counsel have risked non-payment of $2,546,814.39 in time worked on this matter and over $140,000 in expenses, knowing that if their efforts were not successful, no fees or expenses would be paid.

## C.    A 25% Fee Award is at or Below Awards in Similar Cases

The requested fee is 25% — the benchmark recommended by the Ninth Circuit for securities class actions – and is consistent with recent fee awards in securities class action settlements within the Ninth Circuit. *See, e.g., In re Portland Gen. Elec. Co. Sec. Litig.*, 2022 WL 844077, at *7-8 (D. Or. Mar. 22, 2022) (awarding 25% of a $6.75 million settlement fund); *In re Aqua Metals, Inc. Sec. Litig.*, 2022 WL 612804, at *8-9 (N.D. Cal. Mar. 2, 2022) (awarding 25% of a $7 million securities settlement); *In re Finisar Corporation Securities Litigation*, No. 5:11-cv-01252, slip op. at 2 (N.D. Cal. Feb. 16, 2021) (Dkt. 214) (granting 25% fee request of $6.8 million settlement); *Steamfitters Local 449 Pension Plan v. Molina Healthcare, Inc.*, No. 2:18-cv-03579 (C.D. Cal. Oct. 26, 2020) (Dkt. 100) (granting 25% fee of $7.5 million settlement). Moreover, fee awards greater than 25%, are regularly awarded in class actions in district courts throughout the Ninth Circuit.  *See, e.g., Deaver v. Compass Bank*, 2015 WL 8526982, at *10-11, 15 (N.D. Cal. Dec. 11, 2015) (awarding 33.33% of $500,000 settlement fund); *see also In re CV Therapeutics, Inc. Sec. Litig.*, 2007 WL 1033478, at *1 (N.D. Cal. Apr. 4, 2007) (awarding 30% fee of $13.5 million settlement); *Flo & Eddie Inc. v. Sirius XM Inc. Radio*, 2017 WL 4685536, at *7, 11 (C.D. Cal. May 8, 2017) (awarding 30% fee in $35 million settlement). Accordingly, it is respectfully submitted that a 25% fee is comparable to awards in similar cases.

### D.     The Fee Requested is Reasonable Under the Lodestar "Cross-Check"

Although an analysis of counsel's lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with Lead Counsels' lodestar demonstrates it is reasonable. *See Vizcaino*, 290 F.3d at 1048-51; *see also In re Coordinated Pretrial Proceedings In Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) (comparing the lodestar fee to the percentage fee is an appropriate measure of a percentage fee's reasonableness).

Lead Counsels' combined lodestar is $2,546,814.39 for 3,211 hours of work through September 30, 2022.[9] The requested 25% fee, if awarded, would represent a "negative multiplier" (or discount factor) of 0.69.  *See* Exs. 6-7. The negative multiplier of 0.69 is substantially lower than lodestar multipliers of between 1.0 and 4.0 that have been found to be reasonable in this Circuit. *See Parkinson v. Hyundai Motor Am.,* 796 F. Supp. 2d 1160, 1170 (C.D. Cal. 2010) (observing that "multipliers may range from 1.2 to 4 or even higher"); *Vizcaino*, 290 F.3d at 1051 n.6, 1052–54 (determining that a fee multiplier of 1.0–4.0 was awarded in 83% of common fund cases reviewed); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (finding that 6.85 multiplier "falls well within the range of multipliers that courts have allowed"). Indeed, the Ninth Circuit has recognized that attorneys in common fund cases are frequently awarded a multiple of their lodestar, rewarding them "for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino*, 290 F.3d at 1051.

Here, far from an "upward" multiplier, Lead Counsel seek a "negative" multiplier (*i.e.,* discount factor). The negative multiplier of 0.69, itself "demonstrates the reasonableness of the [requested] fee award." *Taylor v. Shutterfly, Inc.*, 2021 WL 5810294, at *9 (N.D. Cal. Dec. 7, 2021); *see also In re Valeant Pharms. Int'l, Inc. Third-*

---

[9] Lead Counsel have not included time spent on preparing this Fee Application in their total lodestar amounts.

*Party Payor Litig.*, 2022 WL 525807, at *7 (D.N.J. Feb. 22, 2022) (noting that a negative multiplier is "strong evidence that the requested fees are reasonable"); *Hashem v. NMC Health PLC*, 2022 WL 3573145, at *3 (C.D. Cal. Apr. 8, 2022) (noting that a negative multiplier "is significantly lower than the range typically awarded in this District"); *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 690-91 (N.D. Cal. 2016) (holding a negative lodestar multiplier is an indication of the reasonableness of fee request); *Covillo v. Specialtys Café*, 2014 WL 954516, at *7 (N.D. Cal. Mar. 6, 2014) ("[Lead Counsel's] requested fee…results in a so-called negative multiplier, suggesting that the percentage of the fund is reasonable and fair.").

Lead Counsels' current hourly rates are also reasonable. Lead Counsels' rates range from $1,000 to $1,150 per hour for partners and $550 to $900 per hour for associates or senior counsel.[10] *See* Beige Decl., Exs. 6-7. Lead Counsel submit that these rates are comparable, or less than, those used by peer defense side law firms litigating matters of similar magnitude (as shown by a sample of defense firm rates in 2019 from bankruptcy court filings nationwide – which often exceeded Lead Counsels' rates).  *See* Ex. 8. Lead Counsels' rates have also recently been reviewed and approved by federal district courts in this district and across the country. For example, Bernstein Liebhard LLP's rates have most recently been approved in *Chupa v. Armstrong Flooring, Inc.*, No. 2:19-cv-09840-CAS-MRW, slip op. at 3-4, (C.D. Cal. July 19, 2021) (Dkt. 113) (awarding 25% of the $3.75 million recovery), in *In re Stellantis N.V. Securities Litigation*, No. 1:19-cv-06770, slip op. at 8 (E.D.N.Y. Feb. 23, 2022) (Dkt. 70) (awarding 33 1/3% of $5 million recovery), and in *Vitiello v. Bed Bath & Beyond, Inc.*, No. 2:20-CV-04240-MCA-MAH, slip op. at 15 (D.N.J. June 3, 2022) (Dkt. 90) (awarding 33 1/3%

---

[10] Because Lead Counsels' time records contain privileged information and would be burdensome to redact, Lead Counsel are not submitting itemized time records in connection with this motion. However, these records are available at the Court's request. As such, Lead Counsel respectfully request that if the Court requests such records, that Lead Counsel be permitted to submit such records *in camera* or to redact the records for privileged material prior to submission.

of $7 million recovery).[11] Similarly, Pomerantz LLP's rates have recently been approved in *Klein v. Altria Group, Inc.*, No. 3:20-cv-00075, slip op. at 10 (E.D. Va. Mar. 31, 2022) (Dkt. 320) (awarding 30% of $90 million recovery) and *Zwick Partners, LP v. Quorum Health Corp.*, No. 3:16-cv-02475, slip op. at 4, 10 (M.D. Tenn. Nov. 30, 2020) (Dkt. 359) (awarding 30% of $18 million recovery). *See* Ex. 7.

Additionally, Lead Counsels' rates are consistent with the hourly rates of many other plaintiff firms that have been found to be reasonable. *See e.g., Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, 2021 WL 2981970, at *3 (D. Colo. July 15, 2021) (stating, in a securities class action, that "Lead Counsel's hourly rates—ranging from $365 to $895 for attorneys… are lower than hourly rates previously approved by this Court and others within the District"); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (finding in a securities class action - 6 years ago - that "billing rate[s] ranging from $750 to $985 per hour for partners, $500 to $800 per hour for 'of counsels'/senior counsel, and $300 to $725 per hour for other attorneys" were reasonable.); *Hashem*, 2022 WL 3573145, at *2 (finding, in a securities class action, that hourly rates of up to $675 for associates and $925 for partners were reasonable); *Mary Ann F. v. Commissioner, Soc. Sec. Admin.*, 2022 WL 2305258, at *1 (D. Md. June 27, 2022) (finding $1,200 hourly rate reasonable); *Fitzpatrick v. Berryhill*, No. 1:15-cv-1865-WTL-MJD, slip op. at 1-2 (S.D. Ind. Oct. 30, 2017) (Dkt. 33) (approving an award equivalent to an hourly rate of between $1,045 and $2,908).

Moreover, additional work will be required of Lead Counsel on an ongoing basis, including: correspondence with Settlement Class members; supervising the claims administration process being conducted by the Claims Administrator; and supervising the distribution of the Net Settlement Fund to Settlement Class members who have submitted valid Claim Forms. Accordingly, a 25% fee is warranted for this case.

---

[11] Moreover, Bernstein Liebhard LLP's rates are the actual rates paid by its hourly clients. *See* Beige Decl. Ex. 6 at ¶¶ 3-5.

### E.  Lead Counsels' Expenses Were Reasonably Incurred and Necessary to the Prosecution of this Action

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (citing *Heritage Bond*, 2005 WL 1594403, at *23). "To that end, courts throughout the Ninth Circuit regularly award litigation costs and expenses – including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses in securities class actions, as attorneys routinely bill private clients for such expenses in noncontingent litigation." *Zynga*, 2016 WL 537946, at *22 (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Here, Lead Counsel incurred reasonable and necessary costs and expenses in the total amount of $141,142.47 which are detailed in Lead Counsels' individual firm declarations. *See* Exs. 6-7. Because the expenses were incurred with no guarantee of recovery, Lead Counsel had a strong incentive to keep them as low as reasonably possible. Indeed, the total expenses are less than the $275,000 estimate in the Notice. Although the objection deadline will not run until October 17, 2022, to date, no objections to the maximum requested amount of expenses have been received.

### F.  Lead Plaintiffs Are Entitled to Reasonable Awards Under 15 U.S.C. §78u-4(a)(4)

The PSLRA at 15 U.S.C. § 78u-4(a)(4) provides for an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). The PSLRA "provides in pertinent part that, although class representatives must share the recovery in the same proportion as all other members of the class, '[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class.'" *Heritage Bond*, 2005 WL 1594403,

at *3 (quoting 15 U.S.C. § 78u-4(a)(4). As such, the PSLRA specifically contemplates that a class representative could be awarded reasonable lost wages in pursuing litigation. *See In re ESS Tech., Inc. Sec. Litig.*, 2007 WL 3231729, at *2 (N.D. Cal. Oct. 30, 2007). To that end, "[n]umerous courts reviewing lead plaintiff fee requests under the PSLRA have concluded that in order to recover under § 78u-4(a)(4), the lead plaintiff must provide meaningful evidence demonstrating that the requested amounts represent actual costs and expenses incurred directly as result of the litigation." *In re ESS Tech*., 2007 WL 3231729, at *2.

Lead Plaintiffs have devoted a substantial amount of time to his case on behalf of the Settlement Class and respectfully request reimbursements in the amount of $14,100 for Lead Plaintiff Zhibin Zhang, and $18,000 each for Lead Plaintiffs Huaiyu Zheng and Abdul Baker based on the value of time devoted to the Action. *See* Beige Decl., Exs. 1-3. Lead Plaintiffs submitted declarations describing the work contributed to the case, and the time required to complete such work. *See id.* Specifically Lead Plaintiff Abdul Baker spent 15 hours at an hourly rate of $1,500; Lead Plaintiff Zhibin Zhang, spent 94 hours and an hourly rate of $150; and Lead Plaintiff Huaiyu Zheng spent 98 hours and an hourly rate of $185.[12]   *Id.*   Lead Plaintiffs' work dedicated to the case includes, among other things, time spent communicating with Lead Counsel, reviewing pleadings and briefs, locating and pulling data and documents to be produced in discovery, and consulting with counsel during the course of settlement negotiations. *Id.*   These efforts required Lead Plaintiffs to dedicate time and effort to the Action that they would have otherwise devoted to their regular duties and thus represented a cost to Lead Plaintiffs. *Id*.   These are precisely the types of activities that courts have found support PSLRA reimbursement requests. *See e.g., In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808 at *12 (S.D.N.Y. Nov. 7, 2007) (reimbursing plaintiff $15,900 for time spent supervising

---

[12] The basis of the Lead Plaintiffs' regular hourly rates are set forth in their respective declarations. *See* Beige Decl., Exs. 1-3.

litigation and characterizing such awards as "routine"); *In re Broadcom Corp. Class Action Litig.*, No. CV-06-5036-R (CWx), slip op. at 2 (C.D. Cal. Dec. 4, 2012) (Dkt. 454) (awarding costs and expenses to class representative in the amount of $21,087); *In re Intuitive Surgical Securities Litigation*, No. 5:13-cv-01920 EJD (HRL), slip op. at 4 (N.D. Cal. Dec. 20, 2018) (Dkt. 311) (reimbursing a class representative $49,754.18).

Here, the requested amounts of $14,100, $18,000, and $18,000 (approximately 0.25% of the Settlement) are justified and comparable to reimbursements in similar cases. *See e.g., Hashem*, 2022 WL 3573145, at *4 (granting Lead Plaintiffs' reimbursement request that amounted to 2.9% of the total settlement); *Cilluffo v. Cent. Refrigerated Servs., Inc.*, 2018 WL 11374960, at *8-9 (C.D. Cal. Apr. 3, 2018) (approving awards totaling 2.7% of the total settlement fund); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1173-74 (S.D. Cal. 2007) (finding that lead plaintiff's $40,000 reimbursement request was "fair and reasonable"); *Steinberg v. Opko Health, Inc.*, No. 1:18-cv-23786, slip op. at 9 (S.D. Fl. Apr. 29, 2021) (Dkt. 131) (reimbursing lead plaintiff $17,500 even where lead plaintiff's declaration was "somewhat conclusory"). Indeed, many courts have approved reasonable reimbursements far greater than the amount requested here to compensate lead plaintiffs for the time, effort, and expenses devoted by them on behalf of a class. *See In re HP Securities Litigation*, No. 3:12-cv-05980-CRB, slip op. at 2 (N.D. Cal. Nov. 16, 2015) (Dkt. 279) (awarding $162,900 to lead plaintiff as "reimbursement for its costs and expenses directly related to its representation of the Settlement Class"); *Amgen*, 2016 WL 10571773, at *8 (approving reimbursement of over $30,000 for time spent participating in litigation); *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132-34 (2d Cir. 2014) (affirming award of over $450,000 to representative plaintiffs for reimbursement of time spent on the action); *In re FLAG Telecom Holdings, ltd. Sec. Litig.*, 2010 WL 4537550, at *31 (S.D.N.Y. Nov. 8, 2010) (approving award of $100,000 to Lead Plaintiff for time spent on the litigation); *In re Centurylink Sales Practices & Sec. Litig.*, 2021 WL

3080960, at *11-12 (D. Minn. July 21, 2021) (finding that lead plaintiffs costs and expenses totaling $40,763 and $21,375, were "reasonable and compensable").

Lead Counsel respectfully submit that the amount sought here is reasonable based on Lead Plaintiffs' involvement in the Action from inception to settlement. Moreover, there have been no objections raised by their fellow Class members. Accordingly, the awards sought by Lead Plaintiffs are reasonable and justified under the PSLRA based on the active involvement of Lead Plaintiffs in the Action and should be granted.

## III. CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court award Lead Counsel attorneys' fees of 25% of the Settlement Fund and litigation expenses in the amount of $141,142.47; and award PSLRA reimbursements to the Lead Plaintiffs in the amount of $14,100 for Lead Plaintiff Zhibin Zhang, and $18,000 each for Lead Plaintiffs Huaiyu Zheng and Abdul Baker.

Dated: October 3, 2022                    Respectfully submitted,

**POMERANTZ LLP**
/s/ Michael J. Wernke
Michael J. Wernke (pro hac vice)
Jeremy A. Lieberman (pro hac vice)
600 Third Ave., 20th Fl.
New York, NY 10016
Tel: (212) 661-1100
Email: mjwernke@pomlaw.com
Email: jalieberman@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

*Co-Lead Counsel for Lead Plaintiffs*

/s/ Stephanie M. Beige
Stephanie M. Beige
**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein (pro hac forthcoming)
Stephanie M. Beige (pro hac vice)
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Email: bernstein@bernlieb.com
Email: beige@bernlieb.com

*Co-Lead Counsel for Lead Plaintiffs*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York, 10165
Telephone: (212) 697-6486
Email: peretz@bgandg.com
*Additional Counsel for Lead Plaintiffs*