**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Co-Lead Counsel for Lead Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO FERREIRA, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FUNKO, INC., et al., <br><br> Defendants. | Case No. 2:20-cv-02319-VAP (MAAx) <br><br> **CLASS ACTION** <br><br> **DECLARATION OF STEPHANIE M. BEIGE IN SUPPORT OF FINAL APPROVAL OF THE SETTLEMENT AND PAYMENT OF ATTRONEYS' FEES AND EXPENSES** <br><br> <u>Hearing</u> <br> Date: November 7, 2022 <br> Time: 2:00 PM <br> Courtroom: 8A <br> Judge: Hon. Virginia A. Phillips |

I, Stephanie M. Beige, declare as follows pursuant to 28 U.S.C. § 1746:

1. I am a partner in the law firm of Bernstein Liebhard LLP ("Bernstein Liebhard"), court-appointed Co-Lead Counsel on behalf of Lead Plaintiffs Abdul Baker, Zhibin Zhang, and Huaiyu Zheng ("Lead Plaintiffs") and the proposed Settlement Class in the above-captioned action (the "Action").[1] I have personal knowledge of the matters set forth herein and, if called upon, could and would competently testify thereto.

2. I respectfully submit this Declaration in support of: Lead Plaintiffs' Motion for Final Approval of Settlement, Certification of Settlement Class, and Entry of Judgment; and (b) Lead Counsel's Motion for Payment of Attorneys' Fees and Expenses. Both motions have the support of the Lead Plaintiffs. *See* Declarations of Lead Plaintiffs Abdul Baker, Zhibin Zhang, and Huaiyu Zheng, attached hereto as Exhibits 1-3.[2]

## I.   PRELIMINARY STATEMENT

3. Lead Plaintiffs succeeded in obtaining a recovery for the Settlement Class in the amount of $7,000,000, in cash, which has been deposited in an interest-bearing escrow account for the benefit of the Settlement Class. As set forth in the Stipulation, in exchange for this payment, the proposed Settlement resolves all claims asserted by Lead Plaintiffs and the Settlement Class in the Action and all related claims that could have been brought against the Defendants ("Released Claims").

4. The case has been vigorously litigated from its commencement in March 2020 through the execution of the Stipulation. The Settlement was achieved only after Lead Counsel, *inter alia*: (i) conducted a thorough and wide-ranging investigation concerning the

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement, dated June 3, 2022 (the "Stipulation"), previously filed with the Court. *See* ECF No. 186-1.

[2] Citations to "Exhibit" or "Ex. __" herein refer to exhibits to this Declaration. For clarity, exhibits that themselves have attached exhibits will be referenced as "Ex. __-__." The first numerical reference is to the designation of the entire exhibit attached hereto and the second numerical reference is to the exhibit within the exhibit itself.

DECLARATION OF STEPHANIE M. BEIGE IN SUPPORT OF SETTLEMENT
AND PAYMENT OF ATTORNEYS' FEES AND EXPENSES

allegedly fraudulent misrepresentations and omissions made by Defendants; (ii) prepared and filed a detailed First Consolidated Amended Class Action Complaint ("FAC"); (iii) researched and drafted an opposition to Defendants' motions to dismiss the FAC; (iv) prepared and filed a detailed Second Consolidated Amended Class Action Complaint ("SAC"); (v) researched, drafted, and successfully opposed Defendants' motions to dismiss the SAC, in part; (vi) worked closely with its damages experts to analyze loss causation and damages issues; (vii) served and responded to various demands for the production of documents and interrogatories; (viii) engaged in meet and confer sessions with Defendants with respect to discovery demands and responses; (ix) drafted a detailed mediation statement and mediated the Action; (x) negotiated the terms of the Settlement; and (xi) reviewed hundreds of pages of confirmatory discovery produced by Funko in furtherance of the settlement negotiations. At the time the Settlement was reached, Lead Counsel had a thorough understanding of the strengths and weaknesses of the parties' positions.

5.      In deciding to settle, Lead Plaintiffs and Lead Counsel took into consideration the significant risks associated with establishing liability, as well as the duration and complexity of the legal proceedings that remained ahead. As demonstrated by the parties' court filings, the Settlement was achieved in the face of vigorous opposition by Defendants who would have, had the Settlement not been reached, continued to raise serious arguments concerning, among other things, whether the alleged misstatements were material or false, whether there was any evidence of Defendants' scienter, and whether Lead Plaintiffs could prove that the alleged fraud caused economic loss.

## II.    PROCEDURAL HISTORY

6.      Beginning on March 10, 2020, three similar actions were filed asserting violations of the federal securities laws against Defendants: (1) the above-captioned action (the "*Ferreira* Action"); (2) *Nahas v. Funko, Inc., et al.*, No. 2:20-cv-03130 (C.D. Cal.) (the "*Nahas* Action"); and (3) *Dachev v. Funko, Inc., et al.,* No. 2:20-cv-00544 (W.D. Wash.) (the "*Dachev* Action").

3

DECLARATION OF STEPHANIE M. BEIGE IN SUPPORT OF SETTLEMENT
AND PAYMENT OF ATTORNEYS' FEES AND EXPENSES

7. On June 11, 2020, the Court entered an Order (ECF No. 58): (i) consolidating the *Nahas* Action with the *Ferreira* Action; (ii) appointing Abdul Baker, Zhibin Zhang, and Huaiyu Zheng as Lead Plaintiffs for the proposed class; and (iii) appointing Bernstein Liebhard LLP and Pomerantz LLP as Co-Lead Counsel.

8. On June 24, 2020, the *Dachev* Action was voluntarily dismissed.

9. On July 31, 2020, Lead Plaintiffs filed a FAC alleging violations of Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder, against Defendants on behalf of all persons and entities that purchased or otherwise acquired Funko securities between August 8, 2019 and March 5, 2020, inclusive, and who were damaged thereby (the "Class").

10. On October 2, 2020, the Settling Defendants and the ACON Defendants filed separate motions to dismiss the FAC.

11. On December 1, 2020, Lead Plaintiffs filed an omnibus memorandum in opposition to the motions to dismiss the FAC.

12. On December 30, 2020, the Settling Defendants and the ACON Defendants filed separate reply briefs in support of their respective motions to dismiss the FAC.

13. On January 14, 2021, Lead Plaintiffs filed a corrected omnibus memorandum of law in opposition to the motions to dismiss the FAC.

14. On January 22, 2021, the Settling Defendants filed a supplemental reply brief in support of their motion to dismiss in response to Lead Plaintiffs' corrected omnibus memorandum of law.

15. On January 26, 2021, the Court issued an Order directing the parties to submit supplemental briefing addressing the impact of the Ninth Circuit's decision, *Wochos v. Tesla, Inc.*, 985 F.3d 1180 (9th Cir. 2021) on Defendants' pending motions to dismiss (*see* ECF 133).

DECLARATION OF STEPHANIE M. BEIGE IN SUPPORT OF SETTLEMENT AND PAYMENT OF ATTORNEYS' FEES AND EXPENSES

16.     On January 29, 2021, the parties submitted supplemental briefing addressing the impact of the Ninth Circuit's decision, *Wochos v. Tesla, Inc.*, 985 F.3d 1180 (9th Cir. 2021) on Defendants' pending motions to dismiss.

17.     On February 25, 2021, the Court granted Defendants' motions to dismiss the FAC. The Court also granted Lead Plaintiffs leave to amend (*see* ECF 141).

18.     On March 29, 2021, Lead Plaintiffs filed the operative, SAC against the Defendants.

19.     On May 7, 2021, the Settling Defendants and the ACON Defendants filed separate motions to dismiss the SAC.

20.     On June 11, 2021, Lead Plaintiffs filed oppositions to both motions to dismiss the SAC.

21.     On June 16, 2021, the Court issued an Order directing Defendants to address the impact of *In re Alphabet, Inc. Sec. Litig.,* 1 F.4th 687 (9th Cir. 2021), *cert. denied sub nom. Alphabet Inc. v. Rhode Island,* 142 S. Ct. 1227 (2022) ("*Alphabet*") on Defendants' motions to dismiss the SAC in their respective reply briefs. The Court also granted Lead Plaintiffs leave to file a sur-reply addressing *Alphabet* (*see* ECF 156).

22.     On July 2, 2021, the Settling Defendants and the ACON Defendants filed separate reply memoranda in support of their respective motions to dismiss the SAC.

23.     On July 16, 2021, Lead Plaintiffs filed a sur-reply in further support of their oppositions to the motions to dismiss the SAC.

24.     On October 18, 2021, the Court issued its tentative ruling and heard oral argument on the motions to dismiss the SAC.

25.     On October 22, 2021, the Court granted in part and denied in part the motions to dismiss the SAC (*see* ECF 165).

26.     On November 22, 2021, Defendants filed their Answers to the SAC.

27.     On January 6, 2022, the parties filed their Joint Rule 26(f) Report (*see* ECF 173).

DECLARATION OF STEPHANIE M. BEIGE IN SUPPORT OF SETTLEMENT
AND PAYMENT OF ATTORNEYS' FEES AND EXPENSES

28.    On January 11, 2022, the parties served their Rule 26(a)(1) Initial Disclosures.

29.    Between December 2021 and March 2022, the parties served and responded to various demands for the production of documents and interrogatories and engaged in a meet and confer with respect to Lead Plaintiffs' Objections and Responses to the Settling Defendants' Requests for Production of Documents and Interrogatories.

30.    On February 15, 2022, the parties filed a Stipulated Protective Order (*see* ECF 175).

31.    On March 4, 2022, the parties entered into a Stipulated Discovery Order Governing the Production of Documents and Discovery of Electronically Stored Information.

## III.    NEGOTIATION OF THE SETTLEMENT AND ITS TERMS

32.    In late-2021, Lead Plaintiffs and the Settling Defendants began exploring the possibility of a settlement. The Parties agreed that holding a mediation session prior to briefing class certification could be beneficial to all parties.

33.    On April 11, 2022, the Parties engaged Michelle Yoshida, a well-respected and highly experienced mediator associated with Phillips ADR to assist them in exploring whether a negotiated resolution was possible. Thereafter, the Parties exchanged confidential mediation statements.

34.    In advance of the scheduled mediation session with Ms. Yoshida, Lead Plaintiffs and the Settling Defendants exchanged mediation statements and damages analyses.

35.    On April 27, 2022, after a full day mediation session was held before Ms. Yoshida, the Parties were able to reach a settlement in principle to resolve the action, resulting in a Memorandum of Understanding (the "MOU"), entered into on April 29, 2022.

36.    On May 2, 2022, the Parties informed the Court that they had reached a settlement in principle asked the Court to stay all deadlines.

DECLARATION OF STEPHANIE M. BEIGE IN SUPPORT OF SETTLEMENT
AND PAYMENT OF ATTORNEYS' FEES AND EXPENSES

37.    The parties subsequently drafted a Stipulation, which sets forth the final terms and conditions of the Settlement, including, among other things, a dismissal with prejudice of all claims asserted in the Action, along with a release of any related claims ("Released Claims"), in return for a cash payment of $7,000,000 (the "Settlement Amount") for the benefit of the Settlement Class.

38.    Lead Plaintiffs and Defendants thereafter memorialized the final terms of the Settlement in the Stipulation, which was executed by the parties on June 3, 2022.

39.    On June 3, 2022, Lead Plaintiffs filed their Unopposed Motion for Preliminary Approval of Settlement, Preliminary Certification of Settlement Class, and Approval to Provide Notice to the Class and Memorandum of Points and Authorities in Support. Lead Plaintiffs requested that the Court approve the forms of notice, which, among other things, described the terms of the Settlement, advised Settlement Class Members of their rights in connection with the Settlement, set forth the Plan of Allocation, informed Settlement Class Members of the amount of attorneys' fees and expenses that Lead Counsel and Lead Plaintiffs would request, and explained the procedure and deadline for filing a Proof of Claim and Release form (the "Proof of Claim Form") in order to be eligible to receive a payment from the Net Settlement Fund. In addition, Lead Plaintiffs requested that the Court certify the Settlement Class for settlement purposes.

**IV.    COMPLIANCE WITH THE PRELIMINARY APPROVAL ORDER**

40.    By Order entered July 19, 2022, the Court preliminarily approved the Settlement and approved the forms of notice to the Settlement Class. ECF No. 193 (the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, the Court appointed Strategic Claims Services ("SCS") as Claims Administrator and instructed SCS to disseminate copies of the Notice to the Settlement Class.

41.    The Notice informed the Settlement Class members of the terms of the Settlement, their right to object or seek exclusion, and that Lead Counsel sought attorneys'

fees of up to 25% of the Settlement Fund and reimbursement of expenses not to exceed $250,000.

42. Attached as Exhibit 4 is the Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections. This Declaration demonstrates that the Claims Administrator has provided Notice to the Settlement Class in compliance with the Preliminary Approval Order.

43. In addition to providing Noticed directly to Settlement Class Members, SCS caused the Summary Notice to be published in *Investors' Business Daily* and to be transmitted over *PR Newswire*. *Id*. at ¶ 9.

44. Lead Counsel has reviewed the Summary Notice as distributed to the Settlement Class.

45. SCS also maintains and posts information regarding the Settlement on a dedicated website established for the Action, https://www.strategicclaims.net/Funko/ to provide Settlement Class Members with information about the Action, as well as downloadable copies of the Notice, Claim Form and Stipulation. *Id*. at ¶ 11.

46. Lead Counsel reviewed the Claims Administrator's website for the Action and confirmed that it was operational and provided information to the Settlement Class.

47. Lead Counsel also posted Notice to the Settlement Class on their firm websites.

48. Pursuant to the terms of the Preliminary Order and the Order Setting Fairness Hearing and Other Deadlines dated July 29, 2022 (ECF No. 195), the deadline for Settlement Class Members to submit objections to the Settlement or the fee and expense application, or to request exclusion from the Settlement Class is October 17, 2022. To date, SCS reports that it has not received any objections and has received only one request for exclusion from the Settlement Class. *Id*. at ¶ 7.

49. Other than the one request for exclusion described above, Lead Counsel is unaware of any objections to the Settlement or requests for exclusion from the Settlement

Class. Should any objections or requests for exclusion be received, Lead Plaintiffs will address such in the reply papers.

50. As part of the Settlement, the Parties agreed that "[i]f any funds shall remain in the Net Settlement Fund six months after re-distribution, then the balance shall be contributed to the Legal Aid Foundation of Los Angeles or any non-profit successor of it." Stipulation at ¶ 32. In its Preliminary Approval Order, the Court explained that while "the proposed settlement is within the range of possible final approval," the Court declined to approve of the Legal Aid Foundation of Los Angeles as a recipient of remaining funds because its mission is "unrelated to both the injuries Plaintiffs suffered and the objectives of the underlying statutes on which Plaintiffs base their claims." Preliminary Approval Order at 25. The Preliminary Approval Order further explained that, "the Legal Aid Foundation of Los Angeles is a local charity, but class members exist throughout the United States." *Id.*

51. Accordingly, pursuant to the Preliminary Approval Order, Lead Counsel has selected Investor Protection Trust as the recipient of any funds remaining in the Net Settlement Fund after final distribution. Investor Protection Trust is a nonprofit organization devoted to independent and unbiased investor education, research, and support of investor protection efforts. *See* https://investorprotection.org/. Since 1993, the Investor Protection Trust has worked at the state and national level to provide independent and objective investor education to enable the public to make informed investment decisions. This is related to both the injuries Lead Plaintiffs suffered and the objectives of the underlying statutes on which Lead Plaintiffs base their claims. Moreover, Investor Protection Trust functions under the direction of a Board of Trustees which is composed of various State Securities Regulators.

## V.  THE SETTLEMENT IS AN EXCELLENT RESULT FOR THE SETTLEMENT CLASS

52.    The $7,000,000 Settlement is a favorable and reasonable result for the Settlement Class, particularly when considered in view of the substantial risks and obstacles to recovery if the Action were to continue through summary judgment, to trial, and through likely post-trial motions and appeals.

53.    The Settlement recovers approximately 8.7% of the $80 million in maximum estimated damages.[3] This percentage is above the median settlement amount as reported by Cornerstone Research in Laarni T. Bulan et al., *Securities Class Action Settlements: 2021 Review and Analysis*, which tracks and aggregates court-approved securities class action settlements. *See* Ex. 5.

54.    The Settlement, when viewed as a percentage of maximum recoverable damages is likely even more favorable to the Settlement Class because Lead Plaintiffs' $80 million estimate would be subject to formidable challenges.

55.    Though Lead Plaintiffs believe that the claims were strong, Lead Plaintiffs also recognize that there were considerable risks in continuing the Action against Defendants. Lead Plaintiffs and Lead Counsel carefully considered these risks during the months leading up to the Settlement and throughout the settlement discussions with the Settling Defendants and the Mediator.

56.    In agreeing to settle, Lead Plaintiffs and Lead Counsel weighed, among other things, the substantial cash benefit to the Settlement Class Members against: (i) the uncertainties associated with trying complex securities cases; (ii) the difficulties and challenges involved in proving materiality, falsity, scienter, causation, and damages in this particular case; and (iii) the delays that would follow even a favorable final judgment, including appeals.

57.    Proving loss causation and damages posed serious risks to recovery for the Settlement Class. The SAC alleged two general categories of false and misleading

---

[3] Lead Plaintiffs' $80 million damages estimate includes approximately $11 million in damages relating to Lead Plaintiffs' 20A claim and approximately $69 million relating to Lead Plaintiffs' 10(b) claims.

DECLARATION OF STEPHANIE M. BEIGE IN SUPPORT OF SETTLEMENT AND PAYMENT OF ATTORNEYS' FEES AND EXPENSES

statements relating to Funko's financial condition: (i) the Company's risk warnings that warned investors of potential risks that could affect Funko's business operations if the Company accumulated excess inventory (the "Inventory Statements"); and (ii) Defendants' fiscal year 2019 financial projections (the "Projection Statements"). The SAC alleged that Funko's announcements on February 5, 2020 that the Company missed its fourth quarter 2019 and 2019 fiscal year earnings guidance and that it was taking a $16.9 million inventory write-down were corrective disclosures that caused a material price drop in Funko stock. However, the Court dismissed the Projection Statements claims in its Order granting in part and denying in part, Defendants' motions to dismiss the SAC. *See* ECF No. 165. As a result, Defendants would likely have contended that Lead Plaintiffs could not establish a causal connection between the alleged misrepresentations relating to Funko's inventory write-down and any loss allegedly suffered by investors. Indeed, Defendants likely would have argued that damages are zero because the stock price decline as a result of Funko's February 5, 2020 disclosures was not caused by Funko's announcement that it was taking a write-down of inventory, but instead was caused by the Company's announcement that it had missed its fourth quarter 2019 and 2019 fiscal year earnings guidance by over 25%. At the very least, Defendants would argue that Lead Plaintiffs would be required to "distinguish the impact" of the fraud (*i.e.*, damages relating to Funko's inventory write-down) and that of "non-fraud related news and events" (*e.g.*, damages relating to Funko's missed 4Q2019 and FY2019 projections), an argument which – if accepted by the Court – would reduce Lead Plaintiffs' damages estimate significantly.

58. Defendants would have also likely challenged Lead Plaintiffs' calculation of 20A damages, as there are differing calculations available, each having been accepted by different district courts. While Lead Plaintiffs would have argued in favor of a "disgorgement" of profits calculation, amounting to approximately $11 million in damages, Defendants likely would have argued that 20A damages are limited to the aggregate loss Defendant Mariotti avoided by selling prior to a corrective disclosure. Because Mariotti's

sales occurred in September 2019—more than a month before the alleged misstatement that was upheld by the Court—Defendants would likely argue that Mariotti did not avoid any losses because he was not able to take advantage of any artificial price inflation.

59. The Settlement also provides the Settlement Class with a prompt and substantial tangible recovery, without the considerable risk, expense, and delay of litigating to completion. Lead Plaintiffs faced risks in connection with their upcoming motion for class certification. While Lead Plaintiffs believe class certification would have been granted, the risks associated with continued litigation were shown through Defendants' motions to dismiss and the Court's Order dismissing a large portion of Lead Plaintiffs' claims.

60. Defendants would have also likely sought summary judgment and there was no guarantee that Lead Plaintiffs would prevail against Defendants' challenges and, even if they did, how the Court's rulings would affect damages or how the case would be presented to a jury.

61. These risks aside, discovery would have been protracted and the trial of Lead Plaintiffs' claims would inevitably be long and complex, and even a favorable verdict would undoubtedly spur a lengthy post-trial and appellate process.

62. Lead Plaintiffs' success was by no means assured. It is possible that a jury could have found no liability or no damages. Lead Counsel therefore respectfully submits that based upon the considerable risk factors present, this Settlement is an excellent result for the Settlement Class and involved a very substantial contingency risk to Lead Counsel.

63. As set forth above, the terms of the Settlement were negotiated by the Parties at arm's-length through adversarial good-faith negotiations.

## VI.    THE PLAN OF ALLOCATION

64. Pursuant to the Notice Order and as set forth in the Postcard Notice, Summary Notice, and Notice, all Settlement Class Members who wish to participate in the distribution of the Net Settlement Fund must submit a timely and proper Proof of Claim form. As

provided in the Stipulation, after deducting all appropriate taxes, administrative costs, and attorneys' fees and expenses (as well as reimbursement of Lead Plaintiffs' time and expenses), the remainder of the Settlement Fund (the "Net Settlement Fund") shall be distributed among Settlement Class Members who submit valid Proof of Claim forms according to the Plan of Allocation.

65.    If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed. The proposed Plan of Allocation provides that, to qualify for payment, a claimant must be, among other things, an eligible member of the Settlement Class and must submit a valid Proof of Claim form that provides all of the requested information. The Settlement Fund will be distributed on a *pro rata* basis depending on the Settlement Class member's recognized losses. The Plan of Allocation is set forth in the Notice.

66.    The proposed Plan of Allocation was formulated after consultation with Lead Counsels' damages consultant in order to calculate an equitable method to divide the Net Settlement Fund for distribution among Settlement Class members who submit valid claims. The proposed Plan of Allocation is designed to fairly and rationally allocate the proceeds of this Settlement among the Settlement Class.

## VII.    THE WORK OF LEAD COUNSEL AND THE LODESTAR CROSS-CHECK

67.    The work undertaken by Lead Counsel in investigating and prosecuting this case and arriving at the present Settlement in the face of serious hurdles has been time-consuming and challenging. Among other efforts, described more fully *supra* ¶¶ 6-31 Lead Counsel conducted a comprehensive investigation into the Settlement Class's claims; researched and prepared a detailed first amended complaint; briefed thorough oppositions to Defendants' first round of motions to dismiss, including supplemental briefing the impact of the Ninth Circuit's decision, *Wochos v. Tesla, Inc.*, 985 F.3d 1180 (9th Cir. 2021) on Defendants' first round of motions to dismiss; researched and prepared a detailed second amended complaint; briefed thorough oppositions to Defendants' second round of motions

DECLARATION OF STEPHANIE M. BEIGE IN SUPPORT OF SETTLEMENT AND PAYMENT OF ATTORNEYS' FEES AND EXPENSES

to dismiss, including supplemental briefing on the impact of the Ninth Circuit's decision in *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687 (9th Cir. 2021), *cert. denied sub nom*. *Alphabet Inc. v. Rhode Island*, 142 S. Ct. 1227 (2022) on Defendants' second round of motions to dismiss; worked closely with their damages experts to analyze loss causation and damages issues; served and responded to various demands for the production of documents and interrogatories; engaged in meet and confer sessions with Defendants with respect to discovery demands and responses; drafted a detailed mediation statement and engaged in a hard-fought settlement process with experienced defense counsel and an experienced Mediator; and reviewed hundreds of pages of confirmatory discovery produced by Funko in furtherance of the settlement negotiations.

68. At all times throughout the pendency of the Action, Lead Counsels' efforts were driven and focused on advancing the litigation to bring about the most successful outcome for the Settlement Class, whether through settlement or trial, by the most efficient means necessary.

69. Attached hereto are declarations from Lead Counsel, which are submitted in support of the request for an award of attorneys' fees and payment of expenses. *See* Declaration of Bernstein Liebhard LLP in Support of Lead Counsels' Motion for Payment of Attorneys' Fees and Expenses (attached as Exhibit 6 hereto); and Declaration of Pomerantz LLP in Support of Lead Counsels' Motion for Payment of Attorneys' Fees and Expenses (attached as Exhibit 7 hereto).

70. Included with these declarations are schedules that summarize the time of each firm (including by category of work conducted), as well as the expenses incurred by category (the "Fee and Expense Schedules"). The attached declarations report the amount of time spent by each attorney and professional support staff employed by Lead Counsel and the "lodestar" calculations, *i.e.*, their hours multiplied by their current rates. *See* Exs. 6-7. As explained in each declaration, they were prepared from daily time records regularly prepared and maintained by the respective firms.

71.    Lead Counsels' time records contain privileged information and would be burdensome to redact. These records are available at the Court's request. If the Court requests such records, due to the large quantity of privileged information, and the burden associated with redactions, Lead Counsel requests to submit such records *in camera*.

72.    Lead Counsel submits that their current rates are comparable, or less than, those used by peer defense side law firms litigating matters of similar magnitude (as shown by a sample of defense firm rates in 2019 from bankruptcy court filings nationwide – which often exceeded Lead Counsels' rates).  *See* Ex. 8.

73.    Lead Counsels' rates have been reviewed and approved by federal district courts in this district and across the country.

74.    Lead Counsel are experienced and skilled securities litigation firms. The expertise and experience of the firms' attorneys is described in the firm biographies attached as exhibits to Lead Counsels' Declarations. *See* Exs. 6-7.

75.    Defendants are represented by very experienced counsel – Latham & Watkins LLP and Aegis Law Group LLP – who spared no effort in defense of its clients. Defendants' counsel vigorously defended its clients, insisted they had no liability, and gave every indication that they were prepared to proceed with litigation to trial, if necessary, if a settlement was not reached.

## VIII.  LEAD COUNSELS' REQUEST FOR LITIGATION EXPENSES

76.    Lead Counsel seeks payment from the Settlement Fund of litigation expenses reasonably and necessarily incurred in connection with commencing and prosecuting the claims against Defendants. The Notice informs the Settlement Class that Lead Counsel will apply for payment of litigation expenses of no more than $275,000, plus interest at the same rate earned by the Settlement Fund

77.    As set forth in Lead Counsels' Declarations in support of Lead Counsels' motion for payment of attorneys' fees and expenses, Lead Counsel will incur a total of $141,142.47 in litigation expenses in connection with the prosecution of the Action. *See* Ex.

6 at ¶ 8; Ex. 7 at ¶ 8. The amounts requested herein are below the $275,000 estimate given to the Settlement Class in the Notice.

78.    All of the litigation expenses were necessary to the successful prosecution and resolution of the claims against Defendants.

**IX.    LEAD PLAINTIFFS' REIMBURSEMENTS PURSUANT TO THE PSLRA**

79.    Pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), Lead Plaintiffs are seeking reimbursement related directly to their representation of the Settlement Class, including time reviewing pleadings, court filings, discussions with Lead Counsel, gathering and producing documents in response to document requests, responding to interrogatories, and participating in settlement. Such payments are expressly authorized and anticipated by the PSLRA.

80.    As set forth in the Declaration of Abdul Baker, attached hereto as Exhibit 1, Dr. Baker seeks an award of $18,000 as reimbursement for the time he dedicated to the Action.[4]

81.    As set forth in the Declaration of Zhibin Zhang, attached hereto as Exhibit 2, Mr. Zhang seeks an award of $14,100, as reimbursement for the time he dedicated to the Action.

82.    As set forth in the Declaration of Huaiyu Zheng, attached hereto as Exhibit 3, Ms. Zheng seeks an award of $18,000, as reimbursement for the time she dedicated to the Action.

83.    The Notice informed potential Settlement Class Members that Lead Counsel would be seeking payment of expenses in an amount not to exceed $275,000, including reimbursement to the Lead Plaintiffs directly related to their representation of the Settlement Class, as authorized by the PSLRA. *See* Ex. 4. The aggregate amount requested, $191,242.47 (which includes $141,142.47 in litigation expenses incurred by Lead Counsel

---

[4] As set forth in Lead Plaintiff Baker's and Lead Plaintiff Zheng's Declarations, the time they spent participating in this Action and protecting the interests of the Settlement Class exceeds the $18,000 cap included in the Notice. *See* Exs. 1, 3.

and $50,100 in PSLRA reimbursements to the Lead Plaintiffs) is below the $275,000 estimate given to the Settlement Class in the Notice.

## X.    CONCLUSION

84.    In view of the significant recovery to the Settlement Class and the substantial risks of this litigation, as described above and in the accompanying memorandum of law, Lead Plaintiffs and Lead Counsel respectfully submit that the Settlement should be approved as fair, reasonable, and adequate.

85.    In view of the significant recovery in the face of substantial risks, the quality of work performed, the contingent nature of the fee, and the standing and experience of Lead Counsel, as described above and in the accompanying memorandum of law, Lead Counsel respectfully submit that a fee in the amount of 25% of the Settlement Fund be awarded, that litigation expenses in the amount of $141,142.47 be paid, and that Lead Plaintiff Abdul Baker be awarded $18,000, Lead Plaintiff Zhibin Zhang be awarded $14,100, and Lead Plaintiff Huaiyu Zheng be awarded $18,000, pursuant to the PSLRA.

## XI.    TABLE OF EXHIBITS

86.    The following documents are true and correct copies:

| EXHIBIT | DOCUMENT |
|---|---|
| 1 | Declaration of Lead Plaintiff Abdul Baker |
| 2 | Declaration of Lead Plaintiff Zhibin Zhang |
| 3 | Declaration of Lead Plaintiff Huaiyi Zheng |
| 4 | Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections |
| 5 | Cornerstone Research in Laarni T. Bulan et al., *Securities Class Action Settlements: 2021 Review and Analysis* |
| 6 | Declaration of Bernstein Liebhard LLP in Support of Lead Counsels' Motion for Payment of Attorneys' Fees and Expenses |
| 7 | Declaration of Pomerantz LLP in Support of Lead Counsels' Motion for Payment of Attorneys' Fees and Expenses |

| 8 | Representative fees awarded to counsel in Bankruptcy Court |
| 9 | Compendium of unreported decisions |

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 3, 2022.

_____

Stephanie M. Beige

18